# Exhibit A-4

CONFIDENTIAL TREATMENT REQUESTED BY BRUNE & RICHARD LLP
ON BEHALF OF PATRIARCH PARTNERS LLC

EXHIBIT A-4

## FORM OF REGULATION S GLOBAL NOTE
### (CLASS A-2 AND A-3 NOTES)

THIS NOTE HAS NOT BEEN AND WILL NOT BE REGISTERED UNDER THE UNITED STATES SECURITIES ACT OF 1933, AS AMENDED (THE "SECURITIES ACT"), AND THE CO-ISSUERS HAVE NOT BEEN REGISTERED UNDER THE UNITED STATES INVESTMENT COMPANY ACT OF 1940, AS AMENDED (THE "1940 ACT). THIS NOTE MAY NOT BE OFFERED, SOLD, PLEDGED (OTHER THAN PURSUANT TO A QUALIFIED SECURITIZATION PLEDGE) OR OTHERWISE TRANSFERRED, EXCEPT (A)(1) TO A PERSON WHOM THE SELLER REASONABLY BELIEVES IS A QUALIFIED INSTITUTIONAL BUYER WITHIN THE MEANING OF RULE 144A UNDER THE SECURITIES ACT ("RULE 144A") IN A TRANSACTION MEETING THE REQUIREMENTS OF RULE 144A, SO LONG AS THIS SECURITY IS ELIGIBLE FOR RESALE PURSUANT TO RULE 144A IN ACCORDANCE WITH RULE 144A IN RELIANCE ON AN EXEMPTION FROM THE REGISTRATION REQUIREMENTS OF THE SECURITIES ACT, PURCHASING FOR ITS OWN ACCOUNT, AND WHO IS ALSO A QUALIFIED PURCHASER (FOR PURPOSES OF THE 1940 ACT), SUBJECT TO THE SATISFACTION OF CERTAIN CONDITIONS SPECIFIED IN THE INDENTURE REFERRED TO BELOW, AND WHICH MAY BE IN EITHER CASE EFFECTED WITHOUT LOSS OF ANY APPLICABLE 1940 ACT EXCEPTION OR (2) TO A NON-U.S. PERSON IN AN OFFSHORE TRANSACTION IN ACCORDANCE WITH RULE 903 OR RULE 904 (AS APPLICABLE) OF REGULATION S UNDER THE SECURITIES ACT AND WHO IS NOT A U.S. RESIDENT WITHIN THE MEANING OF THE 1940 ACT AND, IN THE CASE OF CLAUSES (1) AND (2), IN A MINIMUM DENOMINATION OF U.S.$1,000,000 AND INTEGRAL MULTIPLES OF U.S.$50,000 IN EXCESS THEREOF, AND (B) IN ACCORDANCE WITH ALL APPLICABLE SECURITIES LAWS OF ANY STATE OF THE UNITED STATES AND ANY OTHER APPLICABLE JURISDICTION. EACH PURCHASER OF THIS NOTE WILL BE REQUIRED TO MAKE THE REPRESENTATIONS AND AGREEMENTS SET FORTH IN THE CLASS A NOTE CERTIFICATE, WHICH IS ATTACHED TO THE INDENTURE REFERRED TO BELOW AS EXHIBIT B-1 (OTHER THAN A TRANSFEREE OF A NOTE REPRESENTED BY A GLOBAL NOTE, OR OF ANY INTEREST THEREIN, WHICH SHALL BE DEEMED TO MAKE THE REPRESENTATIONS AND AGREEMENTS SET FORTH IN SUCH CERTIFICATE). ANY TRANSFER IN VIOLATION OF THE FOREGOING WILL BE OF NO FORCE AND EFFECT, WILL BE VOID *AB INITIO*, AND WILL NOT OPERATE TO TRANSFER ANY RIGHTS TO THE TRANSFEREE, NOTWITHSTANDING ANY INSTRUCTIONS TO THE CONTRARY TO THE ISSUER, THE TRUSTEE OR ANY INTERMEDIARY.

TRANSFER OF THIS GLOBAL NOTE SHALL BE LIMITED TO TRANSFERS IN WHOLE, AND NOT IN PART, TO NOMINEES OF DEPOSITORY TRUST COMPANY, A NEW YORK CORPORATION ("DTC"), OR TO A SUCCESSOR THEREOF OR SUCH SUCCESSOR'S NOMINEE AND TRANSFERS OF INTERESTS IN THIS GLOBAL NOTE SHALL BE LIMITED TO TRANSFERS MADE IN ACCORDANCE WITH THE RESTRICTIONS SET FORTH IN SECTION 2.4 OF THE INDENTURE REFERRED TO HEREIN.

Exhibit A-4 – Form of Regulation S Global Note

NY3:#7350184v5

CONFIDENTIAL TREATMENT REQUESTED BY BRUNE & RICHARD LLP
ON BEHALF OF PATRIARCH PARTNERS LLC

PP050559

EACH PURCHASER OF A NOTE, AND EACH TRANSFEREE OF A NOTE, OR OF ANY INTEREST THEREIN, WILL BE REQUIRED TO ACKNOWLEDGE, REPRESENT AND AGREE IN WRITING (AND EACH TRANSFEREE OF A BENEFICIAL INTEREST IN THIS NOTE, SHALL BE DEEMED TO HAVE ACKNOWLEDGED, REPRESENTED AND AGREED), EITHER THAT (A) IT IS NOT, AND IT WILL NOT BE, AN "EMPLOYEE BENEFIT PLAN" SUBJECT TO THE U.S. EMPLOYEE RETIREMENT INCOME SECURITY ACT OF 1974, AS AMENDED ("ERISA"), A PLAN DESCRIBED IN SECTION 4975(e)(1) OF THE U.S. INTERNAL REVENUE CODE OF 1986, AS AMENDED (THE "CODE"), OR AN ENTITY WHOSE UNDERLYING ASSETS INCLUDE PLAN ASSETS BY REASON OF AN EMPLOYEE BENEFIT PLAN'S OR PLAN'S INVESTMENT IN THE ENTITY OR OTHERWISE, OR A GOVERNMENTAL OR OTHER PLAN WHICH IS SUBJECT TO ANY FEDERAL, STATE OR LOCAL LAW THAT IS SUBSTANTIALLY SIMILAR TO THE PROVISIONS OF SECTION 406 OF ERISA OR SECTION 4975 OF THE CODE OR (B) ITS PURCHASE, HOLDING AND DISPOSITION OF THE NOTE, OR OF ANY INTEREST THEREIN, WILL NOT CONSTITUTE OR RESULT IN A NON-EXEMPT PROHIBITED TRANSACTION UNDER SECTION 406 OF ERISA AND/OR SECTION 4975 OF THE CODE (OR, IN THE CASE OF A GOVERNMENTAL OR OTHER PLAN, A VIOLATION OF ANY SUBSTANTIALLY SIMILAR FEDERAL, STATE OR LOCAL LAW) BY REASON OF AN APPLICABLE STATUTORY OR ADMINISTRATIVE EXEMPTION.

THE ISSUER HAS THE RIGHT, UNDER THE INDENTURE, TO COMPEL ANY HOLDER OR OWNER OF A BENEFICIAL INTEREST IN THIS NOTE THAT IS A U.S. PERSON AND IS NOT A QUALIFIED INSTITUTIONAL BUYER OR A U.S. PERSON THAT IS NOT A QUALIFIED PURCHASER OR THAT DOES NOT HAVE AN EXEMPTION AVAILABLE UNDER THE SECURITIES ACT TO SELL THIS NOTE OR ITS INTEREST IN THIS NOTE, OR MAY SELL SUCH NOTE OR INTEREST ON BEHALF OF SUCH PERSON.

PRINCIPAL OF THIS NOTE IS PAYABLE IN INSTALLMENTS FROM TIME TO TIME AS SET FORTH IN THE INDENTURE REFERRED TO HEREIN. ACCORDINGLY, THE OUTSTANDING PRINCIPAL AMOUNT OF THIS NOTE AT ANY TIME MAY BE LESS THAN THE ORIGINAL PRINCIPAL AMOUNT OF THIS NOTE SET FORTH BELOW.

UNLESS THIS NOTE IS PRESENTED BY AN AUTHORIZED REPRESENTATIVE OF DTC TO THE TRUSTEE OR ITS AGENTS FOR REGISTRATION OF TRANSFER, EXCHANGE, OR PAYMENT, AND ANY NOTE ISSUED IS REGISTERED IN THE NAME OF CEDE & CO. OR IN SUCH OTHER NAME AS IS REQUESTED BY AN AUTHORIZED REPRESENTATIVE OF DTC (AND ANY PAYMENT IS MADE TO CEDE & CO. OR TO SUCH OTHER ENTITY AS IS REQUESTED BY AN AUTHORIZED REPRESENTATIVE OF DTC), ANY TRANSFER, PLEDGE, OR OTHER USE HEREOF FOR VALUE OR OTHERWISE BY OR TO ANY PERSON IS WRONGFUL INASMUCH AS THE REGISTERED OWNER HEREOF, CEDE & CO., HAS AN INTEREST HEREIN.

Exhibit A-4 – Form of Regulation S Global Note

NY3:#7350184v5

CONFIDENTIAL TREATMENT REQUESTED BY BRUNE & RICHARD LLP
ON BEHALF OF PATRIARCH PARTNERS LLC

PP050560

ZOHAR II 2005-1, LIMITED
ZOHAR II 2005-1, CORP.

REGULATION S GLOBAL NOTE
representing
[CLASS A-2 FLOATING RATE SENIOR SECURED TERM NOTE DUE 2017]
[CLASS A-3 FLOATING RATE SENIOR SECURED DELAYED DRAWDOWN NOTE DUE 2017][1]

Certificate No.:  [A-2-S-[•]] [A-3-S-[•]][2]                                    [Date]
Common Code:  [_____]                          Up to U.S.$[_____]
ISIN No.:     [USG98917AA89] [USG98917AB62][3]
CUSIP No.:    [G98917 AA 8] [G98917 AB 6][4]

ZOHAR II 2005-1, LIMITED, an exempted company organized under the laws of the Cayman Islands (the "Issuer"), and ZOHAR II 2005-1, CORP., a corporation organized and existing under the laws of the State of Delaware (the "Co-Issuer" and, together with the Issuer, the "Co-Issuers"), for value received, hereby promise to pay to CEDE & CO. or registered assigns, upon presentation and surrender of this Note (except as otherwise permitted by the Indenture referred to below), the principal sum of _____ United States Dollars (U.S.$_____) (or such lesser amount as shall equal the aggregate outstanding principal amount of this Note) on the Payment Date in January, 2017 (the "Stated Maturity") except as provided below and in said Indenture.

This Note is one of a duly authorized issue of [Class A-2 floating rate senior secured term notes due 2017 (the "Class A-2 Notes")] [Class A-3 floating rate senior secured delayed drawdown notes due 2017 (the "Class A-3 Notes")][5] issued under an Indenture dated as of January 12, 2005 (as supplemented and otherwise modified and in effect from time to time, the "Indenture"), among the Issuer, the Co-Issuer, Zohar II 2005-1, LLC (the "Zohar Subsidiary"), MBIA Insurance Company (the "Credit Enhancer"), IXIS Financial Products Inc., as agent for the Holders of the Class A-1 Notes (together with any successors in such capacity, the "Class A-1 Note Agent") and as agent for the Holders of the Class A-3 Notes (together with any successors in such capacity, the "Class A-3 Note Agent"), and LaSalle Bank National Association, as trustee (in such capacity, the "Trustee"). Capitalized terms used in this Note, but not defined herein, shall have the meanings set forth in the Indenture. Reference is hereby made to the Indenture, all indentures supplemental thereto and all agreements referred to therein for a statement of the respective rights, limitations of rights, duties and immunities thereunder of the Co-Issuers, the Zohar Subsidiary, the Credit Enhancer, the Class A-1 Note Agent, the Class A-3 Note Agent, the Trustee and the Holders of the Notes and the terms upon which the Notes are, and are to be, authenticated and delivered.

---

[1] Insert as appropriate.
[2] Insert as appropriate.
[3] Insert as appropriate.
[4] Insert as appropriate.
[5] Insert as appropriate.

NY3:#7350184v5

Exhibit A-4 – Form of Regulation S Global Note

CONFIDENTIAL TREATMENT REQUESTED BY BRUNE & RICHARD LLP
ON BEHALF OF PATRIARCH PARTNERS LLC
                                                                                    PP050561

The Co-Issuers promise to pay interest on the principal amount of this Note outstanding from time to time, from the Closing Date to but excluding the Stated Maturity, in arrears on each Payment Date at a rate per annum equal to the applicable [Class A-2] [Class A-3][6] Note Interest Rate as set forth in the Indenture in accordance with the Priority of Payments and the other terms set forth in the Indenture. Interest accrued with respect to each Interest Period shall be computed on the basis of a 360-day year and the actual number of days elapsed in such Interest Period, and shall be determined for such Interest Period based on the outstanding principal amount of this Note at the beginning of such Interest Period and [(in the case of interest)][7] the Note Interest Rate for such Interest Period; provided that, in the case of the Interest Periods ending prior to the Initial Payment Date, interest accrued with respect to each such Interest Period shall be computed on the basis of a 360-day year and the actual number of days elapsed in such Interest Period, and shall be determined for such Interest Period based on the increase in the outstanding principal amount of this Note at the beginning of such Interest Period and the Note Interest Rate for such Interest Period (it being understood that on the Closing Date, such increase is equal to the outstanding principal amount of this Note as of the close of business on such day).

This Note may be redeemed, in whole but not in part, in the manner and with the effect provided in the Indenture. Amounts borrowed under this Note, once repaid, cannot be reborrowed.

The principal of and interest which is payable in accordance with the Priority of Payments on any Payment Date and is punctually paid or duly provided for on such Payment Date shall be paid to the Person in whose name this Note (or one or more predecessor Notes) is registered at the close of business on the Record Date with respect to such Payment Date. Any such interest not so punctually paid shall forthwith cease to be payable to the Holder on such Record Date, and will instead be payable to the Person in whose name this Note is registered at the close of business on the next Record Date.

Interest will cease to accrue on this Note, or in the case of a partial repayment, on such part, from the date of repayment unless payment of principal is improperly withheld or unless a Default is otherwise made with respect to such payments. To the extent lawful and enforceable, interest on any Defaulted Interest shall accrue hereon to the extent provided in Section 2.6 of the Indenture.

The obligations of the Co-Issuers under this Note and the Indenture are limited recourse obligations of the Co-Issuers payable solely from the Collateral. The payments of principal of and interest on this Note and all other amounts due on this Note are subject to the Priority of Payments and are subordinated to the payment of certain other amounts as provided therein and in Section 13.1 of the Indenture.

The Notes are entitled to the benefits of a financial guaranty insurance policy (the "Policy") issued by the Credit Enhancer, pursuant to which the Credit Enhancer has unconditionally guaranteed payments of Insured Payments (as defined in the Policy) on each Payment Date, all as more fully set forth in the Indenture and subject to the terms of the Policy.

---

[6] Insert as appropriate.
[7] Insert for Class A-3 Notes.

NY3:#7350184v5

Exhibit A-4 – Form of Regulation S Global Note

CONFIDENTIAL TREATMENT REQUESTED BY BRUNE & RICHARD LLP
ON BEHALF OF PATRIARCH PARTNERS LLC

PP050562

No recourse shall be had for the payment of any amount owing in respect of this Note against any Officer, member, director, employee, securityholder or incorporator of the Co-Issuers or their respective successors or assigns for any amounts payable under this Note or the Indenture. It is understood that the foregoing shall not (i) prevent recourse to the Collateral for the sums due or to become due under any security, instrument or agreement which is part of the Collateral or (ii) constitute a waiver, release or discharge of any indebtedness or obligation evidenced by this Note or secured by the Indenture until such Collateral has been realized and the proceeds thereof applied as provided in the Indenture, whereupon any outstanding indebtedness or obligation shall be extinguished. It is further understood that the foregoing shall not limit the right of any Person to name any Zohar Obligor as a party defendant in any action or suit or in the exercise of any other remedy under this Note or the Indenture, so long as no judgment in the nature of a deficiency judgment or seeking personal liability shall be asked for or (if obtained) enforced against any such Person or entity. It is also further understood that the foregoing shall not limit the rights of the Trustee and the Holder of this Note or the obligations of the Credit Enhancer under the Credit Enhancement.

All reductions in the principal amount of this (or one or more predecessor Notes) effected by payments of installments of principal made on any Payment Date or Redemption Date shall be binding upon all future Holders hereof and of any Note issued upon the registration of transfer of this Note or in exchange therefor or in lieu thereof, whether or not such payment is noted on this Note.

To the extent that this Note has been paid with proceeds of the Credit Enhancement, this Note shall continue to remain Outstanding for purposes of the Indenture until the Credit Enhancer has been paid as subrogee thereunder or reimbursed under the Credit Enhancement Agreement, and the Credit Enhancer shall be deemed the Holder hereof, to the extent of any payments hereon made by the Credit Enhancer, in accordance with the Indenture (including, without limitation, Section 16.3 thereof).

This Note is a registered Note pursuant to Section 2.4 of the Indenture and is subject to certain transfer restrictions and conditions as provided therein. Title to this Note shall pass solely by registration in the Note Register kept by the Note Registrar. The Co-Issuers, the Trustee, the Collateral Manager, the Class A-1 Note Agent, the Credit Enhancer and any agent of any of them may treat the Person in whose name this Note is registered as the owner of such Note on the Note Register on the applicable Record Date for the purpose of receiving payments of principal of and interest on this Note and for all other purposes whatsoever (whether or not this Note is overdue), subject to the Indenture (including, without limitation, Section 2.7 thereof).

Amounts payable hereunder shall (subject to the subrogation rights of the Credit Enhancer in connection with the Credit Enhancement) be paid to the Person in whose name this Note (or one or more predecessor Notes) is registered in the Note Register at the close of business on the applicable Record Date for such payment, subject to the Indenture (including, without limitation, Section 2.6(f) thereof). Payments hereunder shall be made by wire transfer in immediately available funds to a Dollar account maintained by the Holders in accordance with wire transfer instructions received by any Paying Agent on or before the applicable Record Date or, if no wire transfer instructions are received by a Paying Agent, by a Dollar check drawn on a bank in the United States in accordance with the Indenture.

NY3:#7350184v5

Exhibit A-4 – Form of Regulation S Global Note

CONFIDENTIAL TREATMENT REQUESTED BY BRUNE & RICHARD LLP
ON BEHALF OF PATRIARCH PARTNERS LLC

PP050563

As a condition to the payment of any amount hereunder without the imposition of withholding tax, the applicable Paying Agent shall require certification acceptable to it to enable the Co-Issuers, the Trustee, the Credit Enhancer and such Paying Agent to determine their duties and liabilities with respect to any taxes or other charges that they may be required to pay, deduct or withhold in respect of this Note or the Holder hereof under any present or future law or regulation of the Cayman Islands or the United States or any present or future law or regulation of any political subdivision thereof or taxing authority therein or to comply with any reporting or other requirements under any such law or regulation.

Interests in this Regulation S Global Note may be exchanged for Certificated Notes or an interest in the corresponding Rule 144A Global Note, in each case subject to the restrictions as set forth in the Indenture. This Regulation S Global Note is subject to mandatory exchange for Certificated Notes under the limited circumstances set forth in the Indenture.

Upon redemption, exchange of or increase in any interest represented by this Regulation S Global Note, this Global Note shall be endorsed on Schedule A hereto to reflect the reduction of or increase in the principal amount evidenced hereby.

Unless the certificate of authentication hereon has been executed by the Trustee or by the Authenticating Agent by the manual signature of one of their Authorized Officers, this Note shall not be entitled to any benefit under the Indenture or be valid or obligatory for any purpose.

If an Event of Default shall occur and be continuing, the Notes may become or be declared immediately due and payable in the manner and with the effect provided in the Indenture.

AS PROVIDED IN THE INDENTURE, THE INDENTURE AND THE NOTES SHALL BE CONSTRUED IN ACCORDANCE WITH, AND GOVERNED BY, THE LAWS OF THE STATE OF NEW YORK APPLICABLE TO AGREEMENTS MADE AND TO BE PERFORMED THEREIN WITHOUT REGARD TO CONFLICT OF LAWS PRINCIPLES.

Exhibit A-4 – Form of Regulation S Global Note

NY3:#7350184v5

CONFIDENTIAL TREATMENT REQUESTED BY BRUNE & RICHARD LLP
ON BEHALF OF PATRIARCH PARTNERS LLC

PP050564

IN WITNESS WHEREOF, the Co-Issuers have caused this Note to be duly executed.

ZOHAR II 2005-1, LIMITED

By:_____
  Name:
  Title:

ZOHAR II 2005-1, CORP.

By:_____
  Name:
  Title:

Exhibit A-4 – Form of Regulation S Global Note

NY3:#7350184v5

CONFIDENTIAL TREATMENT REQUESTED BY BRUNE & RICHARD LLP
ON BEHALF OF PATRIARCH PARTNERS LLC

PP050565

## CERTIFICATE OF AUTHENTICATION

This is one of the [Class A-2 floating rate senior secured term notes] [Class A-3 floating rate senior secured delayed drawdown notes][8] referred to in the within-mentioned Indenture.

LASALLE BANK NATIONAL
ASSOCIATION, as Trustee


By:_____
        Authorized Signatory

---

[8] Insert as appropriate.

Exhibit A-4 – Form of Regulation S Global Note

NY1:#7350184v5
CONFIDENTIAL TREATMENT REQUESTED BY BRUNE & RICHARD LLP
ON BEHALF OF PATRIARCH PARTNERS LLC

PP050566

## SCHEDULE A

This Note was initially made in the amount of U.S.$[_____].

The following exchanges, redemptions of or increase in the whole or a part of the Notes represented by this permanent Regulation S Global Note have been made:

| Date exchange/redemption/ increase made | Original principal amount of this permanent Regulation S Global Note | Part of principal amount of this permanent Regulation S Global Note exchanged/redeemed/ increased | Remaining principal amount of this permanent Regulation S Global Note following such exchange/redemption/ increase | Notation made by or on behalf of the Co-Issuers |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

Exhibit A-4 – Form of Regulation S Global Note

NY3-#7350184v5
CONFIDENTIAL TREATMENT REQUESTED BY BRUNE & RICHARD LLP
ON BEHALF OF PATRIARCH PARTNERS LLC

PP050567

# Exhibit A-5

CONFIDENTIAL TREATMENT REQUESTED BY BRUNE & RICHARD LLP
ON BEHALF OF PATRIARCH PARTNERS LLC

EXHIBIT A-5

[FORM OF CLASS B NOTE]

THIS NOTE HAS NOT BEEN AND WILL NOT BE REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED (THE "SECURITIES ACT"), THE SECURITIES LAWS OF ANY STATE OF THE UNITED STATES OR ANY OTHER JURISDICTION, AND THE ISSUER HAS NOT BEEN REGISTERED UNDER THE INVESTMENT COMPANY ACT. NO TRANSFER OR PLEDGE OF THIS NOTE (OR ANY INTEREST HEREIN) MAY BE MADE (AND THE TRUSTEE AND THE NOTE REGISTRAR WILL NOT RECOGNIZE ANY SUCH TRANSFER OR PLEDGE). ACCORDINGLY, AN INVESTOR IN THIS NOTE MUST BE PREPARED TO BEAR THE ECONOMIC RISK OF THE INVESTMENT FOR AN INDEFINITE PERIOD OF TIME.

## ZOHAR II 2005-1, LIMITED

### CLASS B ZERO COUPON SECOND PRIORITY SECURED NOTE DUE 2020

CUSIP # 989772 AA 6                                    [Date]
ISIN # US989772AA65                          Certificate No. B/[____]
                                                      U.S.$[_____]

ZOHAR II 2005-1, LIMITED, an exempted company organized under the laws of the Cayman Islands (the "Issuer"), for value received, hereby promise to pay to [_____] or registered assigns, upon presentation and surrender of this Note (except as otherwise permitted by the Indenture referred to below), the principal sum of [_____] United States Dollars (U.S.$_____) (or such lesser amount as shall equal the aggregate outstanding principal amount of this Class B Note on the Payment Date in January, 2020 (the "Stated Maturity") except as provided below and in said Indenture.

This Note is one of a duly authorized issue of Class B zero coupon second priority secured notes due 2020 (the "Class B Notes") issued and to be issued under an Indenture dated as of January 12, 2005, as supplemented and otherwise modified and in effect from time to time (the "Indenture"), among the Issuer, Zohar II 2005-1, Corp. (the "Co-Issuer"), Zohar II 2005-1, LLC, MBIA Insurance Company (the "Credit Enhancer"), IXIS Financial Products Inc., as agent for the Holders of the Class A-1 Notes (the "Class A-1 Note Agent") and as agent for the Holders of the Class A-3 Notes (the "Class A-3 Note Agent"), and LaSalle Bank National Association, as trustee (in such capacity, the "Trustee"). Capitalized terms used in this Note, but not defined herein, shall have the meanings set forth in the Indenture. Reference is hereby made to the Indenture, all indentures supplemental thereto and all agreements referred to therein for a statement of the respective rights, limitations of rights, duties and immunities thereunder of the Co-Issuers, the Credit Enhancer, the Class A-1 Note Agent, the Class A-3 Note Agent, the Trustee and the Holders of the Notes and the terms upon which the Notes are, and are to be, authenticated and delivered.

This Class B Note may be redeemed, in whole but not in part, in the manner and with the effect provided in the Indenture.

A portion of the principal amount of this Class B Note may be reduced in the circumstances and to the extent provided in the Indenture

The principal of this Class B Note which is payable in accordance with the Priority of Payments on any Payment Date and is punctually paid or duly provided for on such Payment Date shall be paid to

Exhibit A-5 – Form of Class B Note

NY3:#7350443v5
CONFIDENTIAL TREATMENT REQUESTED BY BRUNE & RICHARD LLP
ON BEHALF OF PATRIARCH PARTNERS LLC
PP050569

the Person in whose name this Class B Note (or one or more predecessor Notes) is registered at the close of business on the Record Date with respect to such Payment Date, which Record Date shall be the fifteenth day (whether or not a Business Day) prior to such Payment Date.

The obligations of the Issuer under this Note and the Indenture are limited recourse obligations of the Issuer payable solely from the Collateral as provided in the Indenture. The payments of principal of this Class B Note are subject to the Priority of Payments and are subordinated to the payment of certain other amounts as provided therein and in Section 13.1 of the Indenture.

No recourse shall be had for the payment of any amount owing in respect of this Note against any Officer, member, director, employee, securityholder or incorporator of the Issuer or its respective successors or assigns for any amounts payable under this Note or the Indenture. It is understood that the foregoing shall not (i) prevent recourse to the Collateral for the sums due or to become due under any security, instrument or agreement which is part of the Collateral or (ii) constitute a waiver, release or discharge of any indebtedness or obligation evidenced by this Note or secured by the Indenture until such Collateral has been realized and the proceeds thereof applied as provided in the Indenture, whereupon any outstanding indebtedness or obligation shall be extinguished. It is further understood that the foregoing shall not limit the right of any Person to name any Zohar Obligor as a party defendant in any action or suit or in the exercise of any other remedy under this Note or the Indenture, so long as no judgment in the nature of a deficiency judgment or seeking personal liability shall be asked for or (if obtained) enforced against any such Person or entity.

All reductions in the principal amount of this Class B Note (or one or more predecessor Class B Notes) effected pursuant to Section 7.13 of the Indenture or by payments of installments of principal made on any Payment Date or Redemption Date shall be binding upon all future Holders hereof and of any Class B Note issued upon the registration of transfer of this Class B Note or in exchange therefor or in lieu thereof, whether or not such payment is noted on this Class B Note.

This Class B Note is a registered Note pursuant to Section 2.4 of the Indenture and neither this Note nor any interest herein may be transferred or pledged, and the Trustee and the Note Registrar (if either has actual knowledge thereof) will not recognize any such transfer or pledge. Any purported sale, pledge or other transfer of this Note (or any interest therein) made in violation of the transfer restrictions contained in the Indenture or in this Note, or made based upon any false or inaccurate representation made by the transferee to the Issuer or the Trustee, will be void ab initio and of no force or effect; none of the Issuer, the Trustee or the Note Registrar has any obligation to recognize any sale, pledge or other transfer of this Note (or any interest therein) made in violation of any such transfer restrictions or made based upon any such false or inaccurate representation.

The Issuer, the Trustee, the Collateral Manager, and any agent of any of them may treat the Person in whose name this Note is registered as the owner of such Note on the Note Register on the applicable Record Date for the purpose of receiving payments of principal of and interest on this Note and for all other purposes whatsoever (whether or not this Note is overdue), subject to the Indenture (including, without limitation, Section 2.7 thereof).

Amounts payable hereunder shall be paid to the Person in whose name this Note (or one or more predecessor Notes) is registered in the Note Register at the close of business on the applicable Record Date for such payment, subject to the Indenture (including, without limitation, Section 2.6(f) thereof). Payments hereunder shall be made by wire transfer in immediately available funds to a Dollar account maintained by the Holders in accordance with wire transfer instructions received by any Paying Agent on or before the applicable Record Date or, if no wire transfer instructions are received by a Paying Agent, by a Dollar check drawn on a bank in the United States in accordance with the Indenture.

Exhibit A-5 – Form of Class B Note

NY3:#7350443v5
CONFIDENTIAL TREATMENT REQUESTED BY BRUNE & RICHARD LLP
ON BEHALF OF PATRIARCH PARTNERS LLC

PP050570

As a condition to the payment of any amount hereunder without the imposition of withholding tax, the applicable Paying Agent shall require certification acceptable to it to enable the Issuer, the Trustee, and such Paying Agent to determine their duties and liabilities with respect to any taxes or other charges that they may be required to pay, deduct or withhold in respect of this Note or the Holder hereof under any present or future law or regulation of the Cayman Islands or the United States or any present or future law or regulation of any political subdivision thereof or taxing authority therein or to comply with any reporting or other requirements under any such law or regulation.

Unless the certificate of authentication hereon has been executed by the Trustee or by the Authenticating Agent by the manual signature of one of their Authorized Officers, this Note shall not be entitled to any benefit under the Indenture or be valid or obligatory for any purpose.

If an Event of Default shall occur and be continuing, the Class B Notes may become or be declared due and payable in the manner and with the effect provided in the Indenture.

THIS NOTE SHALL BE CONSTRUED IN ACCORDANCE WITH, AND GOVERNED BY, THE LAWS OF THE STATE OF NEW YORK APPLICABLE TO AGREEMENTS MADE AND TO BE PERFORMED THEREIN WITHOUT REGARD TO THE CONFLICT OF LAWS OR CHOICE OF LAW PRINCIPLES THEREOF.

Exhibit A-5 – Form of Class B Note

NY3:#7350443V5
CONFIDENTIAL TREATMENT REQUESTED BY BRUNE & RICHARD LLP
ON BEHALF OF PATRIARCH PARTNERS LLC

PP050571

IN WITNESS WHEREOF, the Issuer has caused this Note to be duly executed.

ZOHAR II 2005-1, LIMITED.

By:_____
   Name:
   Title:

PP050572

NY3:#7350443v5
CONFIDENTIAL TREATMENT REQUESTED BY BRUNE & RICHARD LLP
ON BEHALF OF PATRIARCH PARTNERS LLC

CERTIFICATE OF AUTHENTICATION

This is one of the Class B zero coupon second priority secured notes referred to in the within-mentioned Indenture.

LASALLE BANK NATIONAL ASSOCIATION, as Trustee

By:_____
        Authorized Signatory

CONFIDENTIAL TREATMENT REQUESTED BY BRUNE & RICHARD LLP
ON BEHALF OF PATRIARCH PARTNERS LLC

PP050573

# Exhibit A-6

CONFIDENTIAL TREATMENT REQUESTED BY BRUNE & RICHARD LLP
ON BEHALF OF PATRIARCH PARTNERS LLC

PP050574

INDEX

EXHIBIT A-6

[FORM OF CLASS C NOTE]

THIS NOTE HAS NOT BEEN AND WILL NOT BE REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED (THE "SECURITIES ACT"), THE SECURITIES LAWS OF ANY STATE OF THE UNITED STATES OR ANY OTHER JURISDICTION, AND THE ISSUER HAS NOT BEEN REGISTERED UNDER THE INVESTMENT COMPANY ACT. NO TRANSFER OR PLEDGE OF THIS NOTE (OR ANY INTEREST HEREIN) MAY BE MADE (AND THE TRUSTEE AND THE NOTE REGISTRAR WILL NOT RECOGNIZE ANY SUCH TRANSFER OR PLEDGE). ACCORDINGLY, AN INVESTOR IN THIS NOTE MUST BE PREPARED TO BEAR THE ECONOMIC RISK OF THE INVESTMENT FOR AN INDEFINITE PERIOD OF TIME.

## ZOHAR II 2005-1, LIMITED

CLASS C ZERO COUPON THIRD PRIORITY SECURED NOTE DUE 2020

[Date]

Certificate No. C/[__]                                                    U.S.$[_____]

ZOHAR II 2005-1, LIMITED, an exempted company organized under the laws of the Cayman Islands (the "Issuer"), for value received, hereby promise to pay to [_____] or registered assigns, upon presentation and surrender of this Note (except as otherwise permitted by the Indenture referred to below), the principal sum of [_____] United States Dollars (U.S.$_____) (or such lesser amount as shall equal the aggregate outstanding principal amount of this Class C Note on the Payment Date in January, 2020 (the "Stated Maturity") except as provided below and in said Indenture.

This Note is one of a duly authorized issue of Class C zero coupon third priority secured notes due 2020 (the "Class C Notes") issued and to be issued under an Indenture dated as of January 12, 2005, as supplemented and otherwise modified and in effect from time to time (the "Indenture"), among the Issuer, Zohar II 2005-1, Corp. (the "Co-Issuer"), Zohar II 2005-1, LLC, MBIA Insurance Company (the "Credit Enhancer"), IXIS Financial Products Inc., as agent for the Holders of the Class A-1 Notes (the "Class A-1 Note Agent") and as agent for the Holders of the Class A-3 Notes (the "Class A-3 Note Agent"), and LaSalle Bank National Association, as trustee (in such capacity, the "Trustee"). Capitalized terms used in this Note, but not defined herein, shall have the meanings set forth in the Indenture. Reference is hereby made to the Indenture, all indentures supplemental thereto and all agreements referred to therein for a statement of the respective rights, limitations of rights, duties and immunities thereunder of the Co-Issuers, the Credit Enhancer, the Class A-1 Note Agent, the Class A-3 Note Agent, the Trustee and the Holders of the Notes and the terms upon which the Notes are, and are to be, authenticated and delivered.

This Class C Note may be redeemed, in whole but not in part, in the manner and with the effect provided in the Indenture.

The principal of this Class C Note which is payable in accordance with the Priority of Payments on any Payment Date and is punctually paid or duly provided for on such Payment Date shall be paid to the Person in whose name this Class C Note (or one or more predecessor Notes) is registered at the close

Exhibit A-6 – Form of Class C Note

NY3:#7350447v5
CONFIDENTIAL TREATMENT REQUESTED BY BRUNE & RICHARD LLP
ON BEHALF OF PATRIARCH PARTNERS LLC

PP050575

of business on the Record Date with respect to such Payment Date, which Record Date shall be the fifteenth day (whether or not a Business Day) prior to such Payment Date.

The obligations of the Issuer under this Note and the Indenture are limited recourse obligations of the Issuer payable solely from the Collateral as provided in the Indenture. The payments of principal of this Class C Note are subject to the Priority of Payments and are subordinated to the payment of certain other amounts as provided therein and in Section 13.1 of the Indenture.

No recourse shall be had for the payment of any amount owing in respect of this Note against any Officer, member, director, employee, securityholder or incorporator of the Issuer or its respective successors or assigns for any amounts payable under this Note or the Indenture. It is understood that the foregoing shall not (i) prevent recourse to the Collateral for the sums due or to become due under any security, instrument or agreement which is part of the Collateral or (ii) constitute a waiver, release or discharge of any indebtedness or obligation evidenced by this Note or secured by the Indenture until such Collateral has been realized and the proceeds thereof applied as provided in the Indenture, whereupon any outstanding indebtedness or obligation shall be extinguished. It is further understood that the foregoing shall not limit the right of any Person to name any Zohar Obligor as a party defendant in any action or suit or in the exercise of any other remedy under this Note or the Indenture, so long as no judgment in the nature of a deficiency judgment or seeking personal liability shall be asked for or (if obtained) enforced against any such Person or entity.

All reductions in the principal amount of this Class C Note (or one or more predecessor Class C Notes) effected by payments of installments of principal made on any Payment Date or Redemption Date shall be binding upon all future Holders hereof and of any Class C Note issued upon the registration of transfer of this Class C Note or in exchange therefor or in lieu thereof, whether or not such payment is noted on this Class C Note.

This Class C Note is a registered Note pursuant to Section 2.4 of the Indenture, neither this Note nor any interest herein may be transferred or pledged, and the Trustee and the Note Registrar (if either has actual knowledge thereof) will not recognize any such transfer or pledge. Any purported sale, pledge or other transfer of this Note (or any interest therein) made in violation of the transfer restrictions contained in the Indenture or in this Note, or made based upon any false or inaccurate representation made by the transferee to the Issuer or the Trustee, will be void ab initio and of no force or effect; none of the Issuer, the Trustee or the Note Registrar has any obligation to recognize any sale, pledge or other transfer of this Note (or any interest therein) made in violation of any such transfer restrictions or made based upon any such false or inaccurate representation.

The Issuer, the Trustee, the Collateral Manager, and any agent of any of them may treat the Person in whose name this Note is registered as the owner of such Note on the Note Register on the applicable Record Date for the purpose of receiving payments of principal of and interest on this Note and for all other purposes whatsoever (whether or not this Note is overdue), subject to the Indenture (including, without limitation, Section 2.7 thereof).

Amounts payable hereunder shall be paid to the Person in whose name this Note (or one or more predecessor Notes) is registered in the Note Register at the close of business on the applicable Record Date for such payment, subject to the Indenture (including, without limitation, Section 2.6(f) thereof). Payments hereunder shall be made by wire transfer in immediately available funds to a Dollar account maintained by the Holders in accordance with wire transfer instructions received by any Paying Agent on or before the applicable Record Date or, if no wire transfer instructions are received by a Paying Agent, by a Dollar check drawn on a bank in the United States in accordance with the Indenture.

NY3:#7350447v5

CONFIDENTIAL TREATMENT REQUESTED BY BRUNE & RICHARD LLP
ON BEHALF OF PATRIARCH PARTNERS LLC

Exhibit A-6 – Form of Class C Note

PP050576

As a condition to the payment of any amount hereunder without the imposition of withholding tax, the applicable Paying Agent shall require certification acceptable to it to enable the Issuer, the Trustee, and such Paying Agent to determine their duties and liabilities with respect to any taxes or other charges that they may be required to pay, deduct or withhold in respect of this Note or the Holder hereof under any present or future law or regulation of the Cayman Islands or the United States or any present or future law or regulation of any political subdivision thereof or taxing authority therein or to comply with any reporting or other requirements under any such law or regulation.

Unless the certificate of authentication hereon has been executed by the Trustee or by the Authenticating Agent by the manual signature of one of their Authorized Officers, this Note shall not be entitled to any benefit under the Indenture or be valid or obligatory for any purpose.

If an Event of Default shall occur and be continuing, the Class C Notes may become or be declared due and payable in the manner and with the effect provided in the Indenture.

THIS NOTE SHALL BE CONSTRUED IN ACCORDANCE WITH, AND GOVERNED BY, THE LAWS OF THE STATE OF NEW YORK APPLICABLE TO AGREEMENTS MADE AND TO BE PERFORMED THEREIN WITHOUT REGARD TO THE CONFLICT OF LAWS OR CHOICE OF LAW PRINCIPLES THEREOF.

NY3:#7350447v5
CONFIDENTIAL TREATMENT REQUESTED BY BRUNE & RICHARD LLP
ON BEHALF OF PATRIARCH PARTNERS LLC

IN WITNESS WHEREOF, the Issuer has caused this Note to be duly executed.

ZOHAR II 2005-1, LIMITED.

By:_____
    Name:
    Title:

NY3:#7350447v5
CONFIDENTIAL TREATMENT REQUESTED BY BRUNE & RICHARD LLP
ON BEHALF OF PATRIARCH PARTNERS LLC

Exhibit A-6 – Form of Class C Note

PP050578

CERTIFICATE OF AUTHENTICATION

This is one of the Class C zero coupon third priority secured notes referred to in the within-mentioned Indenture.

LASALLE BANK NATIONAL ASSOCIATION, as Trustee

By:_____
        Authorized Signatory

NY3:#7350447v5
CONFIDENTIAL TREATMENT REQUESTED BY BRUNE & RICHARD LLP
ON BEHALF OF PATRIARCH PARTNERS LLC

PP050579

## ASSIGNMENT FORM

For value received_____

hereby sells, assigns and transfers unto

_____

_____
Please insert social security or
other identifying number of assignee

Please print or type name and address,
including zip code, of assignee:

_____

_____

_____

_____

the within Note and does hereby irrevocably constitute and appoint _____ Attorney to transfer the
Note on the books of the Issuer with full power of substitution in the premises.

Date:_____          Your Signature:_____
                                                              (Sign exactly as your name appears on the Note)

Exhibit A-6 – Form of Class C Note

NY3:#7350447v5
CONFIDENTIAL TREATMENT REQUESTED BY BRUNE & RICHARD LLP
ON BEHALF OF PATRIARCH PARTNERS LLC                                                PP050580

INDEX

# Exhibit B-1

CONFIDENTIAL TREATMENT REQUESTED BY BRUNE & RICHARD LLP
ON BEHALF OF PATRIARCH PARTNERS LLC

PP050581

EXHIBIT B-1

FORM OF CLASS A NOTE CERTIFICATE

Zohar II 2005-1, Limited
Zohar II 2005-1, Corp.
c/o Maples Finance Limited
P.O. Box 1093GT
Queensgate House
South Church Street
George Town
Grand Cayman, Cayman Islands

LaSalle Bank National Association,
as Trustee
135 South LaSalle Street, Suite 1625
Chicago, IL 60603
Attention: CDO Trust Services Group
Reference: Zohar II 2005-1, Limited

Re:     [Class A-1 floating rate senior secured revolving notes due 2017] [Class A-2 floating rate senior secured term notes due 2017] [Class A-3 floating rate senior secured delayed drawdown notes due 2017][1] (the "Notes")

Reference is hereby made to the Indenture dated as of January 12, 2005 (the "Indenture") among Zohar II 2005-1, Limited, Zohar II 2005-1, Corp., Zohar II 2005-1, LLC, MBIA Insurance Company, IXIS Financial Products Inc. and LaSalle Bank National Association, as Trustee. Capitalized terms used but not defined herein shall have the meanings given to them in the Indenture.

This letter relates to U.S.$_____ principal amount of Class [A-1][A-2 ] [A-3][2] Notes registered in the name of [insert name of transferor] (the "Transferor"). The Transferor has requested a transfer of such Class A Notes for Class A Notes registered in the name of [insert name of transferee] (the "Transferee"). Delivered herewith is a transferee certification completed by the Transferee.

In connection with such request, and in respect of such Notes, the Transferor does hereby certify that such Notes are being transferred (i) in accordance with the transfer restrictions set forth in the Indenture and the Notes and (ii) (A) under Rule 144A ("Rule 144A") of the U.S. Securities Act of 1933, as amended (the "Securities Act") to a Transferee that the Transferor reasonably believes is a "qualified institutional buyer" (within the meaning of Rule 144A) (a "Qualified Institutional Buyer") that is acquiring such Notes in a transaction meeting the requirements of Rule 144A, so long as such Notes are eligible for resale pursuant to Rule 144A in accordance with Rule 144A, purchasing for its own account or (ii)(B) to an institutional "accredited investor" within the meaning of Rule 501(a)(1), (2), (3) or (7) under the Securities Act, and who, in the case of (ii)(A) or (ii)(B), is also a "Qualified Purchaser" as defined in Section 2(a)(51) of the Investment Company Act of 1940, as amended (the "Investment Company Act"), or

---

[1] Insert as appropriate.
[2] Insert as appropriate.

NY3:#7350451v6
CONFIDENTIAL TREATMENT REQUESTED BY BRUNE & RICHARD LLP
ON BEHALF OF PATRIARCH PARTNERS LLC

Exhibit B-1 – Form of Class A Note Certificate
PP050582

(C) to a non-"U.S. person" in an "offshore transaction" in accordance with Rule 903 or Rule 904 (as applicable) of Regulation S under the Securities Act and who is not a U.S. resident within the meaning of the Investment Company Act or (D) pursuant to another available exemption from the requirements of the Securities Act, provided that the Co-Issuers or the Trustee may require the delivery of an opinion of counsel, certification and/or other information satisfactory to them as to any transfer pursuant to this clause (D), and (iii) any applicable securities laws of any state of the United States or any other jurisdiction.

This certificate and the statements contained herein are made for your benefit.

[INSERT NAME OF TRANSFEROR]

By:_____
   Name:
   Title:

Dated: _____, _____

NY3:#7350451v6
CONFIDENTIAL TREATMENT REQUESTED BY BRUNE & RICHARD LLP
ON BEHALF OF PATRIARCH PARTNERS LLC

PP050583

FORM OF TRANSFEREE CERTIFICATION

Zohar II 2005-1, Limited
Zohar II 2005-1, Corp.
c/o Maples Finance Limited
P.O. Box 1093GT
Queensgate House
South Church Street
George Town
Grand Cayman, Cayman Islands

LaSalle Bank National Association,
as Trustee
135 South LaSalle Street, Suite 1625
Chicago, IL 60603
Attention: CDO Trust Services Group
Reference: Zohar II 2005-1, Limited

    The undersigned (the "Transferee") intends to purchase U.S.$_____ principal amount of Class [A-1][A-2 ] [A-3][3] Notes (the "Notes") issued by Zohar II 2005-1, Limited (the "Issuer") and Zohar II 2005-1, Corp. (the "Co–Issuer" and, together with the Issuer, the "Co–Issuers") from the Transferor named in the Transfer Certificate to which this Transferee Certification is attached. In connection with the registration of the transfer of such Notes, the Transferee hereby executes and delivers to each of you this Transferee Certification in which the Transferee certifies to each of you the information set forth herein. Capitalized terms used but not defined herein shall have the meanings set forth in the Indenture.

A. **General Information**

1. Print Full Name of Transferee:   _____

2. Name in which Notes should be registered:   _____

3. Address and Contact Person for Notices:   _____
              _____
              _____
              _____
              _____

4. Telephone Number:   _____

---

[3] Insert as appropriate.

1    Exhibit B-1 – Form of Class A Note Certificate

NY3:#7350451V6
CONFIDENTIAL TREATMENT REQUESTED BY BRUNE & RICHARD LLP
ON BEHALF OF PATRIARCH PARTNERS LLC

PP050584

5. Telecopier Number: _____

6. Permanent Address (if
 different than above): _____
           _____
           _____
           _____

7. U.S. Taxpayer
 Identification or Social
 Security Number (if any): _____

8. Payment Instructions: _____
           _____
           _____
           _____

9. Instructions for delivery
 of Notes: _____
      _____
      _____
      _____

B. **Status**

  1.  The Transferee has received copies of the Transaction Documents and all other relevant information as it shall have deemed necessary or desirable in order to make its investment decision.

  2. The Transferee understands that the Notes are being offered only in a transaction not involving any public offering in the United States within the meaning of the Securities Act, has not been and will not be registered under the Securities Act, and may be re-offered, resold, pledged, or otherwise transferred only (i) in compliance with the certification and other requirements set forth in the Indenture and (ii) in accordance with any applicable securities laws of any state of the United States or any other jurisdiction.

  3. The Transferee is either (i) a "qualified institutional buyer" (within the meaning of Rule 144A) (a "Qualified Institutional Buyer") that is acquiring the Notes in a transaction meeting the requirements of Rule 144A, so long as such Notes are eligible for resale pursuant to Rule 144A in accordance with Rule 144A, purchasing for its own account or (ii) a non-U.S. Person and is acquiring the Note in an Offshore Transaction in accordance with Rule 903 or Rule 904 (as applicable) of Regulation S under the Securities Act.

2   Exhibit B-1 – Form of Class A Note Certificate

NY3:#7350451v6
CONFIDENTIAL TREATMENT REQUESTED BY BRUNE & RICHARD LLP
ON BEHALF OF PATRIARCH PARTNERS LLC

PP050585

4.    The Transferee (i) has such knowledge and experience in financial and business matters that it is capable of evaluating the merits and risks (including for tax, legal, regulatory, accounting and other financial purposes) of its prospective investment in the Notes, (ii) is financially able to bear such risk, (iii) in making such investment is not relying on the advice or recommendations of the Placement Agent, the Issuer, the Collateral Manager or any of their respective Affiliates (or any representative of any of the foregoing) and (iv) has determined that an investment in the Notes is suitable and appropriate for it. The Transferee has had access to such financial and other information concerning the Zohar Obligors and the Notes as it has deemed necessary to make its own independent decision to purchase the Notes, to ask questions and receive answers concerning the Zohar Obligors and the terms and conditions of the offering of the Notes, and the Transferee is not relying on any representations or warranties relating to the Notes or the transactions contemplated hereby and by the other Transaction Documents (other than any representations or warranties made to or for the benefit of the Transferee set forth in the Transaction Documents).

5.    The Transferee understands that there is no market for the Notes and that no assurance can be given as to the liquidity of any trading market for the Notes. It further understands that, although the Placement Agent may from time to time make a market in the Notes, the Placement Agent is under no obligation to do so and, following the commencement of any market-making, may discontinue the same at any time.

6.    The Transferee is (i) a Qualified Purchaser that is not a natural person, (ii) a company each of whose beneficial owners is a Qualified Purchaser or (iii) a Person that is not a U.S. resident within the meaning of the Investment Company Act. The Transferee agrees that no sale, pledge (other than a Qualified Securitization Pledge) or other transfer of the Notes (or any portion thereof) may be made unless such transfer is made to a transferee that is a Qualified Purchaser that is not a natural person or to a transferee each of whose beneficial owners is a Qualified Purchaser or to a Person that is not a U.S. resident within the meaning of the Investment Company Act.

7.    The Transferee agrees to certify whether or not it is, or is acting on behalf of, an employee benefit plan within the meaning of Section 3(3) of ERISA and/or a plan within the meaning of Section 4975 of the Code or an entity which is deemed to hold the assets of any such employee benefit plan or plan pursuant to 29 C.F.R. § 2510.3-101 or otherwise, which employee benefit plan or plan or entity is subject to Title I of ERISA and/or Section 4975 of the Code or any substantially similar federal, state or local law (each, a "Plan"). If the Transferee is, or is acting on behalf of, a Plan, the Transferee represents and warrants that its purchase, ownership and disposition of the Notes will not result in a "prohibited transaction" under Section 406 of ERISA or Section 4975 of the Code (or, in the case of a governmental or church Plan, under any similar federal, state or local law) for which an exemption is not available. In addition, if the Transferee is, or is acting on behalf of, a Plan subject to ERISA, the fiduciaries of such Plan represent and warrant that they have been informed of and understand the Issuer's investment objectives, policies and strategies and that the decision to invest such Plan's assets in the Notes was made with appropriate consideration of relevant investment factors with regard to such Plan and is consistent with the duties and responsibilities imposed upon fiduciaries with regard to their investment decisions under ERISA.

8.    The Transferee, if a U.S. resident (within the meaning of the Investment Company Act), represents that, unless the Transferee is a Qualifying Investment Vehicle, (i) if the Transferee would be an investment company but for the exceptions in Section 3(c)(1) or 3(c)(7) of the Investment Company Act, the amount of the Transferee's investment in the Notes does not

3

NY3:#7350451v6
CONFIDENTIAL TREATMENT REQUESTED BY BRUNE & RICHARD LLP
ON BEHALF OF PATRIARCH PARTNERS LLC

PP050586

exceed 40% of the total assets (determined on a consolidated basis with its subsidiaries) of the Transferee; (ii) no person owning any equity or similar interest in the Transferee exercises control, on an investment-by-investment basis, over the amount of such person's contribution to any investment made by the Transferee; and (iii) the Transferee was not organized or reorganized for the specific purpose of acquiring the Notes.

9.      The Transferee agrees that (i) any sale, pledge or other transfer of the Notes (or any portion thereof) made in violation of the transfer restrictions contained in the Indenture, or made based upon any false or inaccurate representation made by the Transferee or a transferee to the Co-Issuers or the Trustee, will be void ab initio and of no force or effect and (ii) none of the Issuer, the Co-Issuer, the Trustee or the Note Registrar has any obligation to recognize any sale, pledge or other transfer of the Notes (or any interest therein) made in violation of any such transfer restriction or made based upon any such false or inaccurate representation.

10.     The Transferee acknowledges that the Issuer, the Co-Issuer, the Collateral Manager, the Placement Agent and others will rely upon the truth and accuracy of the foregoing acknowledgments, representations and agreements and agrees that, if any of the acknowledgments, representations or warranties made or deemed to have been made by it in connection with its purchase of the Note are no longer accurate, the Transferee will promptly notify the Issuer and the Placement Agent.

11.     If the Transferee is not a United States Person (as defined in the Indenture), it represents either that (A) it has attached an executed and duly completed Form W-8BEN and a statement that the beneficial owner of such Note is not a bank within the meaning of the Code Section 881(c)(3)(A), a 10% shareholder within the meaning of Section 881(c)(3)(B) or a controlled foreign corporation within the meaning of Section 881(c)(3)(C); (B) it has attached an executed and duly completed Form W-8ECI; or (C) it has attached an executed and duly completed Form W-8BEN entitling such purchaser to a complete exemption from withholding tax on interest and principal payments in respect of such Note under an applicable tax treaty with the United States.

12.     The Transferee is not a member of the public of the Cayman Islands.

13.     The purchase of the Notes by the Transferee do not violate or conflict with any law, rule or regulation applicable to the Transferee, any provision of the organizational documents of the Transferee, any order or judgment of any court or other governmental authority applicable to the Transferee, any of the Transferee's assets or any contractual restriction binding on or affecting the Transferee or any of such assets.

14.     [The Transferee acknowledges that to the extent the Note is being transferred prior to the date upon which the Class A-1 Commitment in respect of such Note has expired, terminated or been reduced to zero, the Transferee has entered into a Class A-1 Note Purchase Agreement in respect of such Note.][4][The Transferee acknowledges that to the extent the Note is being transferred prior to the date upon which the Class A-3 Commitment in respect of such Note has expired, terminated or been reduced to zero, the Transferee has entered into a Class A-3 Note Purchase Agreement in respect of such Note.][5]

15.     Notwithstanding anything else contained herein or in any other Transaction Document, the Transferee hereby acknowledges and agrees that (i) the Issuer has purchased the assets

---

[4] Insert for transferee certifications with respect to Class A-1 Notes.
[5] Insert for transferee certifications with respect to Class A-3 Notes.

CONFIDENTIAL TREATMENT REQUESTED BY BRUNE & RICHARD LLP
ON BEHALF OF PATRIARCH PARTNERS LLC
PP050587

designated as the "Zohar I Assets" set forth in Schedule A-1 of the Indenture from Zohar CDO 2003-1, Limited (an Affiliate of Patriarch Partners) with proceeds of Warehouse Advances, and the Transferee hereby consents to such acquisitions at such prices and waives any and all conflicts of interest relating thereto, and (ii) the Issuer and/or the Zohar Subsidiary shall purchase (on or about the Funding Date) the assets set forth in Schedule A-2 of the Indenture from Ark CLO 2000-1, Limited and/or Ark CLO 2000-1, LLC (each an Affiliate of Patriarch Partners) at the prices (including without limitation pursuant to the pricing methodology set forth in Schedule A-2 of the Indenture), and the Transferee hereby consents to such acquisitions at such prices (including without limitation pursuant to the pricing methodology set forth in Schedule A-2 of the Indenture) and waives any and all conflicts of interest relating thereto. The above described purchases and sales have been or will be, as applicable, made between the Issuer, on the one hand, and Affiliates of the Issuer, on the other hand, and as such additional disclosure about the actual and potential conflicts of interest and the valuation methodology used to determine the process for such purchases and sales are more fully described in Schedule A-1 of the Indenture and Schedule A-2 of the Indenture, as applicable.

Exhibit B-1 – Form of Class A Note Certificate

NY3:#7350451v6
CONFIDENTIAL TREATMENT REQUESTED BY BRUNE & RICHARD LLP
ON BEHALF OF PATRIARCH PARTNERS LLC

PP050588

Respondents' Exhibit 8    pg. 330 of 447

The Transferee understands that the foregoing acknowledgments, representations and agreements will be relied upon by the Trustee, the Collateral Manager, and the Co-Issuers for the purpose determining the eligibility of the Transferee to purchase Notes of the Co-Issuers. The Transferee agrees to provide, if requested, any additional information that may be required to substantiate the Transferee's status as a Qualified Institutional Buyer or as a Qualified Purchaser or as an institutional Accredited Investor or to otherwise determine the eligibility of the Transferee to purchase Notes of the Co-Issuers.

Signatures:

_____
(Name of Entity)

By: _____
(Signature)

_____
(Print Name and Title)

Date: _____

6

Exhibit B-1 – Form of Class A Note Certificate

NY3:#7350451V6
CONFIDENTIAL TREATMENT REQUESTED BY BRUNE & RICHARD LLP
ON BEHALF OF PATRIARCH PARTNERS LLC

PP050589

# Exhibit B-2

CONFIDENTIAL TREATMENT REQUESTED BY BRUNE & RICHARD LLP
ON BEHALF OF PATRIARCH PARTNERS LLC

PP050590

EXHIBIT B-2

Form of Certificate for Transfer or Exchange of
Rule 144A Global Note
to Temporary Regulation S Global Note or Regulation S Global Note

Zohar II 2005-1, Limited
c/o Maples Finance Limited
P.O. Box 1093GT
Queensgate House
South Church Street
George Town
Grand Cayman, Cayman Islands

LaSalle Bank National Association,
as Trustee
135 South LaSalle Street, Suite 1625
Chicago, IL 60603
Attention: CDO Trust Services Group
Reference: Zohar II 2005-1, Limited

Re:     [Class A-2 Senior Secured Term Notes due January [●], 2017 ("Class A-2
        Notes")] [Class A-3 Senior Secured Delayed Drawdown Notes due January [●],
        2017 ("Class A-3 Notes")][1]

Ladies and Gentlemen:

        Reference is made to the Indenture dated as of January 12, 2005 (as
supplemented and otherwise modified and in effect from time to time, the "Indenture"),
among the Zohar II 2005-1 Limited (the "Issuer"), Zohar II 2005-1, Corp. (the "Co-
Issuer"), Zohar II 2005-1, LLC (the "Zohar Subsidiary"), MBIA Insurance Company (the
"Credit Enhancer"), IXIS Financial Products Inc., as agent for the Holders of the Class A-
1 Notes (together with any successors in such capacity, the "Class A-1 Note Agent") and
as agent for the Holders of the Class A-3 Notes (together with any successors in such
capacity, the "Class A-3 Note Agent"), and LaSalle Bank National Association, as trustee
(in such capacity, the "Trustee"). All capitalized terms used but not defined herein are
used as defined in the Indenture.

        This letter relates to U.S.$_____ principal amount of Class [A-2]
[A-3][2] Notes (the "Notes") that are held in the form of a beneficial interest in a Rule
144A Global Note in the name of _____ (the "Holder") through the Depository.
[The Holder has requested a transfer of such beneficial interest in a Rule 144A Global
Note for a beneficial interest in a Regulation S Global Note to be held in the name of

_____

[1] Insert as appropriate.
[2] Insert as appropriate.

Exhibit B-2 – Form of Certificate of Transfer or Exchange
of Rule 144A Global Note to Temporary Regulation S Global Note
or Regulation S Global Note

NY3:#7350188v5
CONFIDENTIAL TREATMENT REQUESTED BY BRUNE & RICHARD LLP
ON BEHALF OF PATRIARCH PARTNERS LLC

PP050591

_____ (the "Transferee") through [Euroclear][Clearstream], which in turn will hold through the Depository.][3] [The Holder has requested an exchange of such beneficial interest in a Rule 144A Global Note for a beneficial interest in a Regulation S Global Note to be held in the name of the Holder through [Euroclear][Clearstream], which in turn will hold through the Depository.][4]

In connection with such request, the Holder does hereby certify that (1) the [transfer][exchange][5] of the beneficial interest in the Notes has been made in compliance with the transfer restrictions applicable to the Global Notes; [and] (2) the [Holder][Transferee][6] is not a U.S. person as defined in Regulation S under the Securities Act[; and (3) such transfer has been made pursuant to and in accordance with Regulation S].[7]

This certificate and the statements contained herein are made for your benefit.

[INSERT NAME OF HOLDER]

By:_____
    Name:
    Title:

Dated: _____

---

[3] Insert for transfers.
[4] Insert for exchanges.
[5] Insert as appropriate.
[6] Insert as appropriate.
[7] Insert for transfers.

Exhibit B-2 – Form of Certificate of Transfer or Exchange
of Rule 144A Global Note to Temporary Regulation S Global Note
or Regulation S Global Note

NY3:#7350188v5
CONFIDENTIAL TREATMENT REQUESTED BY BRUNE & RICHARD LLP
ON BEHALF OF PATRIARCH PARTNERS LLC

PP050592

# Exhibit B-3

CONFIDENTIAL TREATMENT REQUESTED BY BRUNE & RICHARD LLP
ON BEHALF OF PATRIARCH PARTNERS LLC

PP050593

EXHIBIT B-3

Form of Certificate for Transfer or Exchange of
Temporary Regulation S Global Note or Regulation S Global Note
to Rule 144A Global Note

Zohar II 2005-1, Limited
c/o Maples Finance Limited
P.O. Box 1093GT
Queensgate House
South Church Street
George Town
Grand Cayman, Cayman Islands

LaSalle Bank National Association,
as Trustee
135 South LaSalle Street, Suite 1625
Chicago, IL 60603
Attention: CDO Trust Services Group
Reference: Zohar II 2005-1, Limited

Re:    [Class A-2 Senior Secured Term Notes due January [●], 2017 ("Class A-2
       Notes")] [Class A-3 Senior Secured Delayed Drawdown Notes due January [●],
       2017 ("Class A-3 Notes")][1]

Ladies and Gentlemen:

        Reference is made to the Indenture dated as of January 12, 2005 (as
supplemented and otherwise modified and in effect from time to time, the "Indenture"),
among the Zohar II 2005-1 Limited (the "Issuer"), Zohar II 2005-1, Corp. (the "Co-
Issuer"), Zohar II 2005-1, LLC (the "Zohar Subsidiary"), MBIA Insurance Company (the
"Credit Enhancer"), IXIS Financial Products Inc., as agent for the Holders of the Class A-
1 Notes (together with any successors in such capacity, the "Class A-1 Note Agent") and
as agent for the Holders of the Class A-3 Notes (together with any successors in such
capacity, the "Class A-3 Note Agent"), and LaSalle Bank National Association, as trustee
(in such capacity, the "Trustee"). All capitalized terms used but not defined herein are
used as defined in the Indenture.

        This letter relates to U.S.$_____ principal amount of Class [A-2]
[A-3][2] Notes (the "Notes") that are held in the form of a beneficial interest in a
Regulation S Global Note in the name of _____ (the "Holder") through
[Euroclear][Clearstream], which in turn holds through the Depository. [The Holder has
requested a transfer of such beneficial interest in a Regulation S Global Note for a

---

[1] Insert as appropriate.
[2] Insert as appropriate.

Exhibit B-3 – Form of Certificate of Transfer or Exchange
of Temporary Regulation S Global Note or Regulation S Global Note
to Rule 144A Global Note

NY3:#7350187v4
CONFIDENTIAL TREATMENT REQUESTED BY BRUNE & RICHARD LLP
ON BEHALF OF PATRIARCH PARTNERS LLC

PP050594

beneficial interest in a Rule 144A Global Note to be held in the name of _____ (the "Transferee") through the Depository.][3]  [The Holder has requested an exchange of such beneficial interest in a Regulation S Global Note for a beneficial interest in a Rule 144A Global Note to be held in the name of the Holder through the Depository.][4]

      In connection with such request, the Holder does hereby certify that the [Holder is a Qualified Institutional Buyer that is also a Qualified Purchaser.][5] [Holder reasonably believes that the Transferee is a Qualified Institutional Buyer, is obtaining such beneficial interest in a transaction meeting the requirements of Rule 144A and in accordance with any applicable securities laws of any state of the United States or any other jurisdiction, and is also a Qualified Purchaser.][6]

      This certificate and the statements contained herein are made for your benefit.

                [INSERT NAME OF HOLDER]

                By:_____
                    Name:
                    Title:

Dated: _____

---

[3] Insert for transfers.
[4] Insert for exchanges.
[5] Insert for exchanges.
[6] Insert for transfers.

Exhibit B-3 – Form of Certificate of Transfer or Exchange
of Temporary Regulation S Global Note or Regulation S Global Note
to Rule 144A Global Note

NY3:#7350187v4
CONFIDENTIAL TREATMENT REQUESTED BY BRUNE & RICHARD LLP
ON BEHALF OF PATRIARCH PARTNERS LLC

PP050595

# Exhibit B-4

CONFIDENTIAL TREATMENT REQUESTED BY BRUNE & RICHARD LLP
ON BEHALF OF PATRIARCH PARTNERS LLC

EXHIBIT B-4

Form of QIB/QP Certification

Zohar II 2005-1, Limited
c/o Maples Finance Limited
P.O. Box 1093GT
Queensgate House
South Church Street
George Town
Grand Cayman, Cayman Islands

LaSalle Bank National Association,
as Trustee
135 South LaSalle Street, Suite 1625
Chicago, IL 60603
Attention: CDO Trust Services Group
Reference: Zohar II 2005-1, Limited

Re:   [Class A-2 Senior Secured Term Notes due January [●], 2017 ("Class A-2
      Notes")] [Class A-3 Senior Secured Delayed Drawdown Notes due January [●],
      2017 ("Class A-3 Notes")][1]

Ladies and Gentlemen:

      Reference is made to the Indenture dated as of January 12, 2005 (as
supplemented and otherwise modified and in effect from time to time, the "Indenture"),
among the Zohar II 2005-1 Limited (the "Issuer"), Zohar II 2005-1, Corp. (the "Co-
Issuer"), Zohar II 2005-1, LLC (the "Zohar Subsidiary"), MBIA Insurance Corporation
(the "Credit Enhancer"), IXIS Financial Products Inc., as agent for the Holders of the
Class A-1 Notes (together with any successors in such capacity, the "Class A-1 Note
Agent") and as agent for the Holders of the Class A-3 Notes (together with any
successors in such capacity, the "Class A-3 Note Agent"), and LaSalle Bank National
Association, as trustee (in such capacity, the "Trustee"). All capitalized terms used but
not defined herein are used as defined in the Indenture.

      In connection with the undersigned's (the "Transferee") purchase of Class
[A-2] [A-3][2] Notes, as set forth below, the undersigned hereby represents, acknowledges
and agrees as follows:

      It is a "qualified institutional buyer" as defined in Rule 144A under the
Securities Act of 1933, as amended, and is acquiring the Class [A-2] [A-3][3] Notes in
reliance on the exemption from Securities Act registration provided by Rule 144A

---

[1] Insert as appropriate.
[2] Insert as appropriate.
[3] Insert as appropriate.

NY3:#7350189v5
CONFIDENTIAL TREATMENT REQUESTED BY BRUNE & RICHARD LLP
ON BEHALF OF PATRIARCH PARTNERS LLC

PP050597

thereunder and it is also a "qualified purchaser" for purposes of Section 3(c)(7) of the Investment Company Act of 1940, as amended.

Name of Purchaser:_____     Dated:_____

By:_____
    Name:
    Title:

Aggregate principal amount of:

[Class A-2 Notes:    $_____]

[Class A-3 Notes:    $_____][4]

---

[4] Insert as appropriate.

Exhibit B-4 – QIB/QP Certification

NY3:#7350189v5
CONFIDENTIAL TREATMENT REQUESTED BY BRUNE & RICHARD LLP
ON BEHALF OF PATRIARCH PARTNERS LLC

PP050598

# Exhibit B-5

CONFIDENTIAL TREATMENT REQUESTED BY BRUNE & RICHARD LLP
ON BEHALF OF PATRIARCH PARTNERS LLC

PP050599

EXHIBIT B-5

<u>Form of Regulation S Transferee Certification</u>

Zohar II 2005-1, Limited
c/o Maples Finance Limited
P.O. Box 1093GT
Queensgate House
South Church Street
George Town
Grand Cayman, Cayman Islands

LaSalle Bank National Association,
as Trustee
135 South LaSalle Street, Suite 1625
Chicago, IL 60603
Attention: CDO Trust Services Group
Reference: Zohar II 2005-1, Limited

Re:  [Class A-2 Senior Secured Term Notes due January [•], 2017 ("<u>Class A-2</u>
     <u>Notes</u>")] [Class A-3 Senior Secured Delayed Drawdown Notes due January [•],
     2017 ("<u>Class A-3 Notes</u>")][1]

Ladies and Gentlemen:

      Reference is made to the Indenture dated as of January 12, 2005 (as
supplemented and otherwise modified and in effect from time to time, the "Indenture"),
among the Zohar II 2005-1 Limited (the "<u>Issuer</u>"), Zohar II 2005-1, Corp. (the "<u>Co-
Issuer</u>"), Zohar II 2005-1, LLC (the "<u>Zohar Subsidiary</u>"), MBIA Insurance Company (the
"<u>Credit Enhancer</u>"), IXIS Financial Products Inc., as agent for the Holders of the Class A-
1 Notes (together with any successors in such capacity, the "<u>Class A-1 Note Agent</u>") and
as agent for the Holders of the Class A-3 Notes (together with any successors in such
capacity, the "<u>Class A-3 Note Agent</u>"), and LaSalle Bank National Association, as trustee
(in such capacity, the "<u>Trustee</u>").  All capitalized terms used but not defined herein are
used as defined in the Indenture.

      In connection with the undersigned's (the "<u>Transferee</u>") purchase of Class
[A-2] [A-3][2] Notes, as set forth below, the undersigned hereby represents, acknowledges
and agrees as follows:

      It (a) is not a U.S. Person, (b) is aware that the sale of Class [A-2] [A-3][3]
Notes to it is being made in reliance on an exemption from the registration requirements
of the Securities Act provided by Regulation S under the Securities Act, as amended, (c)

---

[1] Insert as appropriate.
[2] Insert as appropriate.
[3] Insert as appropriate.

Exhibit B-5 – Form of Regulation S Transferee Certification

NY3:#7350190v4
CONFIDENTIAL TREATMENT REQUESTED BY BRUNE & RICHARD LLP
ON BEHALF OF PATRIARCH PARTNERS LLC

PP050600

is acquiring such Class [A-2] [A-3][4] Notes for its own account and (d) is not purchasing the Class [A-2] [A-3][5] Notes with a view to the resale, distribution or other disposition thereof to a U.S. Person or in the United States.

All certifications, representations and warranties made by the Transferee above are made both as of the date of this letter and as of the date on which it acquires the Class [A-2] [A-3][6] Notes.

Name of Purchaser:_____        Dated:_____

By:_____
   Name:
   Title:

Aggregate principal amount of:

[Class A-2 Notes:        $_____]

[Class A-3 Notes:        $_____][7]

---

[4] Insert as appropriate.
[5] Insert as appropriate.
[6] Insert as appropriate.
[7] Insert as appropriate.

Exhibit B-5 – Form of Regulation S Transferee Certification

NY3:#7350190v4
CONFIDENTIAL TREATMENT REQUESTED BY BRUNE & RICHARD LLP
ON BEHALF OF PATRIARCH PARTNERS LLC

PP050601

INDEX

# Exhibit B-6

CONFIDENTIAL TREATMENT REQUESTED BY BRUNE & RICHARD LLP
ON BEHALF OF PATRIARCH PARTNERS LLC

PP050602

EXHIBIT B-6

<u>Form of Certificate for Transfer or Exchange of Certificated Note to</u>
<u>Temporary Regulation S Global Note or Regulation S Global Note</u>

Zohar II 2005-1, Limited
c/o Maples Finance Limited
P.O. Box 1093GT
Queensgate House
South Church Street
George Town
Grand Cayman, Cayman Islands

LaSalle Bank National Association,
as Trustee
135 South LaSalle Street, Suite 1625
Chicago, IL 60603
Attention: CDO Trust Services Group
Reference: Zohar II 2005-1, Limited

Re:    [Class A-2 Senior Secured Term Notes due January [●], 2017 ("<u>Class A-2</u>
       <u>Notes</u>")] [Class A-3 Senior Secured Delayed Drawdown Notes due January [●],
       2017 ("<u>Class A-3 Notes</u>")][1]

Ladies and Gentlemen:

       Reference is made to the Indenture dated as of January 12, 2005 (as
supplemented and otherwise modified and in effect from time to time, the "Indenture"),
among the Zohar II 2005-1 Limited (the "<u>Issuer</u>"), Zohar II 2005-1, Corp. (the "<u>Co-</u>
<u>Issuer</u>"), Zohar II 2005-1, LLC (the "<u>Zohar Subsidiary</u>"), MBIA Insurance Company (the
"<u>Credit Enhancer</u>"), IXIS Financial Products Inc., as agent for the Holders of the Class A-
1 Notes (together with any successors in such capacity, the "<u>Class A-1 Note Agent</u>") and
as agent for the Holders of the Class A-3 Notes (together with any successors in such
capacity, the "<u>Class A-3 Note Agent</u>"), and LaSalle Bank National Association, as trustee
(in such capacity, the "<u>Trustee</u>").  All capitalized terms used but not defined herein are
used as defined in the Indenture.

       This letter relates to U.S.$_____ principal amount of Class [A-2]
[A-3][2] Notes (the "<u>Notes</u>") registered in the name of _____ (the "<u>Holder</u>"). [The
Holder has requested a transfer of a Certificated Note for a beneficial interest in a
Regulation S Global Note to be held in the name of _____ (the "<u>Transferee</u>")
through [Euroclear][Clearstream], which in turn will hold through the Depository.][3] [The

---

[1] Insert as appropriate.
[2] Insert as appropriate.
[3] Insert for transfers.

Exhibit B-6 – Form of Certificate for Transfer or
Exchange of Certificated Note to Temporary Regulation S Note
or Regulation S Note

NY3:#7350192v5
CONFIDENTIAL TREATMENT REQUESTED BY BRUNE & RICHARD LLP
ON BEHALF OF PATRIARCH PARTNERS LLC

PP050603

Holder has requested an exchange of a Certificated Note for a beneficial interest in a Regulation S Global Note to be held in the name of the Holder through [Euroclear][Clearstream], which in turn will hold through the Depository.][4]

In connection with such request, the Holder does hereby certify that (1) the [transfer][exchange][5] of the beneficial interest in the Notes has been made in compliance with the transfer restrictions applicable to the Certificated Notes; [and] (2) the [Holder][Transferee][6] is not a U.S. person as defined in Regulation S under the Securities Act[; and (3) such transfer has been made pursuant to and in accordance with Regulation S].[7]

This certificate and the statements contained herein are made for your benefit.

[INSERT NAME OF HOLDER]

By:_____
    Name:
    Title:

Dated: _____

---

[4] Insert for exchanges.
[5] Insert as appropriate.
[6] Insert as appropriate.
[7] Insert for transfers.

Exhibit B-6 – Form of Certificate for Transfer or Exchange of Certificated Note to Temporary Regulation S Note or Regulation S Note

NY3:#7350192v5
CONFIDENTIAL TREATMENT REQUESTED BY BRUNE & RICHARD LLP
ON BEHALF OF PATRIARCH PARTNERS LLC

PP050604

# Exhibit B-7

CONFIDENTIAL TREATMENT REQUESTED BY BRUNE & RICHARD LLP
ON BEHALF OF PATRIARCH PARTNERS LLC

PP050605

EXHIBIT B-7

### Form of Certificate for Transfer or Exchange
### of Certificated Note to Rule 144A Global Note

Zohar II 2005-1, Limited
c/o Maples Finance Limited
P.O. Box 1093GT
Queensgate House
South Church Street
George Town
Grand Cayman, Cayman Islands

LaSalle Bank National Association,
as Trustee
135 South LaSalle Street, Suite 1625
Chicago, IL 60603
Attention: CDO Trust Services Group
Reference: Zohar II 2005-1, Limited

Re:    [Class A-2 Senior Secured Term Notes due January [●], 2017 ("Class A-2 Notes")] [Class A-3 Senior Secured Delayed Drawdown Notes due January [●], 2017 ("Class A-3 Notes")][1]

Ladies and Gentlemen:

Reference is made to the Indenture dated as of January 12, 2005 (as supplemented and otherwise modified and in effect from time to time, the "Indenture"), among the Zohar II 2005-1 Limited (the "Issuer"), Zohar II 2005-1, Corp. (the "Co-Issuer"), Zohar II 2005-1, LLC (the "Zohar Subsidiary"), MBIA Insurance Company (the "Credit Enhancer"), IXIS Financial Products Inc., as agent for the Holders of the Class A-1 Notes (together with any successors in such capacity, the "Class A-1 Note Agent") and as agent for the Holders of the Class A-3 Notes (together with any successors in such capacity, the "Class A-3 Note Agent"), and LaSalle Bank National Association, as trustee (in such capacity, the "Trustee"). All capitalized terms used but not defined herein are used as defined in the Indenture.

This letter relates to U.S.$_____ principal amount of Class [A-2] [A-3][2] Notes (the "Notes") registered in the name of _____ (the "Holder"). [The Holder has requested a transfer of a Certificated Note for a beneficial interest in a Regulation S Global Note to be held in the name of _____ (the "Transferee") through the Depository.][3] [The Holder has requested an exchange of a Certificated Note

---

[1] Insert as appropriate.
[2] Insert as appropriate.
[3] Insert for transfers.

NY3:#7350193v5
CONFIDENTIAL TREATMENT REQUESTED BY BRUNE & RICHARD LLP
ON BEHALF OF PATRIARCH PARTNERS LLC

PP050606

for a beneficial interest in a Rule 144A Global Note to be held in the name of the Holder through the Depository.][4]

In connection with such request, the Holder does hereby certify that the [Holder is a Qualified Institutional Buyer that is also a Qualified Purchaser.][5] [Holder reasonably believes that the Transferee is a Qualified Institutional Buyer, is obtaining such beneficial interest in a transaction meeting the requirements of Rule 144A and in accordance with any applicable securities laws of any state of the United States or any other jurisdiction, and is also a Qualified Purchaser.][6]

This certificate and the statements contained herein are made for your benefit.

[INSERT NAME OF HOLDER]

By:_____
     Name:
     Title:

Dated: _____

---

[4] Insert for exchanges.
[5] Insert for exchanges.
[6] Insert for transfers.

Exhibit B-7 – Form of Certificate for Transfer or
Exchange of Certificated Note to Rule 144A Global Note

NY3:#7350193v5
CONFIDENTIAL TREATMENT REQUESTED BY BRUNE & RICHARD LLP
ON BEHALF OF PATRIARCH PARTNERS LLC

PP050607

# Exhibit B-8

CONFIDENTIAL TREATMENT REQUESTED BY BRUNE & RICHARD LLP
ON BEHALF OF PATRIARCH PARTNERS LLC

PP050608

EXHIBIT B-8

## FORM OF CLASS B NOTE CERTIFICATE

Zohar II 2005-1, Limited
c/o Maples Finance Limited
P.O. Box 1093GT
Queensgate House
South Church Street
George Town
Grand Cayman, Cayman Islands

LaSalle Bank National Association,
as Trustee
135 South LaSalle Street, Suite 1625
Chicago, IL 60603
Attention: CDO Trust Services Group
Reference: Zohar II 2005-1, Limited

  Re: Class B zero coupon second priority secured notes due 2020 (the "Notes")

    Reference is hereby made to the Indenture dated as of January 12, 2005 (the "Indenture") among Zohar II 2005-1, Limited, Zohar II 2005-1, Corp., Zohar II 2005-1, LLC, MBIA Insurance Company, IXIS Financial Products Inc. and LaSalle Bank National Association, as Trustee. Capitalized terms used but not defined herein shall have the meanings given to them in the Indenture.

    In accordance with the terms of the Indenture, the undersigned (the "Proposed Class B Holder") is required to deliver to you this Class B Note Certificate relating to the U.S.$_____ principal amount of Class B Notes to be registered in its name.

    The Proposed Class B Holder hereby executes and delivers to each of you this Certificate in which it certifies to each of you the information set forth herein.

A. **General Information**

1. Print Full Name of Proposed
  Class B Holder:     _____

2. Name in which Notes should
  be registered:     _____

3. Address and Contact Person
  for Notices:     _____
           _____
           _____
           _____
           _____

Exhibit B-8 – Form of Class B Note Certificate

NY3:#7347798V7
CONFIDENTIAL TREATMENT REQUESTED BY BRUNE & RICHARD LLP
ON BEHALF OF PATRIARCH PARTNERS LLC

PP050609

4.    Telephone Number:    _____

5.    Telecopier Number:    _____

6.    Permanent Address (if
      different than above):    _____
                               _____
                               _____
                               _____

7.    U.S. Taxpayer
      Identification or Social
      Security Number (if any):    _____

8.    Payment Instructions:    _____
                               _____
                               _____
                               _____

9.    Instructions for delivery
      of Notes:    _____
                  _____
                  _____
                  _____

B.    **Accredited Investor**

The Proposed Class B Holder represents and warrants that the Proposed Class B Holder is an "accredited investor" within the meaning of Rule 501(a) under the Securities Act (an "Accredited Investor") and has checked the box or boxes below which are next to the categories under which the Proposed Class B Holder so qualifies as an Accredited Investor:

☐    (A)    It is an entity, including a grantor trust, in which all of the equity owners are Accredited Investors (for this purpose, a beneficiary of a trust is not an equity owner, but the grantor of a grantor trust may be an equity owner).

☐    (B)    It is a bank as defined in Section 3(a)(2) of the Securities Act or any savings and loan association or other institution as defined in Section 3(a)(5)(A) of the Securities Act, whether acting in its individual or fiduciary capacity.

2

Exhibit B-8 – Form of Class B Notes Certificate

NY3:#7347798v7
CONFIDENTIAL TREATMENT REQUESTED BY BRUNE & RICHARD LLP
ON BEHALF OF PATRIARCH PARTNERS LLC

PP050610

☐     (C)    It is an insurance company as defined in Section 2(13) of the Securities Act.

☐     (D)    It is a broker-dealer registered pursuant to Section 15 of the Securities Exchange Act of 1934.

☐     (E)    It is an investment company registered under the Investment Company Act of 1940, as amended (the "Investment Company Act").

☐     (F)    It is a business development company as defined in Section 2(a)(48) of the Investment Company Act.

☐     (G)    It is a small business investment company licensed by the Small Business Administration under Section 301(c) or (d) of the Small Business Investment Act of 1958.

☐     (H)    It is a private business development company as defined in Section 202(a)(22) of the Investment Advisers Act of 1940, as amended (the "Investment Advisers Act").

☐     (I)    It is an organization described in Section 501(c)(3) of the Internal Revenue Code, a corporation, Massachusetts or similar business trust, or partnership, in each case not formed for the specific purpose of acquiring Class B Notes, with total assets in excess of U.S.$5,000,000.

☐     (J)    It is a trust with total assets in excess of U.S.$5,000,000 not formed for the specific purpose of acquiring Class B Notes, whose purchase is directed by a person with such knowledge and experience in financial and business matters as to be capable of evaluating the merits and risks of an investment in the Class B Notes.

C.    **Qualified Purchaser Status**

1.    The Proposed Class B Holder represents and warrants that the Proposed Class B Holder is a "qualified purchaser" within the meaning of the Investment Company Act (a "Qualified Purchaser") and has checked the box or boxes below which are next to the categories under which the Proposed Class B Holder qualifies as a Qualified Purchaser:

☐     (A)    It is a company that (1) owns not less than U.S.$5,000,000 in Investments as valued in accordance with such Rule 2a51-1 (including, without limitation, after deducting from the amount of such investments the amount of any outstanding indebtedness incurred to acquire or for the purpose of acquiring such investments) that is owned directly or indirectly by or for two or more

3

Exhibit B-8 – Form of Class B Notes Certificate

NY3:#7347798V7
CONFIDENTIAL TREATMENT REQUESTED BY BRUNE & RICHARD LLP
ON BEHALF OF PATRIARCH PARTNERS LLC

PP050611

natural persons who are related as siblings or spouse (including former spouses), or direct lineal descendants by birth or adoption, spouses of such persons, the estates of such persons, or foundations, charitable organizations, or trusts established by or for the benefit of such persons and (2) was not formed for the specific purpose of acquiring Class B Notes of the Issuer unless each beneficial owner of the Proposed Class B Holder's securities is a Qualified Purchaser.

☐     (B)     It is a trust that is not covered by clause (A) above and that was not formed for the specific purpose of acquiring the securities offered, as to which the trustee or other person authorized to make decisions with respect to the trust, and each settlor or other person who has contributed assets to the trust, is a person described in clause (A) or (C).

☐     (C)     It is a Person, acting for its own account or the account of other Qualified Purchasers, who (1) in the aggregate owns and invests on a discretionary basis, not less than U.S.$25,000,000 in Investments as valued in accordance with such Rule 2a51-1 (including, without limitation, after deducting from the amount of such investments the amount of any outstanding indebtedness incurred to acquire or for the purpose of acquiring such investments) (including Investments owned by majority-owned subsidiaries of the company and Investments owned by a company (a "Parent Company") of which the company is a majority-owned subsidiary, or by a majority-owned subsidiary of the company and other majority-owned subsidiaries of the Parent Company) and (2) was not formed for the specific purpose of acquiring Class B Notes unless each beneficial owner of the Proposed Class B Holder's securities is a Qualified Purchaser.

☐     (D)     It is a "qualified institutional buyer" within the meaning of Rule 144A(a) promulgated under the Securities Act, acting for its own account, the account of another qualified institutional buyer or the account of a Qualified Purchaser; provided:

          (1)     that a dealer described in paragraph (a)(1)(ii) of Rule 144A shall own and invest on a discretionary basis at least U.S.$25,000,000 in securities of issuers that are not affiliated persons of the dealer; and

          (2)     that a plan referred to in paragraph (a)(1)(D) or (a)(1)(E) of Rule 144A, or a trust fund referred to in paragraph (a)(1)(F) of Rule 144A that holds the assets of such a plan, will not be deemed to be acting for its own account if investment decisions with respect to the plan are made by the beneficiaries of the plan, except with respect to investment decisions made solely by the fiduciary, trustee or sponsor of such plan.

☐     (E)     It is an entity in which each beneficial owner of the Proposed Class B Holder's securities is a Qualified Purchaser.

Alternatively, the Proposed Class B Holder represents and warrants that the Proposed Class B Holder is a "knowledgeable employee" with respect to the Issuer within the

4

Exhibit B-8 – Form of Class B Notes Certificate

NY3:#7347798v7
CONFIDENTIAL TREATMENT REQUESTED BY BRUNE & RICHARD LLP
ON BEHALF OF PATRIARCH PARTNERS LLC                                    PP050612

meaning of Rule 3c-5 under the Investment Company Act (a "Knowledgeable Employee") or a company owned exclusively by Knowledgeable Employees.

☐ Yes        ☐ No

2.    If the Proposed Class B Holder is a company that, but for the exceptions provided for in paragraph (1) or (7) of Section 3(c) of the Investment Company Act, would be an investment company (hereinafter in this paragraph referred to as an "excepted investment company"):

        (i)    all of the beneficial owners of outstanding securities (other than short-term paper) of the Proposed Class B Holder (such beneficial owners determined in accordance with Section 3(c)(1)(A) of the Investment Company Act) that acquired such securities on or before April 30, 1996 (hereinafter in this paragraph referred to as "pre-amendment beneficial owners"); and

        (ii)    all pre-amendment beneficial owners of the outstanding securities (other than short-term paper) of any excepted investment company that, directly or indirectly, owns any outstanding securities of the Proposed Class B Holder, have consented to the Proposed Class B Holder's treatment as a qualified purchaser in accordance with Section 2(a)(51)(C) of, and Rule 2a51-2 promulgated under, the Investment Company Act.

D.    **Supplemental Data**

1.    Legal form of entity (corporation, partnership, trust, etc.): _____

    Jurisdiction of organization: _____

2.    The Proposed Class B Holder certifies that it is not a Flow-Through Investment Vehicle other than a Qualifying Investment Vehicle.

☐ Yes ☐ No

3.    (a)    Is the Proposed Class B Holder, or is the Proposed Class B Holder acting on behalf of, an employee benefit plan within the meaning of Section 3(3) of ERISA (a "Plan"), whether or not such Plan is subject to ERISA, and/or a plan within the meaning of Section 4975 of the Code or an entity which is deemed to hold the assets of any such employee benefit plan or plan (each, a "Benefit Plan Investor") pursuant to 29 C.F.R. Section 2510.3-101 (the "Plan Asset Regulation") or otherwise.

☐ Yes ☐ No

For example, a plan which is maintained by a foreign entity, governmental entity or church, is an employee benefit plan within the meaning of Section 3(3) of ERISA even though it is generally not subject to ERISA (collectively, "Non-ERISA Plans") and a Keogh plan covering no common-law employees and an individual retirement account, which are also not subject to ERISA, are plans within the meaning of Section 4975 of the Code. In general, a foreign or U.S. entity which is not an operating company and which is not publicly traded or registered as an investment company under the Investment Company Act

5

Exhibit B-8 – Form of Class B Notes Certificate

NY3:#7347798v7
CONFIDENTIAL TREATMENT REQUESTED BY BRUNE & RICHARD LLP
ON BEHALF OF PATRIARCH PARTNERS LLC

PP050613

and in which 25% or more of the value of any class of equity interests (exclusive of the value of any equity interests held by a person other than a Benefit Plan Investor who has discretionary authority or control with respect to the assets of such entity or any person who provides investment advice for a fee (direct or indirect) with respect to such assets, or any Affiliate of such a person) is held by Benefit Plan Investors, would be deemed to hold the assets of one or more employee benefit plans or plans pursuant to the Plan Asset Regulation.

(b)    Is the Proposed Class B Holder, or is the Proposed Class B Holder acting on behalf of, a Benefit Plan Investor which is subject to ERISA or Section 4975 of the Code:

☐ Yes ☐ No

(c)(1)    Is the investor a life insurance company?

☐ Yes         ☐ No

(c)(2)    If the answer to the question in (c)(1) above is "Yes", please indicate the relative percentages of the Proposed Class B Holder's interest in the Class B Notes being acquired with the assets of the Proposed Class B Holder's general account and separate accounts:

_____% is being acquired with the assets of the general account.

_____% is being acquired with the assets of one or more separate accounts.

(c)(3)    If the Proposed Class B Holder indicated in question (c)(2) above that general account assets are being used to acquire the Proposed Class B Holder's interest in the Class B Notes, please complete the following:

_____% of such general account assets used to acquire Class B Notes represent "plan assets" within the meaning of the Plan Asset Regulation

(d)    Is the Proposed Class B Holder a person other than a Benefit Plan Investor who has discretionary authority or control with respect to the assets of the Issuer or who provides investment advice to the Issuer for a fee, direct or indirect, with respect to such assets or any affiliate of any such person (each, a "Controlling Person").

☐ Yes ☐ No

For purposes of the foregoing, an "affiliate" of a person includes any person, directly or indirectly, through one or more intermediaries, controlling, controlled by, or under common control with the person. "Control", with respect to a person other than an individual, means the power to exercise a controlling influence over the management or policies of such person.

(e)    The Proposed Class B Holder understands and agrees that the information supplied above will be utilized to determine whether Benefit Plan Investors own less than 25% of any class of the Issuer's Class B Notes, both upon the original issuance of Class B Notes and upon subsequent transfer of any equity interest of the Issuer, including, without

6

Exhibit B-8 – Form of Class B Notes Certificate

NY3:#7347798v7
CONFIDENTIAL TREATMENT REQUESTED BY BRUNE & RICHARD LLP
ON BEHALF OF PATRIARCH PARTNERS LLC

PP050614

limitation, the Class B Notes, for any reason. Accordingly, the Proposed Class B Holder undertakes:

(i) to inform the Issuer, the Collateral Manager and the Trustee immediately of any change in the information provided in this paragraph,

(ii) to provide to the Issuer and the Trustee such information as the Issuer or the Trustee may reasonably request from time to time to enable the Issuer and the Trustee to make a determination with respect to the portion of the Class B Notes of the Issuer that may be held by or for the benefit of Benefit Plan Investors,

(iii) to inform the Issuer, the Trustee and the Collateral Manager immediately of any change in the status of the Proposed Class B Holder which results in the Proposed Class B Holder's becoming a Benefit Plan Investor or a Controlling Person and

(iv) to promptly dispose of its interests in the Class B Notes if it is becoming a Benefit Plan Investor or a Controlling Person and is notified that its ownership of the Class B Notes would result in 25% or more, as determined under the Plan Asset Regulation, of the value of the Class B Notes of the Issuer being held by Benefit Plan Investors.

(f)     If the Proposed Class B Holder is, or is acting on behalf of, a Benefit Plan Investor subject to ERISA and/or Section 4975 of the Code, the Proposed Class B Holder represents and warrants that, its acquisition, ownership and disposition of the Class B Notes will not result in or constitute a "prohibited transaction" under Section 406 of ERISA or Section 4975 of the Code (or, in the case of a governmental or church plan, any similar federal, state or local law) for which an exemption is not applicable. In addition, if the Proposed Class B Holder is, or is acting on behalf of, a Plan subject to ERISA, the fiduciaries of such Plan represent and warrant that they have been informed of and understand the Issuer's investment objectives, policies and strategies and that the decision to invest such Plan's assets in the Class B Notes was made with appropriate consideration of relevant investment factors with regard to such Plan and is consistent with the duties and responsibilities imposed upon fiduciaries with regard to their investment decisions under ERISA.

E.    **Certain Tax Matters**

1.    The Proposed Class B Holder represents to <u>each of</u> (A), (B) (C) and (D) below as follows:

(A)    <u>Either</u>

☐        (1)    It will at all times be a United States person within the meaning of section 7701(a)(30) of the United States Internal Revenue Code, <u>or</u>

☐        (2)    It will at all times be a person whose separate existence is disregarded pursuant to Treasury regulation section 301.7701-3 for United States federal income tax purposes all of whose equity is owned by a single person that is a United States person within the meaning of section 7701(a)(30) of the United States Internal Revenue Code.

7

Exhibit B-8 – Form of Class B Notes Certificate

NY3:#7347798v7
CONFIDENTIAL TREATMENT REQUESTED BY BRUNE & RICHARD LLP
ON BEHALF OF PATRIARCH PARTNERS LLC

PP050615

(B)    Either

☐    (1)    It is not for U.S. federal income tax purposes a partnership, grantor trust or S corporation, or

☐    (2)    It was not formed for the purpose of holding the Class B Notes or any other equity interests in the Issuer and not more than 50% of the value of the interest of any of the Proposed Class B Holder's beneficial owners will be attributable to Preference Shares or any other equity interests of the Issuer, or

☐    (3)    It will provide an opinion of a nationally recognized tax counsel that its purchase will not cause the Issuer to be treated as a publicly traded partnership and such other representations and information as the Trustee in its sole discretion may request, in form and substance satisfactory to the Trustee, or

☐    (4)    It is a partnership that has, and at all times will have, no more than 98 "partners" for purposes of Treasury regulation section 1.7704-1(h)(1)(2).

(C)    The Proposed Class B Holder is not acquiring and will not sell, transfer, assign, participate, pledge or otherwise dispose of any Class B Notes (or any interest therein, including through any derivative or swap arrangement that transfers all or substantially all of the economic benefits of ownership of a Class B Notes to a derivative or swap counterparty) or cause any Class B Notes (or any interest therein, including through any derivative or swap arrangement that transfers all or substantially all of the economic benefits of ownership of a Class B Note to a derivative or swap counterparty) to be marketed on or through an "established securities market" within the meaning of Section 7704(b)(1) of the Code, including, without limitation, an interdealer quotation system that regularly disseminates firm buy or sell quotations.

The Proposed Class B Holder understands and agrees that:

(1)    Solely for United States federal and, to the extent permitted by applicable law, state and local income tax purposes, for so long as there is a single beneficial owner of the Class B Notes, Preference Shares and any other equity interest in the Issuer, the Issuer will be treated as a disregarded entity and otherwise the Issuer will be treated as a partnership and the holders of Class B Notes of the Issuer will constitute partners of the Issuer,

(2)    It will not elect to be excluded from the application of Subchapter K of Chapter 1 of Subtitle A of the Code,

(3)    It will provide such information and complete such forms as may be reasonably requested by or on behalf of the Issuer in connection with the Issuer's preparation and filing of tax returns and other forms, if any, and

(4)    It will provide any form or document, and will join in the execution of such additional documents and elections, that may be required or reasonably requested in writing by or on behalf of the Issuer in order to allow the Issuer to make a payment in respect of the Class B Notes or receive payments in respect of investments without any deduction or

8

Exhibit B-8 – Form of Class B Notes Certificate

NY3:#7347798v7
CONFIDENTIAL TREATMENT REQUESTED BY BRUNE & RICHARD LLP
ON BEHALF OF PATRIARCH PARTNERS LLC

PP050616

withholding for or on account of any tax or with such deduction or withholding at a reduced rate or to give full effect to the agreed tax treatment described above or to allow the Issuer to prepare and file tax forms or returns that the Issuer believes to be required of it, with any such form or document to be accurate and completed in a manner reasonably satisfactory to the Issuer and to be executed and to be delivered with any reasonably required certification.

(5)     A portion of the principal amount of its Class B Notes may be reduced in the circumstances and to the extent provided in the Indenture.

F.     **Related Parties**

1.     To the best of the Proposed Class B Holder's knowledge, does the Proposed Class B Holder control, or is the Proposed Class B Holder controlled by or under common control with, any other investor in the Issuer?

☐ Yes ☐ No

2.     Will any other person or persons have a beneficial interest in the Class B Notes to be acquired hereunder (other than as a shareholder, partner or other beneficial owner of equity interests in the Proposed Class B Holder)?

☐ Yes ☐ No

If either question above was answered "Yes", please contact the Issuer for additional information that will be required.

G.     **Cayman Islands**

1.     The Proposed Class B Holder certifies that it is not a member of the public in the Cayman Islands.

☐ Yes ☐ No

Exhibit B-8 – Form of Class B Notes Certificate

NY3:#7347798v7
CONFIDENTIAL TREATMENT REQUESTED BY BRUNE & RICHARD LLP
ON BEHALF OF PATRIARCH PARTNERS LLC

PP050617

Respondents' Exhibit 8   pg. 359 of 447

### H.   Other Representations

1.   The Proposed Class B Holder understands that (1) the Class B Notes have not been and will not be registered under the Securities Act, the securities laws of any state of the United States or any other jurisdiction, and the Issuer has not been registered under the Investment Company Act and (2) no transfer or pledge of a Class B Note (or any interest herein) may be made (and the Trustee and the Note Registrar will not recognize any such transfer or pledge). Accordingly, an investor in the Class B Notes must be prepared to bear the economic risk of the investment for an indefinite period of time.

2.   The Proposed Class B Holder understands and agrees that a legend summarizing certain of the foregoing matters will be placed on each Class B Note.

3.   The Proposed Class B Holder understands and agrees that the obligations of the Issuer under the Note and the Indenture are limited recourse obligations of the Issuer payable solely from the Collateral as provided in the Indenture. The Proposed Class B Holder understands and agrees that no recourse shall be had for the payment of any amount owing in respect of the Note against any Officer, member, director, employee, securityholder or incorporator of the Issuer or its respective successors or assigns for any amounts payable under the Note or the Indenture. It is understood that the foregoing shall not (i) prevent recourse to the Collateral for the sums due or to become due under any security, instrument or agreement which is part of the Collateral or (ii) constitute a waiver, release or discharge of any indebtedness or obligation evidenced by the Note or secured by the Indenture until such Collateral has been realized and the proceeds thereof applied as provided in the Indenture, whereupon any outstanding indebtedness or obligation shall be extinguished. It is further understood that the foregoing shall not limit the right of any Person to name any Zohar Obligor as a party defendant in any action or suit or in the exercise of any other remedy under the Note or the Indenture, so long as no judgment in the nature of a deficiency judgment or seeking personal liability shall be asked for or (if obtained) enforced against any such Person or entity.

4.   The Proposed Class B Holder understands and agrees not to institute against, or join any other Person in instituting against, any Zohar Obligor any bankruptcy, reorganization, arrangement, insolvency, moratorium or liquidation Proceedings or other Proceedings under federal or state bankruptcy or similar laws until at least one year and one day, or if longer the applicable preference period then in effect, after the payment in full of all Notes issued under the Indenture; provided that nothing in this clause shall preclude, or be deemed to stop, the Proposed Class B Holder (i) from taking any action prior to the expiration of the aforementioned one year and one day period, or if longer the applicable preference period then in effect, in (a) any case or Proceeding voluntarily filed or commenced by such Zohar Obligor or (b) any involuntary insolvency Proceeding filed or commenced against such Zohar Obligor by a Person other than the Proposed Class B Holder, or (ii) from commencing against any Zohar Obligor or any properties of any Zohar Obligor any legal action which is not a bankruptcy, reorganization, arrangement, insolvency, moratorium or liquidation Proceeding.

5.   Notwithstanding anything else contained herein or in any other Transaction Document, the Proposed Class B Holder hereby acknowledges and agrees that (i) the Issuer has purchased the assets designated as the "Zohar I Assets" set forth in Schedule A 1 of the Indenture from Zohar CDO 2003 1, Limited (an Affiliate of Patriarch Partners) with proceeds of Warehouse Advances, and the Proposed Class B Holder hereby consents to

CONFIDENTIAL TREATMENT REQUESTED BY BRUNE & RICHARD LLP
ON BEHALF OF PATRIARCH PARTNERS LLC

such acquisitions at such prices and waives any and all conflicts of interest relating thereto, and (ii) the Issuer and/or the Zohar Subsidiary shall purchase (on or about the Funding Date) the assets set forth in Schedule A 2 of the Indenture from Ark CLO 2000 1, Limited and/or Ark CLO 2000 1, LLC (each an Affiliate of Patriarch Partners) at the prices (including without limitation pursuant to the pricing methodology set forth in Schedule A 2 of the Indenture), and the Proposed Class B Holder hereby consents to such acquisitions at such prices (including without limitation pursuant to the pricing methodology set forth in Schedule A 2 of the Indenture) and waives any and all conflicts of interest relating thereto. The above described purchases and sales have been or will be, as applicable, made between the Issuer, on the one hand, and Affiliates of the Issuer, on the other hand, and as such additional disclosure about the actual and potential conflicts of interest and the valuation methodology used to determine the process for such purchases and sales are more fully described in Schedule A 1 of the Indenture and Schedule A 2 of the Indenture, as applicable.

NY3:#7350454v7
CONFIDENTIAL TREATMENT REQUESTED BY BRUNE & RICHARD LLP
ON BEHALF OF PATRIARCH PARTNERS LLC

PP050619

The Proposed Class B Holder understands that the foregoing acknowledgments, representations and agreements will be relied upon by the Trustee and the Issuer for the purpose determining the eligibility of the Proposed Class B Holder to acquire Class B Notes of the Issuer. The Proposed Class B Holder agrees to provide, if requested, any additional information that may be required to substantiate the Proposed Class B Holder's status as a Qualified Institutional Buyer or as a Qualified Purchaser or Knowledgeable Employee or as an Accredited Investor or to otherwise determine the eligibility of the Proposed Class B Holder to hold Class B Notes of the Issuer.

Signatures:

_____
(Name of Entity)

By:    _____
(Signature)

_____
(Print Name and Title)

Date:

Exhibit B-8 – Form of Class B Note Certificate

NY3:#7350454V7
CONFIDENTIAL TREATMENT REQUESTED BY BRUNE & RICHARD LLP
ON BEHALF OF PATRIARCH PARTNERS LLC

PP050620

# Exhibit B-9

CONFIDENTIAL TREATMENT REQUESTED BY BRUNE & RICHARD LLP
ON BEHALF OF PATRIARCH PARTNERS LLC

EXHIBIT B-9

## FORM OF CLASS C NOTE CERTIFICATE

Zohar II 2005-1, Limited
c/o Maples Finance Limited
P.O. Box 1093GT
Queensgate House
South Church Street
George Town
Grand Cayman, Cayman Islands

LaSalle Bank National Association,
as Trustee
135 South LaSalle Street, Suite 1625
Chicago, IL 60603
Attention: CDO Trust Services Group
Reference: Zohar II 2005-1, Limited

      Re:    Class C zero coupon third priority secured notes due 2020 (the "Notes")

      Reference is hereby made to the Indenture dated as of January 12, 2005 (the "Indenture") among Zohar II 2005-1, Limited, Zohar II 2005-1, Corp., Zohar II 2005-1, LLC, MBIA Insurance Company, IXIS Financial Products Inc. and LaSalle Bank National Association, as Trustee. Capitalized terms used but not defined herein shall have the meanings given to them in the Indenture.

      In accordance with the terms of the Indenture, the undersigned (the "Proposed Class C Holder") is required to deliver to you this Class C Note Certificate relating to the U.S.$_____ principal amount of Class C Notes to be registered in its the name.

      The Proposed Class C Holder hereby executes and delivers to each of you this Certificate in which it certifies to each of you the information set forth herein.

A.    **General Information**

1.    Print Full Name of Proposed
     Class C Holder:        _____

2.    Name in which Notes should
     be registered:        _____

3.    Address and Contact Person
     for Notices:        _____
                     _____
                     _____
                     _____

NY3:#7250456v5
CONFIDENTIAL TREATMENT REQUESTED BY BRUNE & RICHARD LLP
ON BEHALF OF PATRIARCH PARTNERS LLC

PP050622

4.  Telephone Number:                    _____

5.  Telecopier Number:                   _____

6.  Permanent Address (if                _____
    different than above):               _____
                                         _____
                                         _____
                                         _____

7.  U.S. Taxpayer
    Identification or Social
    Security Number (if any):            _____

8.  Payment Instructions:                _____
                                         _____
                                         _____
                                         _____

9.  Instructions for delivery            _____
    of Notes:                            _____
                                         _____
                                         _____

B.  **Status**

1.  The Proposed Class C Holder is (i) a "qualified institutional buyer" (within the meaning of
    Rule 144A ("Rule 144A") under the U.S. Securities Act of 1933, as amended (the "Securities
    Act")) (a "Qualified Institutional Buyer") and is acquiring such Notes for its own account or
    for the account of another Qualified Institutional Buyer to whom notice has been given that
    the transfer is being made in reliance on Rule 144A, or (ii) an "accredited investor" within
    the meaning of Rule 501(a) under the Securities Act (an "Accredited Investor") and, in the
    case of (i) or (ii), is (I) a "Qualified Purchaser" as defined in Section 2(a)(51) of the
    Investment Company Act of 1940, as amended (the "Investment Company Act"), (II) a
    "Knowledgeable Employee" with respect to the Issuer within the meaning of Rule 3c-5 under
    the Investment Company Act (a "Knowledgeable Employee") or (III) a company beneficially
    owned exclusively by one or more "Qualified Purchasers" and/or "Knowledgeable
    Employees" with respect to the Issuer (any person in (I), (II) or (III), a "Qualified
    Purchaser").

CONFIDENTIAL TREATMENT REQUESTED BY BRUNE & RICHARD LLP
ON BEHALF OF PATRIARCH PARTNERS LLC

Exhibit B-9 – Form of Class C Note Certificate
PP050623

2.   The Proposed Class C Holder understands that (1) the Class C Notes have not been and will not be registered under the Securities Act, the securities laws of any state of the United States or any other jurisdiction, and the Issuer has not been registered under the Investment Company Act and (2) no transfer or pledge of a Class C Note (or any interest herein) may be made (and the Trustee and the Note Registrar will not recognize any such transfer or pledge). Accordingly, an investor in the Class C Notes must be prepared to bear the economic risk of the investment for an indefinite period of time.

3.   The Proposed Class C Holder represents to <u>each of</u> (A), (B), (C) and (D) below as follows:

(A)   <u>Either</u>

☐     (1)   It will at all times be a United States person within the meaning of section 7701(a)(30) of the United States Internal Revenue Code, <u>or</u>

☐     (2)   It will at all times be a person whose separate existence is disregarded pursuant to Treasury Regulation section 301.7701-3 for United States federal income tax purposes all of whose equity is owned by a single person that is a United States person within the meaning of section 7701(a)(30) of the United States Internal Revenue Code.

(B)   <u>Either</u>

☐     (1)   It is not for U.S. federal income tax purposes a partnership, grantor trust or S corporation, <u>or</u>

☐     (2)   It was not formed for the purpose of holding the Class C Notes or any other equity interests in the Issuer and not more than 50% of the value of the interest of any of the Investor's beneficial owners will be attributable to the Preference Shares or any other equity interests of the Issuer, <u>or</u>

☐     (3)   It will provide an opinion of a nationally recognized tax counsel that its purchase will not cause the Issuer to be treated as a publicly traded partnership and such other representations and information as the Trustee in its sole discretion may request, in form and substance satisfactory to the Trustee, <u>or</u>

☐     (4)   It is a partnership that has, and at all times will have, no more than 98 "partners" for purposes of Treasury regulation section 1.7704-1(h)(1)(2).

☐   (C)   The Proposed Class C Holder is not acquiring and will not sell, transfer, assign, participate, pledge or otherwise dispose of any Notes (or any interest therein, including through any derivative or swap arrangement that transfers all or substantially all of the economic benefits of ownership of Notes to a derivative or swap counterparty) or cause any Notes (or any interest therein, including through any derivative or swap arrangement that transfers all or substantially all of the economic benefits of ownership of Notes to a derivative or swap counterparty) to be marketed on or through an "established securities market" within the meaning of Section 7704(b)(1) of the Code, including, without limitation, an interdealer quotation system that regularly disseminates firm buy or sell quotations.

CONFIDENTIAL TREATMENT REQUESTED BY BRUNE & RICHARD LLP
ON BEHALF OF PATRIARCH PARTNERS LLC

☐   (D)   The Proposed Class C Holder is a United States Person (as defined in the Indenture).

4.   The Proposed Class C Holder is a Qualified Purchaser or a company each of whose beneficial owners is a Qualified Purchaser and the Proposed Class C Holder has checked the box or boxes below which are next to the categories under which the Proposed Class C Holder so qualifies:

☐   (A)   It is a company that (1) owns not less than $5,000,000 in investments as valued in accordance with such Rule 2a51-1 (including, without limitation, after deducting from the amount of such investments the amount of any outstanding indebtedness incurred to acquire or for the purpose of acquiring such investments) that is owned directly or indirectly by or for two or more natural persons who are related as siblings or spouse (including former spouses), or direct lineal descendants by birth or adoption, spouses of such persons, the estates of such persons, or foundations, charitable organizations, or trusts established by or for the benefit of such persons and (2) was not formed for the specific purpose of acquiring Notes of the Issuer unless each beneficial owner of the Proposed Class C Holder's securities is a Qualified Purchaser.

☐   (B)   It is a trust that is not covered by clause (A) above and that was not formed for the specific purpose of acquiring the securities offered, as to which the trustee or other person authorized to make decisions with respect to the trust, and each settlor or other person who has contributed assets to the trust, is a person described in clause (A) or (C).

☐   (C)   It is a person, acting for its own account or the account of other Qualified Purchasers, who (1) in the aggregate owns and invests on a discretionary basis, not less than $25,000,000 in investments as valued in accordance with such Rule 2a51-1 (including, without limitation, after deducting from the amount of such investments the amount of any outstanding indebtedness incurred to acquire or for the purpose of acquiring such investments) (including investments owned by majority-owned subsidiaries of the company and investments owned by a company (a "Parent Company") of which the company is a majority-owned subsidiary, or by a majority-owned subsidiary of the company and other majority-owned subsidiaries of the Parent Company) and (2) was not formed for the specific purpose of acquiring Notes of the Issuer unless each beneficial owner of the Proposed Class C Holder's securities is a Qualified Purchaser.

☐   (D)   It is a Qualified Institutional Buyer acting for its own account, the account of another Qualified Institutional Buyer or the account of a Qualified Purchaser; provided:

(1) that a dealer described in paragraph (a)(1)(ii) of Rule 144A shall own and invest on a discretionary basis at least $25 million in securities of Issuers that are not affiliated persons of the dealer; and

CONFIDENTIAL TREATMENT REQUESTED BY BRUNE & RICHARD LLP
ON BEHALF OF PATRIARCH PARTNERS LLC

(2)  that a plan referred to in paragraph (a)(1)(D) or (a)(1)(E) of Rule 144A, or a trust fund referred to in paragraph (a)(1)(F) of Rule 144A that holds the assets of such a plan, will not be deemed to be acting for its own account if investment decisions with respect to the plan are made by the beneficiaries of the plan, except with respect to investment decisions made solely by the fiduciary, trustee or sponsor of such plan.

☐ (E)   It is an entity in which each beneficial owner of the Proposed Class C Holder's securities is a Qualified Purchaser.

5.   If the Proposed Class C Holder is a company that, but for the exceptions provided for in paragraph (1) or (7) of Section 3(c) of the Investment Company Act, would be an investment company (hereinafter in this paragraph referred to as an "excepted investment company"):

(i)    all of the beneficial owners of outstanding securities (other than short-term paper) of the Transferee (such beneficial owners determined in accordance with Section 3(c)(1)(A) of the Investment Company Act) that acquired such securities on or before April 30, 1996 (hereinafter in this paragraph referred to as "pre-amendment beneficial owners"); and

(ii)    all pre-amendment beneficial owners of the outstanding securities (other than short-term paper) of any excepted investment company that, directly or indirectly, owns any outstanding securities of the Proposed Class C Holder,

have consented to the Proposed Class C Holder's treatment as a Qualified Purchaser in accordance with Section 2(a)(51)(C) of, and Rule 2a51-2 promulgated under, the Investment Company Act.

6.   (a)   Is the Proposed Class C Holder, or is the Proposed Class C Holder acting on behalf of, an employee benefit plan within the meaning of Section 3(3) of ERISA (a "Plan"), whether or not such Plan is subject to ERISA, and/or a plan within the meaning of Section 4975 of the Code or an entity which is deemed to hold the assets of any such Plan or employee benefit plan (each, a "Benefit Plan Investor") pursuant to 29 C.F.R. Section 2510.3-101 (the "Plan Asset Regulation") or otherwise.

☐ Yes  ☐ No

For example, a plan which is maintained by a foreign entity, governmental entity or church, are employee benefit plans within the meaning of Section 3(3) of ERISA even though they are generally are not subject to ERISA, and a Keogh plan covering no common law employees and an individual retirement account are plans within the meaning of Section 4975 of the Code.  In general, a foreign or U.S. entity which is not an operating company and which is not publicly traded or registered as an investment company under the Investment Company Act and in which 25% or more of the value of any class of equity interests (exclusive of the value of any equity interests held by a person other than a Benefit Plan Investor who has discretionary authority or control with respect to the assets of such entity or any person who provides investment advice for a fee (direct or indirect) with respect to such assets, or any affiliate of such a person) is held by Benefit Plan Investors (including an entity which is deemed to hold the assets of any such plan), would be deemed to hold the assets of one or more pursuant to the Plan Asset Regulation.

CONFIDENTIAL TREATMENT REQUESTED BY BRUNE & RICHARD LLP
ON BEHALF OF PATRIARCH PARTNERS LLC

Exhibit B-9 – Form of Class C Note Certificate
PP050626

(b)    Is the Proposed Class C Holder, or is the Proposed Class C Holder acting on behalf of, a Benefit Plan Investor?

☐ Yes ☐ No

(c)    (1)  Is the Proposed Class C Holder a life insurance company?

☐ Yes ☐ No

(c)    (2)  If the answer to the question in (c)(1) above is "Yes", please indicate the relative percentages of the Proposed Class C Holder's interest in the Notes being acquired with the assets of the Proposed Class C Holder's general account and separate accounts:

_____% is being acquired with the assets of the general account.

_____% is being acquired with the assets of one or more separate accounts.

(c)    (3)  If the Proposed Class C Holder indicated to the question in (c)(2) above that general account assets are being used to acquire the Proposed Class C Holder's interest in the Notes, please complete the following:

_____% of such general account assets used to acquire Notes represent "plan assets" within the meaning of the Plan Asset Regulation

(d)    Is the Proposed Class C Holder a person who has discretionary authority or control with respect to the assets of the Issuer or who provides investment advice to the Issuer for a fee, direct or indirect, or an affiliate of any such person (each, a "Controlling Person")?

☐ Yes ☐ No

For purposes of the foregoing, an "affiliate" of a person includes any person, directly or indirectly, through one or more intermediaries, controlling, controlled by, or under common control with the person.  "Control", with respect to a person other than an individual, means the power to exercise a controlling influence over the management or policies of such person.

(e)    The Proposed Class C Holder understands and agrees that the information supplied above will be utilized to determine whether Benefit Plan Investors own less than 25% of the Preference Shares of the Issuer, both upon the original issuance of the Preference Shares and upon subsequent transfer of any equity interest of the Issuer, including, without limitation, the Notes (if the Notes were treated as equity interests in the Issuer) or the Preference Shares for any reason.  Accordingly, the Proposed Class C Holder undertakes:

(i)    to inform the Issuer and the Trustee immediately of any change in the information provided in this paragraph,

CONFIDENTIAL TREATMENT REQUESTED BY BRUNE & RICHARD LLP
ON BEHALF OF PATRIARCH PARTNERS LLC

Exhibit B-9 – Form of Class C Note Certificate
PP050627

(ii) to provide to the Issuer and the Trustee such information as the Issuer or the Trustee may reasonably request from time to time to enable the Trustee to make a determination with respect to the portion of the Notes of the Issuer that may be held by or for the benefit of Benefit Plan Investors,

(iii) agrees to inform the Issuer, the Collateral Manager and the Trustee immediately of any change in the status of the Proposed Class C Holder which results in the Proposed Class C Holder's becoming a Benefit Plan Investor or a Controlling Person and

(iv) agrees to promptly dispose of its interests in the Notes if its becoming a Benefit Plan Investor or a Controlling Person and its ownership of the Notes would result in 25% or more, as determined under the Plan Asset Regulation, of the value of the Notes being held by Benefit Plan Investor.

(f) If the Proposed Class C Holder is, or is acting on behalf of, a Plan, the Proposed Class C Holder represents and warrants that its acquisition, ownership and disposition of the Notes will not result in or constitute a "prohibited transaction" under Section 406 of ERISA or Section 4975 of the Code (or, in the case of a governmental or church plan, under any substantially similar federal, state or local law) for which an exemption is not applicable. In addition, if the Proposed Class B Holder is, or is acting on behalf of, a Plan subject to ERISA, the fiduciaries of such Plan represent and warrant that they have been informed of and understand the Issuer's investment objectives, policies and strategies and that the decision to invest such Plan's assets in the Preference Shares and/or Notes was made with appropriate consideration of relevant investment factors with regard to such Plan and is consistent with the duties and responsibilities imposed upon fiduciaries with regard to their investment decisions under ERISA.

7. The Proposed Class C Holder understands and agrees that a legend summarizing certain of the foregoing matters will be placed on each Class C Note.

8. The Proposed Class C Holder is not a member of the public in the Cayman Islands.

9. The Proposed Class C Holder understands and agrees that the obligations of the Issuer under the Note and the Indenture are limited recourse obligations of the Issuer payable solely from the Collateral as provided in the Indenture. The Proposed Class C Holder understands and agrees that no recourse shall be had for the payment of any amount owing in respect of the Note against any Officer, member, director, employee, securityholder or incorporator of the Issuer or its respective successors or assigns for any amounts payable under the Note or the Indenture. It is understood that the foregoing shall not (i) prevent recourse to the Collateral for the sums due or to become due under any security, instrument or agreement which is part of the Collateral or (ii) constitute a waiver, release or discharge of any indebtedness or obligation evidenced by the Note or secured by the Indenture until such Collateral has been realized and the proceeds thereof applied as provided in the Indenture, whereupon any outstanding indebtedness or obligation shall be extinguished. It is further understood that the foregoing shall not limit the right of any Person to name any Zohar Obligor as a party defendant in any action or suit or in the exercise of any other remedy under the Note or the Indenture, so long as no judgment in the nature of a deficiency judgment or seeking personal liability shall be asked for or (if obtained) enforced against any such Person or entity.

CONFIDENTIAL TREATMENT REQUESTED BY BRUNE & RICHARD LLP
ON BEHALF OF PATRIARCH PARTNERS LLC

Exhibit B-9 – Form of Class C Note Certificate
PP050628

10. The Proposed Class C Holder understands and agrees not to institute against, or join any other Person in instituting against, any Zohar Obligor any bankruptcy, reorganization, arrangement, insolvency, moratorium or liquidation Proceedings or other Proceedings under federal or state bankruptcy or similar laws until at least one year and one day, or if longer the applicable preference period then in effect, after the payment in full of all Notes issued under the Indenture; provided that nothing in this clause shall preclude, or be deemed to stop, the Proposed Class C Holder (i) from taking any action prior to the expiration of the aforementioned one year and one day period, or if longer the applicable preference period then in effect, in (a) any case or Proceeding voluntarily filed or commenced by such Zohar Obligor or (b) any involuntary insolvency Proceeding filed or commenced against such Zohar Obligor by a Person other than the Proposed Class C Holder, or (ii) from commencing against any Zohar Obligor or any properties of any Zohar Obligor any legal action which is not a bankruptcy, reorganization, arrangement, insolvency, moratorium or liquidation Proceeding.

NY3-#7350455v6
CONFIDENTIAL TREATMENT REQUESTED BY BRUNE & RICHARD LLP
ON BEHALF OF PATRIARCH PARTNERS LLC
PP050629

The Proposed Class C Holder understands that the foregoing acknowledgments, representations and agreements will be relied upon by the Trustee and the Issuer for the purpose determining the eligibility of the Proposed Class C Holder to acquire Class C Notes of the Issuer. The Proposed Class C Holder agrees to provide, if requested, any additional information that may be required to substantiate the Proposed Class C Holder's status as a Qualified Institutional Buyer or as a Qualified Purchaser or Knowledgeable Employee or as an Accredited Investor or to otherwise determine the eligibility of the Proposed Class C Holder to hold Class C Notes of the Issuer.

Signatures:

_____
(Name of Entity)

By: _____
(Signature)

_____
(Print Name and Title)

Date:

Exhibit B-9 – Form of Class C Note Certificate
PP050630

CONFIDENTIAL TREATMENT REQUESTED BY BRUNE & RICHARD LLP
ON BEHALF OF PATRIARCH PARTNERS LLC

INDEX

# Exhibit C

CONFIDENTIAL TREATMENT REQUESTED BY BRUNE & RICHARD LLP
ON BEHALF OF PATRIARCH PARTNERS LLC

PP050631

# MILBANK, TWEED, HADLEY & McCLOY LLP

### 1 CHASE MANHATTAN PLAZA

### NEW YORK, N.Y. 10005-1413

212-530-5000
FAX: 212-530-5219

**LOS ANGELES**
213-892-4000
FAX: 213-629-5063

**PALO ALTO**
650-739-7000
FAX: 650-739-7100

**WASHINGTON, D.C.**
202-835-7500
FAX: 202-835-7586

**LONDON**
44-207-448-3000
FAX: 44-207-448-3029

**MUNICH**
49-89-25559-3600
FAX: 49-89-25559-3700

**FRANKFURT**
49-69-7593-7170
FAX: 49-69-7593-8303

**TOKYO**
813-3504-1050
FAX: 813-3595-2790

**HONG KONG**
852-2971-4888
FAX: 852-2840-0792

**SINGAPORE**
65-6428-2400
FAX: 65-6428-2500

January 14, 2005

LaSalle Bank National Association,
  as Trustee under the below-referenced
  Indenture and as Preference Share Paying
  Agent under the below-referenced Preference
  Share Paying Agency Agreement

Each of the initial Holders of Notes and
Preference Shares referred to in
  the Indenture specified below

MBIA Insurance Corporation

IXIS Financial Products Inc.

IXIS Securities North America Inc.

Patriarch Partners XIV, LLC,
  as Collateral Manager

Zohar II 2005-1, Limited

Octaluna II, LLC

Ladies and Gentlemen:

      We have acted as special New York counsel to Zohar II 2005-1, Limited (the "Issuer"),
Zohar II 2005-1, Corp. (the "Co-Issuer" and, together with the Issuer, the "Obligors") and Zohar II 2005-
1, LLC (the "Zohar Subsidiary" and, together with the Obligors, the "Parties") in connection with the
Indenture dated as of January 12, 2005 (the "Indenture") among the Parties, MBIA Insurance
Corporation, as Credit Enhancer, IXIS Financial Products Inc., as agent for the holders of the Class A-1
Notes and the Class A-3 Notes (the "Class A-1 Note Agent" and the "Class A-3 Note Agent",
respectively), and LaSalle Bank National Association, as trustee (the "Trustee"), providing for, among
other things, the issuance by the Obligors of U.S.$250,000,000 of their Class A-1 floating rate senior

NY3:#7347996v7
CONFIDENTIAL TREATMENT REQUESTED BY BRUNE & RICHARD LLP
ON BEHALF OF PATRIARCH PARTNERS LLC

PP050632

secured revolving notes due 2017, U.S.$550,000,000 of their Class A-2 floating rate senior secured term notes due 2017, U.S.$200,000,000 of their Class A-3 floating rate senior secured delayed drawdown notes due 2017 and the issuance by the Issuer of U.S.$200,000,000 of its Class B zero coupon second priority secured notes due 2020. This opinion letter is delivered to you pursuant to Section 3.1(c)(i) of the Indenture.

    All capitalized terms used but not defined herein have the respective meanings given to such terms in the Indenture or, if not defined in the Indenture, in Annex I hereto. In addition, the following terms shall have the respective meanings given to such terms in the Uniform Commercial Code as currently in effect in the State of New York (the "UCC"): "Accessions", "Account Debtor", "Adverse Claim", "As-Extracted Collateral", "Authenticate", "Certificate of Title", "Chattel Paper", "Clearing Corporation", "Commercial Tort Claim", "Consumer Goods", "Equipment", "Financial Asset", "Fixture", "General Intangible", "Goods", "Instruction", "Instrument", "Negotiable Document", "Payment Intangible", "Proceeds", "Record", "Securities Account", "Securities Intermediary", "Security Entitlement" and "Uncertificated Security".

    In rendering the opinions expressed below, we have examined:

(a)    an executed copy of the Indenture;

(b)    the executed Class A Notes delivered on the date hereof;

(c)    an executed copy of the Preference Share Paying Agency Agreement;

(d)    an executed copy of the Management Agreement;

(e)    executed copies of the Note Purchase Agreements;

(f)    executed copies of the Note Subscription Agreements and executed copies of the Preference Share Subscription Agreements;

(g)    an executed copy of the Collateral Administration Agreement;

(h)    an executed copy of the Insurance and Indemnity Agreement;

(i)    an executed copy of the Credit Enhancement Premium Letter;

(j)    an executed copy of the letter agreement dated as of January 12, 2005 among the Issuer, IXIS Financial Products Inc., MMP-5 Funding, LLC, LaSalle Bank National Association, Patriarch Partners XIV, LLC, Ark II CLO 2000-1, Limited and Branch Banking and Trust Company, acknowledging that the Warehouse Advances and any other amounts payable under or in connection with the Warehouse Agreement or the transactions contemplated thereby have been paid in full;

(k)    an executed copy of the Placement Agreement (collectively with the documents in paragraphs (a) through (j) above, the "Opinion Documents");

(l)    the power of attorney issued by the Issuer in favor of Donald Puglisi dated January 12, 2005 (the "Power of Attorney"); and

CONFIDENTIAL TREATMENT REQUESTED BY BRUNE & RICHARD LLP
ON BEHALF OF PATRIARCH PARTNERS LLC

PP050633

(m)     such records of the Parties and such other documents as we have deemed necessary as a basis for the opinions expressed below.

In our examination, we have assumed the genuineness of all signatures, the authenticity of all documents submitted to us as originals and the conformity with authentic original documents of all documents submitted to us as copies. When relevant facts were not independently established, we have relied upon certificates of appropriate representatives of the Parties and upon representations made in or pursuant to the Opinion Documents.

In rendering the opinions expressed below, we have assumed, with respect to all of the documents referred to in this opinion letter, that (except, to the extent set forth in the opinions expressed below, as to the Parties):

(i)     such documents have been duly authorized by, executed and delivered by, and constitute legal, valid, binding and enforceable obligations of, all of the parties to such documents;

(ii)    all signatories to such documents have been duly authorized; and

(iii)   all of the parties to such documents are duly organized and validly existing and have the power and authority (corporate or other) to execute, deliver and perform their respective obligations under such documents.

Based upon and subject to the foregoing and subject also to the comments and qualifications set forth below, and having considered such questions of law as we have deemed necessary as a basis for the opinions expressed below, we are of the opinion that:

1. The Co-Issuer is a corporation validly existing and in good standing under the laws of the State of Delaware. The Zohar Subsidiary is a limited liability company validly existing and in good standing under the laws of the State of Delaware.

2. Each of the Co-Issuer and the Zohar Subsidiary has all requisite corporate or limited liability company (as applicable) power to execute and deliver, and to perform its obligations and to incur liabilities under, the Opinion Documents to which it is a party.

3. The execution and delivery by each of the Co-Issuer and the Zohar Subsidiary of, and the performance and incurrence by each of the Co-Issuer and the Zohar Subsidiary of its respective obligations and liabilities under, each Opinion Document to which it is a party have been duly authorized by all necessary corporate or limited liability company action, as applicable, on its part.

4. Each Opinion Document to which the Issuer, the Co-Issuer or the Zohar Subsidiary is a party has been duly executed and delivered by the Issuer, the Co-Issuer or the Zohar Subsidiary, as the case may be.

5. The Notes executed and delivered on the date hereof comply as to form with the requirements of the Indenture.

6. Each Opinion Document (other than the Class A Notes) constitutes, and each of the Class A Notes (when duly authenticated by the Trustee in accordance with the terms of the Indenture and delivered and paid for by the respective Noteholders), will constitute, the legal, valid and binding obligation of the Parties party thereto, enforceable against the Parties party thereto in accordance with its terms, except as may be limited by bankruptcy, insolvency, reorganization, moratorium, fraudulent

NY3:#7347996v7
CONFIDENTIAL TREATMENT REQUESTED BY BRUNE & RICHARD LLP
ON BEHALF OF PATRIARCH PARTNERS LLC

3

PP050634

conveyance or transfer or other similar laws relating to or affecting the rights of creditors generally (and, with respect to the Issuer, to the possible judicial application of foreign laws or governmental action affecting the rights of creditors generally) and except as the enforceability of the Opinion Documents is subject to the application of general principles of equity (regardless of whether considered in a proceeding in equity or at law), including, without limitation, (a) the possible unavailability of specific performance, injunctive relief or any other equitable remedy and (b) concepts of materiality, reasonableness, good faith and fair dealing.

7.  No authorization, approval or consent of, and no filing or registration with, any governmental or regulatory authority or agency of the United States of America or the State of New York or, in the case of the Co-Issuer, under the Delaware General Corporation Law or, in the case of the Zohar Subsidiary, under the Delaware Limited Liability Company Act, is required on the part of any Party for the execution or delivery by any Party of, or for the performance or incurrence by any Party of any obligations or liabilities under, any of the Opinion Documents to which it is a party.

8.  The execution and delivery by each of the Parties of, and the performance and incurrence by such Person of its respective obligations and liabilities under, the Opinion Documents to which it is party do not and will not violate any applicable law, rule or regulation of the United States of America or the State of New York or, in the case of the Co-Issuer, the Delaware General Corporation Law or, in the case of the Zohar Subsidiary, the Delaware Limited Liability Company Act. The execution and delivery by the Co-Issuer and/or the Zohar Subsidiary of, and the performance and incurrence by such Person of its respective obligations and liabilities under, the Opinion Documents to which it is a party do not and will not violate any provision of its respective constitutive documents.

9.  It is not necessary, in connection with the placement of the Notes or the Preference Shares, in the manner contemplated by the Placement Agreement, to register the Notes or the Preference Shares under the Securities Act or to qualify the Indenture under the Trust Indenture Act of 1939, as amended, or the rules and regulations of the Securities and Exchange Commission applicable to an indenture that is qualified thereunder; provided that we express no opinion as to when and under what circumstances the Notes or the Preference Shares may be reoffered or resold (other than resales in compliance with the terms set forth in the Indenture and the Preference Share Paying Agency Agreement) without such registration or qualification.

10.  As of the date hereof, upon the issuance of the Notes, none of the Parties nor the pool of Collateral is an "investment company" required to register under the Investment Company Act.

11.  The Indenture is effective to create, in favor of the Trustee for the benefit of the Secured Parties, a valid security interest under the UCC in all of the right, title and interest of each of the Issuer and the Zohar Subsidiary in, to and under the Collateral held by the Trustee as collateral security for the payment when due of the Secured Obligations, except that:

(a)  such security interest will continue in Collateral after its sale, exchange or other disposition and in any Proceeds thereof only to the extent provided in Section 9-315 of the UCC; and

(b)  such security interest in any portion of the Collateral in which the Issuer or the Zohar Subsidiary, as applicable, acquires rights after the commencement of a case under the Bankruptcy Code in respect of the Issuer may be limited by Section 552 of the Bankruptcy Code.

12. Insofar as the law of the State of New York is applicable thereto, the security interest referred to in paragraph 11 above in the types of Collateral described below will be perfected as described below:

(a)  Such security interest in that portion of the Collateral consisting of Accounts or General Intangibles (including Payment Intangibles) will be perfected by filing an appropriate financing statement with (i) in the case of the Issuer, the Recorder of Deeds in the District of Columbia under Article 9 of the Uniform Commercial Code as in effect on the date hereof in the District of Columbia and (ii) in the case of the Zohar Subsidiary, the Secretary of the State of Delaware under Article 9 of the Uniform Commercial Code as in effect on the date hereof in the State of Delaware.

(b)  Such security interest in that portion of the Collateral consisting of an Uncertificated Security will be perfected (i) by the issuer of such Uncertificated Security registering the Trustee as the registered owner of such Uncertificated Security or (ii) by such issuer agreeing with the Trustee that it will comply with Instructions originated by the Trustee without further consent by the Issuer or the Zohar Subsidiary, as applicable.

(c)  Such security interest in that portion of the Collateral consisting of a Security Entitlement will be perfected (i) by the Trustee becoming the Entitlement Holder of such Security Entitlement or (ii) by the Securities Intermediary whose records indicate the existence of such Security Entitlement agreeing that it will comply with Entitlement Orders originated by the Trustee without further consent by the Issuer or the Zohar Subsidiary, as applicable.

(d)  With respect to such security interest in that portion of the Collateral consisting of a Participation Interest, the steps required to perfect the same will depend upon how the Participation Interest is classified under the UCC. If the matter were properly presented, we are of the opinion that a court applying New York law would hold any one or more of the following:

(i)  if such Participation Interest is represented by a Participation Certificate, that such Participation Certificate is itself an Instrument; or

(ii)  that such Participation Interest constitutes a Payment Intangible consisting of a claim for the payment of money against the related Selling Institution (if a Participation Certificate does not constitute an Instrument) or a Payment Intangible against the obligor in respect of the underlying debt obligation.

As the matter is not free from doubt, our opinion addresses the steps required under the alternative treatments that could be accorded the Issuer's or the Zohar Subsidiary's rights under the Participation Interests under the UCC:

(1)  If a Participation Interest is represented by a Participation Certificate constituting an Instrument, and such Participation Certificate is in the possession of the applicable Selling Institution located in the State of New York, such security interest would be perfected when the Selling Institution Authenticates a Record acknowledging that it holds possession of such Instrument for the Trustee's benefit; and such perfected security interest would remain perfected thereafter so long as such Selling Institution continuously maintains possession of such Instrument in the State of New York.

(2)  If a Participation Interest constitutes a Payment Intangible such security interest would be perfected as provided in paragraph 12(a) above.

CONFIDENTIAL TREATMENT REQUESTED BY BRUNE & RICHARD LLP
ON BEHALF OF PATRIARCH PARTNERS LLC

(e) To the extent not expressly covered by the foregoing subparagraphs of this paragraph 12, such security interest in that portion of the Collateral consisting of Proceeds may be perfected as and to the extent provided in Section 9-315 of the UCC.

Anything in this paragraph 12 to the contrary notwithstanding, compliance with a statute, regulation or treaty described in Section 9-311(a)(1) of the UCC is required in order to perfect such security interest in any portion of the Collateral that is subject to any such statute, regulation or treaty.

13.  With respect to the security interest referred to in paragraph 11 above in any Collateral perfected as described in paragraph 12 above:

(a) if such Collateral consists of an Uncertificated Security and such security interest therein is perfected by the Trustee in the manner specified in subparagraph (b) of paragraph 12 above for value and without notice of any Adverse Claim (within the meaning of Section 8-105 of the UCC) to the Uncertificated Security, then the Trustee will acquire such security interest free of any Adverse Claim (including, without limitation, any security interest granted to any third party); and

(b) if such Collateral consists of a Security Entitlement and such security interest therein is perfected by the Trustee in the manner specified in subparagraph (c) of paragraph 12 above for value without notice of any Adverse Claim (within the meaning of Section 8-105 of the UCC) to the Financial Asset pertaining to such Security Entitlement, then (i) an action based on an Adverse Claim (including, without limitation, any security interest granted to any third party) to the Financial Asset pertaining to such Security Entitlement, whether framed in conversion, replevin, constructive trust, equitable lien or other theory, may not be asserted against the Trustee and (ii) such perfected security interest will have priority over all other security interests theretofore or thereafter created under the UCC (provided that (x) if the Trustee and another Person both have control over such Security Entitlement, their interests will rank in priority of time of (1) the Securities Intermediary's agreement to comply with the Entitlement Orders of the Trustee and such other Person with respect to Securities Entitlements carried or to be carried in the Securities Account, if such security interest is perfected by the Trustee and such other Person in the manner specified in clause (c)(ii) of paragraph 12 above, or (2) the Trustee's and such other Person's becoming the Person for whom the Securities Account in which the Security Entitlement is carried, is maintained, if such security interest is perfected by the Trustee in the manner specified in clause (c)(i) of paragraph 12 above, except that a Securities Intermediary as purchaser will have priority over the Trustee unless otherwise agreed by the Securities Intermediary, and (y) such priority will be subject to Section 8-511 of the UCC).

14.  While there is no authority addressing an instrument like the Class A Notes, the Class A Notes will be treated as debt for U.S. federal income tax purposes.

15.  The Issuer will, for so long as all of its equity (as so characterized for U.S. federal income tax purposes) is owned by a single person, be treated as a disregarded entity and otherwise will be treated as a partnership and the Issuer will not be treated as a corporation or as a publicly traded partnership taxed as a corporation for U.S. federal income tax purposes. The Zohar Subsidiary will, for so long as it is wholly owned by the Issuer, be disregarded for U.S. federal income tax purposes.

16. The Co-Issuer will not be treated as owner of the Collateral or any interest therein for U.S. federal income tax purposes.

The foregoing opinions are subject to the following comments and qualifications:

(A) We express no opinions as to provisions in any agreement providing for indemnification, contribution or exculpation (and further note that the effectiveness of such provisions may be limited by (i) laws rendering unenforceable indemnification contrary to federal or state securities laws and the public policy underlying such laws and (ii) laws limiting the enforceability of provisions exculpating or exempting a party from, or requiring indemnification of a party for, its own action or inaction, to the extent such action or inaction involves gross negligence, recklessness or willful or unlawful conduct).

(B) The enforceability of provisions in the Opinion Documents to the effect that terms may not be waived or modified except in writing may be limited under certain circumstances.

(C) We express no opinion as to (i) the effect of the laws of any jurisdiction in which any Secured Party is located (other than the State of New York) that limit the interest payable in respect of the Notes; (ii) the waiver of stay and extension laws in Section 5.16 of the Indenture; (iii) Section 7.8(a)(ii) of the Indenture; (iv) Section 18.10 of the Indenture, Section 7.08 of each Class A-1 Note Purchase Agreement, Section 5.07 of the Class A-3 Note Purchase Agreement, Section 8.2 of the Preference Share Paying Agency Agreement and Section 7.07 of the Insurance and Indemnity Agreement (and any similar provisions in any of the other Opinion Documents), insofar as such provisions relate to the subject matter jurisdiction of the United States District Court for the Southern District of New York to adjudicate any controversy related to the Opinion Documents; (v) the waiver of inconvenient forum set forth in Section 18.10 of the Indenture, Section 7.08 of each Class A-1 Note Purchase Agreement, Section 5.07 of the Class A-3 Note Purchase Agreement, Section 8.2 of the Preference Share Paying Agency Agreement and Section 7.07 of the Insurance and Indemnity Agreement (and any similar provisions in any of the other Opinion Documents) with respect to proceedings in the United States District Court for the Southern District of New York; (vi) Section 18.13 of the Indenture (and any similar provisions in any of the other Opinion Documents); (vii) Section 5.03(a)(i) of the Insurance and Indemnity Agreement, to the extent that any of the "Transaction Documents" or the "Policy" (each as defined in the Insurance and Indemnity Agreement) or the Class A Notes may be materially modified; (viii) Section 2.05(p) or 2.08(a)(16) of the Insurance and Indemnity Agreement and (ix) provisions in any agreement providing for forfeitures or the recovery of amounts deemed to constitute penalties, or for liquidated damages, or acceleration of future amounts due.

(D) In rendering our opinions set forth in paragraph 4 above, we have assumed that the Power of Attorney has been duly authorized, executed and delivered by the Issuer and authorizes the person named therein to execute and deliver the Opinion Documents on the Issuer's behalf under Cayman Islands law.

(E) We wish to point out that the obligations of the Issuer and the Zohar Subsidiary, and the rights and remedies of the Trustee, in respect of the Collateral under the Indenture may be subject to possible limitations upon the exercise of remedial or procedural provisions contained in the Indenture, provided that such limitations do not, in our opinion (but subject to the other comments and qualifications set forth in this opinion letter), make the remedies and procedures that will be afforded to the Trustee and the Secured Parties inadequate for the practical realization of the substantive benefits purported to be provided to them by the Indenture.

(F)  In rendering the opinions expressed in paragraphs 7 and 8 above, we express no opinion as to any violation of, or any consent or approval required under, any law or regulations that may have become applicable to either Obligor as a result of the involvement of other parties in the transactions contemplated by the Transaction Documents because of the legal or regulatory status of such other parties or because of any other facts specifically pertaining to such other parties.  In addition, the opinions expressed in paragraphs 7 and 8 above relate only to those laws and regulations that, in our experience, are normally applicable to transactions of the type contemplated by the Transaction Documents or consents or approvals that are required under a court or administrative judgment, order or decree of which we have been specifically advised by the Issuer in connection with the rendering of such opinions.  Although we have not specifically considered the possible applicability to the Parties of any other laws, regulations, judgments or decrees, no facts have been disclosed to us, and nothing has come to our attention, that would cause us to conclude that the execution and delivery by any of the Parties of, or the performance or incurrence by any of the Parties of any obligations or liabilities under, any of the Opinion Documents to which it is a party, will cause any of the Parties to violate, or require any governmental consent or approval under, any applicable law, rule or regulation of the United States of America or the State of New York or, in the case of the Co-Issuer, under the Delaware General Corporation Law or, in the case of the Zohar Subsidiary, under the Delaware Limited Liability Company Act.

(G)  In rendering the opinions set forth in paragraphs 9 and 10 above, we have assumed (i) the accuracy of the acknowledgments, representations, warranties and certifications, and compliance with the agreements, contained in the Issuer Charter, the Indenture, the Placement Agreement and the certificates and the other documents delivered at the closing of the sale of the Notes and (ii) the accuracy of the acknowledgments, representations, warranties and agreements (1) deemed made by Holders of Global Notes pursuant to the Indenture and (2) made by the initial Holders of the Notes and the Preference Shares pursuant to the Note Purchase Agreements, the Note Subscription Agreements and the Preference Share Subscription Agreements.

(H)  We express no opinion as to the Investment Advisers Act of 1940, as amended, and the rules thereunder or to the effect of such act or rules thereunder on the legality, validity or enforceability of any agreement of the Parties.

(I)  Except as expressly provided in paragraphs 11 through 13 above, we express no opinion as to the creation, perfection or priority of any security interest in (or other lien on) any portion of the Collateral and, with respect to our opinions in paragraphs 11 through 13 above, (i) we express no opinion as to the creation, perfection or priority of any security interest in (or other lien on) any portion of the Collateral to the extent that, pursuant to Section 9-109(c) or 9-109(d) of the UCC, Article 9 of the UCC does not apply thereto, (ii) we express no opinion as to the creation, perfection or priority of any security interest in (or other lien on) any portion of the Collateral consisting of Goods that are or will be commingled with or processed into other Goods or are or will become Accessions to other Goods, or consisting of Chattel Paper, Negotiable Documents, Instruments, Fixtures, Consumer Goods, Commercial Tort Claims, registered copyrights, timber to be cut, minerals or the like (including oil and gas), Accounts arising from the sale of minerals or the like (including oil and gas), Equipment used in farming operations, farm products, Accounts or General Intangibles arising from or relating to the sale of farm products by a farmer or Consumer Goods or in Collateral covered by a Certificate of Title, (iii) we express no opinion as to the effect of any rule adopted by a Clearing Corporation governing rights and obligations among the Clearing Corporation and its participants in the Clearing Corporation, (iv) we express no opinion as to the creation, perfection or priority of any security interest in any obligations of the Government of the United States of America or any

agency or instrumentality thereof except for obligations subject to the Revised Book-Entry Rules, (v) we have assumed that each Instruction and Entitlement Order referred to herein is effective in accordance with Section 8-107 of the UCC and (vi) our opinions with respect to any Security Entitlement are subject to Part 5 of Article 8 of the UCC.

(J)  We wish to point out that the acquisition by the Issuer after the issuance of the Notes under the Indenture of any interest in any property that becomes subject to the lien of the Indenture may constitute a voidable preference under Section 547 of the Bankruptcy Code.

(K)  With respect to our opinion in paragraphs 12 and 13 above, we have assumed that (i) each Covered Account (and each sub-account thereof) is a Securities Account, (ii) the Custodian is and at all times will be a Securities Intermediary, (iii) with respect to each of the Covered Accounts (and each sub-account thereof), each Financial Asset credited thereto from time to time and each Security Entitlement therein, the local law of the Securities Intermediary's jurisdiction (within the meaning of Section 8-110(e) of the UCC) with respect to the Custodian is the law of the State of New York and (iv) with respect to Uncertificated Securities constituting Collateral, the local law of the issuer's jurisdiction (within the meaning of Section 8-110(e) of the UCC) is the law of the State of New York.

(L)  With respect to our opinions in paragraphs 12 and 13 above, we express no opinion as to (i) the effect, if any, of a bankruptcy, insolvency, receivership, conservatorship or similar event with respect to a Clearing Corporation or a Securities Intermediary or (ii) any lien, claim or right of set-off of a Clearing Corporation or a Securities Intermediary or any Federal Reserve Bank.

(M)  In rendering the opinions set forth in paragraphs 11 through 13 above, we have assumed that (i) the Issuer is a limited liability company organized under the laws of the Cayman Islands, (ii) the sole place of business of the Issuer has been at all times prior to the date hereof, is on the date hereof, and will continue to be, in the Cayman Islands, and (iii) Cayman Islands law does not generally require information concerning the existence of a nonpossessory security interest in collateral to be made generally available in a filing, recording or registration system as a condition or result of such security interest's obtaining priority over the rights of a lien creditor with respect to such collateral.  We express no opinion as to Cayman Islands law.

(N)  We express no opinion as to the existence of, or the right, title or interest of the Issuer in, to or under, any of the Collateral.  Except as expressly provided in paragraph 13 above, we express no opinion as to the priority of any security interest in any Proceeds (whether of such Collateral, such property or otherwise).

(O)  The effectiveness of the financing statements referenced in paragraph 12(a) above will lapse on the expiration of a five-year period from their date of filing, or (if later) five years from the last date as to which such financing statements were effective following the proper filing of continuation statements with respect thereto, unless continuation statements are filed within six months prior to the expiration of the applicable five-year period, and, if the Issuer or the Zohar Subsidiary so changes its name that the financing statements naming such Person as debtor become seriously misleading, the financing statements naming such Person as debtor will be ineffective to perfect a security interest in Collateral acquired by such Person more than four months after such change.

(P)  The opinions set forth in paragraphs 14, 15 and 16 above are based on the U.S. Internal Revenue Code of 1986, as amended, and U.S. Treasury regulations, administrative

NY3:#7347996v7
CONFIDENTIAL TREATMENT REQUESTED BY BRUNE & RICHARD LLP
ON BEHALF OF PATRIARCH PARTNERS LLC

PP050640

Respondents' Exhibit 8   pg. 382 of 447

pronouncements and judicial decisions thereunder ("Federal Income Tax Laws"), in each case as in effect on the date hereof. Federal Income Tax Laws are subject to change, possibly with retroactive effect. We undertake no obligation to update such opinions or otherwise advise you if any such Federal Income Tax Laws should change.  No rulings have been sought from the U.S. Internal Revenue Service regarding the issues addressed in such opinions and, in particular, in view of the absence of authority addressing a closely comparable transaction, there can be no assurance that the U.S. Internal Revenue Service or a court will agree with the opinions expressed. Such opinions assume that all parties will comply with the terms of, and procedures established under the various Opinion Documents and are subject to all of the qualifications, limitations and assumptions set forth herein.  In particular, where the Opinion Documents require the delivery of any opinion regarding federal income tax matters subsequent to the date hereof, we have assumed for purposes of our opinions set forth above in paragraphs 14, 15 and 16 that any such future opinion that is delivered will be complete and correct in all respects.

(Q)  Our opinions in paragraph 12(a) above, and our observations in paragraph (O) above, insofar as they relate to the perfection and the effect of perfection and non-perfection of security interests under the law of State of Delaware and the District of Columbia, are based solely upon a review of the relevant statutory text of Article 9 of the Uniform Commercial Code of the State of Delaware and Article 9 of the Uniform Commercial Code of the District of Columbia as displayed on LEXIS/NEXIS on January 11, 2005, without regard to the decisional law thereof.

We note in connection with paragraph (K) above that we have reviewed the Account Control Agreement, as of the date hereof, and it designates the law of the State of New York as the local law of the Securities Intermediary's jurisdiction.

The foregoing opinions are limited to matters involving the federal laws of the United States of America, the law of the State of New York, the Delaware General Corporation Law, the Delaware Limited Liability Company Act and (for purposes of paragraph 12(a) above) the law of the State of Delaware and the law of the District of Columbia, and we do not express any opinion as to the laws of any other jurisdiction. The foregoing opinions are based on the relevant laws as in effect on the date hereof, and we undertake no obligation to update such opinions or otherwise advise you if any such laws should change.

At the request of our clients, this opinion letter is provided to you by us in our capacity as special New York counsel to the Parties, and this opinion letter may not be relied upon by any Person other than you or for any purpose other than in connection with the transactions contemplated by the Indenture without, in each instance, our prior written consent; provided that each of Moody's and Standard & Poor's may rely on this opinion letter in connection with the transactions contemplated by the Indenture as if this opinion letter were also addressed to them.

Very truly yours,

Milbank, Tweed, Hadley & McCloy LLP

EKM/DJI/ARW

Annex I

DEFINED TERMS

"Covered Accounts" means, collectively, the Payment Account, the Issuer Interest Collection Account, the Zohar Subsidiary Interest Collection Account, the Issuer Principal Collection Account, the Zohar Subsidiary Principal Collection Account, the Credit Enhancement Payment Account, the Cash Collateral Account, the Unrestricted Collateral Account, the Expense Account, the Closing Expense Account, the Professional Fee Account, the Cash Reserve Account, the Class A Holder Collateral Account, the Unfunded Revolver Discount Account, the Custodial Account, the Rollover Proceeds Account and any Hedge Counterparty Collateral Account.

"Participation Certificate" means a participation certificate evidencing a Participation Interest.

"Revised Book-Entry Rules" means 31 C.F.R. § 357 (Treasury bills, notes and bonds); 12 C.F.R. § 615 (book-entry securities of the Farm Credit Administration); 12 C.F.R. §§ 987 (book-entry securities of the Federal Home Loan Banks); 24 C.F.R. § 81 (book-entry securities of the Federal National Mortgage Association and the Federal Home Loan Mortgage Corporation); 12 C.F.R. § 1511 (book-entry securities of the Resolution Funding Corporation); 31 C.F.R. § 354 (book-entry securities of the Student Loan Marketing Association); and 24 C.F.R. 350 (book-entry securities of the Government National Mortgage Association).

NY3:#7347996v7
CONFIDENTIAL TREATMENT REQUESTED BY BRUNE & RICHARD LLP
ON BEHALF OF PATRIARCH PARTNERS LLC

PP050642

INDEX

# Exhibit D

CONFIDENTIAL TREATMENT REQUESTED BY BRUNE & RICHARD LLP
ON BEHALF OF PATRIARCH PARTNERS LLC

PP050643

# MAPLES AND CALDER
### BVI | CAYMAN | HONG KONG | JERSEY | LONDON

To the addressees named in the First Schedule

14 January 2005

Dear Sirs,

**Re:  ZOHAR II 2005-1, LIMITED (the "Company")**

We have acted as counsel as to Cayman Islands law to the Company in connection with (i) the issue by the Company (on a joint and several basis with Zohar II 2005-1, Corp. (the "**Co-Issuer**")) of U.S.$250,000,000 Class A-1 Floating Rate Senior Secured Revolving Notes Due 2017 (the "**Class A-1 Notes**"), U.S.$550,000,000 Class A-2 Floating Rate Senior Secured Term Notes Due 2017 (the "**Class A-2 Notes**") and 200,000,000 Class A-3 Floating Rate Senior Secured Delayed Drawdown Notes due 2017 (the "**Class A-3 Notes**" and, together with the Class A-1 Notes and Class A-2 Notes, the "**Class A Notes**"), (ii) the issue by the Company of U.S.$200,000,000 Class B Zero Coupon Second Priority Secured Notes Due 2020 (the "**Class B Notes**") and Class C Zero Coupon Third Priority Secured Notes Due 2020 (the "**Class C Notes**" and together with the Class A Notes and the Class B Notes, the "**Notes**") and (iii) the issue by the Company of up to 99,999 preference shares of US$0.01 par value each (the "**Preference Shares**").

## 1    DOCUMENTS REVIEWED

We have reviewed originals, copies, drafts or conformed copies of the following documents:

1.1    the Certificate of Incorporation on Change of Name and the Amended and Restated Memorandum and Articles of Association (the "**Memorandum and Articles of Association**") of the Company as registered or adopted on 12 January 2005;

1.2    the minutes of the meetings of the Board of Directors of the Company held on 3 November 2004 and 12 January 2005 and the corporate records of the Company maintained at its registered office in the Cayman Islands;

**Maples and Calder**
PO Box 309GT, Ugland House
South Church Street
George Town, Grand Cayman
Cayman Islands

Tel: +1 345 949 8066
Fax. +1 345 949 8080

www.maplesandcalder.com

CONFIDENTIAL TREATMENT REQUESTED BY BRUNE & RICHARD LLP
ON BEHALF OF PATRIARCH PARTNERS LLC

PP050644

# MAPLES AND CALDER

BVI | CAYMAN | HONG KONG | JERSEY | LONDON

1.3    the Power of Attorney dated 12 January 2005 issued by the Company in favour of Donald Puglisi (the "**Power of Attorney**");

1.4    the Amended and Restated Administration Agreement dated 12 January 2005 between the Company and Maples Finance Limited (the "**Share Trustee**") as administrator (the "**Administration Agreement**");

1.5    the Amended and Restated Declaration of Trust dated 12 January 2005 entered into by the Share Trustee (the "**Declaration of Trust**");

1.6    a Certificate of Good Standing dated 7 January 2005 issued by the Registrar of Companies (the "**Certificate of Good Standing**");

1.7    a certificate from an authorised signatory of the Share Trustee, a copy of which is attached (the "**Trustee Certificate**");

1.8    a certificate from a Director of the Company, a copy of which is attached (the "**Director's Certificate**"); and

1.9    the documents listed in the Second Schedule hereto;

The documents referred to in paragraphs 1 to 16 of the Second Schedule hereto are collectively referred to as the "**Transaction Documents**".

## 2      ASSUMPTIONS

The following opinion is given only as to, and based on, circumstances and matters of fact existing and known to us on the date of this opinion. This opinion only relates to the laws of the Cayman Islands which are in force on the date of this opinion. In giving this opinion we have relied (without further verification) as to factual matters upon the completeness and accuracy of the Director's Certificate, Trustee Certificate and the Certificate of Good Standing. We have also relied upon the following assumptions, which we have not independently verified:

2.1    the Transaction Documents, the Administration Agreement and the Notes have been or will be authorised and duly executed, delivered and, if applicable, authenticated by or on behalf of all relevant parties (other than the Company or the Share Trustee as a matter of Cayman Islands law) in accordance with all relevant laws (other than the laws of the Cayman Islands);

2.2    the Transaction Documents and the Notes are, or will be, legal, valid, binding and enforceable against all relevant parties in accordance with their terms under New York law and all other relevant laws (other than the laws of the Cayman Islands);

2.3    the choice of New York law as the governing law of the Transaction Documents and the Notes and the choice of Cayman Islands law as the governing law of the Administration Agreement and the Declaration of Trust has been made in good faith and, in the case of the Transaction Documents and the Notes, would be regarded as a valid and binding selection which will be upheld by the courts of New York as a matter of New York law and all other relevant laws (other than the laws of the Cayman Islands);

CONFIDENTIAL TREATMENT REQUESTED BY BRUNE & RICHARD LLP
ON BEHALF OF PATRIARCH PARTNERS LLC

PP050645

# MAPLES AND CALDER

BVI | CAYMAN | HONG KONG | JERSEY | LONDON

2.4     copy documents, conformed copies or drafts of documents provided to us are true and complete copies of, or in the final forms of, the originals;

2.5     all signatures, initials and seals are genuine;

2.6     the power, authority and legal right of all parties under all relevant laws and regulations (other than, with respect to the Company and the Share Trustee, the laws of the Cayman Islands) to enter into, execute, deliver and perform their respective obligations under the Transaction Documents, the Administration Agreement, the Declaration of Trust and the Notes;

2.7     under the laws of New York and all other relevant laws (other than the laws of the Cayman Islands) including, without prejudice to the generality of the foregoing, the governing law and situs of the property subject to the security interests created pursuant to the Indenture (the "**Secured Property**"), the Indenture creates a valid first priority security interest over the Secured Property, any further steps required as a matter of New York law or other relevant laws (other than the laws of the Cayman Islands) to perfect such security interest or to regulate its ranking in point of priority have been taken and there are no prior encumbrances or interests over the Secured Property;

2.8     none of the Secured Property is situated in the Cayman Islands or governed by Cayman Islands law (other than the Company's right, title and interest in and to the Administration Agreement);

2.9     the capacity, power and legal right under all relevant laws (other than the laws of the Cayman Islands) of the attorneys-in-fact named in the Power of Attorney to act as attorneys-in-fact on behalf of the Company;

2.10    the Power of Attorney has not been revoked, terminated or amended and remains in full force and effect;

2.11    there is nothing under any law (other than the law of the Cayman Islands) which would or might affect the opinions hereinafter appearing. Specifically, we have made no independent investigation of the laws of New York; and

2.12    the Share Trustee will at all times after the date hereof maintain its registration and good standing pursuant to the Companies Law (2004 Revision) of the Cayman Islands and will maintain in good standing its license pursuant to the Banks and Trust Companies Law (2003 Revision) enabling it to act as trustee under the Declaration of Trust.

## 3    OPINIONS

Based upon, and subject to, the foregoing assumptions and the qualifications set out below, and having regard to such legal considerations as we deem relevant, we are of the opinion that:

CONFIDENTIAL TREATMENT REQUESTED BY BRUNE & RICHARD LLP
ON BEHALF OF PATRIARCH PARTNERS LLC

PP050646

# MAPLES AND CALDER

BVI | CAYMAN | HONG KONG | JERSEY | LONDON

3.1    Each of the Company and the Share Trustee has been duly incorporated with limited liability and is validly existing and in good standing under the laws of the Cayman Islands.

3.2    Each of the Company and the Share Trustee has full power and authority under its Memorandum and Articles of Association to enter into, execute and perform its obligations under the Transaction Documents, the Administration Agreement and the Notes and to issue the Notes and the Preference Shares in the case of the Company and to enter into, execute and perform its obligations under the Administration Agreement and the Declaration of Trust in the case of the Share Trustee.

3.3    The issue of the Notes and the Preference Shares, the execution and delivery of the Transaction Documents, the Notes, the Administration Agreement and share certificates in respect of the Preference Shares by the Company and the performance by the Company of its obligations thereunder and the execution and delivery of the Administration Agreement and the Declaration of Trust by the Share Trustee and the performance by the Share Trustee of its obligations thereunder do not conflict with or result in a breach of any of the terms or provisions of the Memorandum and Articles of Association of the Company or the Share Trustee or any law, public rule or regulation applicable to the Company or the Share Trustee in the Cayman Islands currently in force and do not conflict with or result in a breach of or constitute a default under any existing and published rule, regulation, order or decree of any governmental authority or agency or any official body in the Cayman Islands.

3.4    The Power of Attorney has been duly authorised and executed by the Company and constitutes each of the persons named therein as a duly authorised, approved and appointed attorney-in-fact of the Company with the powers and authorities therein specified.

3.5    The execution, delivery and performance of the Transaction Documents, the Notes and the Administration Agreement has been authorised by and on behalf of the Company and the execution, delivery and performance of the Administration Agreement and the Declaration of Trust have been authorised by and on behalf of the Share Trustee and, assuming the Transaction Documents and the Administration Agreement have been executed and delivered by an authorised signatory of the Company and assuming the Administration Agreement and Declaration of Trust have been executed and delivered by an authorised signatory of the Share Trustee, the Transaction Documents and the Administration Agreement and the Declaration of Trust have been duly executed and delivered on behalf of the Company and the Share Trustee, as the case may be, and constitute the legal, valid and binding obligations of the Company and the Share Trustee enforceable in accordance with their terms.

3.6    The Notes have been duly authorised by the Company and when the Notes are signed in facsimile or manually by a Director or other authorized signatory on behalf of the Company and, if appropriate, authenticated in the manner set forth in the Indenture and delivered against due payment, as applicable, and when appropriate entries are made in the note register of the Company pursuant to the Indenture as the case may be, the Notes will be duly executed, issued and delivered and will constitute the legal, valid and binding obligations of the Company enforceable in accordance with their respective terms.

CONFIDENTIAL TREATMENT REQUESTED BY BRUNE & RICHARD LLP
ON BEHALF OF PATRIARCH PARTNERS LLC

PP050647

# MAPLES AND CALDER

BVI | CAYMAN | HONG KONG | JERSEY | LONDON

3.7 No authorisations, consents, approvals, licenses, validations or exemptions are required by law from any governmental authorities or agencies or other official bodies in the Cayman Islands in connection with:

    3.7.1 the execution, creation or delivery (and offering or issue, where applicable) of the Transaction Documents, the Notes, the Administration Agreement, the Declaration of Trust or share certificates in respect of the Preference Shares;

    3.7.2 the issue of the Preference Shares;

    3.7.3 subject to the payment of the appropriate stamp duty (as noted in paragraph 4.2 below), enforcement of the Transaction Documents, the Notes, the Administration Agreement and the Declaration of Trust; or

    3.7.4 the performance by the Company or the Share Trustee of its obligations under any of the Transaction Documents, the Notes, the Administration Agreement or the Declaration of Trust.

3.8 No taxes, fees or charges (other than stamp duty and as noted in paragraph 4.2 below) are payable (either by direct assessment or withholding) to the government or other taxing authority in the Cayman Islands under the laws of the Cayman Islands in respect of:

    3.8.1 the creation, offering, issue or delivery of the Notes or the acquisition, ownership or disposal of the Notes by the holders thereof;

    3.8.2 the creation, offering, issue of the Preference Shares or the acquisition, ownership or disposal of the Preference Shares by the holders thereof;

    3.8.3 the execution or delivery of the Transaction Documents, the Notes, the Administration Agreement, the Declaration of Trust or share certificates in respect of the Preference Shares;

    3.8.4 the enforcement of the Transaction Documents, the Administration Agreement or the Declaration of Trust and the Notes;

    3.8.5 the acquisition, ownership or disposal of the Pledged Obligations (as defined in the Indenture) by the Company; or

    3.8.6 payments made under, or pursuant to, the Transaction Documents, the Notes, the Preference Shares and the Administration Agreement or the Declaration of Trust.

The Cayman Islands currently have no form of income, corporate or capital gains tax and no estate duty, inheritance tax or gift tax.

3.9 The courts of the Cayman Islands will observe and give effect to the choice of New York law as the governing law of the Transaction Documents and the Notes and to the

CONFIDENTIAL TREATMENT REQUESTED BY BRUNE & RICHARD LLP
ON BEHALF OF PATRIARCH PARTNERS LLC
JMD/60856/136463776

PP050648

# MAPLES AND CALDER

BVI | CAYMAN | HONG KONG | JERSEY | LONDON

choice of Cayman Islands law as the governing law of the Administration Agreement and the Declaration of Trust.

3.10   Based solely on our inspection of the Register of Writs and Other Originating process in the Grand Court of the Cayman Islands from the date of incorporation of the Company there were no actions or petitions pending against the Company in the courts of the Cayman Islands as at close of business in the Cayman Islands on 12 January 2005.

3.11   Although there is no statutory enforcement in the Cayman Islands of judgments obtained in New York, the courts of the Cayman Islands will recognise a foreign judgment as the basis for a claim at common law in the Cayman Islands without any reexamination of the merits provided such judgment:

   3.11.1   is given by a competent foreign court;

   3.11.2   imposes on the judgment debtor a liability to pay a liquidated sum for which the judgment has been given;

   3.11.3   is final;

   3.11.4   is not in respect of taxes, a fine or a penalty; and

   3.11.5   was not obtained in a manner and is not of a kind the enforcement of which is contrary to the public policy of the Cayman Islands.

3.12   In relation to the Indenture:

   3.12.1   the courts of the Cayman Islands will recognise the security interest created by the Indenture;

   3.12.2   no steps are required as a matter of Cayman Islands law to perfect such security interest, or to regulate its ranking in order of priority; and

   3.12.3   the security interest created by the Indenture will have priority over any claims by third parties (other than those preferred by law) including any liquidator or a creditor of the Company, subject in the case of a winding up of the Company in a jurisdiction other than the Cayman Island to any provisions of the laws of that jurisdiction as to priority of claims in a winding up.

3.13   It is not necessary to ensure the legality, validity, enforceability or admissibility in evidence of the Transaction Documents, the Declaration of Trust, the Administration Agreement or the Notes that any document be filed, recorded or enrolled with any governmental authority or agency or any official body in the Cayman Islands.

3.14   Subject to the express subordination of the various classes of Notes as set out in the Indenture and obligations of the Company as secured in accordance with the provisions of and priority set forth in the Indenture, the obligations of the Company under the Transaction Documents and the Notes will rank at least *pari passu* in priority of payment

CONFIDENTIAL TREATMENT REQUESTED BY BRUNE & RICHARD LLP
ON BEHALF OF PATRIARCH PARTNERS LLC

PP050649

# MAPLES AND CALDER

BVI | CAYMAN | HONG KONG | JERSEY | LONDON

with all other unsecured un-subordinated indebtedness of the Company, other than indebtedness which is preferred by virtue of any provision of the laws of the Cayman Islands of general application. Under Cayman Islands law, a liquidator of the Company is required by the Companies Law (2004 Revision) to take into account and give effect to any agreement between the Company and any creditors (such as is contained in the Indenture) that the claims of such creditors be subordinated or otherwise deferred to the claims of any other creditors.

3.15    The Company is free to acquire, sell and hold foreign currencies and to issue securities and obligations denominated in a foreign currency under the laws of the Cayman Islands. The Cayman Islands currently have no foreign exchange control laws or regulations.

3.16    Based solely on the documents described in paragraphs 1.1 to 1.9 and the facts represented therein at the date of this opinion, the holding of the issued ordinary shares of the Company by the Share Trustee, as trustee pursuant to the Declaration of Trust and the authority granted to the Share Trustee under the Administration Agreement would not result as a matter of Cayman Islands law in the Company being regarded as a beneficially owned subsidiary of the Share Trustee. In the event of bankruptcy, composition, liquidation, winding up, insolvency, reorganisation, moratorium, receivership or other similar proceeding of the Share Trustee on the date of this opinion no unsecured creditor, liquidator, bankruptcy trustee, receiver or similar official of the Share Trustee would have any right to the Secured Property or the undertaking or assets of the Company (except by way of subrogation to the extent of any claims against the Company).

3.17    The law of the Cayman Islands does not provide for the "perfection" of interests granted or created by way of security by filing or recording in the Cayman Islands other than in relation to certain ships, aircraft, land in the Cayman Islands, limited partnership interests in exempted limited partnerships established in the Cayman Islands and certain "personal chattels" as defined in the Bills of Sale Law (2000 Revision).

3.18    There is no applicable money or interest limitation law in the Cayman Islands which may restrict the recovery of any amount expressed to be payable under or in connection with the Notes.

3.19    The authorised share capital of the Company is US$350 comprising 250 ordinary shares of a par value of US$1.00 each and 100,000 Preference Shares of a par value of US$0.01 each. The issue of the Preference Shares has been duly authorised by the Company. Assuming that the subscription monies therefor have been paid in full to the Company and the Preference Shares have been issued in accordance with the Memorandum and Articles of Association and related subscription agreement, the Preference Shares will be duly issued as fully paid and non-assessable shares and, upon entry on the share register of the Company for the Preference Shares, the purchasers of the Preference Shares will be the registered holder of such number of Preference Shares as will be noted against their respective names on such share register.

3.20    None of the parties to the Transaction Documents, a holder of a Note or a holder of a Preference Share (other than the Company or the Share Trustee) is or will be deemed to be resident, domiciled or carrying on business in the Cayman Islands solely by

CONFIDENTIAL TREATMENT REQUESTED BY BRUNE & RICHARD LLP
ON BEHALF OF PATRIARCH PARTNERS LLC

PP050650

# MAPLES and CALDER

BVI | CAYMAN | HONG KONG | JERSEY | LONDON

reason of entering into the Transaction Documents or holding a Note or a Preference Share in the Company.

3.21    The Indenture is in such legal form that it may be enforced under the laws of the Cayman Islands (subject to the payment of appropriate stamp duty).

3.22    The submission by the Company in the Transaction Documents to the non-exclusive jurisdiction of New York is valid and binding upon the Company.

3.23    The Company is not entitled to any immunity under the laws of the Cayman Islands whether characterised as sovereign immunity or otherwise for any legal proceedings in the Cayman Islands to enforce or to collect upon the Transaction Documents or the Notes (including, without limitation, immunity from service of process, immunity from jurisdiction prior to entry of judgment or from attachment in aid of execution upon a judgment in respect of itself or its property).

3.24    None of the Trustee, IXIS, the Credit Enhancer, the Collateral Manager (each as defined in the Second Schedule hereto) or any holder of a Note or a Preference Share is required to be licensed, qualified or otherwise entitled to carry on business in the Cayman Islands in order to enforce its rights under, or by reason of the execution or delivery and performance of, any of the Transaction Documents to which it is a party.

3.25    Although there is no direct judicial authority in the Cayman Islands with respect to limited recourse provisions, we are of the opinion that contractual provisions providing for a secured debt to be extinguished after exhaustion of the assets on which such debt is secured would be valid and effective both pre and post insolvency as a matter of Cayman Islands law, assuming the same to be the case under the proper law of the contract, and after the extinction of the debt a secured creditor would not have *locus standii* to make a claim in respect of such extinguished debt whether for its repayment, for the winding-up of the company or otherwise. We are not aware of any reasons why the Cayman Islands courts would seek to expand the liabilities of the Company beyond those assumed under the Transaction Documents as properly interpreted in accordance with their governing law, and if all relevant liabilities have been extinguished there can exist no basis for filing a petition to wind up the Company. The discretion of the court under section 94 of the Companies Law (2004 Revision) to wind up a Cayman Islands company if it is of the opinion that it is just and equitable to do so should not alter the fundamental question of enforceability of obligations.

3.26    Based on our inspection of the Register of Mortgages and Charges of the Company on the date hereof, we confirm that entries have been made in the Register of Mortgages and Charges of the Company in respect of the Indenture.

## 4.    QUALIFICATIONS

The opinions expressed above are subject to the following qualifications:

4.1    The term **"enforceable"** as used above means that the obligations assumed by the Company or the Share Trustee under the Transaction Documents, the Notes and the Preference Shares are of a type which the courts of the Cayman Islands will enforce.

CONFIDENTIAL TREATMENT REQUESTED BY BRUNE & RICHARD LLP
ON BEHALF OF PATRIARCH PARTNERS LLC
JMD/608563/13646371v6

PP050651

# MAPLES AND CALDER

BVI | CAYMAN | HONG KONG | JERSEY | LONDON

It does not mean that those obligations will necessarily be enforced in all circumstances in accordance with their terms. In particular:

4.1.1   enforcement may be limited by bankruptcy, insolvency, liquidation, reorganisation, readjustment of debts or moratorium or other laws of general application relating to or affecting the rights of creditors;

4.1.2   enforcement may be limited by general principles of equity. For example, equitable remedies such as specific performance may not be available, *inter alia*, where damages are considered to be an adequate remedy;

4.1.3   some claims may become barred under the statutes of limitation or may be or become subject to defenses of set-off, counterclaim, estoppel and similar defenses;

4.1.4   where obligations are to be performed in a jurisdiction outside the Cayman Islands, they may not be enforceable in the Cayman Islands to the extent that performance would be illegal under the laws of that jurisdiction;

4.1.5   the Cayman Islands court has jurisdiction to give judgment in the currency of the relevant obligation and statutory rates of interest payable upon judgments will vary according to the currency of the judgment. If the Company becomes insolvent and is made subject to a liquidation proceeding, the Cayman Islands court will require all debts to be proved in a common currency, which is likely to be the "functional currency" of the Company determined in accordance with applicable accounting principles. Currency indemnity provisions have not been tested, so far as we are aware, in the courts of the Cayman Islands;

4.1.6   obligations to make payments that may be regarded as penalties will not be enforceable;

4.1.7   the courts of the Cayman Islands may decline to exercise jurisdiction in relation to substantive proceedings brought under or in relation to the Transaction Documents in matters where they determine that such proceedings may be tried in a more appropriate forum; and

4.1.8   a company cannot, by agreement or in its articles of association, restrict the exercise of a statutory power and there exists doubt as to enforceability of any provision in the Transaction Documents whereby the Company covenants not to exercise powers specifically given to its shareholders by the Companies Law (2004 Revision) of the Cayman Islands, including, without limitation, the power to increase its authorised share capital, amend its memorandum and articles of association, or present a petition to a Cayman Islands court for an order to wind up the Company.

4.2   Cayman Islands stamp duty may be payable if the original Transaction Documents or the Notes are executed in, or after execution brought to, the Cayman Islands. The failure to pay such stamp duty on execution of a document outside the Cayman Islands will not per se prejudice its validity or enforceability so long as such stamp duty is

CONFIDENTIAL TREATMENT REQUESTED BY BRUNE & RICHARD LLP
ON BEHALF OF PATRIARCH PARTNERS LLC
JMD/60856J/13646377v6

PP050652

# MAPLES AND CALDER

BVI | CAYMAN | HONG KONG | JERSEY | LONDON

paid when such document is brought to the Cayman Islands in order to make it admissible in evidence before a Cayman Islands court.

4.3    To maintain the Company in good standing under the laws of the Cayman Islands, annual filing fees must be paid and returns made to the Registrar of Companies.

4.4    The Company must make an entry in its Register of Mortgages and Charges in respect of all mortgages and charges created under the Transaction Documents in order to comply with Section 54 of the Companies Law (2004 Revision) of the Cayman Islands; failure by the Company to comply with this requirement does not operate to invalidate any mortgage or charge though it may be in the interests of the secured parties that the Company should comply with the statutory requirements.

4.5    The obligations of the Company may be subject to restrictions pursuant to United Nations sanctions as implemented under the laws of the Cayman Islands.

4.6    A certificate, determination, calculation or designation of any party to the Transaction Documents as to any matter provided therein might be held by a Cayman Islands court not to be conclusive final and binding if, for example, it could be shown to have an unreasonable or arbitrary basis, or in the event of manifest error.

4.7    In principle a Cayman Islands court will award costs and disbursements in litigation in accordance with the relevant contractual provisions but there remains some uncertainty as to the way in which the rules of the Grand Court will be applied in practice. Whilst it is clear that costs incurred prior to judgment can be recovered in accordance with the contract, it is likely that post-judgment costs (to the extent recoverable at all) will be subject to taxation in accordance with Grand Court Rules Order 62.

4.8    We reserve our opinion as to the extent to which a Cayman Islands court would, in the event of any relevant illegality, sever the offending provisions and enforce the remainder of the transaction of which such provisions form a part, notwithstanding any express provisions in this regard.

4.9    We note that it is contemplated that certain of the Transaction Documents will be dated "as of" a certain date. Whilst parties to an agreement may agree as a matter of contract, *inter se*, that the rights and obligations therein contained should, in so far as the same may be possible, take effect from a date prior to the date of execution and delivery, if as a matter of fact that agreement was executed and delivered after the date "as of" which it is expressed to be executed and delivered, the agreement only comes into effect on the actual date of execution and delivery and, with respect to third parties, the agreement in so far as the rights of third parties may be available thereunder, take effect only from the actual date of execution and delivery.

4.10    We make no comment with regard to the references to foreign statutes in the Transaction Documents or the Notes.

4.11    We would draw your attention to the statutory right of the Share Trustee to apply to the Grand Court of the Cayman Islands for an opinion, advice or direction on any question respecting the management or administration of the trust constituted by the

CONFIDENTIAL TREATMENT REQUESTED BY BRUNE & RICHARD LLP
ON BEHALF OF PATRIARCH PARTNERS LLC

PP050653

# MAPLES AND CALDER

BVI | CAYMAN | HONG KONG | JERSEY | LONDON

Declaration of Trust under Section 48 of the Trusts Law (2001 Revision) and to the provision of such section that, in acting on the opinion, advice or direction given by the Grand Court, save in the case of fraud or wilful concealment or misrepresentation, the Share Trustee shall be deemed to have discharged its duty as such trustee in the subject matter of the application.

4.12   A trust established under the laws of the Cayman Islands may vest certain powers and consents, such as the power of appointing new trustees, in persons who are neither parties to the trust instrument nor co-trustees nor beneficiaries. Whether or not such powers or consents are enforceable against the trustee will depend on the settlor's intention as evidenced by the construction of the specific terms of the trust. However, even if they are enforceable, it is possible that they may be subject to the control of the Cayman Islands court. The extent to which they may be so subject will usually depend upon the extent to which the holder of the power or consent is held or deemed to hold such power as a fiduciary, which will depend on the settlor's intention as evidenced by the construction of the specific terms of the trust. To the extent that the holder of the power or consent is held or deemed to hold the power or consent as a fiduciary, the Cayman Islands court may direct the holder to give his consent, or exercise his power, or refrain from exercising his power, in a particular manner. In general, the Cayman Islands court will not interfere with or attempt to control the power or consent under a trust vested in a person who does not hold it as a fiduciary, although there may be exceptions to this, for example where the person is attempting to act or cause others to act unlawfully.

We express no view as to the commercial terms of the Transaction Documents or the Notes or whether such terms represent the intentions of the parties and make no comment with regard to the representations which may be made by the Company or the Share Trustee.

This opinion may be relied upon by the addressees only. It may not be relied upon by any other person except with our prior written consent.

Yours faithfully,

*Maples and Calder*

MAPLES and CALDER

CONFIDENTIAL TREATMENT REQUESTED BY BRUNE & RICHARD LLP
ON BEHALF OF PATRIARCH PARTNERS LLC
JMD/608365J158465/v8

PP050654

# MAPLES AND CALDER

BVI | CAYMAN | HONG KONG | JERSEY | LONDON

## FIRST SCHEDULE

Zohar II 2005-1, Limited

LaSalle Bank National Association,
   as Trustee under the Indenture and
   as Preference Share Paying
   Agent under the Preference
   Share Paying Agency Agreement

Each of the initial Holders of Class A Notes and
   Class B Notes and Preference Shares referred to in
   the Indenture

MBIA Insurance Corporation

IXIS Financial Products Inc.

IXIS Securities North America Inc.

Patriarch Partners XIV, LLC,
   as Collateral Manager

Standard & Poor's Ratings Services,
   a division of the McGraw-Hill Companies, Inc.

Moody's Investors Service, Inc.

CONFIDENTIAL TREATMENT REQUESTED BY BRUNE & RICHARD LLP
ON BEHALF OF PATRIARCH PARTNERS LLC

PP050655

# MAPLES AND CALDER

BVI | CAYMAN | HONG KONG | JERSEY | LONDON

## SECOND SCHEDULE

1    The Indenture dated 12 January 2005 among the Company, the Co-Issuer, Zohar II 2005-1, LLC (the "**Zohar Subsidiary**"), MBIA Insurance Corporation, (the "**Credit Enhancer**"), IXIS Financial Products Inc. ("**IXIS**") as Class A-1 Note Agent and as Class A-3 Note Agent, and LaSalle Bank National Association as trustee (the "**Trustee**")(the "**Indenture**").

2    The Collateral Management Agreement dated 12 January 2005 among Patriarch Partners XIV, LLC, (the "**Collateral Manager**"), the Zohar Subsidiary and the Company (the "**Collateral Management Agreement**").

3    The Collateral Administration Agreement dated 12 January 2005 among the Company, the Collateral Manager and LaSalle Bank National Association as collateral administrator.

4    The Placement Agency Agreement dated 12 January 2005 among the Company, the Co-Issuer and IXIS, as Placement Agent.

5    The five Class A-1 Note Purchase Agreements dated 12 January 2005 among the Company, the Co-Issuer, the Collateral Manager, IXIS, as Class A-1 Note Agent, the Trustee and other parties thereto.

6    The Class A-3 Note Purchase Agreement dated 12 January 2005 among the Company, the Co-Issuer, the Collateral Manager, each initial Class A-3 Note Purchaser, IXIS, as Class A-3 Note Agent, and the Trustee.

7    The Class B Note Subscription Agreement dated 12 January 2005 between the Company and each Class B Note Purchaser.

8    The two Preference Share Subscription Agreements dated 12 January 2005 between the Company and each initial Preference Share Purchaser.

9    The Preference Share Paying Agency Agreement dated 12 January 2005 between the Company and LaSalle Bank National Association, as the Preference Share Paying Agent .

10   The Account Control Agreement dated 12 January 2005 among the Company, the Co-Issuer, the Zohar Subsidiary, the Trustee and LaSalle Bank National Association, as Custodian.

11   The Insurance and Indemnity Agreement dated 12 January 2005 among the Company, the Co-Issuer, Zohar Subsidiary and the Credit Enhancer.

12   The Credit Enhancement Premium Letter dated 12 January 2005 between the Company and the Credit Enhancer.

13   The Letter Agreement dated 14 January 2005 among the Company, the Collateral Manager, LaSalle Bank National Association, as Collateral Agent, IXIS, MMP-5

HNS2\HNS\020081161336
CONFIDENTIAL TREATMENT REQUESTED BY BRUNE & RICHARD LLP
ON BEHALF OF PATRIARCH PARTNERS LLC

PP050656

# MAPLES AND CALDER

BVI | CAYMAN | HONG KONG | JERSEY | LONDON

Funding, LLC, Ark II CLO 2001-1, Limited and Branch Banking and Trust Company regarding warehouse termination.

14    The Issuer Collateral Debt Obligations Transfer Agreement dated 14 January 2005 between the Company and Ark CLO 2000-1, Limited.

15    The Ark Subsidiary Collateral Debt Obligations Transfer Agreement dated 14 January 2005 between the Company and Ark CLO 2000-1, LLC.

16    The Letter Agreement dated 14 January 2005 among the Company, Ark CLO 2000-1, Limited and Octaluna II, LLC regarding the issuance of Preference Shares of the Company.

CONFIDENTIAL TREATMENT REQUESTED BY BRUNE & RICHARD LLP
ON BEHALF OF PATRIARCH PARTNERS LLC

PP050657

**Zohar II 2005-1, Limited**
PO Box 1093GT
Queensgate House,
South Church Street,
George Town,
Grand Cayman, Cayman Islands

14 January 2005

To:    Maples and Calder
       PO Box 309GT
       Ugland House
       South Church Street
       George Town
       Grand Cayman
       Cayman Islands

Dear Sirs,

### Zohar II 2005-1, Limited (the "Company")

I, the undersigned, being a director of the Company, am aware that you are being asked to provide a legal opinion (the "**Opinion**") in relation to certain aspects of Cayman Islands law. Capitalised terms used in this certificate have the meaning given to them in the Opinion. I hereby certify that:

1      The Amended and Restated Memorandum and Articles of Association of the Company as adopted or registered on 12 January 2005 remain in full force and effect and are unamended.

2      The Company has not entered into any mortgages or charges over its property or assets other than those entered in the Register of Mortgages and Charges of the Company, or contemplated by the Transaction Documents.

3      The minutes of the meetings of the board of directors held on 3 November 2004 and 12 January 2005 (the "**Meetings**") at which, among other things, the Transaction Documents, the Administration Agreement and the Notes were approved are a true and correct record of the proceedings of the Meetings, which were duly convened and held, and at each such Meeting a quorum was present throughout and at which each director disclosed his interest (if any), in the manner prescribed in the Amended and Restated Memorandum and Articles of Association of the Company.

4      The authorised share capital of the Company is US$350 divided into 250 ordinary shares of US$1.00 par value each and 100,000 preference shares of US$0.01 par value each.

5      The shareholders of the Company have not restricted or limited the powers of the directors in any way. There is no contractual or other prohibition (other than as arising

CONFIDENTIAL TREATMENT REQUESTED BY BRUNE & RICHARD LLP
ON BEHALF OF PATRIARCH PARTNERS LLC

PP050658

2

under Cayman Islands law) binding on the Company or on any other party prohibiting it from entering into and performing its obligations under the Transaction Documents or the Notes.

6    The resolutions set forth in the minutes of the Meetings were duly adopted, are in full force and effect at the date hereof and have not been amended, varied or revoked in any respect.

7    The directors of the Company at the date of each of the Meetings and at the date hereof were and are as follows: Hugh Thompson, Chris Watler and Mora Parchment.

8    The Minute Book and corporate records of the Company as maintained at its registered office in the Cayman Islands and made available to you are complete and accurate in all material respects, and all minutes and resolutions filed therein represent a complete and accurate record of all meetings of the shareholders and directors (or any committee thereof) (duly convened in accordance with the Amended and Restated Articles of Association of the Company) and all resolutions passed at the meetings, or passed by written consent as the case may be.

9    Prior to, at the time of, and immediately following execution of the Transaction Documents and the Notes the Company was able to pay its debts as they fell due and entered into the Transaction Documents and the Notes for proper value and not with an intention to defraud or hinder its creditors or by way of fraudulent preference.

10    Each director considers the transactions contemplated by the Transaction Documents and the issue of the Notes and the Preference Shares to be of commercial benefit to the Company and has acted *bona fide* in the best interests of the Company, and for a proper purpose of the Company, in relation to the transactions the subject of this Opinion.

11    To the best of my knowledge and belief, having made due inquiry, the Company is not the subject of legal, arbitral, administrative or other proceedings in any jurisdiction. Nor have the directors or shareholders taken any steps to have the Company struck off or placed in liquidation, nor have any steps been taken to wind up the Company. Nor has any receiver been appointed over any of the Company's property or assets.

12    The Company is not a central bank, monetary authority or other sovereign entity of any state.

13    The Company has no employees.

I confirm that you may continue to rely on this Certificate as being true and correct on the day that you issue the Opinion unless I shall have previously notified you personally to the contrary.

Signature:    _____
              Director

CONFIDENTIAL TREATMENT REQUESTED BY BRUNE & RICHARD LLP
ON BEHALF OF PATRIARCH PARTNERS LLC

PP050659

**MAPLES FINANCE LIMITED**
PO Box 1093GT, Queensgate House
South Church Street, George Town
Grand Cayman, Cayman Islands
(the **"Trustee"**)

14 January 2005

Maples and Calder
PO Box 309GT
Ugland House
South Church Street
George Town
Grand Cayman
Cayman Islands

Dear Sirs:

Re:  **Zohar II 2005-1, Limited**: Amended and Restated Declaration of Trust dated 12 January 2005 (the **"Declaration of Trust"**) and Amended and Restated Administration Agreement dated 12 January 2005 (the **"Administration Agreement"**)

We understand that you have been requested to deliver an opinion in relation to the Declaration of Trust and Administration Agreement as to certain matters of Cayman Islands law. In connection therewith I certify that:

1.  the Declaration of Trust and Administration Agreement have been or will be, as the case may be, duly authorised by and duly executed and delivered on behalf of the Trustee in accordance with Resolutions passed by the board of directors of the Trustee (the **"Resolutions"**), and in accordance with Cayman Islands law and the provisions of the memorandum and articles of association of the Trustee;

2.  the Resolutions constitute the valid and binding resolutions of the Trustee and have not been subsequently varied, revoked or amended;

3.  the execution of the Declaration of Trust and the Administration Agreement and the performance by the Trustee of its obligations thereunder does not constitute a breach of the memorandum and articles of association of the Trustee;

GJL\DNR\999999\902819\jcmb37!
12 January, 2005

CONFIDENTIAL TREATMENT REQUESTED BY BRUNE & RICHARD LLP
ON BEHALF OF PATRIARCH PARTNERS LLC

PP050660

2

4. the Trustee is duly licensed and in good standing pursuant to the Banks and Trust Companies Law (2003 Revision) and holds an unrestricted Trust Licence thereunder and that the entry by the Trustee into the Declaration of Trust and the performance by the Trustee of its obligations thereunder is in all respects within the terms of the licences granted to the Trustee pursuant to the Banks and Trust Companies Law (2003 Revision); and

5. the Trustee is duly incorporated and in good standing under the Companies Law (2004 Revision) of the Cayman Islands.

Yours faithfully,

Signature:

Authorised signatory
Name:
Title:     **Martin Couch**
           Senior Vice President

GJL\DNR\999999\902819\jjcmb37!
12 January, 2005

CONFIDENTIAL TREATMENT REQUESTED BY BRUNE & RICHARD LLP
ON BEHALF OF PATRIARCH PARTNERS LLC

PP050661

INDEX

# Exhibit E-1

CONFIDENTIAL TREATMENT REQUESTED BY BRUNE & RICHARD LLP
ON BEHALF OF PATRIARCH PARTNERS LLC

PP050662

INDEX

*Kennedy Covington*

ATTORNEYS AT LAW

January 14, 2005

To the Persons Listed on
Schedule A attached hereto

Re:    Zohar II 2005-1, Limited

Ladies and Gentlemen:

We have acted as special counsel to LaSalle Bank National Association ("LaSalle"), in its capacities as trustee, preference share paying agent, collateral administrator, securities intermediary and custodian, in connection with its execution and delivery of (i) the Indenture, dated as of January 12, 2005 (the "Indenture"), by and among Zohar II 2005-1, Limited (the "Issuer"), Zohar II 2005-1, Corp. (the "Co-Issuer"), Zohar II 2005-1, LLC (the "Subsidiary"), MBIA Insurance Corporation, as credit enhancer (the "Credit Enhancer"), IXIS Financial Products Inc. ("IXIS"), as Class A-1 note agent and Class A-3 note agent, and LaSalle as trustee, (ii) the Preference Share Paying Agency Agreement, dated as of January 12, 2005 (the "Preference Share Paying Agency Agreement"), by and between the Issuer and LaSalle, as preference share paying agent, (iii) the Account Control Agreement, dated as of January 12, 2005 (the "Account Control Agreement "), by and among the Issuer, the Co-Issuer, the Subsidiary, and LaSalle, as securities intermediary and custodian, (iv) the Collateral Administration Agreement, dated as of January 12, 2005 (the "Collateral Administration Agreement"), by and among the Issuer, Patriarch Partners XIV, LLC ("Patriarch"), as collateral manager, and LaSalle, as collateral administrator, (v) the Class A-1 Note Purchase Agreements, each dated as of January 12, 2005 (the "Class A-1 Note Purchase Agreements"), by and among the Issuer, the Co-Issuer, Patriarch, as collateral manager, the uncommitted note purchasers identified therein, the signatories thereto from time to time, as committed note purchasers, IXIS, as note agent, Class A-1 note agent and liquidity agent, and LaSalle, as trustee, and (vi) the Class A-3 Note Purchase Agreement, dated as of January 12, 2005 (together with the Indenture, the Preference Share Paying Agency Agreement, the Account Control Agreement, the Collateral Administration Agreement and the Class A-1 Note Purchase Agreement, the "Agreements"), among the Issuer, the Co-Issuer, Patriarch, as collateral manager, IXIS, as Class A-3 note agent, the holders of Class A-3 notes identified therein and LaSalle, as trustee.  Capitalized terms used but not defined herein shall have the meanings assigned to them in the Agreements.

In the course of this representation, we have examined originals, or copies authenticated to our satisfaction, of all such corporate records of LaSalle, the Agreements and other instruments, certificates of public officials and of officers and representatives of LaSalle, and other documents as we have deemed necessary in connection with the opinions hereinafter expressed.  In such examination we have assumed the genuineness of all signatures, the authenticity of documents submitted to us as originals, the conformity with the originals of all documents submitted to us as copies, and the authenticity of the originals of such latter documents.  As to questions of fact material to such opinions, we have, when relevant facts were not independently established, relied

KENNEDY COVINGTON LOBDELL & HICKMAN, L.L.P.    *www.kennedycovington.com*    telephone 704.331.7400

HEARST  TOWER,  47th  FLOOR
214   NORTH   TRYON   STREET
CHARLOTTE, NORTH CAROLINA 28202

CONFIDENTIAL TREATMENT REQUESTED BY BRUNE & RICHARD LLP
ON BEHALF OF PATRIARCH PARTNERS LLC

PP050663

To the Persons Listed on Schedule A attached hereto
January 14, 2005
Page 2

upon representations and certificates of LaSalle and its officers. We also have relied, without independent investigation, on the opinions set forth in the opinion letter of Robert Wolz, Special Counsel to LaSalle, dated of even date herewith, with respect to the due authorization, execution and delivery of the Agreements by LaSalle. We have assumed the Agreements have been duly authorized, executed and delivered by the other parties thereto and constitute the legal, valid, binding and enforceable obligations of such other parties.

The opinions herein expressed are limited to matters governed by the laws of the State of New York and the federal laws of the United States of America. We express no opinion concerning whether the Agreements must be qualified under the Trust Indenture Act of 1939, as amended.

Based upon and subject to the foregoing, we are of the opinion that:

1.     The Agreements constitute the legal, valid and binding obligation of LaSalle, enforceable against LaSalle, in accordance with their terms, except to the extent that enforceability thereof may be subject to (a) bankruptcy, insolvency, fraudulent conveyance, reorganization, moratorium, receivership or other similar laws now or hereinafter in effect relating to creditors' rights generally, (b) general principles of equity (regardless of whether enforceability is considered in a proceeding at law or in equity) and (c) possible limitations in certain circumstances of provisions indemnifying a party against liability where such indemnification is contrary to public policy.

2.     No consent, license, approval or authorization of, or filing or registration with, any governmental authority, bureau or agency is required to be obtained that has not been obtained by LaSalle in connection with its execution, delivery or performance of the Agreements.

3.     The execution, delivery and performance by LaSalle of the Agreements do not violate any provision of any existing law or regulation applicable to LaSalle.

This opinion letter is rendered only as of the date hereof. We undertake no obligation to update this opinion letter after the date hereof or to give notice as to any future changes of facts or law that might affect the opinions set forth herein. This opinion letter is limited to the matters expressly stated herein and no other opinion shall be implied or inferred herefrom.

We have provided this opinion letter to the addressees in our capacity as special counsel to LaSalle in connection with the transactions contemplated by the Agreements. This opinion letter may not be relied upon for any other purpose or by any other person without our prior written consent.

Very truly yours,

*Kennedy Covington Lobdell & Hickman, L.L.P.*

2292948 04
LIB: CHARLOTTE

CONFIDENTIAL TREATMENT REQUESTED BY BRUNE & RICHARD LLP
ON BEHALF OF PATRIARCH PARTNERS LLC

PP050664

SCHEDULE A

LaSalle Bank National Association
135 South LaSalle Street, Suite 1625
Chicago, Illinois 60603

Zohar II 2005-1, Limited
c/o Maples Finance Limited
P.O. Box 1093GT, Queensgate House
South Church Street, George Town,
Grand Cayman, Cayman Islands

Zohar II 2005-1, Corp.
Zohar II 2005-1, LLC
c/o Puglisi & Associates
850 Library Avenue, Suite 204
Newark, Delaware 19711

MBIA Insurance Corporation
113 King Street
Armonk, New York 10504

Patriarch Partners XIV, LLC
112 South Tryon Street, Suite 700
Charlotte, North Carolina 28284

IXIS Financial Products Inc.
9 West 57th Street
36th Floor
New York, NY 10019

Bank of Montreal
11 Walbrook, 2nd Floor
London EC4N 8ED
United Kingdom

Moody's Investors Service, Inc.
99 Church Street
New York, New York 10007

Standard & Poor's Ratings Services,
 a division of The McGraw-Hill
 Companies, Inc.
55 Water Street, 41st Floor
New York, New York 10041

Each of the initial Holders of the Class A
Notes party to the Class A-1 Note Purchase
Agreements and the Class A-3 Note Purchase
Agreement

2292948.05
LIB: CHARLOTTE

CONFIDENTIAL TREATMENT REQUESTED BY BRUNE & RICHARD LLP
ON BEHALF OF PATRIARCH PARTNERS LLC

PP050665

INDEX

# Exhibit E-2

CONFIDENTIAL TREATMENT REQUESTED BY BRUNE & RICHARD LLP
ON BEHALF OF PATRIARCH PARTNERS LLC

PP050666

# SEYFARTH
## ATTORNEYS SHAW LLP

55 East Monroe Street

Suite 4200

Chicago, IL 60603-5803

312-346-8000

fax 312-269-8869

www.seyfarth.com

Writer's direct phone

Writer's e-mail

January 14, 2005

To the Addressees
Listed on Schedule A
attached hereto

Re:    ZOHAR II 2005-1, LIMITED
       ZOHAR II 2005-1, CORP.
       ZOHAR II 2005-1, LLC

Ladies and Gentlemen:

We have acted as special Illinois counsel to LaSalle Bank National Association, as trustee (the "Trustee"), under that certain Indenture, dated as of January 12, 2005 (the "Indenture"), among Zohar II 2005-1, Limited, an exempted company organized under the laws of the Cayman Islands (the "Issuer"), Zohar II 2005-1, Corp., a corporation organized and existing under the laws of the State of Delaware (the "Co-Issuer"), Zohar II 2005-1, LLC, a limited liability company organized and existing under the laws of the State of Delaware (the "Zohar Subsidiary"), MBIA Insurance Corporation, a stock insurance company incorporated under the laws of the State of New York, as credit enhancer, IXIS Financial Products Inc., a corporation organized and existing under the laws of the State of Delaware, as agent for holders of certain notes, and the Trustee (also acting as custodian) in connection with the Grant by the Issuer and the Zohar Subsidiary to the Trustee, for the benefit and security of the Secured Parties, of all of the Issuer's and the Zohar Subsidiary's right, title and interest in, to and under the Collateral. Capitalized terms used but not defined herein shall have the meanings assigned to them in the Indenture.

In rendering the opinions set forth below, we have examined and relied upon the originals, copies or specimens, certified or otherwise identified to our satisfaction, of the Indenture and such certificates, corporate and public records, agreements, instruments and other documents, as we have deemed appropriate as a basis for the opinions expressed below. In such examination, we have assumed the genuineness of all signatures, the authenticity of all documents, agreements and instruments submitted to us as originals, the conformity to original documents, agreements and instruments of all documents, agreements and instruments submitted to us as copies or specimens, the authenticity of the originals of such documents, agreements and instruments submitted to us as copies or specimens and the accuracy of the matters set forth in the documents, agreements and instruments we reviewed. As to any facts material to such opinions that were not known to us, we have relied upon statements and representations of officers and other representatives of the Issuer, the Co-Issuer, the Zohar Subsidiary, the Trustee and the Custodian.

BRUSSELS    WASHINGTON, D C    SAN FRANCISCO    SACRAMENTO    NEW YORK    LOS ANGELES    HOUSTON    CHICAGO    BOSTON    ATLANTA

CONFIDENTIAL TREATMENT REQUESTED BY BRUNE & RICHARD LLP
ON BEHALF OF PATRIARCH PARTNERS LLC

PP050667



We have also assumed that all documents, agreements and instruments, including, without limitation, the Indenture, have been duly authorized, executed and delivered by all parties thereto, that such parties had the power and legal right to execute and deliver all such documents, agreements and instruments, and that all such documents, agreements and instruments constitute the legal, valid and binding agreements of each such party, enforceable against each such party in accordance with their respective terms.

We have also assumed that the Indenture creates a valid, binding and enforceable security interest in favor of the Trustee, for the benefit and security of the Secured Parties, in the Issuer's and the Zohar Subsidiary's interest in the Collateral, except that we have assumed that the Indenture creates a security interest in any portion of the Collateral in which the Issuer or the Zohar Subsidiary has no present interest only when the Issuer or the Zohar Subsidiary acquires an interest therein. In reliance upon the terms of the Indenture, we have further assumed that the Certificated Securities (as defined below) and the Instruments (as defined below) comprising a portion of the Collateral will be delivered to and possessed by the Custodian (as defined in the Indenture) in the State of Illinois exclusively on behalf of the Trustee for the benefit of the Secured Parties.

We are admitted to practice in the State of Illinois. The opinions expressed herein are limited to Articles 8 and 9 of the Illinois UCC (as defined below) and we give no opinion concerning the perfection and/or priority of any security interest in the Collateral or the proceeds thereof to the extent not governed by Articles 8 and 9 of the Illinois UCC.

For purposes of this opinion:

(i)     "Certificated Security" or "Certificated Securities" means one or more "certificated security" (as defined in Section 8-102(a)(4) of the Illinois UCC);

(ii)    "Custodial Certificated Securities" means Certificated Securities credited to the Securities Account (as defined below);

(iii)   "Illinois UCC" means the Uniform Commercial Code as in effect in the State of Illinois;

(iv)    "Instrument" or "Instruments" means one or more "instrument" (as defined in Section 9-102(a)(47) of the Illinois UCC); and

(v)     "Securities Account" is the collective reference to the accounts established by the Trustee, the Custodian and/or any Securities Intermediary in connection with the transactions contemplated by the Indenture.

Based upon and subject to the foregoing, it is our opinion that:

2

CONFIDENTIAL TREATMENT REQUESTED BY BRUNE & RICHARD LLP
ON BEHALF OF PATRIARCH PARTNERS LLC

PP050668



1.    With respect to the Collateral which consists of Certificated Securities (other than Custodial Certificated Securities, which are not covered by this opinion letter), including Certificated Securities in "bearer form" (within the meaning of Section 8-102(a)(2) of the Illinois UCC), assuming that the Custodian has physical possession of the Certificated Securities in the State of Illinois exclusively on behalf of the Trustee for the benefit of the Secured Parties, and in the case of Certificated Securities in "registered form" (within the meaning of Section 8-102(a)(13) of the Illinois UCC), registered in the name of the Trustee or indorsed to the Trustee or in blank by an effective indorsement, the security interest of the Trustee therein, and in the identifiable cash proceeds thereof in the physical possession of the Custodian in the State of Illinois exclusively on behalf of the Trustee for the benefit of the Secured Parties, will be a perfected, first priority security interest under the Illinois UCC for so long as such Certificated Securities and identifiable cash proceeds thereof are continuously possessed by the Custodian in the State of Illinois exclusively on behalf of the Trustee for the benefit of the Secured Parties.

2.    With respect to the Collateral which consists of Instruments, assuming that the Custodian has physical possession of the Instruments in the State of Illinois exclusively on behalf of the Trustee for the benefit of the Secured Parties, indorsed to the Trustee or in blank by an effective indorsement, the security interest of the Trustee therein, and in the identifiable cash proceeds thereof in the physical possession of the Custodian in the State of Illinois exclusively on behalf of the Trustee for the benefit of the Secured Parties, will be a perfected, first priority security interest under the Illinois UCC for so long as such Instruments and identifiable cash proceeds thereof are continuously possessed by the Custodian in the State of Illinois exclusively on behalf of the Trustee for the benefit of the Secured Parties.

Our opinions expressed above are subject to the following additional qualifications, assumptions, limitations and exceptions:

(i)    we have assumed that (A) the Collateral exists and (B) each of the Issuer and the Zohar Subsidiary has rights or has the power to transfer rights in the Collateral, and we express no opinion concerning the Issuer's or the Zohar Subsidiary's rights with respect to the Collateral;

(ii)    we have assumed that each of the Issuer and the Zohar Subsidiary has received "value" (as defined in Section 1-201(44) of the Illinois UCC) in exchange for granting a security interest in the Collateral;

(iii)    we have assumed that each of the Issuer and the Zohar Subsidiary (A) has granted a security interest in the Collateral to the Trustee without any intent to hinder, delay or defraud any of its creditors, (B) is not engaged and is not about to engage in any business or transaction for which any property remaining with the Issuer or the Zohar Subsidiary is an unreasonably small amount of capital, and (C) does not intend to incur,

3

CONFIDENTIAL TREATMENT REQUESTED BY BRUNE & RICHARD LLP
ON BEHALF OF PATRIARCH PARTNERS LLC

PP050669



and does not believe or reasonably should not believe, that it will incur debts beyond its ability to pay as they become due;

(iv)     the perfection of the Trustee's security interest in the Collateral consisting of proceeds is limited to the extent set forth in Section 9-315 of the Illinois UCC, and to property of a type subject to Article 9 of the Illinois UCC;

(v)      we have assumed that each of the Issuer and the Zohar Subsidiary has had no notice prior to the date of this opinion letter of any adverse claim, within the meaning of the Illinois UCC, as to the Certificated Securities or the Instruments comprising a portion of the Collateral or actual knowledge of any security interest, claim, encumbrance, interest or other condition of title affecting the Certificated Securities or the Instruments comprising a portion of the Collateral;

(vi)     we have assumed that the Trustee will acquire its interest in the Collateral without notice or knowledge of any "adverse claim" (as defined in Section 8-102(a)(1) of the Illinois UCC), or any other adverse liens or encumbrances (including, without limitation, liens arising under the federal, state or local tax laws or the Employee Retirement Income Security Act of 1974, as amended ("ERISA")); and in the case of Collateral consisting of Instruments, in good faith and without notice that any Instrument is overdue or has been dishonored or of any defense against or claim to it on the part of any person;

(vii)    we have assumed that no Certificated Security or Instrument comprising a portion of the Collateral is represented by any duplicate original or copy containing an original executed signature of the maker or issuer thereof, other than those in the possession of the Custodian exclusively on behalf of the Trustee for the benefit of the Secured Parties;

(viii)   in cases of the issuance of additional certificates or other distributions in respect of the Certificated Securities or the Instruments comprising a portion of the Collateral, the security interest of the Trustee therein will be perfected only if physical possession or control thereof is obtained;

(ix)     we have assumed that the Certificated Securities and the Instruments comprising a portion of the Collateral contain only signatures which are genuine;

(x)      we express no opinion as to whether any of the Collateral constitutes Certificated Securities or Instruments;

CONFIDENTIAL TREATMENT REQUESTED BY BRUNE & RICHARD LLP
ON BEHALF OF PATRIARCH PARTNERS LLC                                      PP050670



(xi) we call to your attention that the perfection, the effect of perfection or nonperfection, and the priority of the Trustee's security interest in the Certificated Securities comprising a portion of the Collateral (and the identifiable cash proceeds thereof) (other than Custodial Certificated Securities, which are not covered by this opinion letter) and the Instruments comprising a portion of the Collateral (and the identifiable cash proceeds thereof) will be governed by laws other than the Illinois UCC to the extent such Certificated Securities or Instruments become located in a jurisdiction other than the State of Illinois, and we express no opinion as to the perfection or priority of such security interest in such event;

(xii) we express no opinion with respect to the priority of the security interest of the Trustee in the Certificated Securities comprising a portion of the Collateral (and the identifiable cash proceeds thereof) or the Instruments comprising a portion of the Collateral (and the identifiable cash proceeds thereof) with respect to any of the following: (A) as between the Secured Parties, including, without limitation, the holders of each class of the Notes, which is governed by the subordination and other provisions of the Indenture; (B) against any lien, claim or other interest that arises by operation of law and is given priority over perfected security interests; (C) against any lien or claim in favor of the United States or any state or any agency or instrumentality of either of them (including, without limitation, liens arising under the federal, state or local tax laws or ERISA); (D) against any claim given priority pursuant to Section 3713 of Title 31 of the United States Code; (E) against a "lien creditor" (as defined in Section 9-102(a)(52) of the Illinois UCC) who attached or levied prior to the perfection of the security interest of the Trustee; (F) against a "lien creditor" (as defined in Section 9-102(a)(52) of the Illinois UCC) to the extent set forth in Section 9-323(b) of the Illinois UCC; (G) against another secured creditor to the extent set forth in Section 9-323(a) of the Illinois UCC; (H) against another secured party with a perfected security interest in other property of the Issuer or the Zohar Subsidiary to the extent any of the Certificated Securities comprising a portion of the Collateral (and the identifiable cash proceeds thereof) or the Instruments comprising a portion of the Collateral (and the identifiable cash proceeds thereof) are proceeds of such other creditor's property; (I) against a lien or claim that arises by operation of law and that does not require filing, control or possession for perfection; (J) with respect to the Certificated Securities comprising a portion of the Collateral (and the identifiable cash proceeds thereof), against another secured party with "control" (as defined in Section 8-106 of the Illinois UCC); (K) against any right of setoff of any securities intermediary; or (L) against purchase money security

CONFIDENTIAL TREATMENT REQUESTED BY BRUNE & RICHARD LLP
ON BEHALF OF PATRIARCH PARTNERS LLC

5

PP050671



interests now or hereafter existing in any of the Certificated Securities or Instruments comprising a portion of the Collateral;

(xiii)  we express no opinion, and have made no investigation, with respect to whether any Certificated Security or Instrument comprising a portion of the Collateral was or will be transferred to the Custodian exclusively on behalf of the Trustee for the benefit of the Secured Parties in the manner set forth in the Indenture or herein;

(xiv)  we express no opinion as to the accuracy of the description of the Collateral in the Indenture;

(xv)  we call to your attention that the security interest of the Trustee in the Collateral (and the proceeds thereof) may be subject to the rights, claims and defenses of related account debtors or other obligors thereon, and the terms of the agreements giving rise thereto;

(xvi)  we have assumed that there are no agreements or understandings prohibiting, restricting or conditioning the grant by the Issuer or the Zohar Subsidiary of a security interest in the Collateral, except to the extent that such prohibition, restriction or condition is ineffective under Section 9-401, 9-406 or 9-408 of the Illinois UCC;

(xvii)  we have assumed that none of the Custodian, the Trustee or any other Secured Party is an agent of, or otherwise affiliated with, the Issuer or the Zohar Subsidiary;

(xviii)  we have assumed that the Custodian is not acting as a securities intermediary in possessing, exclusively on behalf of the Trustee for the benefit of the Secured Parties, the Certificated Securities and Instruments comprising a portion of the Collateral; and

(xix)  this opinion letter does not address, and we express no opinion on, the effect of bankruptcy, insolvency, fraudulent conveyance or similar laws affecting creditors' rights generally or general principles of equity, in each case, on the security interests granted to the Trustee.

We are furnishing this letter to you solely for your benefit in connection with the transactions referred to herein. This letter is not to be relied upon, used, circulated, quoted or otherwise referred to by any other person or for any other purpose without our prior written

6

CONFIDENTIAL TREATMENT REQUESTED BY BRUNE & RICHARD LLP
ON BEHALF OF PATRIARCH PARTNERS LLC

PP050672



consent.  In addition, we disclaim any obligation to update this opinion letter for changes in fact or law, or otherwise.

Very truly yours,

Seyfarth Shaw LLP

JAS/RFW

10839042

CONFIDENTIAL TREATMENT REQUESTED BY BRUNE & RICHARD LLP
ON BEHALF OF PATRIARCH PARTNERS LLC

PP050673



## SCHEDULE A

LaSalle Bank National Association
135 South LaSalle Street, Suite 1625
Chicago, Illinois 60603

Zohar II 2005-1, Limited
c/o Maples Finance Limited
P.O. Box 1093GT, Queensgate House
South Church Street, George Town,
Grand Cayman, Cayman Islands

Zohar II 2005-1, Corp.
Zohar II 2005-1, LLC
c/o Puglisi & Associates
850 Library Avenue, Suite 204
Newark, Delaware 19711

MBIA Insurance Corporation
113 King Street
Armonk, New York 10504

Patriarch Partners XIV, LLC
112 South Tryon Street, Suite 700
Charlotte, North Carolina 28284

IXIS Financial Products Inc.
9 West 57th Street
36th Floor
New York, NY 10019

Bank of Montreal
11 Walbrook, 2nd Floor
London EC4N 8ED
United Kingdom

Moody's Investors Service, Inc.
99 Church Street
New York, New York 10007

Each of the initial Holders of the Class A
Notes party to the Class A-1 Note Purchase
Agreements and the Class A-3 Note Purchase
Agreement

Standard & Poor's Ratings Services,
 a division of The McGraw-Hill
 Companies, Inc.
55 Water Street, 41st Floor
New York, New York 10041

CONFIDENTIAL TREATMENT REQUESTED BY BRUNE & RICHARD LLP
ON BEHALF OF PATRIARCH PARTNERS LLC

# Exhibit E-3

CONFIDENTIAL TREATMENT REQUESTED BY BRUNE & RICHARD LLP
ON BEHALF OF PATRIARCH PARTNERS LLC

PP050675

INDEX



**LaSalle Bank**
ABN AMRO

LaSalle Bank Corporation
135 South LaSalle Street
Chicago, Illinois 60603
(312) 904-2425

Legal

January 14, 2005

Writer's Direct Line (312) 904-5464

TO THE PARTIES LISTED ON ATTACHED SCHEDULE A

Ladies and Gentlemen:

I am counsel to LaSalle Bank National Association, ("LaSalle") in connection with (i) the Indenture, dated as of January 12, 2005 (the "Indenture") by and among Zohar II 2005-1, Limited ("Issuer"), Zohar II 2005-1, Corp. (the "Co-Issuer"), Zohar II 2005-1, LLC (the "Subsidiary"), MBIA Insurance Corporation, as credit enhancer (the "Credit Enhancer"), IXIS Financial Products Inc. ("IXIS"), as Class A-1 note agent and Class A-3 note agent, and LaSalle, as trustee, (ii) the Preference Share Paying Agency Agreement, dated as of January 12, 2005 (the "Preference Share Paying Agency Agreement"), by and between the Issuer and LaSalle, as preference share paying agent, (iii) the Account Control Agreement, dated as of January 12, 2005 (the "Account Control Agreement"), by and among the Issuer, the Co-Issuer, the Subsidiary, and LaSalle, as securities intermediary and custodian, (iv) the Collateral Administration Agreement, dated as of January 12, 2005 (the "Collateral Administration Agreement"), by and among the Issuer, Patriarch Partners XIV, LLC ("Patriarch"), as collateral manager, and LaSalle, as collateral administrator, (v) the Class A-1 Note Purchase Agreements, each dated as of January 12, 2005 (the "Class A-1 Note Purchase Agreements"), by and among the Issuer, the Co-Issuer, Patriarch, as collateral manager, the uncommitted note purchasers identified therein, the signatories thereto from time to time, as committed note purchasers, IXIS, as note agent, Class A-1 note agent and liquidity agent, and LaSalle, as trustee, and (vi) the Class A-3 Note Purchase Agreement, dated as of January 12, 2005 (the "Class A-3 Note Purchase Agreement").

I have examined originals or copies authenticated to my satisfaction of all such corporate records of LaSalle and other documents as I have deemed necessary in connection with the opinions hereinafter expressed. In such examination I have (other than for LaSalle) assumed the genuineness of all signatures, the authenticity of documents submitted to me as originals, the conformity with the originals of all documents submitted to me as certified or photostatic copies, and the authenticity of the originals of such latter documents. As to questions of fact material to such opinions I have, when relevant facts were not independently established, relied upon representations and certificates of LaSalle, and its officers.

Based upon the foregoing and subject to the comments and qualifications set forth below, I am of the opinion that:

      1.    LaSalle has been duly organized and is validly existing as a national banking association in good standing under the laws of the United States of America.

      2.    LaSalle is duly authorized and has the requisite power and authority to enter into and perform its obligations under the Indenture, the Preference Share Paying Agency Agreement, the Account Control Agreement, the Collateral Administration Agreement, the Class A-1 Note Purchase Agreement, and the Class A-3 Note Purchase Agreement (the "Agreements").

CONFIDENTIAL TREATMENT REQUESTED BY BRUNE & RICHARD LLP
ON BEHALF OF PATRIARCH PARTNERS LLC
140275910

PP050676


**LaSalle Bank**
ABN AMRO

3.     No action, corporate or otherwise, is necessary on the part of LaSalle to authorize the performance by LaSalle of its obligations under the Agreements or to authorize the execution and delivery of the Agreements, other than such action as has been taken and is in full force and effect.

4.     The Agreements when executed by Koren E. Sumser on behalf of LaSalle shall cause the Agreements to have been duly executed and delivered by LaSalle.

5.     The execution, delivery and performance by LaSalle of its obligations and duties in connection with the Agreements, and as enumerated above, do not in any materially adverse manner (i) breach or conflict with or violate the express provisions of the charter or by-laws or other organizational documents of LaSalle, (ii) violate any applicable laws, rule or regulation of the United States, the State of Illinois or any of their agencies, (iii) violate any order, writ, injunction or decree of any court or governmental authority or agency of the United States or the State of Illinois or any arbitral award of which I have knowledge or (iv) result in a breach of, conflict with or constitute a default under, require any consent under, or result in the acceleration or required prepayment of any indebtedness pursuant to the terms of, any agreement or instrument of which I have knowledge  to which LaSalle is party or by which it is bound or to which it is subject.

6.     No authorizations, consents, approvals, licenses, filings, or registration with any governmental or regulatory authority or agency of the United States or the State of Illinois, except for those that have been obtained and are in full force and effect or those that would not have a materially adverse effect on LaSalle's ability to perform its obligations under such Agreements, are required in connection with the execution, delivery or performance by LaSalle of such Agreements to which, it is or may become a party or in connection with the consummation of the transactions contemplated by such Agreements.

7.     When authenticated by Koren E. Sumser on behalf of LaSalle, any Notes that are issued in connection with the Agreements shall have been duly authenticated by LaSalle in accordance with the terms of the Agreements.

8.     There are no actions, suits or proceedings pending (nor to my knowledge are any actions, suits or proceedings threatened) against or affecting LaSalle which if adversely determined, individually or in the aggregate, would adversely affect LaSalle's ability to perform its obligations under the Agreements.

The opinions herein are limited to the laws of the State of Illinois and the federal laws of the United States and I express no opinion as to the effect on matters covered by this opinion of the laws of any other jurisdiction.

CONFIDENTIAL TREATMENT REQUESTED BY BRUNE & RICHARD LLP
ON BEHALF OF PATRIARCH PARTNERS LLC
PP050677



**LaSalle Bank**
ABN AMRO

This opinion letter is provided to you by me in my capacity as special counsel to LaSalle and may be relied upon by you in connection with the captioned transaction. No other party may rely on this opinion unless, in each instance, I give my prior written consent thereto.

Very truly yours,

Robert A. Wolz

CONFIDENTIAL TREATMENT REQUESTED BY BRUNE & RICHARD LLP
ON BEHALF OF PATRIARCH PARTNERS LLC
140275910

PP050678

## SCHEDULE A

LaSalle Bank National Association
135 S. LaSalle Street, Suite 1625
Chicago, Illinois 60603

Zohar II 2005-1, Limited
c/o Maples Finance Limited
P.O. Box 1093GT, Queensgate House
South Church Street, George Town,
Grand Cayman, Cayman Islands

Zohar II 2005-1, Corp.
Zohar II 2005-1, LLC
c/o Puglisi & Associates
850 Library Avenue, Suite 204
Newark, Delaware 19711

MBIA Insurance Corporation
113 King Street
Armonk, New York 10504

Patriarch Partners XIV, LLC
112 South Tryon Street, Suite 700
Charlotte, North Carolina 28284

IXIS Financial Products Inc.
9 West 57th Street
36th Floor
New York, New York 10019

Moody's Investors Service, Inc.
99 Church Street
New York, New York 10007

Standard & Poor's Ratings Services,
a division of The McGraw-Hill Companies, Inc.
55 Water Street, 41st Floor
New York, New York 10041

Kennedy Covington Lobdell & Hickman, L.L.P.
Hearst Tower
214 North Tryon Street, 47th Floor
Charlotte, North Carolina 28202

Each of the initial Holders of Class A Notes
party to the Class A-1 Note Purchase
Agreements and the Class A-3 Note Purchase
Agreement

Bank of Montreal
11 Walbrook, 2nd Floor
London EC4N 8ED
United Kingdom

CONFIDENTIAL TREATMENT REQUESTED BY BRUNE & RICHARD LLP
ON BEHALF OF PATRIARCH PARTNERS LLC
PP0229510

PP050679

INDEX

Respondents' Exhibit 8   pg. 421 of 447

# Exhibit F

CONFIDENTIAL TREATMENT REQUESTED BY BRUNE & RICHARD LLP
ON BEHALF OF PATRIARCH PARTNERS LLC

**Richards Spears**
**Kibbe & Orbe LLP**

One World Financial Center  New York, NY 10281-1003
212.530.1800  fax 212.530.1801  www.rsko.com

January 14, 2005

To the Persons Listed on Schedule A hereto

Zohar II 2005-1, Limited

Ladies and Gentlemen:

We have acted as special counsel to Patriarch Partners XIV, LLC, a Delaware limited liability company ("Patriarch XIV"), solely for the purpose of issuing this opinion in connection with the Collateral Management Agreement, dated as of January 12, 2005 (the "Collateral Management Agreement"), by and among Patriarch XIV, Zohar II 2005-1, Limited, an exempted company organized under the laws of the Cayman Islands (the "Issuer"), and Zohar 2005-1, LLC, a limited liability company organized under the laws of the State of Delaware (the "Zohar Subsidiary"), and the Collateral Administration Agreement, dated as of January 12, 2005 (the "Collateral Administration Agreement"), by and among the Issuer, Patriarch XIV and LaSalle Bank National Association, as Collateral Administrator.  This opinion is being furnished to you pursuant to Section 3.1(c)(iv) of the Indenture, dated as of January 12, 2005 (the "Indenture"), by and among the Issuer, Zohar II 2005-1, Corp., a corporation organized under the laws of the State of Delaware (the "Co-Issuer"), the Zohar Subsidiary, IXIS Financial Products Inc., as Class A-1 Note Agent and Class A-3 Note Agent, MBIA Insurance Corporation, as Credit Enhancer, and LaSalle Bank National Association, as Trustee.  We do not act as general counsel to Patriarch XIV and our familiarity with such company and its businesses, activities and affairs is limited to the specific transactions for which we have been retained.  All capitalized terms used but not defined herein have the meanings set forth in the Indenture.

For purposes of this opinion, we have examined (and relied upon with your permission) copies of the following documents (the "Reviewed Documents"):

1.    the Indenture;

2.    the Collateral Management Agreement;

3.    the Collateral Administration Agreement;

4.    the Certificate of Formation of Patriarch XIV (the "Certificate of Formation");

5.    the Limited Liability Company Agreement of Patriarch XIV, effective as of July 9, 2003 (the "Patriarch XIV LLC Agreement");

NY285275.4/2047-00003                                    -1-

CONFIDENTIAL TREATMENT REQUESTED BY BRUNE & RICHARD LLP
ON BEHALF OF PATRIARCH PARTNERS LLC

PP050681

6.  a Certificate of Good Standing (the "Certificate of Good Standing") from the Secretary of State of the State of Delaware, dated as of a date which is no more than three business days prior to the date of this opinion, with respect to Patriarch XIV;

7.  a certificate of Lynn Tilton as the sole manager (the "Manager") of Patriarch XIV, in the form of Exhibit A hereto;

8.  a letter agreement, dated as of January 14, 2005 (the "Warehouse Termination Agreement"), among Zohar II 2005-1, Limited, IXIS Financial Products Inc., MMP-5 Funding, LLC, LaSalle Bank National Association and Patriarch XIV, attached as Exhibit B hereto; and

9.  a certificate of a senior managing director of Patriarch XIV, in the form of Exhibit C hereto.

For the purposes of this opinion we have also (a) examined such other limited liability company records of Patriarch XIV, and (b) investigated such questions of law, in each case, as we have deemed necessary or appropriate in connection with this opinion. As to facts material to this opinion, we have relied exclusively upon the representations, warranties and certifications contained in the Reviewed Documents and we have conducted no independent investigation as to any factual matters.

In our examinations, and in giving the opinions set forth below, we have assumed, with your approval, the following:

(i)  the genuineness of all signatures, the legal capacity of natural persons, the authenticity and completeness of all documents submitted to us as originals, the conformity to originals of all documents submitted to us as copies;

(ii)  each party to the Reviewed Documents, other than Patriarch XIV, is duly organized, validly existing and in good standing under the laws of its jurisdiction of organization;

(iii)  the due authorization, execution and delivery of the Reviewed Documents, by each party thereto other than Patriarch XIV;

(iv)  that each of the Reviewed Documents constitutes the legal, valid and binding obligation of each party thereto, other than Patriarch XIV, and is enforceable against each such party, other than Patriarch XIV, in accordance with its terms;

(v)  each party, other than Patriarch XIV, has the requisite power, authority and legal right to enter into and perform its obligations under each Reviewed Document;

(vi)  the accuracy of the representations, warranties and certifications, and the due performance of the covenants, contained in the Reviewed Documents. Unless otherwise expressly noted, we have conducted no independent investigation as to such factual matters;

NY285275.4/2047-00003                                    -2-                                    PP050682
CONFIDENTIAL TREATMENT REQUESTED BY BRUNE & RICHARD LLP
ON BEHALF OF PATRIARCH PARTNERS LLC

Respondents' Exhibit 8   pg. 424 of 447

(vii)    that there are no (A) extrinsic agreements or understandings, written or oral, or (B) usage of trade or course of prior dealing, in each case, among the parties to the Reviewed Documents, that would modify, supplement or interpret the terms of the Reviewed Documents or the respective rights or obligations of the parties thereunder;

(viii)    each party to the Reviewed Documents is receiving and has received consideration in connection with such Reviewed Documents and that any conditions to the effectiveness of each Reviewed Document (if any) have been met, complied with or effectively waived;

(ix)    that there has not been any mutual mistake of fact, fraud, duress or undue influence;

(x)    that the conduct of all of the parties to the Reviewed Documents has complied with any requirement of good faith, fair dealing and conscionability and that all parties to the Reviewed Documents will act in accordance with, and will refrain from taking any action that is forbidden by, the terms and conditions of the Reviewed Documents; and

(xi)    that the execution and delivery by each of the parties to the Reviewed Documents, and the performance by such parties of their obligations under the Reviewed Documents, do not and will not violate, conflict with or constitute a default under (A) any agreement or instrument (except that we do not make such assumption with respect to our opinion in paragraph 4 hereof with respect to Patriarch XIV) to which any party to the Reviewed Documents or any of their respective properties is subject, (B) any law, rule, or regulation (except that we do not make such assumption with respect to our opinion in paragraph 4 hereof with respect to Patriarch XIV) to which any party to the Reviewed Documents or any of their respective properties is subject, (C) any judicial or regulatory order or decree of any governmental authority (except that we do not make such assumption with respect to our opinion in paragraph 4 hereof with respect to Patriarch XIV), or (D) any consent, approval, waiver, license or authorization or other action or filing with any governmental authority (except that we do not make such assumption with respect to our opinion in paragraph 5 hereof with respect to Patriarch XIV).

Based on the foregoing, and subject to the information, limitations, exceptions and qualifications set forth below, we are of the opinion that:

1.    Based solely on the Certificate of Good Standing, Patriarch XIV is a limited liability company validly existing and in good standing as a limited liability company under the laws of the State of Delaware.

2.    Patriarch XIV has all limited liability company power necessary to execute and deliver the Collateral Management Agreement, the Collateral Administration Agreement and the Warehouse Termination Agreement and to perform the obligations contemplated to be performed by it thereunder. No further limited liability company action is required to be taken by, or on the part of, Patriarch XIV to authorize Patriarch XIV to execute and deliver the

NY285275.4/2047-00003                                                    -3-                                                                      PP050683
CONFIDENTIAL TREATMENT REQUESTED BY BRUNE & RICHARD LLP
ON BEHALF OF PATRIARCH PARTNERS LLC

Respondents' Exhibit 8    pg. 425 of 447

Collateral Management Agreement, the Collateral Administration Agreement and the Warehouse Termination Agreement and to consummate the transactions contemplated thereby.

3.    Patriarch XIV has duly executed and delivered the Collateral Management Agreement, the Collateral Administration Agreement and the Warehouse Termination Agreement, and the Collateral Management Agreement, the Collateral Administration Agreement and the Warehouse Termination Agreement constitute valid and binding obligations of Patriarch XIV, enforceable against Patriarch XIV in accordance with their respective terms.

4.    Neither the execution and delivery of the Collateral Management Agreement, the Collateral Administration Agreement or the Warehouse Termination Agreement, nor the consummation of the transactions contemplated thereby, nor the performance of the obligations thereunder, in each case, by Patriarch XIV (i) violates any Applicable Law (as defined below) or federal law by which Patriarch XIV is bound or (ii) conflicts with, constitutes a default under or violates any of the terms, conditions or provisions of (x) the Certificate of Formation, (y) the Patriarch XIV LLC Agreement or (z) only the agreements of Patriarch XIV set forth on Schedule B hereto; provided, however, that except for our review of such agreements, we have conducted no independent investigation as to such matters. Based solely on a certificate of the Manager of Patriarch XIV, there are no judgments, writs, injunctions, decrees, orders or rulings of any court or governmental authority binding on Patriarch XIV.

5.    No consent, approval, waiver, license or authorization or other action or filing with any governmental agency of the United States of America or the State of New York is required under Applicable Law or federal law on the part of Patriarch XIV for the execution, delivery or performance by Patriarch XIV of the Collateral Management Agreement, the Collateral Administration Agreement and the Warehouse Termination Agreement.

Our opinions above are subject to the following additional information, limitations, exceptions and qualifications:

(i)    Each of our opinions above is subject to, and the enforceability of each of the Reviewed Documents may be limited by, the following:

(a)    applicable United States federal or state bankruptcy, insolvency, fraudulent transfer or conveyance, reorganization, receivership, moratorium, arrangement or assignment for the benefit of creditors or similar laws from time to time in effect affecting generally the enforcement of creditors' rights and remedies, including, without limitation, judicially developed doctrines in these areas, such as substantive consolidation and equitable subordination;

(b)    general principles of equity (regardless of whether enforcement is sought in equity or at law) including, without limitation, principles (i) governing the availability of specific performance, injunctive relief or other equitable remedies which may make such remedies unavailable, (ii) of reasonableness, good faith and fair dealing in the performance and enforcement of an agreement by the party seeking enforcement, (iii) affording equitable defenses (e.g., waiver, laches and estoppel) or the defense of impossibility against a party seeking

CONFIDENTIAL TREATMENT REQUESTED BY BRUNE & RICHARD LLP
ON BEHALF OF PATRIARCH PARTNERS LLC                                                    PP050684

enforcement, (iv) affording defenses based upon the unconscionability of the enforcing party's conduct or (v) requiring consideration of the materiality of (x) a breach and (y) the consequences of the breach to the party seeking enforcement;

(c)     rules of law that (i) limit or affect the enforcement of provisions of a contract that purport to waive, or to require waiver of, the obligations of good faith, fair dealing, diligence and reasonableness, (ii) provide that forum selection clauses in contracts are not necessarily binding on the court in the forum selected, (iii) limit the availability of a remedy under certain circumstances where another remedy has been elected, (iv) provide a time limitation after which a remedy may not be enforced, (v) limit the right of a creditor to use force or cause a breach of the peace in enforcing rights, (vi) relate to the sale or disposition of collateral or the requirements of a commercially reasonable sale, (vii) impose a fiduciary duty on a person or entity, (viii) limit the enforceability of provisions releasing, exculpating or exempting a party from, or requiring indemnification of a party for, liability for its own action or inaction, to the extent the action or inaction involves negligence, recklessness, willful misconduct, unlawful conduct, violation of public policy or litigation against another party determined adversely to such party or (ix) limit rates of interest which may be charged or collected;

(d)     generally applicable rules of law that govern and afford judicial discretion regarding the determination of damages and entitlement to attorneys' fees and other costs;

(e)     any statute, law, regulation, rule or order, or amendment or modification of the foregoing, which becomes effective after the date of this opinion; and

(f)     the further qualifications and limitations set forth herein.

(ii)     We express no opinion regarding the validity, binding effect or enforceability of any provision in any of the Reviewed Documents relating to (a) forum selection, submission to jurisdiction or immunity waiver, including, without limitation, any waiver of any objection that a court is an inconvenient forum, in respect of any United States federal court and other provisions purporting to affect the jurisdiction and venue of courts, (b) choice of governing law, (c) waiving the right to a jury trial or waiver of service of process requirements, (d) injunctive relief or equitable remedies, (e) providing for forfeitures or the recovery of amounts deemed to constitute penalties, or for liquidated damages, acceleration of future amounts due, late charges, prepayment charges, interest upon interest, and increased interest rates upon default, (f) any provision to the effect that remedies are cumulative rather than exclusive, (g) self-help provisions, (h) the availability or waiver of any remedies or relief (whether legal, equitable or otherwise) or any releases or waivers of rights (whether legal, equitable or otherwise), including, without limitation, waivers of (i) legal or equitable defenses, (ii) rights to damages, (iii) rights to counterclaim or set-off, (iv) rights to notice, (v) the benefits of any law, rule or regulation unless the same shall expressly permit such a waiver or (vi) broadly or vaguely stated rights, (i) provisions providing for the discharge of defenses,

CONFIDENTIAL TREATMENT REQUESTED BY BRUNE & RICHARD LLP
ON BEHALF OF PATRIARCH PARTNERS LLC                                                     PP050685

disclaimers and liability limitations, (j) indemnification of any of the parties to the Reviewed Documents for negligence, willful misconduct or other wrongdoing, indemnification to the extent the same may violate public policy, indemnification under any securities laws, any release by any party of another party for any act or conduct which has not at the time of giving the release occurred or indemnification or release of a party for damages resulting from such party's conduct, (k) provisions establishing or waiving evidentiary standards or fixing the method or quantum of proof to be applied in litigation or similar proceedings, (l) providing for the enforceability of the remaining terms or provisions where certain terms or provisions have been determined to be illegal or unenforceable, (m) any confidentiality agreement, non-competition agreement, non-raiding or non-solicitation agreement or similar restrictive covenant, (n) appointing one party as an attorney-in-fact for an adverse party or providing that the decision of any particular person will be conclusive or binding on others, (o) provisions purporting to limit rights of third parties who have not consented thereto or purporting to grant rights to third parties (other than provisions in the Collateral Management Agreement granting rights to MBIA as an express third-party beneficiary of such agreement), (p) provisions or agreements regarding proxies, shareholders agreements, shareholder voting rights, voting trusts, and similar agreements, (q) the scope or enforceability of any provision purporting to require arbitration, (r) any provision purporting to waive any right or benefit provided by law, (s) provisions, if any, which are contrary to the public policy of any jurisdiction or (t) the payment of interest.

(iii)    In rendering the opinions expressed in paragraphs 4 and 5 above, we express no opinion as to any violation of, or any consent or approval required under, any law or regulations that may have become applicable to Patriarch XIV as a result of the involvement of other parties in the transactions contemplated by the Reviewed Documents or because of the legal or regulatory status of such other parties or because of any other facts specifically pertaining to such other parties. In addition, the opinions expressed in paragraphs 4 and 5 above relate only to those laws and regulations that, in our experience, are normally applicable to transactions of the type contemplated by the Collateral Management Agreement and the Collateral Administration Agreement or consents or approvals that are required under a court or administrative judgment, order or decree of which we have been specifically advised by Patriarch XIV in connection with the rendering of such opinions. Although we have not specifically considered the possible applicability to Patriarch XIV of any other laws, regulations, judgments or decrees, no facts have been disclosed to us, and nothing has come to our attention, that would cause us to conclude that the execution and delivery by Patriarch XIV of, or the performance or incurrence by Patriarch XIV of any obligations or liabilities under, the Collateral Management Agreement or the Collateral Administration Agreement will cause Patriarch XIV to violate, or require any governmental consent or approval under, any applicable law, rule or regulation of the United States of America or the State of New York.

(iv)    We express no opinion whatsoever with respect to or concerning (a) the past, present or future value of any securities or other property, (b) the adequacy of any consideration nor the fairness of any of the transactions contemplated by the Reviewed Documents nor the effect of any such matters on the enforceability of the Reviewed

CONFIDENTIAL TREATMENT REQUESTED BY BRUNE & RICHARD LLP
ON BEHALF OF PATRIARCH PARTNERS LLC                                    PP050686

Documents, (c) any person's right in or title to any asset or property, (d) the creation, attachment, existence, perfection or priority of any lien, claim, encumbrance, security interest or pledge of any kind or (e) the financial condition or status of any person.

(v)    We are qualified to practice law in the State of New York and we do not purport to be experts on, or to express any opinion herein concerning, any law other than (i) the laws of the State of New York, which we consider are normally applicable to transactions of the type contemplated by the Reviewed Documents, without our having made any special investigations as to the applicability of any other statute, law, rule or regulation (collectively, the "Applicable Laws") and (ii) the federal laws of general applicability in the United States, which we consider are normally applicable to transactions of the type contemplated by the Reviewed Documents, without our having made any special investigations as to the applicability of any other statute, law, rule or regulation. We are not qualified to practice law in the State of Delaware and our opinions herein regarding Delaware law are limited solely to our review of provisions of the Limited Liability Company Act of the State of Delaware which we consider are normally applicable to the transactions of the type contemplated by the Reviewed Documents without our having made any special investigations as to the applicability of any other statute, law, rule or regulation. Notwithstanding anything in this opinion letter to the contrary (including, without limitation, opinion paragraphs 4 and 5 above), we express no opinion whatsoever with respect to or concerning (a) any United States federal securities laws or state securities or blue sky laws or the rules or regulations thereof, (b) any investment company laws or similar statutes, (c) any environmental laws and regulations, (d) any anti-trust or anti-competition or unfair competition laws, including without limitation, the Hart-Scott-Rodino Anti-Trust Improvement Act of 1976, (e) pension and employee benefit laws and regulations, including, without limitation, the Employee Retirement Income Security Act of 1974 ("ERISA"), (f) any tax or duty laws and regulations, (g) any patent, trademark, copyright or other intellectual property laws and regulations, (h) United States Federal Reserve Board margin regulations, (i) compliance with fiduciary duty requirements, (j) statutes, ordinances and the administrative decisions and the rules and regulations of counties, towns, municipalities and special political subdivisions and judicial decisions to the extent that they deal with any of the foregoing, (k) land use and subdivision laws and regulations, (*l*) racketeering laws and regulations (*e.g.*, RICO), (m) health and safety laws and regulations (*e.g.*, OSHA) or labor laws and regulations, (n) the Real Estate Syndication Offerings Law (§§352(e)-(j) of Article 23-A of the General Business Law of the State of New York), (o) the effect of any statute, law, regulation, rule or order or amendment or modification of any of the foregoing which becomes effective after the date of this opinion and (p) any anti-fraud laws, rules or regulations.

(vi)    We express no opinions on enforceability other than as set forth in paragraph 3 above.

(vii)    This opinion is provided for the sole benefit of the parties to whom it is addressed and may not be relied upon by or disclosed to any other party for any purpose whatsoever.

CONFIDENTIAL TREATMENT REQUESTED BY BRUNE & RICHARD LLP
ON BEHALF OF PATRIARCH PARTNERS LLC                    PP050687

(viii)   We do not express any opinion as to the effect on the opinions expressed herein of (a) the compliance or noncompliance of any party (other than Patriarch XIV) to any of the Reviewed Documents with any state, federal, foreign or other laws or regulations applicable to it or them, or (b) the legal or regulatory status or the nature of the business of any party (other than Patriarch XIV).

(ix)   This opinion is valid only with respect to the date hereof and not any other date before or after the date hereof, and we assume no obligation to advise you of facts, circumstances, events or developments which may be brought to our attention after the date hereof and which may alter, affect or modify the opinions expressed herein.

Very truly yours,

Richard Spears Kibbe & Orbe LLP

NY285275.4/2047-00003
CONFIDENTIAL TREATMENT REQUESTED BY BRUNE & RICHARD LLP
ON BEHALF OF PATRIARCH PARTNERS LLC

PP050688

## SCHEDULE A

MBIA Insurance Corporation
113 King Street
Armonk, New York 10504

IXIS Financial Products Inc.
9 West 57th Street, 35th Floor
New York, New York 10019

LaSalle Bank National Association
135 South LaSalle Street, Suite 1625
Chicago, Illinois 60603
Attention:      CDO Trust Services Group
Reference:      Zohar II 2005-1, Limited

Zohar II 2005-1, Limited
c/o Maples Finance Limited
P.O. Box 1093GT
Queensgate House
South Church Street
George Town, Grand Cayman
Cayman Islands

Zohar II 2005-1, LLC
c/o Puglisi & Associates
850 Library Avenue, Suite 204
Newark, Delaware 19711
Attention:      Donald Puglisi, Esq.

Standard & Poor's Ratings Services
55 Water Street, 41st Floor
New York, New York 10041

Each of the Holders of the Notes referred to in the Indenture

CONFIDENTIAL TREATMENT REQUESTED BY BRUNE & RICHARD LLP
ON BEHALF OF PATRIARCH PARTNERS LLC

PP050689

## SCHEDULE B

1.  Collateral Management Agreement, dated as of January 12, 2005, by and among Patriarch XIV, the Issuer and the Zohar Subsidiary.

2.  Collateral Administration Agreement, dated as of January 12, 2005, by and among the Issuer, Patriarch XIV and LaSalle Bank National Association.

3.  Warehouse Termination Agreement, dated as of January 14, 2005 among the Issuer, IXIS Financial Products Inc., MMP-5 Funding, LLC, LaSalle Bank National Association, Branch Banking and Trust Company, Ark II CLO 2001-1, Limited and Patriarch XIV.

NY285275.4/2047-00003                    S-2
CONFIDENTIAL TREATMENT REQUESTED BY BRUNE & RICHARD LLP
ON BEHALF OF PATRIARCH PARTNERS LLC                    PP050690

INDEX

Respondents' Exhibit 8   pg. 432 of 447

# Exhibit G

CONFIDENTIAL TREATMENT REQUESTED BY BRUNE & RICHARD LLP
ON BEHALF OF PATRIARCH PARTNERS LLC

**MBIA**

Capital Strength. Triple-A Performance.

**MBIA Insurance Corporation**
113 King Street, Armonk, NY 10504
Tel 914-273-4545
www.mbia.com

January 14, 2005

To the parties listed on
Schedule I hereto

Ladies and Gentlemen:

I am General Counsel of the MBIA Insurance Corporation, a New York corporation ("MBIA"), and have acted as counsel to MBIA in connection with (i) the issuance of Financial Guaranty Insurance Policy No. 45557 (the "Insurance Policy") issued pursuant to (ii) that certain Insurance and Indemnity Agreement dated as of January 12, 2005 (the "Insurance Agreement") among MBIA, Zohar II 2005-1, Limited (the "Issuer"), Zohar II 2005-1, Corp. (the "Co-Issuer") and Zohar II 2005-1, LLC (the "Zohar Subsidiary"), (iii) that certain Indenture dated as of January 12, 2005 (the "Indenture") among the Issuer, the Co-Issuer, the Zohar Subsidiary, MBIA, IXIS Financial Products Inc. and LaSalle Bank National Association and (iv) that certain Premium Letter in respect of the Insurance Policy dated as of January 14, 2005 (the "Premium Letter" and, together with the Insurance Policy, the Insurance Agreement and the Indenture, the "MBIA Documents") between the Issuer and MBIA.

In that regard, and for purposes of this opinion, I have examined the MBIA Documents, and such corporate records, documents and proceedings and other documents and agreements as I have deemed necessary and appropriate.

Based upon the foregoing, I am of the following opinion:

1.      MBIA is a stock insurance company duly organized, validly existing and holding a current certificate of authority to transact insurance business under the laws of the State of New York and has the corporate power and authority to issue and perform its obligations under the MBIA Documents.

2.      The MBIA Documents have been duly authorized, executed and delivered by MBIA and constitute the valid and binding obligations of MBIA enforceable in accordance with their respective terms, except as the enforceability of MBIA's obligations thereunder may be limited by bankruptcy, insolvency, reorganization, moratorium and other similar laws affecting the enforceability of creditors' rights generally, as such laws would apply in the event of bankruptcy, insolvency, reorganization of, or other similar occurrence with respect to, MBIA and by general equitable principles (regardless of whether such enforceability is considered in a proceeding at law or in equity) and by an implied covenant of good faith and fair dealing.

3.      The execution, delivery and performance by MBIA of the MBIA Documents do not violate the certificate of incorporation or by-laws of MBIA nor to the best of my knowledge any applicable United States or New York law, rule, regulation,

NY2 \1497328\05\W3CG05!.DOC\62565 0047

CONFIDENTIAL TREATMENT REQUESTED BY BRUNE & RICHARD LLP
ON BEHALF OF PATRIARCH PARTNERS LLC

PP050692



order or judgment applicable to MBIA, provided that such opinion only applies to those violations which would have a material adverse effect on the ability of MBIA to comply with its obligations under the MBIA Documents.

I am qualified to practice law in the State of New York and do not purport to be an expert on, or to express any opinion concerning, any law other than the laws of the State of New York and the federal laws of the United States of America.

Very truly yours,

Ram D. Wertheim
General Counsel

CONFIDENTIAL TREATMENT REQUESTED BY BRUNE & RICHARD LLP
ON BEHALF OF PATRIARCH PARTNERS LLC                    PP050693



## SCHEDULE I

Zohar II 2005-1, Limited
c/o Maples Finance Limited
P.O. Box 1093GT
Queensgate House
South Church Street
George Town, Grand Cayman
Cayman Islands

LaSalle Bank National Association
135 South LaSalle Street, Suite 1625
Chicago, Illinois 60603

Moody's Investors Service, Inc.
99 Church Street
New York, New York  10007

Standard and Poor's Ratings Services
55 Water Street
New York, New York  10041

Patriarch Partners XIV, LLC
c/o Patriarch Partners, LLC
112 South Tryon Street, Suite 700
Charlotte, North Carolina 28284

IXIS Securities North America Inc.
as Placement Agent
9 West 57th Street, 35th Floor
New York, New York 10019

IXIS Financial Products Inc.
in its various agency roles
9 West 57th Street, 35th Floor
New York, New York 10019

Eiffel Funding, LLC
c/o Global Securitization Services LLC,
445 Broad Hollow Rd.,
239 Melville, N.Y. 11747

CONFIDENTIAL TREATMENT REQUESTED BY BRUNE & RICHARD LLP
ON BEHALF OF PATRIARCH PARTNERS LLC

PP050694

# Exhibit H

CONFIDENTIAL TREATMENT REQUESTED BY BRUNE & RICHARD LLP
ON BEHALF OF PATRIARCH PARTNERS LLC

PP050695

INDEX

EXHIBIT H

## FORM OF FUNDING CERTIFICATE

Funding Certificate–Section 3.2(e)

      Reference is made to the Indenture dated as of January 12, 2005 (the "Indenture") among ZOHAR II CDO 2004-1, Limited (the "Issuer"), ZOHAR II CDO 2004-1, Corp. (the "Co-Issuer"), ZOHAR II CDO 2004-1, LLC, MBIA Insurance Corporation, as credit enhancer, IXIS Financial Products Inc., as agent for the Holders of the Class A-1 Notes and Holders of the Class A-3 Notes, and LaSalle Bank National Association, as trustee (in such capacity, together with its successors in such capacity, the "Trustee"). Capitalized terms used but not defined herein have the respective meanings given to such terms in the Indenture.

      Pursuant to Section 3.2(e) of the Indenture, this Funding Certificate is being delivered by the Issuer to the Trustee.

      On the date hereof, in accordance with the Indenture and the Placement Agreement, the Issuer expects to receive

(i)    proceeds from the issuance of the Class A-1 Notes in an amount equal to U.S.$0

(ii)   proceeds from the issuance of the Class A-2 Notes in an amount equal to U.S.$550,000,000

(iii)  proceeds from the issuance of the Class A-3 Notes in an amount equal to U.S.$[0/_____] and

(iv)  proceeds from the issuance of the Class B Notes in an amount equal to U.S.$0

      The Issuer hereby directs you, upon your receipt of all of such net proceeds, to apply such proceeds on the Issuer's behalf pursuant to its instructions with respect thereto.

      Please acknowledge your receipt of this Funding Certificate by signing on the line provided below.

Exhibit H -- Form of Funding Certificate

NY3:#7350457v3
CONFIDENTIAL TREATMENT REQUESTED BY BRUNE & RICHARD LLP
ON BEHALF OF PATRIARCH PARTNERS LLC

PP050696

IN WITNESS WHEREOF, this certificate is delivered on behalf of the Issuer, in the undersigned's capacity as _____, this ___ day of January, 2005.

ZOHAR II CDO 2004-1, LIMITED,
as Issuer

By:_____
    Name:
    Title:

Exhibit H -- Form of Funding Certificate

NY3:#7350457v3
CONFIDENTIAL TREATMENT REQUESTED BY BRUNE & RICHARD LLP
ON BEHALF OF PATRIARCH PARTNERS LLC                    PP050697

RECEIPT ACKNOWLEDGED:

LASALLE BANK NATIONAL ASSOCIATION,
  as Trustee


By_____
  Title:

Exhibit H -- Form of Funding Certificate

NY3:#7350457v3
CONFIDENTIAL TREATMENT REQUESTED BY BRUNE & RICHARD LLP
ON BEHALF OF PATRIARCH PARTNERS LLC

PP050698

# Exhibit I-1

CONFIDENTIAL TREATMENT REQUESTED BY BRUNE & RICHARD LLP
ON BEHALF OF PATRIARCH PARTNERS LLC

EXHIBIT I-1

FORM OF SECTION 3(C)(7) REMINDER NOTICE

**SECTION 3(c)(7) REMINDER NOTICE**

To:        All DTC Participants holding an interest in the [Class A-1 floating rate senior secured revolving notes due 2017 ("Class A-1 Notes")][Class A-2 floating rate senior secured term notes due 2017 ("Class A-2 Notes")][Class A-3 floating rate senior secured delayed drawdown notes due 2017 ("Class A-3 Notes")][Class B zero coupon second priority secured notes due 2020 ("Class B Notes")][Class C zero coupon third priority secured notes due 2020 ("Class C Notes")].[1]

From:    Zohar II 2005-1, Limited and Zohar II 2005-1, Corp.

Date:     [insert date]

Subject:  Reminder of Section 3(c)(7) requirements and restrictions related to the [Class A-1 Notes][Class A-2 Notes][Class A-3 Notes][Class B Notes][Class C Notes].[2]

Reference is made Indenture dated as of January 12, 2005, as supplemented and otherwise modified and in effect from time to time (the "Indenture"), among the Zohar II 2005-1, Limited (the "Issuer"), Zohar II 2005-1, Corp. (the "Co-Issuer"), Zohar II 2005-1, LLC, MBIA Insurance Company (the "Credit Enhancer"), IXIS Financial Products Inc., as agent for the Holders of the Class A-1 Notes (the "Class A-1 Note Agent") and as agent for the Holders of the Class A-3 Notes (the "Class A-3 Note Agent"), and LaSalle Bank National Association, as trustee (in such capacity, the "Trustee"). All capitalized terms used in this Reminder Notice that are not defined herein are used as defined in the Indenture.

Every beneficial owner of an interest in the [Class A-1 Notes][Class A-2 Notes][Class A-3 Notes][Class B Notes][Class C Notes][3] (each a "Beneficial Holder") is required to be a QIB/QP that can at all times make the following representations to the effect that such Beneficial Holder:

(1) Is a Qualified Institutional Buyer who is a Qualified Purchaser;

(2) Is not a dealer described in paragraph (a)(1)(ii) of Rule 144A that owns and invests on a discretionary basis less than U.S.$25,000,000 in securities of issuers that are not affiliated persons of such dealer;

(3) Is not a plan referred to in paragraph (a)(1)(i)(D) or (a)(1)(i)(E) of Rule 144A, or a trust fund referred to in paragraph (a)(1)(i)(F) of Rule 144A that holds the assets of such a plan, where investment decisions with respect to such plan are made by the beneficiaries of such plan;

---

[1] Insert as appropriate
[2] Insert as appropriate
[3] Insert as appropriate

Exhibit I-1 – Form of Section 3(c)(7) Reminder NoticeNY3:#7351409v1

NY3:#7351409v3
CONFIDENTIAL TREATMENT REQUESTED BY BRUNE & RICHARD LLP
ON BEHALF OF PATRIARCH PARTNERS LLC

PP050700

(4) Is acting for its own account or for the account of one or more QIB/QP's for investment purposes and not with a view to the distribution of its interest in the Note;

(5) Was not organized or reorganized for the purpose of acquiring an interest in the Note;

(6) Will hold and transfer its interest in the Note in at least the minimum denomination set forth in the Indenture; and

(7) Is aware, and will advise any future Holder of an interest in the Note upon the transfer of the Note, that such transfer is being made in reliance on Rule 144A and is subject to the restrictions on transfer set forth in this Reminder Notice, as described more particularly in the Indenture.

An interest in the [Class A-1 Notes][Class A-2 Notes][Class A-3 Notes][Class B Notes][Class C Notes][4] can only be transferred to a Qualified Institutional Buyer that is a Qualified Purchaser that can make all of the representations set forth above.

Any sale, pledge or other transfer of a [Class A-1 Notes][Class A-2 Notes][Class A-3 Notes][Class B Note][Class C Note][5] (or any interest therein) made in violation of the transfer restrictions contained in the Indenture, or made based upon any false or inaccurate representation made by the purchaser or a transferee to the Co-Issuers, will be void ab initio and of no force or effect.

None of the Issuer, the Co-Issuer, the Trustee or the Note Registrar has any obligation to recognize any sale, pledge or other transfer of a [Class A-1 Notes][Class A-2 Notes][Class A-3 Notes][Class B Note][Class C Note][6] (or any interest therein) made in violation of any such transfer restriction or made based upon any such false or inaccurate representation.

The Issuer has the right to require that any Beneficial Holder who is determined not to be a Qualified Institutional Buyer that is a Qualified Purchaser transfer its interest in such Note to a Person who is a Qualified Institutional Buyer that is a Qualified Purchaser.

Any DTC Participant or other Person receiving this Reminder Notice that is not a Beneficial Holder is requested to forward this Reminder Notice to the appropriate Beneficial Holder, which Beneficial Holder must be able to make the representations set forth herein.

Any recipient of this Reminder Notice should contact the Trustee at 135 South LaSalle Street, Suite 1625, Chicago, IL 60603, Attention: CDO Trust Services Group – Zohar II 2005-1, Limited with any questions or comments regarding the content of this Reminder Notice or to alert the Issuer of the inability of any Beneficial Holder to make any of the representations set forth herein.

---

[4] Insert as appropriate
[5] Insert as appropriate
[6] Insert as appropriate

Exhibit I-1 – Form of Section 3(c)(7) Reminder NoticeNY3:#7351409v1

NY3:#7351409v3
CONFIDENTIAL TREATMENT REQUESTED BY BRUNE & RICHARD LLP
ON BEHALF OF PATRIARCH PARTNERS LLC

PP050701

# Exhibit I-2

CONFIDENTIAL TREATMENT REQUESTED BY BRUNE & RICHARD LLP
ON BEHALF OF PATRIARCH PARTNERS LLC

PP050702

EXHIBIT I-2

FORM OF IMPORTANT SECTION 3(C)(7) NOTICE

**B#:**              [number]

**DATE:**           [_____], 2005

**TO:**             ALL PARTICIPANTS

**FROM:**           IXIS Securities North America Inc.

**ATTENTION:**      Operations Department

**SUBJECT:**        Section 3(c)(7) restrictions for Zohar II 2005-1, Limited and Zohar II 2005-1, Corp. [Class A-1 floating rate senior secured revolving notes due 2017 ("Class A-1 Notes")][Class A-2 floating rate senior secured term notes due 2017 ("Class A-2 Notes")][Class A-3 floating rate senior secured delayed drawdown notes due 2017 ("Class A-3 Notes")][Class B zero coupon second priority secured notes due 2020 ("Class B Notes")][Class C zero coupon third priority secured notes due 2020 ("Class C Notes")][1]

(A)  CUSIP Number              [98977E AA 0][98977E AB 8][G98917 AA 8][98977 AC 6][G98917 AB 6][989772 AA 6][        ][2]

(B)  Security Description       Zohar II 2005-1, Limited and Zohar II 2005-1, Corp. [Class A-1 Notes][Class A-2 Notes][Class A-3 Notes][Class B Notes][Class C Notes][3]

(C)  Offer Amount              Aggregate Amount [U.S.$250,000,000] [U.S.$550,000,000][U.S.$200,000,000] [U.S.$200,000,000][N/A][4]

(D)  Placement Agent           IXIS Securities North America Inc.

(E)  Paying Agent              LaSalle Bank National Association

(F)  Closing Date              January 12, 2005

**Special Instructions:**

**See Attached Important Instructions from the Issuer.**

---

[1] Insert as appropriate
[2] Insert as appropriate
[3] Insert as appropriate
[4] Insert as appropriate

Exhibit I-2 – Form of Important Section 3(c)(7) Notice

NY3:#7351418v1
NY3:#7351418v2
CONFIDENTIAL TREATMENT REQUESTED BY BRUNE & RICHARD LLP
ON BEHALF OF PATRIARCH PARTNERS LLC

PP050703

Zohar II 2005-1, Limited
P.O. Box 1093 GT
Queensgate House
South Church Street, George Town
Grand Cayman, Cayman Islands

Zohar II 2005-1, Corp.
1209 Orange Street
Wilmington, Delaware 19801

**Security Description:**    [Class A-1 floating rate senior secured revolving notes due 2017 ("Class A-1 Notes")][Class A-2 floating rate senior secured term notes due 2017 ("Class A-2 Notes")][Class A-3 floating rate senior secured delayed drawdown notes due 2017 ("Class A-3 Notes")][Class B zero coupon second priority secured notes due 2020 ("Class B Notes")][Class C zero coupon third priority secured notes due 2020 ("Class C Notes")][5]

**CUSIP:**    [98977E AA 0][98977E AB 8][G98917 AA 8][98977 AC 6][G98917 AB 6][989772 AA 6][                    ][6]

The Issuer is putting Participants on notice that they are required to follow these purchase and transfer restrictions with regard to the above-referenced securities.

In order to qualify for the exemption provided by Section 3(c)(7) under the Investment Company Act of 1940, as amended (the "Investment Company Act"), and the exemption provided by Rule 144A under the Securities Act of 1933, as amended (the "Securities Act"), offers, sales and resales of the [Class A-1 Notes][Class A-2 Notes][Class A-3 Notes][Class B Notes][Class C Notes][7] (the "Securities") within the United States or to U.S. Persons may only be made in minimum denominations of U.S.$250,000 and integral multiples of U.S.$1,000 in excess thereof to "qualified institutional buyers" ("QIBs") within the meaning of Rule 144A that are also "qualified purchasers" ("QPs") within the meaning of Section 2(a)(51)(A) of the Investment Company Act. Each purchaser of Securities (i) represents to and agrees with the Issuer that (A) (i) the purchaser is a QIB who is a QP (a "QIB/QP"); (ii) the purchaser is not a broker-dealer which owns and invests on a discretionary basis less than U.S.$25 million in securities of unaffiliated issuers; (iii) the purchaser is not a participant-directed employee plan, such as a 401(k) plan; (iv) the QIB/QP is acting for its own account, or the account of another QIB/QP; (v) the purchaser is not formed for the purpose of investing in the Issuer; (vi) the purchaser, and each account for which it is purchasing, will hold and transfer at least the minimum denomination of Securities; and (vii) the purchaser will provide notice of the transfer restrictions to any subsequent transferees; or (B) it is not a U.S. Person and is purchasing the Securities outside the United States and (ii) acknowledges that the Issuer has not been registered under the Investment Company Act and the Securities have not been registered under the Securities Act and represents

---

[5] Insert as appropriate
[6] Insert as appropriate
[7] Insert as appropriate

Exhibit I-2 – Form of Important Section 3(c)(7) Notice

NY3:#7351418v1
NY3:#7351418v2
CONFIDENTIAL TREATMENT REQUESTED BY BRUNE & RICHARD LLP
ON BEHALF OF PATRIARCH PARTNERS LLC                    PP050704

to and agrees with the Issuer that, for so long as the Securities are outstanding, it will not offer, resell, pledge or otherwise transfer the Securities in the United States or to a U.S. Person except to a QIB that is also QP in a transaction meeting with the requirements of Rule 144A. Each purchaser further understands that the Securities will bear a legend with respect to such transfer restrictions.

The charter, bylaws, organizational documents or securities issuance documents of the Issuer provide that the Issuer will have the right to (i) require any holder of Securities that is a U.S. Person who is determined not to be both a QIB and a QP to sell the Securities to a QIB that is also a QP or (ii) redeem any Securities held by such a holder on specified terms. In addition, the Issuer has the right to refuse to register or otherwise honor a transfer of Securities to a proposed transferee that is a U.S. Person who is not both a Qualified Institutional Buyer and a Qualified Purchaser. As used herein, the terms "United States" and "U.S. Person" have the meanings given such terms in Regulation S under the Securities Act.

The restrictions on transfer required by the issuer (outlined above) will be reflected under the notation "3c7" in DTC's User Manuals and in upcoming editions of DTC's Reference Directory.

Any questions or comments regarding this subject may be directed to the Trustee at 135 South LaSalle Street, Suite 1625, Chicago, IL 60603, Attention: CDO Trust Services Group – Zohar II 2005-1, Limited.

Exhibit I-2 – Form of Important Section 3(c)(7) Notice

NY3:#7351418v1
NY3:#7351418v2
CONFIDENTIAL TREATMENT REQUESTED BY BRUNE & RICHARD LLP
ON BEHALF OF PATRIARCH PARTNERS LLC

PP050705

EXECUTION COPY

FIRST SUPPLEMENTAL INDENTURE

DATED AS OF OCTOBER 31, 2007

to the

INDENTURE

among

ZOHAR II 2005-1, LIMITED

ZOHAR II 2005-1, CORP.

ZOHAR II 2005-1, LLC

MBIA INSURANCE CORPORATION,
as Credit Enhancer

NATIXIS FINANCIAL PRODUCTS INC.
(formerly known as IXIS Financial Products Inc.),
as Class A-1 Note Agent and Class A-3 Note Agent

and

LASALLE BANK NATIONAL ASSOCIATION,
as Trustee

Dated as of January 12, 2005

NY3:#7378689
CONFIDENTIAL TREATMENT REQUESTED BY BRUNE & RICHARD LLP
ON BEHALF OF PATRIARCH PARTNERS LLC

RESPONDENTS'
EXHIBIT
9
AP No. 16462

PP050706

**FIRST SUPPLEMENTAL INDENTURE** dated as of October 31, 2007 (this "Supplemental Indenture") among:

ZOHAR II 2005-1, LIMITED, an exempted company organized under the laws of the Cayman Islands (the "Issuer");

ZOHAR II 2005-1, CORP., a corporation organized and existing under the laws of the State of Delaware (the "Co-Issuer", and together with the Issuer, the "Co-Issuers");

ZOHAR II 2005-1, LLC, a limited liability company organized and existing under the laws of the State of Delaware (the "Zohar Subsidiary", and together with the Co-Issuers, the "Zohar Obligors");

MBIA INSURANCE CORPORATION, a stock insurance company incorporated under the laws of the State of New York ("MBIA" or the "Credit Enhancer");

NATIXIS FINANCIAL PRODUCTS INC. (formerly known as IXIS Financial Products Inc.), a corporation organized and existing under the laws of the State of Delaware, as agent for the holders of the Class A-1 Notes and Class A-3 Notes referred to below (in such capacities, together with its successors in such capacities, the "Class A-1 Note Agent" and "Class A-3 Note Agent", respectively); and

LASALLE BANK NATIONAL ASSOCIATION, a national banking association organized and existing under the laws of the United States, as trustee (together with its permitted successors in the trusts under the Indenture, the "Trustee").

PRELIMINARY STATEMENTS

The Zohar Obligors, the Credit Enhancer, the Class A-1 Note Agent, the Class A-3 Note Agent and the Trustee are parties to an Indenture dated as of January 12, 2005 (the "Indenture").

As and to the extent provided in Section 8.2 of the Indenture, with the consent of (x) the Controlling Party and (y) the Collateral Manager, delivered to the Trustee and the Zohar Obligors, the Trustee and Zohar Obligors may enter into one or more supplemental indentures to add any provisions to, or change in any manner or eliminate any of the provisions of, the Indenture or modify in any manner the rights of the Holders of the Notes or the Holders of the Preference Shares under the Indenture. As contemplated by the Indenture, not later than 15 Business Days prior to the execution hereof, the Trustee has delivered a notice to the Noteholders, the Preference Share Paying Agent, the Credit Enhancer, Moody's and Standard & Poor's describing the substance of this Supplemental Indenture, and each Rating Agency has confirmed in writing that this Supplemental Indenture will not cause the then current rating of any Class of Notes to be reduced or withdrawn (without giving effect to the Credit Enhancement) by such Rating Agency. In addition, the Zohar Obligors have caused to be delivered to the Trustee an Opinion of Counsel in accordance with Section 8.3 of the Indenture.

As and to the extent provided in Section 14.4(d) of the Indenture and Section 7.10 of the Management Agreement, with the consent of the Collateral Manager, the Issuer, the Zohar Subsidiary and the Credit Enhancer, the Management Agreement may be amended. As contemplated by Section 14.4(d) of the Indenture, the Collateral Manager has given the Rating Agencies, the Credit Enhancer and the Trustee at least 10 days' prior notice of the amendment to the Management Agreement set forth herein;

NY3:#7378689
**CONFIDENTIAL TREATMENT REQUESTED BY BRUNE & RICHARD LLP**
**ON BEHALF OF PATRIARCH PARTNERS LLC**                                    **PP050707**

the Trustee has provided a copy of such notice to each Noteholder; each Rating Agency has confirmed that such amendment will not cause its then current rating of any Class of Notes to be reduced or withdrawn; and neither a Majority of each Class of Notes or the Preference Share Paying Agent (acting at the direction of the Majority of the Preference Shares) has, by notice to the Issuer and the Trustee within 30 days after the date of the related notice to the Trustee given to the Noteholders, objected to such amendment.

The Zohar Obligors, the Collateral Manager, the Trustee and the Credit Enhancer desire to amend the Indenture and the Management Agreement on the terms and conditions herein provided.

Accordingly, in consideration of the premises and the mutual agreements contained herein, and of other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto hereby agree as follows:

Section 1.  Defined Terms.  Capitalized terms used herein and not otherwise defined herein shall have the respective meanings assigned to them in the Indenture.

Section 2.  Amendments.  Subject to the receipt by the Trustee of this Supplemental Indenture, duly executed and delivered by each of the parties hereto, but effective as of October 31, 2007, the Indenture is hereby amended as follows:

A.  Rating Matrix.  The definition of "Ratings Matrix" set forth in Section 1.1 of the Indenture is deleted in its entirety and replaced with the following:

"Ratings Matrix":  The row of the table below, which row (the "Currently Applicable Row") shall be: any row as selected by the Collateral Manager from time to time on 10 Business Days' prior written notice to the Trustee (provided that, at the time of such selection, the Collateral Face Amount Ratio shall equal or exceed the percentage set forth in such newly selected row).

| Ratings Matrix Row | Moody's Weighted Average Rating Factor Test | Class A Over-collateralization Ratio Test | Purchase-to-Improve Ratio | Weighted Average Spread Test | Category 1 Ratio | Category 1-2 Ratio | Collateral Face Amount Ratio |
|---|---|---|---|---|---|---|---|
| 1 | 2750 | 112% | 118% | 5% | 5% | 5% | 122% |
| 2 | 3150 | 112% | 118% | 6% | 5% | 5% | 122% |
| 3 | 3475 | 112% | 118% | 7% | 5% | 5% | 122% |

B.  Minimum Average Recovery Rate Test.  The definition of "Minimum Average Recovery Rate Test" set forth in Section 1.1 of the Indenture is deleted in its entirety and replaced with the following:

"Minimum Average Recovery Rate Test":  A test satisfied on any Measurement Date on and after the Ramp Up End Date and prior to the expiration of the Reinvestment Period if (i) the Standard & Poor's Average Recovery Rate on such Measurement Date equals or exceeds 58% and (ii) the Moody's Weighted Average Recovery Rate on such Measurement Date equals or exceeds 50%.

C.  Moody's Rating.  The definition of "Moody's Rating" set forth in Section 1.1 of the Indenture is amended by deleting clause (1) of the proviso thereto in its entirety and replacing it with the following:

NY3:#7378689
CONFIDENTIAL TREATMENT REQUESTED BY BRUNE & RICHARD LLP
ON BEHALF OF PATRIARCH PARTNERS LLC
PP050708

"(1) pending receipt from Moody's of such an estimated rating, the Moody's Rating of such Collateral Debt Obligation shall be (x) one subcategory below the rating generated by the Moody's Riscalc Model if such Collateral Debt Obligation has been presented to Moody's for a rating estimate, (y) at the option of the Issuer (or the Collateral Manager on behalf of the Issuer), equal to the rating derived from such alternative Moody's rating model that is mutually acceptable to Moody's and the Issuer (provided that the Moody's Rating derived in the foregoing clauses (1)(x) and (1)(y) above shall not exceed "B1") or (z) "Caa1" for the period of time for which the Issuer has not presented such Collateral Debt Obligation to Moody's for a rating estimate;"

D. <u>Moody's Recovery Rate</u>.  The definition of "<u>Moody's Recovery Rate</u>" in Section 1.1 of the Indenture is amended by deleting the words "or if no recovery rate has been specifically assigned with respect to a loan pursuant to clause (a) above, and such loan is a DIP Loan, 50%" at the end thereof and replacing such words with the following:

"or if no recovery rate has been specifically assigned with respect to a loan pursuant to clause (a) above, 50%; <u>provided</u> that such loan is either (a) in the process of being assigned an estimated rating by Moody's or (b) a DIP Loan"

E. <u>Moody's Weighted Average Rating Factor Test</u>.  The definition of "Moody's Weighted Average Rating Factor Test" in Section 1.1 of the Indenture is deleted in its entirety and replaced with the following:

"<u>Moody's Weighted Average Rating Factor Test</u>": A test satisfied on any Measurement Date on and after the Ramp Up End Date and prior to the expiration of the Reinvestment Period if the Moody's Weighted Average Rating Distribution is not more than the number specified in the Currently Applicable Row of the Ratings Matrix <u>plus</u>:

(a)      150 if the Moody's Weighted Average Recovery Rate on such Measurement Date equals or exceeds 53%; <u>plus</u>

(b)      an additional 150 if the Moody's Weighted Average Recovery Rate on such Measurement Date equals or exceeds 56%.

F. <u>Senior Collateral Management Fee</u>.  The first sentence in definition of "Senior Collateral Management Fee" in Section 1.1 of the Indenture is amended to read in its entirety as follows:

"<u>Senior Collateral Management Fee</u>":  The fee accrued and payable to the Collateral Manager (or, to the extent provided in the Management Agreement, to any Person that was the Collateral Manager when such fee was earned) in arrears on each Payment Date pursuant to Section 4.1(b) of the Management Agreement and Sections 11.1 and 11.2, in an amount (as certified by the Collateral Manager in writing to the Trustee) equal to 1.00% per annum on the Quarterly Asset Amount (adjusted in the case of the first Payment Date on which such fees are paid to reflect the different number of days in such period).

G. <u>Ramp Up Target</u>.  Section 7.13(a) of the Indenture is amended by substituting "U.S.$1,220,000,000" for "U.S.$1,315,000,000" therein.

NY3:#7378689

**CONFIDENTIAL TREATMENT REQUESTED BY BRUNE & RICHARD LLP**                                                   **PP050709**
**ON BEHALF OF PATRIARCH PARTNERS LLC**

H. <u>Priority of Payments</u>. Section 11.1(a)(i)(D) of the Indenture is amended by restating clause (ii) thereof to read in its entirety as follows:

"(ii) prior to the date on which amounts on deposit in the Professional Fee Account are transferred to the Cash Collateral Account pursuant to Section 10.6, if the balance in the Professional Fee Account is less than U.S.$2,000,000, for deposit into the Professional Fee Account of an amount equal to such amount as would have caused the Balance of all Eligible Investments and Cash in the Professional Fee Account, immediately after such deposit, to equal U.S.$2,000,000 (<u>provided</u> that the amount so deposited on any Payment Date shall not exceed 0.0375% of the Aggregate Principal Balance of all Pledged Collateral Debt Obligations on such Determination Date);".

Section 3. <u>Amendment to Management Agreement</u>. Subject to the receipt by the Trustee of this Supplemental Indenture, duly executed and delivered by each of the parties hereto, but effective as of October 31, 2007, the Management Agreement is hereby amended to restate the first sentence of Section 4.1(b) thereof to read as follows:

"(b) <u>Senior Collateral Management Fee</u>. The Collateral Manager shall be entitled to receive a fee (the "<u>Senior Collateral Management Fee</u>") which will accrue from the Closing Date at a rate of 1.00% per annum on the Quarterly Asset Amount on each Payment Date (adjusted in the case of the first Payment Date on which such fees are paid to reflect the different number of days in such period), payable in arrears on each Payment Date to the extent there are sufficient funds available therefor on such Payment Date in accordance with the Priority of Payments."

Section 4. <u>Miscellaneous</u>.

(A) <u>GOVERNING LAW</u>. THIS SUPPLEMENTAL INDENTURE SHALL BE CONSTRUED IN ACCORDANCE WITH AND GOVERNED BY THE LAW OF THE STATE OF NEW YORK.

(B) <u>Counterparts</u>. This Supplemental Indenture may be executed in any number of counterparts, each of which when so executed shall be deemed to be an original, but all such counterparts shall together constitute but one and the same instrument. Delivery of an executed counterpart of a signature page of this Supplemental Indenture by telecopy shall be effective as delivery of a manually executed counterpart of this Supplemental Indenture.

(C) <u>Effect of Headings; Complete Agreement</u>. The Section headings herein are for convenience only and shall not affect the construction hereof. This Supplemental Indenture sets forth the entire understanding of the parties relating to the subject matter hereof and supersedes and cancels any prior communications, understandings and agreements between the parties hereto.

(D) <u>Documents Otherwise Unchanged</u>. Except as herein provided, the Indenture and the Management Agreement shall remain unchanged and in full force and effect, and each reference to each such document, and words of similar import, therein and in other documents shall be a reference to the Indenture and the Management Agreement as amended hereby and as the same may be further amended, supplemented and otherwise modified and in effect from time to time.

[remainder of page intentionally blank]

NY3:#7378689

**CONFIDENTIAL TREATMENT REQUESTED BY BRUNE & RICHARD LLP
ON BEHALF OF PATRIARCH PARTNERS LLC**                                        **PP050710**

**IN WITNESS WHEREOF**, the parties have caused this Supplemental Indenture to be duly executed by their respective officers thereunto duly authorized as of the day and year first above written.

ZOHAR II 2005-1, LIMITED, as Issuer

By: _____

Name: Christopher Watler
Title: Director

ZOHAR II 2005-1, CORP., as Co-Issuer

By: _____

Name:
Title:

ZOHAR II 2005-1, LLC

By:    ZOHAR II 2005-1, LIMITED,
       its Managing Member

By: _____

Name:
Title: Christopher Watler
       Authorized Signatory

NY3:#7378689

ZOHAR II – FIRST SUPPLEMENTAL INDENTURE

CONFIDENTIAL TREATMENT REQUESTED BY BRUNE & RICHARD LLP
ON BEHALF OF PATRIARCH PARTNERS LLC

PP050711

IN WITNESS WHEREOF, the parties have caused this Supplemental Indenture to be duly executed by their respective officers thereunto duly authorized as of the day and year first above written.

ZOHAR II 2005-1, LIMITED, as Issuer


By:_____
    Name:
    Title:


ZOHAR II 2005-1, CORP., as Co-Issuer


By:_____
    Name:    Donald J. Puglisi
    Title:    President


ZOHAR II 2005-1, LLC

By:    ZOHAR II 2005-1, LIMITED,
       its Managing Member


By:_____
    Name:
    Title:

CONFIDENTIAL TREATMENT REQUESTED BY BRUNE & RICHARD LLP
ON BEHALF OF PATRIARCH PARTNERS LLC                                    PP050712

MBIA INSURANCE CORPORATION, as Credit
Enhancer

By
Name: Michael Murtagh
Title: Director
MBIA Insurance Corporation

NY3:#7378689

CONFIDENTIAL TREATMENT REQUESTED BY BRUNE & RICHARD LLP
ON BEHALF OF PATRIARCH PARTNERS LLC

PP050713

NATIXIS FINANCIAL PRODUCTS INC. (formerly known as IXIS Financial Products Inc.), as Class A-1 Note Agent and Class A-3 Note Agent

By: _____
Name:
Title: Managing Director

By: _____
Name:
Title: Christopher Hayden
Managing Director

ZOHAR II -- FIRST SUPPLEMENTAL INDENTURE

CONFIDENTIAL TREATMENT REQUESTED BY BRUNE & RICHARD LLP
ON BEHALF OF PATRIARCH PARTNERS LLC

PP050714

LASALLE BANK NATIONAL ASSOCIATION, as
Trustee

By: _____

Name:

Title:    Greg Myers
Assistant Vice President

NY3:#7378689    ZOHAR II – FIRST SUPPLEMENTAL INDENTURE

**CONFIDENTIAL TREATMENT REQUESTED BY BRUNE & RICHARD LLP
ON BEHALF OF PATRIARCH PARTNERS LLC**

**PP050715**

ACKNOWLEDGED AND AGREED:

PATRIARCH PARTNERS XIV, LLC

By: _____
Name: Lynn Tilton
Title: Manager

CONFIDENTIAL TREATMENT REQUESTED BY BRUNE & RICHARD LLP
ON BEHALF OF PATRIARCH PARTNERS LLC

PP050716