# <u>EXHIBIT 5</u>

## Zohar II CMA

COLLATERAL MANAGEMENT AGREEMENT

among

ZOHAR II 2005-1, LIMITED,

ZOHAR II 2005-1, LLC,

and

PATRIARCH PARTNERS XIV, LLC,

as Collateral Manager

Dated as of January 12, 2005

NY281027.5/2047-00003

CONFIDENTIAL TREATMENT REQUESTED BY BRUNE & RICHARD LLP
ON BEHALF OF PATRIARCH PARTNERS LLC

INDEX

PP000949

RESPONDENTS'
EXHIBIT
10
AP No. 16462

# TABLE OF CONTENTS

ARTICLE I DEFINITIONS .................................................................................................1

    Section 1.2. Definitions.................................................................................................1

ARTICLE II GENERAL DUTIES OF THE COLLATERAL MANAGER.................................4

    Section 2.1. Appointment of the Collateral Manager. ...............................................4
    Section 2.2. Management Services. .............................................................................4
    Section 2.3. Delivery of Collateral. ............................................................................8
    Section 2.4. Standard of Care. ....................................................................................8
    Section 2.5. Action on Behalf of the Company and the Zohar Subsidiary..................8
    Section 2.6. Obligations of the Collateral Manager....................................................8
    Section 2.7. Brokerage...............................................................................................9
    Section 2.8. Allocation of Aggregate Executions........................................................9
    Section 2.9. The Collateral Manager's Practices.......................................................10

ARTICLE III REPRESENTATIONS AND WARRANTIES.....................................................10

    Section 3.1. Representations and Warranties of the Company and the Zohar Subsidiary.10
    Section 3.2. Representations and Warranties of the Collateral Manager. .........................11

ARTICLE IV COMPENSATION; EXPENSE; DELEGATION;  LIABILITY AND
INDEMNIFICATION.........................................................................................................13

    Section 4.1. Compensation. ........................................................................................13
    Section 4.2. Expenses. ................................................................................................14
    Section 4.3. Delegation. .............................................................................................15
    Section 4.4. Liability of the Collateral Manager.........................................................15
    Section 4.5. Indemnification.......................................................................................15

ARTICLE V TERM AND TERMINATION; REMOVAL OF THE COLLATERAL
MANAGER .......................................................................................................................18

    Section 5.1. Term........................................................................................................18
    Section 5.2. Automatic Termination............................................................................18
    Section 5.3. Termination For Cause. ...........................................................................18
    Section 5.4. Post-Termination Approvals.....................................................................19
    Section 5.5. Appointment of Successor. ......................................................................19
    Section 5.6. Survival....................................................................................................20
    Section 5.7. Action Upon Termination.........................................................................20
    Section 5.8. Trustee Termination Rights. ....................................................................20

ARTICLE VI ADDITIONAL AGREEMENTS OF THE COLLATERAL MANAGER ...........21

    Section 6.1. Non-Exclusivity. .....................................................................................21
    Section 6.2. Conflicts of Interest; Acknowledgment of the Company. ...............................21
    Section 6.3. Records. ..................................................................................................22
    Section 6.4. Confidentiality. ........................................................................................23

NY281027.5/2047-00003

i

CONFIDENTIAL TREATMENT REQUESTED BY BRUNE & RICHARD LLP
ON BEHALF OF PATRIARCH PARTNERS LLC

PP000950

Section 6.5. Non-Petition. .................................................................................23

ARTICLE VII MISCELLANEOUS ............................................................................24

Section 7.1. No Partnership or Joint Venture. ......................................................24
Section 7.2. Notices. ...........................................................................................24
Section 7.3. Succession; No Assignment, Submission to Jurisdiction, Etc. ...........25
Section 7.4. Third-Party Beneficiary. ..................................................................25
Section 7.5. Governing Law; Waiver Of Jury Trial ..............................................25
Section 7.6. Counterparts. ..................................................................................25
Section 7.7. Headings Descriptive. ......................................................................26
Section 7.8. Severability. ....................................................................................26
Section 7.9. Entire Agreement. ...........................................................................26
Section 7.10. Amendments. .................................................................................26
Section 7.11. Indulgences Not Waivers. ...............................................................26
Section 7.12. Collateral Manager Obligations Under the Indenture. .....................26
Section 7.13. Limitations on Recourse. ................................................................27
Section 7.14. Conflict with Indenture. .................................................................27

NY281027.5/2047-00003

ii

CONFIDENTIAL TREATMENT REQUESTED BY BRUNE & RICHARD LLP
ON BEHALF OF PATRIARCH PARTNERS LLC

PP000951

## COLLATERAL MANAGEMENT AGREEMENT

COLLATERAL MANAGEMENT AGREEMENT, dated as of January 12, 2005 (as the same may be amended or otherwise modified from time to time in accordance with the terms hereof, this "Agreement"), among ZOHAR II 2005-1, LIMITED, an exempted company organized under the laws of the Cayman Islands (the "Company"), ZOHAR II 2005-1, LLC, a limited liability company organized under the laws of the State of Delaware (the "Zohar Subsidiary"), and PATRIARCH PARTNERS XIV, LLC, a limited liability company organized under the laws of the State of Delaware ("Patriarch XIV" or the "Collateral Manager").

### RECITAL

The Company and the Zohar Subsidiary desire to engage the Collateral Manager to provide the **services** described herein and the Collateral Manager desires to provide such services.

NOW, THEREFORE, in consideration of the mutual covenants and agreements herein, the parties hereto hereby agree as follows:

### ARTICLE I

### DEFINITIONS

Section 1.1. <u>Definitions</u>. Capitalized terms used herein that are not otherwise defined herein shall have the respective meanings ascribed thereto in the Indenture (defined below). In addition, as used herein, the following terms shall have the following respective meanings:

"Approved Percentage" shall mean 50% or such lesser percentage (greater than 25%) as shall have been approved in writing by the Controlling Party (such approval not to be unreasonably withheld).

"Approved Replacement" shall mean any replacement for an individual who is (a) a manager, director or management-level employee of the Collateral Manager and (b) actively involved in the management of the Collateral Debt Obligations.

"Cause" shall mean:

(i)      the Collateral Manager willfully breaches, or takes any action that it knows violates, any provision of this Agreement or any term of the Indenture applicable to it;

(ii)     except as provided in (i) above, the Collateral Manager breaches in any material respect any provision of this Agreement or any term of the Indenture applicable to it and fails to cure such breach within thirty (30) days of becoming aware of, or receiving notice from the Trustee or the Controlling Party of, such breach <u>provided however</u>, that such 30 day period shall (with the consent of the Controlling Party (such consent not to be unreasonably withheld or delayed)) be increased to 60 days if the

<u>Collateral Management Agreement</u>

NY281027.5/2047-00003

CONFIDENTIAL TREATMENT REQUESTED BY BRUNE & RICHARD LLP
ON BEHALF OF PATRIARCH PARTNERS LLC                                    PP000952

-2-

Collateral Manager is using commercially reasonable good faith efforts to cure such breach;

(iii)    the failure of any representation, warranty, certification or statement made or delivered by the Collateral Manager in or pursuant to this Agreement or the Indenture to be correct in any material respect when made and such failure (i) has an adverse effect on the Noteholders or the Credit Enhancer and (ii) no correction is made for a period of thirty (30) days after the Collateral Manager becomes aware of or receives notice from the Trustee or the Controlling Party of such failure; provided however, that such 30 day period shall (with the consent of the Controlling Party (such consent not to be unreasonably withheld or delayed)) be increased to 60 days if the Collateral Manager is using commercially reasonable good faith efforts to cure such failure;

(iv)    an Event of Bankruptcy occurs;

(v)    the occurrence of an act by (i) the Collateral Manager, (ii) Patriarch Partners VIII, LLC, (iii) any company that controls, is controlled by or is under common control with the Collateral Manager (a "Controlled Entity"), (iv) any holder of equity interests in the Collateral Manager, Patriarch Partners VIII, LLC or any Controlled Entity that is also a senior officer of such entity or (v) (without duplication) Lynn Tilton (or any Approved Replacement therefor) that constitutes fraud (as determined in an adjudication) in the performance of its obligations under this Agreement or in the performance of investment advisory services comparable to those provided under this Agreement, or any such person or entity being indicted for a criminal offense materially related to the performance of its obligations under this Agreement or in the performance of investment advisory services comparable to those provided under this Agreement (it being understood that, for the purposes of the definition of "Controlled Entity", control of a Person shall mean the power, direct or indirect, (i) to vote more than 50% of the securities having ordinary voting power for the election of directors of such Person or (ii) to direct or cause the direction of the management and policies of such Person whether by contract or otherwise);

(vi)    (a) Lynn Tilton (or any Approved Replacement therefor) shall fail, for any reason, to be a principal, managing director or management-level employee of Patriarch XIV who is actively involved in the management of the Collateral Debt Obligations or (b) Lynn Tilton shall fail directly or indirectly to own at least the Approved Percentage of the equity interests in Patriarch XIV, unless in the case of the foregoing clause (a) an Approved Replacement shall (x) have been proposed within forty-five (45) days of such failure and (y) have been approved in writing by the Controlling Party within thirty (30) days after notice is sent of such proposed replacement; or

(vii)    an Event of Default under the Indenture has occurred and is continuing.

"CMA Termination Date" shall have the meaning specified in Section 5.1.

"Debt Issuer" shall mean the issuer of any Collateral Debt Obligation.

NY281027.5/2047-00003

Collateral Management Agreement

CONFIDENTIAL TREATMENT REQUESTED BY BRUNE & RICHARD LLP
ON BEHALF OF PATRIARCH PARTNERS LLC

PP000953

-3-

"Event of Bankruptcy" shall mean:

(A)    an involuntary proceeding shall be commenced or an involuntary petition shall be filed seeking (i) liquidation, reorganization or other relief in respect of the Collateral Manager or its debts, or of a substantial part of its assets, under any bankruptcy, insolvency, receivership or similar law now or hereafter in effect or (ii) the appointment of a receiver, trustee, custodian, sequestrator, conservator or similar official for the Collateral Manager or for a substantial part of its assets, and, in any such case, such proceeding or petition shall continue undismissed for sixty (60) days; or an order or decree approving or ordering any of the foregoing shall be entered; or

(B)    the Collateral Manager shall (i) be wound up or dissolved, (ii) voluntarily commence any proceeding or file any petition seeking liquidation, reorganization or other relief under any bankruptcy, insolvency, receivership or similar law now or hereafter in effect, (iii) apply for or consent to the institution of, or fail to contest in a timely and appropriate manner, any proceeding or petition described in clause (A) of this definition, (iv) apply for or consent to the appointment of a receiver, trustee, custodian, sequestrator, conservator or similar official for the Collateral Manager or for a substantial part of its assets, (v) file an answer admitting the material allegations of a petition filed against it in any such proceeding, (vi) cease to be able to, or admit in writing its inability to, pay its debts as they become due and payable, or make a general assignment for the benefit of creditors or (vii) take any action for the purpose of effecting any of the foregoing.

"Indemnified Party" shall have the meanings specified in Section 4.5(a) and (c).

"Indemnifying Party" shall have the meanings specified in Section 4.5(a) and (c).

"Indenture" shall mean the Indenture, dated as of January 12, 2005, among the Company, Zohar II 2005-1, Corp., the Zohar Subsidiary, the Credit Enhancer, the Class A-1 Note Agent, the Class A-3 Note Agent and the Trustee, as modified and supplemented and in effect from time to time in accordance with the terms thereof.

"Purchase Documents" shall mean the assignment agreements, purchase and sale agreements, participation agreements and/or other agreements by which the Company and/or the Zohar Subsidiary acquires any interest, direct or indirect, in the Collateral.

"Related Parties" shall have the meaning specified in Section 6.2.

"Securities" shall mean, for the purposes of this Agreement only, the Notes and the Preference Shares.

"Senior Collateral Management Fee" shall have the meaning specified in Section 4.1(b).

"Subordinated Collateral Management Fee" shall have the meaning specified in Section 4.1(c).

NY281027.5/2047-00003

CONFIDENTIAL TREATMENT REQUESTED BY BRUNE & RICHARD LLP
ON BEHALF OF PATRIARCH PARTNERS LLC

PP000954

-4-

## ARTICLE II

## GENERAL DUTIES OF THE COLLATERAL MANAGER

Section 2.1. <u>Appointment of the Collateral Manager</u>. The Collateral Manager is hereby appointed as collateral manager of each of the Company and the Zohar Subsidiary for the purpose of performing certain investment management functions as specified herein, and the Collateral Manager hereby accepts such appointment.

Section 2.2. <u>Management Services</u>. The Collateral Manager will provide each of the Company and the Zohar Subsidiary with the following services, in each case subject to and in accordance with the terms of the Indenture and this Agreement:

(a)    <u>Collateral</u>. The Collateral Manager shall determine, in accordance with the criteria set forth in the Indenture relating to the acquisition, origination, restructuring, exchange, holding and disposition of the Collateral, the specific Collateral to be acquired, originated, restructured, exchanged, held or disposed of by the Company and/or the Zohar Subsidiary (including without limitation (x) the entry into, and the reduction in the notional amount or termination of, Hedge Agreements (if any) and (y) whether or not to acquire (by extending credit or otherwise) additional Collateral Debt Obligations pursuant to Section 12.1 of the Indenture, to acquire (by extending credit or otherwise) Unrestricted Collateral Debt Obligations or to apply amounts on deposit in the Rollover Proceeds Account), and shall effect acquisitions, originations, restructurings, exchanges and dispositions of Collateral on behalf of the Company and/or the Zohar Subsidiary from time to time as it shall determine, taking into consideration the payment obligations of and financing available to the Company under the Indenture and the other Transaction Documents and the Principal Proceeds and other amounts held by the Company; <u>provided, however</u>, that notwithstanding anything to the contrary contained in this Agreement, no duty or obligation of the Collateral Manager described hereunder shall be deemed to imply a guaranty of, and the Collateral Manager does not hereby guarantee, the performance of or economic returns to be realized by such Collateral or whether the economic returns on such Collateral will be sufficient to repay the amounts owed by the Company under the Indenture or otherwise.

(b)    <u>Effectuation of Trades</u>. Subject to any restrictions in the Indenture, the Collateral Manager shall effectuate the acquisition, origination, restructuring, exchange or disposition of Collateral on behalf of the Company and/or the Zohar Subsidiary, as applicable.

(c)    <u>Exercise of the Rights by the Company and the Zohar Subsidiary</u>. The Collateral Manager shall make determinations with respect to the exercise or enforcement of any and all rights by the Company and/or the Zohar Subsidiary (including but not limited to any such rights under the Hedge Agreements (if any) and voting rights and rights arising in connection with the bankruptcy or insolvency of a Debt Issuer or the consensual or non-judicial restructuring of the debt or equity of a Debt Issuer) or rights or remedies in connection with the Collateral and participating in the committees (official or otherwise) or other groups formed by creditors of a Debt Issuer; <u>provided, however</u>, that the Collateral Manager shall not cause the Company or the Zohar Subsidiary to exercise any such rights or remedies in a manner prohibited by the Indenture. Without limiting the foregoing, the Collateral Manager may, on behalf of the

<u>Collateral Management Agreement</u>

NY281027.5/2047-00003

CONFIDENTIAL TREATMENT REQUESTED BY BRUNE & RICHARD LLP
ON BEHALF OF PATRIARCH PARTNERS LLC                                          PP000955

-5-

Company and/or the Zohar Subsidiary and without the consent of the holders of any Notes or any other Person, enter into any amendment, modification or waiver of, or supplement to, any term or condition of any Collateral, Collateral Debt Obligation, Unrestricted Collateral Debt Obligation, and/or Equity Security (including, without limitation and subject to the terms of the Indenture, exchanges thereof for other loans, equity or other securities), so long as such amendment, modification, waiver or supplement does not contravene the provisions of the Indenture or this Agreement or contravene any applicable law or regulation. The Collateral Manager shall make determinations with respect to the exercise or enforcement of any rights and remedies of the Company and the Zohar Subsidiary, as applicable, under the Purchase Documents on behalf of the Company and the Zohar Subsidiary, subject to the terms and conditions thereof.

(d)    Negotiations. The Collateral Manager shall negotiate on behalf of the Company and the Zohar Subsidiary with prospective purchasers of the Collateral, with any Person in connection with the possible workout, amendment or restructuring of the Collateral or any obligor (or any of its Affiliates) thereon (or such obligor's (or any of its Affiliates') line(s) of business) or exchange of Collateral and/or with prospective sellers or issuers of Collateral as to the terms relating to the issuance, purchase, sale, exchange and/or disposition of such Collateral, subject in each case to any restrictions contained in the Indenture.

(e)    Rating Agencies, Trustee and Credit Enhancer. (i) The Collateral Manager shall on behalf of the Company and/or the Zohar Subsidiary consult with each Rating Agency, the Trustee and the Credit Enhancer at such times as may be reasonably requested by such Rating Agency, the Trustee or the Credit Enhancer and provide the Rating Agencies, the Trustee and the Credit Enhancer with any information reasonably requested by such Person in connection with each Rating Agency's, the Trustee's or the Credit Enhancer's monitoring of the acquisition, management and disposition of Collateral. (ii) The Collateral Manager shall be, and hereby is, authorized to execute on behalf of any Zohar Obligor(s) any and all agreements to be entered into between such Zohar Obligor(s) and a Rating Agency.

(f)    Monitoring of Collateral. The Collateral Manager shall (i) monitor the Collateral on an ongoing basis, (ii) prepare and deliver such information, reports, schedules and other data that is required to be prepared and/or delivered by the Collateral Manager under the Indenture and Section 2 of the Collateral Administration Agreement, as applicable, (iii) notify the Credit Enhancer, the Trustee, and the Company in writing of the occurrence of an Event of Default under the Indenture to the extent the Collateral Manager has actual knowledge of the occurrence thereof, (iv) determine whether any Unrestricted Collateral Debt Obligation is a Revolving Collateral Debt Obligation, Delayed Funding Collateral Debt Obligation or term loan, (v) monitor from time to time the cash flows generated by the portfolio of Collateral Debt Obligations and notify the Trustee when such cash flows materially deviate from the expected cash flows in respect of such portfolio and (vi) determine whether any Collateral Debt Obligation is (A) a Revolving Collateral Debt Obligation, Delayed Funding Collateral Debt Obligation or term loan; (B) a Category 1, Category 2, Category 3 or Category 4 loan or a Workout Obligation; or (C) a Defaulted Collateral Debt Obligation.

NY281027.5/2047-00003

Collateral Management Agreement

CONFIDENTIAL TREATMENT REQUESTED BY BRUNE & RICHARD LLP
ON BEHALF OF PATRIARCH PARTNERS LLC                                                                    PP000956

-6-

(g) <u>Supervision of the Collateral</u>. The Collateral Manager shall manage the Company's and the Zohar Subsidiary's investments within the parameters set forth in the Indenture.

(h) <u>Hiring of Specialists</u>. The Collateral Manager shall, to the extent required or desirable in connection with the performance of its duties under this Agreement, hire and manage specialists and pay the fees and expenses with respect thereto (with reimbursement from the Company to the extent provided in Section 4.2 hereof and as provided in the Priority of Payments), <u>provided</u> that no delegation by the Collateral Manager of any of its duties hereunder to any third party shall relieve the Collateral Manager of any of its duties hereunder or relieve the Collateral Manager of any liability with respect to the performance of such duties.

(i) <u>Optional Redemption</u>. The Collateral Manager shall take commercially reasonable action on behalf of the Company in connection with effectuating any optional redemption of the Notes in accordance with Section 9.1 of the Indenture or any optional redemption of the Preference Shares in accordance with the Preference Share Paying Agency Agreement.

(j) <u>Payments from Cash Reserve Account</u>. The Collateral Manager shall determine on each Determination Date whether to cause the Company on the related Payment Date to apply amounts in the Cash Reserve Account in the manner set forth in Section 10.7 of the Indenture.

(k) <u>Other Matters</u>. The Collateral Manager shall comply with such other duties and responsibilities as may be expressly required of the Collateral Manager by the provisions of the Indenture and Section 2 of the Collateral Administration Agreement and shall use commercially reasonable efforts to assist the Company in complying with its duties and responsibilities under the Indenture, the Note Purchase Agreements and the Purchase Documents.

(l) So long as the Class A Notes are outstanding, the Class A-1 Commitments and the Class A-3 Commitments have not expired, terminated or been reduced to zero or any amounts remain due and payable to the Credit Enhancer under the Credit Enhancement Agreement, the Collateral Manager shall not without the prior consent of the Credit Enhancer:

(i) arrange for the Company and/or the Zohar Subsidiary to acquire any Collateral Debt Obligation if at the time of such initial acquisition the Collateral Manager has actual knowledge that (A) such Collateral Debt Obligation is not investment grade and has no material negative covenants but, when originally issued, was investment grade, (B) such Collateral Debt Obligation is secured primarily by the stock of subsidiaries of the obligor on such Collateral Debt Obligation or (C) the obligor of such Collateral Debt Obligation (or such obligor's business) is the subject of (1) protracted litigation, (2) material accounting irregularities or (3) significant environmental problems; or

(ii) arrange for the Company and/or the Zohar Subsidiary to acquire any Collateral Debt Obligation or any other item included in the Collateral from or sell any Collateral Debt Obligation to the Collateral Manager, any of its

<u>Collateral Management Agreement</u>

NY281027.5/2047-00003

CONFIDENTIAL TREATMENT REQUESTED BY BRUNE & RICHARD LLP
ON BEHALF OF PATRIARCH PARTNERS LLC                                           PP000957

-7-

Affiliates or any fund or account for which the Collateral Manager or any of its Affiliates acts as investment manager or advisor, except as provided in the Indenture or the other Transaction Documents (including without limitation the Company's purchase(s) from Zohar CDO 2003-1, Limited and/or Ark CLO 2000-1, Limited of the assets and at the price(s) listed in Schedule A-1 and Schedule A-2, respectively, of the Indenture).

(m)     The Collateral Manager shall cause the Company and/or the Zohar Subsidiary to acquire each Collateral Debt Obligation pursuant to a purchase, assignment or participation agreement containing terms and conditions not materially less favorable to the Company and/or the Zohar Subsidiary than the terms and conditions of the comparable standard-form document of the Loan Syndications and Trading Association ("LSTA") (which in the case of any Collateral Debt Obligation acquired by way of assignment for a price of less than 80% of par shall be deemed to be the applicable LSTA "Distressed Trade" form document) (for the avoidance of doubt, such documentation described in this clause (m) shall not be required in the case of any Collateral Debt Obligation that consists of a direct extension of credit by the Company and/or the Zohar Subsidiary to the obligor under such Collateral Debt Obligation).

(n)     The Collateral Manager shall not, on behalf of the Company and/or the Zohar Subsidiary, direct or effect the acquisition or disposition of the Collateral Debt Obligations or any other item included in the Collateral except in accordance with the requirements of the Indenture.

(o)     The Collateral Manager shall consult with the Credit Enhancer at such times as may be reasonably requested by the Credit Enhancer and provide the Credit Enhancer with any information reasonably requested by it in connection with the Credit Enhancer's duties and responsibilities in its capacity as the Credit Enhancer under the Indenture and each of the other Transaction Documents.

(p)     Workouts and Restructurings. For the avoidance of doubt and notwithstanding anything else contained herein, the Company, the Zohar Subsidiary and the Collateral Manager acknowledge and agree that the Collateral Debt Obligations, and/or Unrestricted Collateral Debt Obligations will consist of stressed and distressed loans that may be the subject of extensive amendment, workout, restructuring and/or other negotiations and, as of consequence thereof, the Company and/or the Zohar Subsidiary may receive by way of amendments, modifications, exchanges and/or supplements to such Collateral Debt Obligations, Equity Kickers, Equity Workout Securities, and/or the relevant Underlying Instruments (A) interests in loans, debt securities, letters of credit or leases that do not satisfy the provisions of the definition of "Collateral Debt Obligation" and/or the Eligibility Criteria and/or (B) Equity Workout Securities.

(q)     Borrowings. The Collateral Manager shall (subject to the terms of the Indenture) take such action on behalf of the Company and the Zohar Subsidiary as the Collateral Manager determines appropriate to cause the Company to make Borrowings under the Class A-1 Notes, the Class A-2 Notes and/or the Class A-3 Notes at such times and in such amounts (subject to Section 9.6 of the Indenture) as may be required to meet the obligations of the Company and the Zohar Subsidiary.

NY281027.5/2047-00003

CONFIDENTIAL TREATMENT REQUESTED BY BRUNE & RICHARD LLP
ON BEHALF OF PATRIARCH PARTNERS LLC                                                    PP000958

-8-

(r)     Eligible Investments. The Collateral Manager shall manage, in accordance with the terms of the Indenture, the Eligible Investments, including, without limitation, determining the Stated Maturity (after giving effect to any applicable grace period) of each Eligible Investment purchased or held by the Issuer, which Stated Maturity shall be no later than the Business Day immediately preceding the Payment Date next following the Due Period in which the investment was made, taking into consideration the scheduled and expected funding and payment obligations of the Company and/or the Zohar Subsidiary.

Section 2.3.  Delivery of Collateral. The Collateral Manager shall cause the Company and/or the Zohar Subsidiary (as applicable to) deliver the Collateral as provided in Section 3.3 of the Indenture. Should any part of the Collateral come into the possession or otherwise be acquired by the Collateral Manager, the Collateral Manager shall promptly cause such property to be delivered to the Trustee (or to the Custodian for the benefit of the Trustee), as provided in Section 3.3 of the Indenture.

Section 2.4.  Standard of Care. The Collateral Manager shall, in rendering its services as Collateral Manager, use reasonable care and the same degree of skill and attention (a) that the Collateral Manager (i) exercises with respect to comparable assets that it manages for itself and its Affiliates and (ii) exercises with respect to comparable assets that it manages for others and (b) exercised by institutional investment managers of national standing generally in respect of assets of the nature and character of the Collateral and for clients having similar investment objectives and restrictions, in each case except as otherwise expressly provided in the Indenture. Subject to the immediately preceding sentence, the Collateral Manager shall follow its customary standards, policies and procedures in performing its duties under the Indenture and Section 2 of the Collateral Administration Agreement and its duties hereunder. The Collateral Manager shall comply with all the terms and conditions of the Indenture and Section 2 of the Collateral Administration Agreement affecting the duties and functions that have been delegated to it thereunder. The Collateral Manager will be bound to follow any supplement or other modification to the Indenture and any other applicable Transaction Document of which it has received written notice from the time it has received a copy of such supplement or other modification from the Company or the Trustee, so long as such supplement or other modification is in effect and has been entered into in accordance with the terms of Article 8 of the Indenture. The Collateral Manager shall not be bound by any amendment, supplement or other modification to the Indenture, any Transaction Document and/or any other agreement that reduces the rights or increases the obligations of the Collateral Manager unless the Collateral Manager shall have consented thereto in writing.

Section 2.5.  Action on Behalf of the Company and the Zohar Subsidiary. To the extent necessary or appropriate to perform all of the duties to be performed by it hereunder and under the provisions of the Indenture applicable to it, each of the Company and the Zohar Subsidiary hereby confers upon the Collateral Manager the power to execute and deliver all necessary, desirable and appropriate documents and/or instruments in the name and on behalf of the Company or the Zohar Subsidiary, as the case may be, as its attorney-in-fact with respect thereto.

Section 2.6.  Obligations of the Collateral Manager. Unless otherwise required by any provision of the Indenture or this Agreement or by applicable law, the Collateral Manager shall not take any action which it knows or should be reasonably expected to know in accordance with

Collateral Management Agreement

NY281027.5/2047-00003

CONFIDENTIAL TREATMENT REQUESTED BY BRUNE & RICHARD LLP
ON BEHALF OF PATRIARCH PARTNERS LLC                                                    PP000959

prevailing market practices would (i) cause the Company or the Zohar Subsidiary to violate the terms of the Indenture, (ii) adversely affect the interests of the Holders of the Securities (without, in the case of the Notes, giving effect to the Credit Enhancement, if applicable) in any material respect (other than as contemplated hereunder or under the Indenture, it being understood and acknowledged that the Collateral Manager does not guarantee the performance of the Collateral or any payment obligation under the Indenture), (iii) not be permitted under the governing instruments of the Company, the Co-Issuer or the Zohar Subsidiary, (iv) violate any United States federal or state law (including Delaware corporate and limited liability company law), Cayman Islands law or any other law (including, without limitation, any related rule or regulation of any governmental body or agency having jurisdiction over the Company, the Co-Issuer or the Zohar Subsidiary) known to the Collateral Manager, or as advised by the Administrator, counsel to the Administrator or counsel to the Collateral Manager, to be applicable to the Company, the Zohar Subsidiary or the Co-Issuer, the violation of which would have a material adverse effect on the Company, the Zohar Subsidiary, the Co-Issuer, any of the Collateral or on the ability of the Collateral Manager to perform its obligations hereunder or (v) require registration of the Company, the Co-Issuer, the Zohar Subsidiary, or the pool of Collateral as an "investment company" under the Investment Company Act; it being understood that in connection with the foregoing the Collateral Manager will not be required to make any independent investigation of any facts or laws not otherwise known to it in connection with its obligations under this Agreement and the Indenture or the conduct of its business generally. The Collateral Manager covenants that it shall comply in all material respects with all laws and regulations applicable to it in connection with the performance of its duties under this Agreement and the Indenture. Notwithstanding anything in this Agreement or the Indenture, the Collateral Manager shall not intentionally take any action that it knows would cause an Event of Default under the Indenture.

Section 2.7. <u>Brokerage</u>. The Collateral Manager shall use commercially reasonable efforts to obtain, in accordance with applicable laws, the best prices and execution for all orders placed with respect to purchases and sales of the Collateral. Subject to the objective of obtaining best execution, the Collateral Manager may take into consideration research and other brokerage services furnished to the Collateral Manager or its Affiliates by brokers and dealers which are not Affiliates of the Collateral Manager. Such services may be used by the Collateral Manager in connection with its other advisory activities or investment operations. Subject to Section 6.2, the Collateral Manager may aggregate sales and purchase orders of securities placed with respect to the Collateral with similar orders being made simultaneously for other accounts managed by the Collateral Manager and the Affiliates of the Collateral Manager, <u>provided</u> that the Collateral Manager and its Affiliates may only so aggregate purchases and sales if at the time of such purchases and sales the agreements governing the management of such other accounts contain a provision permitting such aggregation substantially similar to the provision contained herein. In accounting for such aggregated order price, commissions and other expenses shall be apportioned on an equitable basis (in the sole judgment of the Collateral Manager).

Section 2.8. <u>Allocation of Aggregate Executions</u>. When any aggregate sales or purchase orders occur, the objective of the Collateral Manager shall be to allocate the executions among the accounts in an equitable manner over time, consistent with its practices with respect to other accounts it manages, the status of the portfolio of investments and the requirements in the Indenture.

Collateral Management Agreement

NY281027.5/2047-00003

CONFIDENTIAL TREATMENT REQUESTED BY BRUNE & RICHARD LLP
ON BEHALF OF PATRIARCH PARTNERS LLC                                        PP000960

-10-

Section 2.9. <u>The Collateral Manager's Practices</u>. Without limiting the obligations of the Collateral Manager set forth herein and in the Indenture, all purchases, exchanges and sales of Collateral by the Collateral Manager on behalf of the Company and/or the Zohar Subsidiary shall be in accordance with reasonable and customary business practices of the relevant market and in compliance with applicable laws and all purchases and sales of the Collateral will be effected on arm's-length terms (including without limitation any sales or purchases of Collateral Debt Obligations to or from IXIS Financial Products Inc. and/or its Affiliates). Each of the Company and the Zohar Subsidiary acknowledges that all or a significant portion of the Collateral Debt Obligations, and/or Unrestricted Collateral Debt Obligations, if sold, will likely be sold in the distressed debt market and that the Collateral Manager will be required to cause the Company and the Zohar Subsidiary, as applicable, to make extensive representations and warranties regarding such Collateral and the management of such Collateral by the Company, the Zohar Subsidiary and the Collateral Manager. In connection with the foregoing, to the extent that the seller of such Collateral Debt Obligations, and/or Unrestricted Collateral Debt Obligations (and/or such seller's predecessors-in-title) did not make customary representations and warranties at the time of the applicable transfer of such Collateral, the Company and/or the Zohar Subsidiary may each make such representations and warranties on its own account.

## ARTICLE III

## REPRESENTATIONS AND WARRANTIES

Section 3.1. <u>Representations and Warranties of the Company and the Zohar Subsidiary</u>. Each of the Company and the Zohar Subsidiary (each, a "<u>Representing Entity</u>") represents and warrants (as to itself only) to the Collateral Manager that:

(a)    <u>Organization, Power and Authority, Etc.</u> Such Representing Entity has been duly organized and is validly existing under the laws of the Cayman Islands (in the case of the Company) or the State of Delaware (in the case of the Zohar Subsidiary) and has the full power and authority (i) to execute, deliver and perform each of the Transaction Documents to which it is a party and all obligations required thereunder and (ii) to own its assets and the securities proposed to be owned by it and included in the Collateral and to transact the business in which it is presently engaged and is duly qualified under the laws of each jurisdiction where its ownership or lease of property or the conduct of its business requires, or the performance of its obligations under the Transaction Documents to which it is a party would require, such qualification, except for failures to be so qualified, authorized or licensed that would not in the aggregate have a material adverse effect on the business, operations, assets or financial condition of such Representing Entity.

(b)    <u>This Agreement</u>. This Agreement has been duly authorized, executed and delivered by such Representing Entity and constitutes its valid and binding obligation, enforceable against it in accordance with its terms except that the enforceability thereof may be subject to (i) bankruptcy, insolvency, reorganization, moratorium, receivership, conservatorship or other similar laws now or hereafter in effect relating to creditors' rights and (ii) general principles of equity (regardless of whether such enforcement is considered in a proceeding in equity or at law).

Collateral Management Agreement

NY281027.5/2047-00003

CONFIDENTIAL TREATMENT REQUESTED BY BRUNE & RICHARD LLP
ON BEHALF OF PATRIARCH PARTNERS LLC                                          PP000961

-11-

(c)     Consents, Approvals, Etc.  No consent, approval, authorization or order of or declaration or filing with any government, governmental instrumentality or court or other person is required for the performance by such Representing Entity of its duties hereunder, except such as have been duly made or obtained.

(d)     No Conflicts.  Neither the execution and delivery of this Agreement nor the performance of the terms hereof conflicts with or results in a breach or violation of any of the terms or provisions of or constitutes a default under (i) the organizational documents of such Representing Entity, (ii) the terms of any indenture, contract, lease, mortgage, deed of trust, note, agreement or other evidence of indebtedness or other material agreement, obligation, condition, covenant or instrument to which such Representing Entity is a party or such Representing Entity or its property is bound, (iii) any statute applicable to such Representing Entity, or (iv) any law, decree, order, rule or regulation applicable to such Representing Entity of any court or regulatory, administrative or governmental agency, body or authority or arbitrator having or asserting jurisdiction over such Representing Entity or its properties, and, in the case of each preceding clause, which would have a material adverse effect upon the performance by it of its duties under this Agreement or any other Transaction Document.

(e)     No Violations.  Such Representing Entity is not in violation of any U.S. federal or state securities law or regulation promulgated thereunder and there is no charge, investigation, action, suit or proceeding before or by any court or regulatory agency pending or, to the best of its knowledge, threatened that would have a material adverse effect upon the performance by it of its duties under or the validity or enforceability of this Agreement.

(f)     True and Complete Documentation.  True and complete copies of the Transaction Documents to which it is a party and all other documents contemplated therein, and the organizational documents of such Representing Entity, as in effect as of the date of this Agreement, have been delivered to the Collateral Manager and such Representing Entity agrees to deliver a true and complete copy of each amendment to the documents referred to in this paragraph (f) to the Collateral Manager, as promptly as practicable after its adoption or execution.

(g)     Investment Company Act.  Such Representing Entity is not an "investment company" that is required to be registered under the Investment Company Act.

Section 3.2.  Representations and Warranties of the Collateral Manager.  The Collateral Manager represents and warrants to the Company, the Zohar Subsidiary, the Credit Enhancer and the Noteholders that:

(a)     Organization, Power and Authority, Etc.  The Collateral Manager is duly organized, is validly existing and in good standing under the laws of the State of Delaware and has full power and authority (i) to execute and deliver this Agreement and to perform all of its obligations hereunder and under the provisions of the Indenture and Collateral Administration Agreement applicable to it, and has taken all necessary action to authorize the execution, delivery and performance of this Agreement and all obligations required hereunder and under the terms of the Indenture and Collateral Administration Agreement applicable to it and (ii) to transact the business in which it is presently engaged and is duly qualified and in good standing

NY281027.5/2047-00003

CONFIDENTIAL TREATMENT REQUESTED BY BRUNE & RICHARD LLP
ON BEHALF OF PATRIARCH PARTNERS LLC                                                                    PP000962

-12-

under the laws of each jurisdiction where the performance of its obligations under this Agreement and the provisions of the Indenture and Collateral Administration Agreement applicable to it would require such qualification, except for failures to be so qualified, authorized or licensed that would not in the aggregate have a material adverse effect on the financial condition or the ability of the Collateral Manager to perform its obligations under, or on the validity or enforceability of, this Agreement and the applicable provisions of the Indenture and Collateral Administration Agreement.

(b)    This Agreement. This Agreement and each instrument or document of the Collateral Manager required hereunder or under the terms of the Indenture and Collateral Administration Agreement has been duly authorized, executed and delivered by the Collateral Manager and constitutes a valid and binding agreement of the Collateral Manager, enforceable against it in accordance with its terms, except that the enforceability thereof may be subject to (i) bankruptcy, insolvency, reorganization, moratorium or other similar laws now or hereafter in effect relating to creditors' rights and (ii) general principles of equity (regardless of whether such enforcement is considered in a proceeding in equity or at law).

(c)    No Securities Laws Violations, No Proceedings. The Collateral Manager is not in violation of any federal or state securities law or regulation promulgated thereunder related to the conduct of its asset management business, and there is no charge, investigation, action, suit or proceeding before or by any court or regulatory agency pending or, to the best knowledge of the Collateral Manager, threatened, that in either case would have a material adverse effect upon the performance by the Collateral Manager of its duties under this Agreement and the Collateral Administration Agreement or on the validity or enforceability of this Agreement and the Collateral Administration Agreement or the provisions of the Indenture and the Collateral Administration Agreement applicable to the Collateral Manager.

(d)    No Conflicts. Neither the execution and delivery of this Agreement or the Collateral Administration Agreement, nor the performance of the terms hereof or the provisions of the Indenture and the Collateral Administration Agreement applicable to the Collateral Manager, conflicts with or results in a breach or violation of the organizational documents of the Collateral Manager or conflicts with or results in a breach or violation of any of the terms or provisions of, or constitutes a default under, (i) the terms of any indenture, contract, lease, mortgage, deed of trust, note, agreement or other evidence of indebtedness or other agreement, obligation, condition, covenant or instrument to which the Collateral Manager is a party or the Collateral Manager or its property is bound, (ii) any statute applicable to the Collateral Manager or (iii) any law, decree, order, rule or regulation applicable to the Collateral Manager of any court or regulatory, administrative or governmental agency, body or authority or arbitrator having or asserting jurisdiction over the Collateral Manager or its properties, and which would, in the case of the foregoing clauses (i), (ii) and (iii), have a material adverse effect upon the performance by the Collateral Manager of its duties under this Agreement or the provisions of the Indenture and the Collateral Administration Agreement applicable to it.

(e)    No Consents, Approvals, Etc. No consent, approval, registration, authorization or order of or declaration or filing with any government, governmental instrumentality or court or other Person is required for the performance by the Collateral Manager of its duties

<u>Collateral Management Agreement</u>

NY281027.5/2047-00003

CONFIDENTIAL TREATMENT REQUESTED BY BRUNE & RICHARD LLP
ON BEHALF OF PATRIARCH PARTNERS LLC                                                      PP000963

-13-

hereunder and under the terms of the Indenture and the Collateral Administration Agreement applicable to it, except such as have been duly made or obtained.

## ARTICLE IV

## COMPENSATION; EXPENSE; DELEGATION; LIABILITY AND INDEMNIFICATION

Section 4.1. Compensation.

(a)    Generally.  In consideration of the performance of the obligations of the Collateral Manager hereunder and under the Indenture, the Collateral Manager shall be entitled to receive, at the times set forth in the Indenture and subject to the conditions set forth in the Indenture and in accordance with the Priority of Payments, to the extent funds are available therefor, the fees set forth in clauses (b) and (c) below.  The Senior Collateral Management Fee and the Subordinated Collateral Management Fee shall be computed on the basis of a year of 360 days and the actual number of days elapsed.

(b)    Senior Collateral Management Fee.  The Collateral Manager shall be entitled to receive a fee (the "Senior Collateral Management Fee") which will accrue from the Closing Date at the greater of (x) a rate of 1.0% per annum on the Quarterly Asset Amount and (y) $1,500,000 on each Payment Date (adjusted in the case of the first Payment Date on which such fees are paid to reflect the different number of days in such period), payable in arrears on each Payment Date to the extent there are sufficient funds available therefor on such Payment Date in accordance with the Priority of Payments.  For the avoidance of doubt, for purposes of calculating the Senior Collateral Management Fee, the Quarterly Asset Amount shall include (without duplication) the Principal Balance of each Originated Special Loan/Preferred Security. The Senior Collateral Management Fee will accrue if unpaid and shall be payable on the next Payment Date on which funds are available therefor in accordance with the Priority of Payments.  Notwithstanding the foregoing, the Collateral Manager, in its sole and absolute discretion, shall be entitled to defer to a later Payment Date and/or have paid at a less senior or other applicable position in the Priority of Payments all or any portion of the Senior Collateral Management Fee payable on any Payment Date upon written direction by the Collateral Manager to the Trustee.  Any such deferred Senior Collateral Management Fee shall be payable, at the Collateral Manager's sole and absolute discretion, at such less senior or other applicable position in the Priority of Payments on such Payment Date and/or on the subsequent Payment Date (including for the avoidance of doubt at a less senior or other applicable position in the Priority of Payments) in each case to the extent there are sufficient funds available therefor on such Payment Date in accordance with the Priority of Payments.

(c)    Subordinated Collateral Management Fee.  The Collateral Manager shall also be entitled to receive a fee (the "Subordinated Collateral Management Fee") which will accrue from the Closing Date at a rate of 1.0% per annum on the Quarterly Asset Amount and shall be payable in arrears on each Payment Date to the extent there are sufficient funds available therefor on such Payment Date in accordance with the Priority of Payments.  For the avoidance of doubt, for purposes of calculating the Subordinated Collateral Management Fee, the Quarterly Asset Amount shall include (without duplication) the Principal Balance of each

Collateral Management Agreement

NY281027.5/2047-00003

CONFIDENTIAL TREATMENT REQUESTED BY BRUNE & RICHARD LLP
ON BEHALF OF PATRIARCH PARTNERS LLC                                                  PP000964

-14-

Originated Special Loan/Preferred Security. The Subordinated Collateral Management Fee will accrue if unpaid and shall be payable on the next Payment Date on which funds are available therefor in accordance with the Priority of Payments. Notwithstanding the foregoing, the Collateral Manager, in its sole and absolute discretion, shall be entitled to defer to a later Payment Date and/or have paid at a less senior or other applicable position in the Priority of Payments all or any portion of the Subordinated Collateral Management Fee payable on any Payment Date upon written direction by the Collateral Manager to the Trustee. Any such deferred Subordinated Collateral Management Fee shall be payable, at the Collateral Manager's sole and absolute discretion, at such less senior or other applicable position in the Priority of Payments on such Payment Date and/or on the subsequent Payment Date (including for the avoidance of doubt at a less senior or other applicable position in the Priority of Payments) in each case to the extent there are sufficient funds available therefor on such Payment Date in accordance with the Priority of Payments.

(d)    Post-Termination Payments. If this Agreement is terminated for any reason or Patriarch XIV is removed, then (i) the fees calculated as provided in this Section 4.1 and payable to Patriarch XIV shall be prorated for any partial period to, but excluding, the effective date of such termination or removal, and (ii) the fees calculated as provided in this Section 4.1 and payable to the successor collateral manager shall be prorated for any partial period beginning on the effective date of such appointment. The prorated fees, together with any accrued and unpaid fees and any unpaid expense reimbursements, due to Patriarch XIV hereunder shall rank pari passu to the fees and any unpaid expense reimbursements due to the successor collateral manager, and such fees and expense reimbursements due to Patriarch XIV and the successor collateral manager shall be paid pro rata to the extent funds are available therefor in accordance with the Priority of Payments; provided, however, that if Patriarch XIV is removed as Collateral Manager pursuant to clauses (i), (v) or (vi) of the definition of "Cause", then such amounts due to Patriarch XIV shall be paid after fees and expenses (of comparable priority under the Priority of Payments) due to the successor collateral manager are paid in full.

(e)    Subordination of Payments. The Collateral Manager agrees that the payment of all amounts to which it is entitled pursuant to this Agreement shall be subordinated to the extent set forth in, and limited to the amounts available under, the Priority of Payments, described in the Indenture and the Collateral Manager agrees to be bound by the Priority of Payments as if the Collateral Manager were a party to the Indenture.

(f)    Collateral Manager as Holder of Notes and Preference Shares. The Company and the Zohar Subsidiary acknowledge and agree that the Collateral Manager may from time to time acquire, hold and dispose of Notes and Preference Shares, subject in each case to the terms and conditions of the Indenture.

Section 4.2. Expenses. The Collateral Manager shall pay all expenses and costs incurred by it in connection with its services under this Agreement; provided, however, that the Company shall reimburse the Collateral Manager, at the times set forth in the Indenture and subject to the conditions set forth therein and the Priority of Payments, to the extent funds are available therefor, for (i) extraordinary costs and expenses incurred in the performance of the Collateral Manager's obligations under this Agreement and the Indenture, (ii) reasonable fees and expenses (not otherwise paid with funds from the Professional Fee Account) incurred by the Collateral

Collateral Management Agreement

NY281027.5/2047-00003

CONFIDENTIAL TREATMENT REQUESTED BY BRUNE & RICHARD LLP
ON BEHALF OF PATRIARCH PARTNERS LLC                                        PP000965

-15-

Manager to employ outside lawyers, accountants, consultants or other outside specialists or professionals, asset pricing and asset rating services, and accounting, programming and data entry services that are retained by the Company, the Zohar Subsidiary or by the Collateral Manager on behalf of the Company or the Zohar Subsidiary and (iii) brokerage commissions, transfer fees, registration costs, taxes and other similar costs and transaction-related expenses and fees arising out of transactions effected for the Company's or the Zohar Subsidiary's account. Expenses and costs payable to the Collateral Manager under this Section 4.2 shall constitute either Administrative Expenses or professional fees and shall be payable by application of amounts on deposit in the Professional Fee Account or the Expense Account, as applicable, subject to the terms of the Indenture and in accordance with the Priority of Payments (in each case to the extent funds are available therefor).

Section 4.3. Delegation. With the consent of the Controlling Party, the Collateral Manager may delegate to any agent any or all of the duties and obligations assigned to the Collateral Manager hereunder; provided that no delegation by the Collateral Manager of any of its duties hereunder shall relieve the Collateral Manager of any of its duties hereunder nor relieve the Collateral Manager of any liability with respect to the performance of such duties.

Section 4.4. Liability of the Collateral Manager. The Collateral Manager assumes no responsibility under this Agreement other than to render the services called for hereunder and under the terms of the Indenture applicable to it in good faith and, subject to the standard of conduct described in the next succeeding sentence, shall not be responsible for any action or omission of the Company, the Co-Issuer, the Zohar Subsidiary or the Controlling Party or any other Person(s) in following or declining to follow any advice, recommendation or direction of the Collateral Manager or for any action of the Company, the Co-Issuer, the Trustee or the Zohar Subsidiary in following any direction of the Controlling Party, the Trustee or any Holder of the Notes or of the Securities. The Collateral Manager, its members, managers, directors, officers, stockholders, partners, employees, advisors and agents, shall not be liable to (a) the Company, the Co-Issuer, the Zohar Subsidiary, the Trustee, the Holders of the Securities, the Credit Enhancer or any other Person for any losses, claims, damages, judgments, assessments, interests, judgments, costs, fines, amounts paid in settlement, attorneys' fees and expenses or other liabilities of any nature whatsoever incurred by the Company, the Co-Issuer, the Zohar Subsidiary, the Trustee, the Holders of the Securities, the Credit Enhancer or any other Person that arise out of or in connection with the performance by the Collateral Manager (or such other Persons) of the Collateral Manager's duties under this Agreement and/or the other Transaction Documents, or (b) the Holders of the Securities, the Co-Issuers, the Zohar Subsidiary, the Trustee, the Credit Enhancer, the creditors of the Co-Issuers, the Zohar Subsidiary or any other Person for any error of judgment, mistake of law, or for any loss arising out of any investment, for any other act or omission in the performance of its obligations to the Zohar Obligors except, in the case of both clauses (a) and (b), by reason of acts or omissions constituting fraud, bad faith, willful misconduct, gross negligence or breach of fiduciary duty in the performance, or reckless disregard, of the obligations of the Collateral Manager hereunder and under the terms of the other Transaction Documents to which it is a party.

Section 4.5. Indemnification.

NY281027.5/2047-00003

CONFIDENTIAL TREATMENT REQUESTED BY BRUNE & RICHARD LLP
ON BEHALF OF PATRIARCH PARTNERS LLC                                    PP000966

-16-

(a)     The Company and the Zohar Subsidiary (in such case, the "Indemnifying Party") shall reimburse, indemnify, defend and hold harmless the Collateral Manager and its managers, directors, officers, stockholders, members, agents, advisors, partners and employees and any Affiliate of the Collateral Manager and its managers, directors, officers, stockholders, members, agents, advisors, partners and employees (in such case, an "Indemnified Party") from any and all expenses, losses, damages, liabilities, demands, charges and claims of any nature whatsoever (including reasonable attorneys' fees and expenses), as are incurred in investigating, preparing, pursuing or defending any claim, action, proceeding or investigation caused by, or arising out of or in connection with, the issuance of the Securities, the transactions contemplated by the Transaction Documents and/or any acts or omissions of the Collateral Manager, or its managers, directors, officers, stockholders, members, agents, advisors, partners and employees made in good faith and in the performance of the duties of the Collateral Manager under the Transaction Documents except to the extent resulting from the Indemnified Party's acts or omissions constituting fraud, bad faith, willful misconduct, gross negligence or breach of fiduciary duty in the performance, or reckless disregard, of its duties hereunder or under any other Transaction Document to which it is a party.

(b)     The Collateral Manager and its managers, directors, officers, stockholders, members, agents, advisors, partners and employees may consult with counsel and accountants with respect to the Collateral or the affairs of the Zohar Obligors and shall be fully protected and justified, to the extent allowed by law, in acting, or failing to act, if such action or failure to act is taken or made in good faith and is in accordance with the advice or opinion of such counsel or accountants.  Notwithstanding anything contained herein to the contrary, the obligations of the Company under this Section 4.5 constitute Administrative Expenses and shall be payable in accordance with the Priority of Payments described in the Indenture.

(c)     The Collateral Manager (in such case, the "Indemnifying Party") shall reimburse, indemnify, defend and hold harmless the Company, the Zohar Subsidiary, and each of their respective directors, stockholders, managers, officers, members, agents, partners and employees (in such case, an "Indemnified Party") from any and all expenses, losses, damages, liabilities, demands, charges and claims of any nature whatsoever (including reasonable attorneys' fees and expenses) in respect of or arising out of any acts or omissions of the Collateral Manager, its directors, stockholders, managers, officers, members, agents, partners and employees constituting fraud, bad faith, willful misconduct, gross negligence or breach of fiduciary duty in the performance, or reckless disregard, of its duties hereunder or under any other Transaction Document to which it is a party (except to the extent resulting from the Indemnified Party's bad faith, willful misconduct or gross negligence in the performance, or reckless disregard, of its duties hereunder or under any other Transaction Document to which it is a party).

(d)     With respect to any claim made or threatened against an Indemnified Party, or compulsory process or request or other notice of any loss, claim, damage or liability served upon an Indemnified Party, for which such Indemnified Party is or may be entitled to indemnification under this Section 4.5, such Indemnified Party shall (or with respect to Indemnified Parties that are Affiliates, managers, directors, officers, stockholders, members, agents, advisors, partners or employees of the Collateral Manager, the Company or the Zohar Subsidiary (as applicable), the Collateral Manager, the Company or the Zohar Subsidiary (as applicable) shall cause such Indemnified Party to):

Collateral Management Agreement

NY281027.5/2047-00003

CONFIDENTIAL TREATMENT REQUESTED BY BRUNE & RICHARD LLP
ON BEHALF OF PATRIARCH PARTNERS LLC                                              PP000967

-17-

(i)     give written notice to the Indemnifying Party of such claim within ten (10) days after such Indemnified Party's receipt of actual notice that such claim is made or threatened, which notice to the Indemnifying Party shall specify in reasonable detail the nature of the claim and the amount (or an estimate of the amount) of the claim; provided that the failure of any Indemnified Party to provide such notice to the Indemnifying Party shall not relieve the Indemnifying Party of its obligations under this Section 4.5 unless the Indemnifying Party is materially prejudiced or otherwise forfeits substantial rights or defenses by reason of such failure;

(ii)     at the Indemnifying Party's expense, provide the Indemnifying Party with such information and cooperation with respect to such claim as the Indemnifying Party may reasonably require, including, but not limited to, making appropriate personnel available to the Indemnifying Party at such reasonable times as the Indemnifying Party may request;

(iii)     at the Indemnifying Party's expense, cooperate and take all such steps as the Indemnifying Party may reasonably request to preserve and protect any defense to such claim;

(iv)     in the event suit is brought with respect to such claim, upon reasonable prior notice, afford to the Indemnifying Party the right, which the Indemnifying Party may exercise in its sole discretion and at its expense, to participate in the investigation, defense and settlement of such claim;

(v)     neither incur any material expense to defend against nor release or settle any such claim or make any admission with respect thereto (other than routine or incontestable admissions or factual admissions the failure to make which would expose such Indemnified Party to unindemnified liability) nor permit a default or consent to the entry of any judgment in respect thereof, in each case, without the prior written consent of the Indemnifying Party, unless the Indemnifying Party contests indemnification;

(vi)     subject to the Indemnifying Party's giving of reasonable prior notice, afford to the Indemnifying Party the right, in its sole discretion and at its sole expense, to assume the defense of such claim, including, but not limited to, the right to designate counsel reasonably acceptable to the Indemnified Party and to control all negotiations, litigation, arbitration, settlements, compromises and appeals of such claim; provided that if the Indemnifying Party assumes the defense of such claim, it shall not be liable for any fees and expenses of counsel for any Indemnified Party incurred thereafter in connection with such claim except that if such Indemnified Party reasonably determines that counsel designated by the Indemnifying Party has a conflict of interest, such Indemnifying Party shall pay the reasonable fees and disbursements of one counsel (in addition to any local counsel) separate from its own counsel for all Indemnified Parties in connection with any one action or separate but similar or related actions in the same jurisdiction arising out of the same general allegations or circumstances; and

Collateral Management Agreement

NY281027.5/2047-00003

CONFIDENTIAL TREATMENT REQUESTED BY BRUNE & RICHARD LLP
ON BEHALF OF PATRIARCH PARTNERS LLC                                    PP000968

-18-

(vii)    the Indemnifying Party shall not settle any such claim without the prior written consent of the Indemnified Party, which consent (x) shall not be unreasonably withheld or delayed in the case of a settlement for monetary damages only and (y) may be withheld in the Indemnified Party's sole discretion if the Indemnified Party must perform any act or make any admission in connection with such settlement.

(e)    In order to provide for just and equitable contribution in circumstances in which the indemnification provided for in this Section 4.5 is held to be unavailable or insufficient to hold harmless any Indemnified Party, although applicable in accordance with the terms of this Section 4.5, the Company, the Zohar Subsidiary or the Collateral Manager (as applicable) shall contribute to the aggregate costs incurred by the Indemnified Party in connection with any claim covered by this Section 4.5 in the proportion of the respective economic interests of the Company, the Zohar Subsidiary or the Collateral Manager. The respective economic interests shall be calculated by reference to the aggregate amounts (other than the proceeds from the issuance of the Notes) received by Company and the Zohar Subsidiary from the interest, fees, gains or other amounts received in connection with the Collateral and the aggregate Senior Collateral Management Fees and Subordinated Collateral Management Fees paid to the Collateral Manager hereunder.

### ARTICLE V

### TERM AND TERMINATION;
### REMOVAL OF THE COLLATERAL MANAGER

Section 5.1. Term. This Agreement shall become effective on the date hereof and shall continue in force and effect until the first of the following occurs (the "CMA Termination Date"): (i) the payment in full of the Notes and redemption of the Preference Shares and the termination of the Indenture and the Preference Share Paying Agency Agreement in accordance with their respective terms, (ii) the liquidation of the Collateral and the final distribution of the proceeds in accordance with the Priority of Payments and (iii) the termination of this Agreement in accordance with this Article V.

Section 5.2. Automatic Termination. This Agreement shall automatically terminate upon the Company's good-faith determination that the Company, the Co-Issuer, the Zohar Subsidiary, or the pool of Collateral has become required to be registered as an "investment company" under the Investment Company Act, and the Company notifies the Collateral Manager thereof.

Section 5.3. Termination For Cause. (a) The Collateral Manager may be removed for Cause upon 10 Business Days' prior written notice by the Company to the Collateral Manager (which notice may be waived by the Collateral Manager) at the direction of the Controlling Party.

(b)    If any event constituting Cause occurs, the Collateral Manager shall give prompt written notice thereof to the Company, the Zohar Subsidiary, the Trustee, the Preference Share Paying Agent and the Credit Enhancer promptly upon the Collateral Manager's becoming aware of the occurrence of such event.

<u>Collateral Management Agreement</u>

NY281027.5/2047-00003

CONFIDENTIAL TREATMENT REQUESTED BY BRUNE & RICHARD LLP
ON BEHALF OF PATRIARCH PARTNERS LLC                                        PP000969

-19-

Section 5.4. <u>Post-Termination Approvals</u>.

        In the event that the Collateral Manager has received notification of its removal pursuant to this Article V, until a successor collateral manager has been appointed and has accepted such appointment in accordance with the terms hereof, all purchases and sales of any item included in the Collateral (other than Eligible Investments) must be approved by the Controlling Party (except for the settlement of purchases and/or sales committed to prior to the Collateral Manager's receipt of such notification).

        Section 5.5. <u>Appointment of Successor</u>. Upon the removal of the Collateral Manager pursuant to this Article V, the Controlling Party shall appoint a successor collateral manager. Notwithstanding any other provision herein to the contrary, Patriarch XIV shall not be liable for any acts, omissions or obligations of any successor collateral manager. Any termination of this Agreement and the termination of Patriarch XIV as the Collateral Manager hereunder shall become effective as provided herein once a successor collateral manager shall have been appointed.

        (b)    No removal of the Collateral Manager shall be effective unless (i) a successor collateral manager has agreed in writing to assume all of the Collateral Manager's duties and obligations pursuant to this Agreement, (ii) the successor collateral manager has been approved in writing by the Controlling Party and (iii) the outgoing Collateral Manager has received written notice (a) from the Controlling Party or, if applicable, a Majority of the Preference Shares that it has approved of such successor collateral manager and (b) from such successor collateral manager that it has agreed to assume the outgoing collateral manager's duties.

        (c)    No removal of the Collateral Manager shall be effective until the appointment by the Controlling Party of, and acceptance of such appointment in writing by, a successor collateral manager that in the opinion of the Controlling Party or a Majority of the Preference Shares (as applicable) (i) is an established institution that has demonstrated an ability to professionally and competently perform duties similar to those imposed upon the Collateral Manager under this Agreement and the other Transaction Documents and with a substantially similar (or better) level of expertise, (ii) is legally qualified and has the capacity to act as collateral manager under this Agreement and the other Transaction Documents and as successor to the Collateral Manager hereunder in the assumption of all the responsibilities, duties and obligations of the Collateral Manager hereunder and the other Transaction Documents, (iii) will not cause any Zohar Obligor or the pool of Collateral to become required to register under the provisions of the Investment Company Act and (iv) so long as any Notes are rated, each Rating Agency has confirmed in writing that the appointment of such successor collateral manager will not cause its then current rating (without giving effect to the Credit Enhancement, if applicable) of any Note to be reduced or withdrawn.

        (d)    If no successor collateral manager is in place within ninety (90) days after the giving of such notice of termination, the Collateral Manager or the Trustee (or, after the Notes are paid in full, the Preferences Share Paying Agent acting at the direction of a majority of the Preference Shares) may petition any court of competent jurisdiction for the appointment of a successor collateral manager.

<u>Collateral Management Agreement</u>

NY281027.5/2047-00003

CONFIDENTIAL TREATMENT REQUESTED BY BRUNE & RICHARD LLP
ON BEHALF OF PATRIARCH PARTNERS LLC                                        PP000970

-20-

Section 5.6. <u>Survival</u>. Upon any termination or assignment of this Agreement, the provisions of Sections 3.1, 3.2, 4.1, 4.2, 4.4, 4.5, 5.7, 6.3, 6.4 and 6.5 shall survive such termination or assignment and remain operative and in full force and effect.

Section 5.7. <u>Action Upon Termination</u>. From and after the effective date of the termination of the Collateral Manager's duties and obligations pursuant to this Agreement or removal of the Collateral Manager hereunder, the Collateral Manager shall not be entitled to compensation for services hereunder after the effective date of such termination or removal but shall be paid all compensation accrued through the date of termination (subject to the Priority of Payments), as provided in Section 4.1 hereof, and shall be entitled to receive any amounts owing under Sections 4.2 and 4.5 hereof. Upon such termination or removal, the Collateral Manager shall as soon as practicable:

(i)      deliver to the Company or (at the direction of the Company) any successor collateral manager that is appointed all property and documents of the Trustee, the Company, the Co-Issuer, or the Zohar Subsidiary, as the case may be, relating to the Collateral then in the custody of the Collateral Manager, including, without limitation, files in electronic form; and

(ii)     deliver to the Trustee an accounting with respect to the books and records delivered to the Company or the successor collateral manager, as applicable.

(b)      Notwithstanding such termination or removal, the Collateral Manager shall remain liable to the extent set forth herein (but subject to Section 4.4 hereof) for its acts or omissions hereunder arising prior to termination or removal and for any expenses, losses, damages, liabilities, demands, charges and claims (including reasonable attorneys' fees) in respect of or arising out of a breach of the representations and warranties made by the Collateral Manager in Section 3.2 hereof or from any failure of the Collateral Manager to comply with the provisions of this Section 5.7 or as otherwise provided in Section 4.5(c) hereof.

(c)      The Collateral Manager agrees that, notwithstanding such termination or removal it shall cooperate with the Company in any proceeding arising in connection with this Agreement, the Indenture, the Collateral Administration Agreement or any of the Collateral (excluding any such proceeding in which claims are asserted against the Collateral Manager or any Related Party of the Collateral Manager) upon receipt of appropriate indemnification and expense reimbursement. Notwithstanding anything else to the contrary contained in this Agreement or any other Transaction Documents, if Patriarch XIV ceases to be the Collateral Manager hereunder, the rights of Patriarch XIV and/or its Affiliates as a holder of any Securities shall not be affected.

Section 5.8. <u>Trustee Termination Rights</u>. The Company, the Zohar Subsidiary and the Collateral Manager acknowledge the right of the Trustee to terminate this Agreement under certain circumstances set forth in Section 14.1 of the Indenture.

<u>Collateral Management Agreement</u>

NY281027.5/2047-00003

CONFIDENTIAL TREATMENT REQUESTED BY BRUNE & RICHARD LLP
ON BEHALF OF PATRIARCH PARTNERS LLC                                    PP000971

-21-

# ARTICLE VI

## ADDITIONAL AGREEMENTS OF THE COLLATERAL MANAGER

Section 6.1. <u>Non-Exclusivity</u>. The services of the Collateral Manager to the Company and the Zohar Subsidiary are not to be deemed exclusive and the Collateral Manager shall be free to render collateral management or other services of any kind to others (including without limitation Affiliates, other investment companies and clients having objectives substantially identical to those of the Company). It is understood and agreed that the members, directors, stockholders, partners, employees, officers and managers of the Collateral Manager may engage in any other business activity or render services to any other Person or serve as partners, owners, officers, directors, consultants and advisers or managers of any other firm or company.

Section 6.2. <u>Conflicts of Interest; Acknowledgment of the Company</u>.

(a)      Various potential and actual conflicts of interest may arise from the overall advisory, investment and other activities of the Collateral Manager, and its Affiliates, managers, directors, officers, stockholders, members, agents, advisors, partners and employees (collectively, "Related Parties") and their respective clients, including but not limited to the matters described in Section 2.2(l) and this Section 6.2. The Collateral Manager and its Related Parties may invest for their own accounts or on behalf of other clients (including clients with business objectives and structures and loans identical to the Company and/or the Zohar Subsidiary) in securities, obligations, loans or other assets that would be appropriate as investments for the Company and/or the Zohar Subsidiary. Such investments may be different (including with respect to issuer, price or terms) from those made on behalf of the Company and/or the Zohar Subsidiary. The Collateral Manager and its Related Parties may have, or advise clients with, ongoing relationships with companies whose securities, obligations or loans are pledged to support the Company's repayment obligations under the Indenture and such Persons may own equity or debt securities issued by issuers of, and other obligors on, Collateral Debt Obligations. Subject to Section 2.2(l)(ii), the Collateral Manager and its Related Parties may serve as collateral manager or advisor for, invest in, or be affiliated with, the Persons from which the Company and/or the Zohar Subsidiary may acquire Collateral, Affiliates of such Persons and other entities organized to issue collateralized debt obligations, including those identical to the Securities and those secured by high yield securities, distressed loans, or emerging market bonds and loans, including those issued by companies that are issuers of, and other obligors on, the Collateral. The Collateral Manager and its Related Parties may at certain times be simultaneously seeking to purchase and/or sell investments for the Company, the Zohar Subsidiary and/or other entities (or for some but not all of such Persons) for which it serves as collateral manager or advisor now or in the future, or for its other clients and its managers, directors, officers, stockholders, members, agents, advisors, partners, employees and Affiliates or for its own account. Due to the illiquid nature of the market for certain investments, the Collateral Manager and its Related Parties and clients may be unable to obtain identical execution of similar buy or sell decisions. The Collateral Manager, and its Related Parties may at certain times acquire, hold and dispose of Notes and Preference Shares. Notwithstanding any other provision herein to the contrary, the Collateral Manager and its Affiliates may act as a consultant to any issuer of or obligor on any Collateral or an agent for lenders under any loan facility (or hold any other similar role) in which the Company and/or the

<u>Collateral Management Agreement</u>

NY281027.5/2047-00003

CONFIDENTIAL TREATMENT REQUESTED BY BRUNE & RICHARD LLP
ON BEHALF OF PATRIARCH PARTNERS LLC                                                        PP000972

-22-

Zohar Subsidiary holds an interest that comprises part of the Collateral, subject to such consulting agreement or loan facility (or similar documents) containing customary and reasonable provisions for the indemnification and/or compensation of the Collateral Manager or its Affiliates, as the case may be.

(b)     The Company and the Zohar Subsidiary hereby acknowledge that the Collateral Manager and its Related Parties may actively manage their own accounts and the accounts of other clients with investments similar, and in some cases identical, to the Collateral, including those issued by companies that are issuers of, and other obligors on, the Collateral, and consent to and waive the various potential and actual conflicts of interest that may exist from time to time with respect to the Collateral Manager and its Related Parties as generally described in Section 6.2(a) above; provided, however, that nothing in this Section 6.2 shall be construed as altering the duties of the Collateral Manager as set forth in this Agreement or the Indenture nor the requirements of any law, rule, or regulation applicable to the Collateral Manager.

(c)     If the Collateral Manager determines that it or any of its Affiliates have a material conflict of interest between the holders of the Notes and any other account or portfolio for which the Collateral Manager or any of its Affiliates is serving as investment advisor that relates to any action to be taken with respect to any Collateral Debt Obligation, then the Collateral Manager will perform its obligations with respect to any such conflict in accordance with the care, skill, prudence and diligence that a prudent Person acting in a like capacity and familiar with such matters would use in the resolution of such conflict (provided that, to the extent that any provision of this Agreement specifically addresses the treatment of any conflict referred to in this clause (c), such conflict shall not be subject to this clause (c)).

Section 6.3.   Records.

(a)     The Collateral Manager, with the assistance of the Collateral Administrator, shall maintain appropriate books of account and records relating to services performed hereunder and relating to the Collateral including invoices for professional fees, and such books of account and records shall be accessible for inspection by a representative of the Company, the Zohar Subsidiary, the Trustee, the Credit Enhancer, the Preference Share Paying Agent, the Holders of the Notes and the independent accountants appointed by the Company pursuant to the Indenture at a mutually agreed time during normal business hours and upon not less than three Business Days' prior written notice; provided, however, that following the Collateral Manager's receipt of a notice of its removal pursuant to Section 5.3 hereof, the Collateral Manager shall at the request of the Controlling Party use its commercially reasonable efforts to promptly provide to the prospective successor collateral manager copies of the books and records of the Zohar Obligors and copies of Underlying Instruments (in each case in the possession of the Collateral Manager) (for the avoidance of doubt, such books and records and other information shall not include the credit templates or other proprietary information of the Collateral Manager); provided further that the Collateral Manager shall be required to provide the information described in the immediately preceding proviso if (i) the prospective successor collateral manager executes a confidentiality agreement reasonably acceptable to the Collateral Manager and (ii) the release of such information is permitted under the Transaction Documents and the Underlying Instruments. Upon the termination of its obligations hereunder in accordance with this Agreement and the Indenture, the Collateral Manager agrees to either (i) maintain or cause

<u>Collateral Management Agreement</u>

NY281027.5/2047-00003

CONFIDENTIAL TREATMENT REQUESTED BY BRUNE & RICHARD LLP
ON BEHALF OF PATRIARCH PARTNERS LLC                                    PP000973

-23-

the Collateral Administrator to maintain, such books and records as provided above for a period of three years (or such longer period required by applicable law) from such termination or (ii) deliver, or cause the Collateral Administrator to deliver, all such books and records (or copies thereof) to the Trustee promptly following such termination.

(b)    Upon the reasonable request of the Credit Enhancer, the Collateral Manager shall provide the Credit Enhancer with any calculations, and copies of documents and other relevant data and information in the possession of the Collateral Manager that the Collateral Manager utilizes for purposes of preparing any report or performing any calculation hereunder, under the Indenture or under the Collateral Administration Agreement.

(c)    Following the acquisition by the Company or the Zohar Subsidiary of any Collateral Debt Obligation or any Unrestricted Collateral Debt Obligation, the Collateral Manager shall provide to the Credit Enhancer a copy of the credit template prepared by the Collateral Manager with respect to such Collateral Debt Obligation or such Unrestricted Collateral Debt Obligation, as the case may be.

Section 6.4.  Confidentiality.  The Collateral Manager shall, and shall endeavor to cause its Affiliates to, keep confidential information obtained in connection with this Agreement and shall not disclose any such information to non-affiliated third parties except (i) with the prior written consent of the Company (or, with respect to confidential information of or pertaining to the Zohar Subsidiary or the activities of the Collateral Manager on behalf of the Zohar Subsidiary, the Zohar Subsidiary), (ii) such information as the Rating Agencies shall request, (iii) as required by law, regulation, court order or the rules or regulations of any self-regulating organization, body or official having jurisdiction over the Collateral Manager (including securities offerings for additional collateralized debt obligation funds or investment vehicles for which the Collateral Manager or any of its Affiliates will serve as the collateral manager, advisor or replacement collateral manager), (iv) to its professional advisers, (v) such information as shall have been publicly disclosed other than in violation of this Agreement, (vi) to the extent required in connection with the acquisition, origination, restructuring, exchange or disposal of Collateral by the Company and/or the Zohar Subsidiary (e.g., disclosures to agent banks and borrowers to evidence the Company's and/or Zohar Subsidiary's ability to extend credit pursuant to the applicable Underlying Instruments) or (vii) such information that was or is obtained by the Collateral Manager (A) on a non-confidential basis or (B) for avoidance of doubt, other than in connection with the services rendered hereunder; provided that for the purposes of this clause (vii)(A) the Collateral Manager does not know of any breach by such source of any confidentiality obligations with respect thereto.  For purposes of this Section 6.4, the Holders of Securities, the prospective Holders of Securities, the Credit Enhancer, all parties to the Transaction Documents, and any of their Related Parties or professional advisors or agents shall in no event be considered "non-affiliated third parties".

Section 6.5.  Non-Petition.  The Collateral Manager shall continue to serve as Collateral Manager under this Agreement notwithstanding that the Collateral Manager shall not have received amounts due it under this Agreement because sufficient funds were not then available under the Indenture to pay such amounts in accordance with the Priority of Payments.  The Collateral Manager covenants and agrees that it shall not institute against, or join any other Person in instituting against, any Zohar Obligor or any of their directors, officers, shareholders or

Collateral Management Agreement

CONFIDENTIAL TREATMENT REQUESTED BY BRUNE & RICHARD LLP
ON BEHALF OF PATRIARCH PARTNERS LLC                                                    PP000974

-24-

incorporators (in their capacity as such) for any reason whatsoever (including, without limitation, the non-payment to the Collateral Manager of any amount payable by the Company hereunder) any bankruptcy, reorganization, arrangement, insolvency, moratorium or liquidation proceedings or other proceedings under federal or state bankruptcy or similar laws until at least one year and one day, or if longer the applicable preference period then in effect, after the payment in full of all Notes issued under the Indenture; provided, however, that nothing in this sentence shall preclude, or be deemed to stop, the Collateral Manager (A) from taking any action prior to the expiration of the aforementioned one year and one day period (or such longer applicable preference period then in effect) in (x) any case or proceeding voluntarily filed or commenced by the Company, the Zohar Subsidiary or the Co-Issuer, as the case may be, or (y) any involuntary insolvency proceeding filed or commenced against the Company, the Zohar Subsidiary or the Co-Issuer, as the case may be, by a Person other than the Collateral Manager or its respective Affiliates, or (B) from commencing against the Company, the Zohar Subsidiary or the Co-Issuer or any properties of the Company, the Zohar Subsidiary or the Co-Issuer any legal action that is not a bankruptcy, reorganization, arrangement, insolvency, moratorium or liquidation proceeding.

## ARTICLE VII

## MISCELLANEOUS

Section 7.1. <u>No Partnership or Joint Venture</u>. The Company, the Zohar Subsidiary and the Collateral Manager are not partners or joint venturers with each other and nothing herein shall be construed to make them such partners or joint venturers or impose any liability as such on either of them. The Collateral Manager's relationship to the Company and the Zohar Subsidiary shall be deemed to be that of an independent contractor.

Section 7.2. <u>Notices</u>. Any notice under this Agreement shall be in writing and sent by facsimile or addressed and delivered or mailed postage paid to the other parties at such address as such other parties may designate for the receipt of such notice. Notice shall be deemed to have been duly given, made and received when delivered against receipt or upon actual receipt of registered or certified mail, postage prepaid, return receipt requested, or, in the case of facsimile notice, when received in legible form, addressed as set forth below. Until further notice to the other party, it is agreed that the address of the Company for this purpose shall be Zohar II 2005-1, Limited, c/o Maples Finance Limited, P.O. Box 1093GT, Queensgate House, South Church Street, George Town, Grand Cayman, Cayman Islands, Attention: Directors, telephone (345) 945-7099, facsimile (345) 945-7100; the address of the Zohar Subsidiary for this purpose shall be Zohar II 2005-1, LLC, c/o Puglisi & Associates, 850 Library Avenue, Suite 204, Newark, Delaware 19711, Attention: Donald Puglisi, Esq., telecopier number: (302) 738-7210; the address of the Collateral Manager for this purpose shall be Patriarch Partners XIV, LLC, c/o Patriarch Partners, LLC, 112 South Tryon Street, Suite 700, Charlotte, North Carolina 28284, Attention: Greg Murphy, telephone: (704) 227-1204, telecopier: (704) 375-0358; the address of the Trustee for this purpose shall be LaSalle Bank National Association, 135 South LaSalle Street, Suite 1625, Chicago, Illinois 60603, Attention: CDO Trust Services Group – Zohar II 2005-1, Limited, telephone: (312) 904-0283, telecopier: (503) 258-5859; the address of Standard & Poor's for this purpose shall be Standard & Poor's Ratings Group, 55 Water Street, New York, New York, 10041, telephone: (212) 438-2000, facsimile (212) 438-2664, Attention: Structured

<u>Collateral Management Agreement</u>

NY281027.5/2047-00003

CONFIDENTIAL TREATMENT REQUESTED BY BRUNE & RICHARD LLP
ON BEHALF OF PATRIARCH PARTNERS LLC                                   PP000975

-25-

Finance Ratings, Asset Backed Securities CBO/CLO Surveillance and that of Moody's for this purpose shall be Moody's Investors Service, Inc., 99 Church St., New York, New York 10007, telephone: (212) 553-0300, telecopier: (212) 553-0355, Attention: CBO/CLO Monitoring; and the address of the Credit Enhancer for this purpose shall be MBIA Insurance Corporation, 113 King Street, Armonk, New York 10504, telephone: (914) 765-3068, telecopier: (914) 765-3555, Attention: Insured Portfolio Management – Attention: CDO Group.

Section 7.3. <u>Succession; No Assignment, Submission to Jurisdiction, Etc.</u> This Agreement shall inure to the benefit of and be binding upon the successors to the parties hereto. This Agreement may not be assigned by any party hereto, except (i) in the case of the assignment by the Company to the Trustee as contemplated by the Granting Clause of the Indenture, (ii) in the case of any assignment to a successor collateral manager pursuant to Section 5.5 hereof and (iii) in the case of any assignment by Patriarch XIV to a Controlled Entity with the prior written consent of the Controlling Party.

(b)      Each of the Company, the Zohar Subsidiary and the Collateral Manager irrevocably (i) submits to the non-exclusive jurisdiction of any New York State or federal court sitting in the Borough of Manhattan in the City of New York in any action or proceeding arising out of or relating to this Agreement or the Indenture, (ii) agrees that all claims in respect of such action or proceeding may be heard and determined in such New York State or federal court, (iii) waives, to the fullest extent it may legally do so, the defense of an inconvenient forum to the maintenance of such action or proceeding, (iv) consents to the service of any and all process in any action or proceeding by the mailing or delivery of copies of such process to it at the address specified for it in Section 7.2 and (v) agrees that a final judgment in any such action or proceeding shall be conclusive and may be enforced in other jurisdictions by suit on the judgment or in any other manner provided by law.

Section 7.4. <u>Third-Party Beneficiary.</u> The Credit Enhancer is an express third-party beneficiary of this Agreement with the full power to enforce this Agreement as if the Credit Enhancer were a party hereto.

Section 7.5. <u>Governing Law; Waiver Of Jury Trial.</u> THIS AGREEMENT AND THE RIGHTS AND OBLIGATIONS OF THE PARTIES HEREUNDER AND ALL MATTERS ARISING OUT OF OR RELATING TO THIS AGREEMENT SHALL BE CONSTRUED IN ACCORDANCE WITH AND BE GOVERNED BY THE LAW OF THE STATE OF NEW YORK, WITHOUT REGARD TO CONFLICTS OF LAW PRINCIPLES (OTHER THAN SECTION 5-1401 OF THE NEW YORK GENERAL OBLIGATIONS LAW). THE PARTIES HERETO HEREBY IRREVOCABLY WAIVE, TO THE FULLEST EXTENT PERMITTED BY LAW, ANY AND ALL RIGHT TO TRIAL BY JURY IN ANY LEGAL PROCEEDING ARISING OUT OF OR RELATING TO THIS AGREEMENT.

Section 7.6. <u>Counterparts.</u> This Agreement may be executed in any number of counterparts and by the different parties hereto on separate counterparts, each of which when so executed and delivered shall be an original, but all of which shall together constitute one and the same instrument.

<u>Collateral Management Agreement</u>

NY281027.5/2047-00003

CONFIDENTIAL TREATMENT REQUESTED BY BRUNE & RICHARD LLP
ON BEHALF OF PATRIARCH PARTNERS LLC                                          PP000976

-26-

Section 7.7. <u>Headings Descriptive</u>. The headings of the several sections and subsections of this Agreement are inserted for convenience only and shall not in any way affect the meaning or construction of any provision of this Agreement.

Section 7.8. <u>Severability</u>. If any term, provision, covenant or restriction contained in this Agreement is held by a court of competent jurisdiction or other authority to be invalid, void, unenforceable or against its regulatory policy, the remainder of the terms, provisions, covenants and restrictions contained in this Agreement shall remain in full force and effect and shall in no way be affected, impaired or invalidated.

Section 7.9. <u>Entire Agreement</u>. This Agreement and other documents referred to herein or delivered pursuant hereto, collectively contain the entire understanding of the parties hereto with respect to the subject matter contained herein and supersede all prior agreements and understandings, oral and written, with respect thereto.

Section 7.10. <u>Amendments</u>. This Agreement may not be amended or modified or any provision hereof waived except (i) by an instrument in writing signed by the parties hereto, (ii) in accordance with Section 14.4(d) of the Indenture and (iii) with the written consent of the Controlling Party. For the avoidance of doubt, prior to entering any agreement amending, modifying, terminating or waiving its rights under this Agreement, the Collateral Manager shall comply with the applicable requirements of Section 14.4(d) of the Indenture; provided however, that notwithstanding anything else contained herein, any amendment that (i) is necessary in order for this Agreement to comply with any applicable law or regulation, including without limitation the Investment Advisers Act of 1940, and (ii) does not materially and adversely affect the holders of the Notes shall not require the consent of any Person (other than the Controlling Party (so long as the Class A Notes are Outstanding, the Class A-1 Commitments and the Class A-3 Commitments have not expired, terminated or been reduced to zero, or there remain any accrued and unpaid Credit Enhancement Liabilities) which consent shall not be unreasonably withheld or delayed) and may be evidenced by a supplement prepared by the Collateral Manager.

Section 7.11. <u>Indulgences Not Waivers</u>. Neither the failure nor any delay on the part of any party hereto to exercise any right, remedy, power or privilege under this Agreement shall operate as a waiver thereof, nor shall any single or partial exercise of any right, remedy, power or privilege preclude any other or further exercise of the same or of any other right, remedy, power or privilege, nor shall any waiver of any right, remedy, power or privilege with respect to any occurrence be construed as a waiver of such right, remedy, power or privilege with respect to any other occurrence. No waiver shall be effective unless it is in writing and is signed by the party asserted to have granted such waiver.

Section 7.12. <u>Collateral Manager Obligations Under the Indenture</u>. The Collateral Manager (i) consents to the assignment of this Agreement to the Trustee for the benefit of the Secured Parties pursuant to the terms of the Indenture, (ii) acknowledges that each of the Company and the Zohar Subsidiary has collaterally assigned all of its right, title and interest in, to and under this Agreement to the Trustee for the benefit of such Secured Parties, (iii) makes each of the agreements and covenants set forth in Section 14.4 of the Indenture and (iv) acknowledges that, under the terms of the Indenture, the Credit Enhancer will act as the Controlling Party under certain circumstances described therein.

<u>Collateral Management Agreement</u>

NY281027.5/2047-00003

CONFIDENTIAL TREATMENT REQUESTED BY BRUNE & RICHARD LLP
ON BEHALF OF PATRIARCH PARTNERS LLC                                    PP000977

-27-

Section 7.13.  <u>Limitations on Recourse</u>.  The Collateral Manager shall have recourse solely to the Collateral described in the Indenture for the payment and performance of all of the obligations of the Company under this Agreement.  Upon final realization of such Collateral, any outstanding obligations of the Company hereunder shall be extinguished and shall not thereafter revive, and the Collateral Manager shall not be entitled to take any further steps against the Company or any of its directors, officers, shareholders or incorporators, to recover any sums due from the Company but still unpaid.

(b)    The Collateral Manager shall have no recourse to any shareholder, manager, member, director or officer of the Company or the Zohar Subsidiary, or to any of the respective assets of such shareholder, manager, member, director or officer of the Company or the Zohar Subsidiary.

(c)    Neither the Company nor the Zohar Subsidiary shall have any recourse to any shareholder, manager, member, director or officer of the Collateral Manager, or to any of the respective assets of such shareholder, manager, member, director or officer of the Collateral Manager.

Section 7.14.  <u>Conflict with Indenture</u>.  Subject to Article II, in the event that this Agreement requires any action to be taken with respect to any matter and the Indenture requires that a different action be taken with respect to such matter, and such actions are mutually exclusive, the provisions of the Indenture in respect thereof shall control.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

<u>Collateral Management Agreement</u>

NY281027.5/2047-00003

CONFIDENTIAL TREATMENT REQUESTED BY BRUNE & RICHARD LLP
ON BEHALF OF PATRIARCH PARTNERS LLC

PP000978

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed by their respective authorized representatives on the day and year first above written.

ZOHAR II 2005-1, LIMITED

By:_____

    Name: **Chris Watler**
    Title: **Director**

ZOHAR II 2005-1, LLC

By:   ZOHAR II 2005-1, LIMITED,
       as Managing Member

By:_____

    Name: **Chris Watler**
    Title: Director

PATRIARCH PARTNERS XIV, LLC

By:_____

    Name: Lynn Tilton
    Title: Manager

Collateral Management Agreement

CONFIDENTIAL TREATMENT REQUESTED BY BRUNE & RICHARD LLP
ON BEHALF OF PATRIARCH PARTNERS LLC

PP000979

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed by their respective authorized representatives on the day and year first above written.

ZOHAR II 2005-1, LIMITED

By:_____
      Name:
      Title:

ZOHAR II 2005-1, LLC

By:    ZOHAR II 2005-1, LIMITED,
       as Managing Member

By:_____
      Name:
      Title:

PATRIARCH PARTNERS XIV, LLC

By:_____
      Name: Lynn Tilton
      Title:  Manager

Collateral Management Agreement

CONFIDENTIAL TREATMENT REQUESTED BY BRUNE & RICHARD LLP
ON BEHALF OF PATRIARCH PARTNERS LLC

PP000980