IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>ZOHAR III, CORP., *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 18-10512 (KBO)<br><br>Jointly Administered |
| ZOHAR CDO 2003-1, LIMITED; ZOHAR II 2005-1, LIMITED; and ZOHAR III, LIMITED; ZOHAR II 2005-1, CORP.;<br><br>Plaintiffs,<br><br>v.<br><br>PATRIARCH PARTNERS, LLC; PATRIARCH PARTNERS VIII, LLC; PATRIARCH PARTNERS XIV, LLC; PATRIARCH PARTNERS XV, LLC; PHOENIX VIII, LLC; OCTALUNA LLC; OCTALUNA II LLC; OCTALUNA III LLC; ARK II CLO 2001-1, LLC; ARK INVESTMENT PARTNERS II, LP; ARK ANGELS VII, LLC; PATRIARCH PARTNERS MANAGEMENT GROUP, LLC; PATRIARCH PARTNERS AGENCY SERVICES, LLC; and LYNN TILTON,<br><br>Defendants, and<br><br>180S, INC.; BLACK MOUNTAIN DOORS, LLC; CROSCILL HOME, LLC; DURO TEXTILES, LLC; GLOBAL AUTOMOTIVE SYSTEMS, LLC; HERITAGE AVIATION, | Adv. Pro. No. 20-50534<br><br><br><br><br><br>**Ref. Docket Nos. 1, 2, 125 & 168** |

---

[1] The Debtors, and, where applicable, the last four digits of their taxpayer identification number are as follows: Zohar III, Corp. (9612), Zohar II 2005-1, Corp. (4059), Zohar CDO 2003-1, Corp. (3724), Zohar III, Limited (9261), Zohar II 2005-1, Limited (8297), and Zohar CDO 2003-1, Limited (5119). The Debtors' address is c/o FTI Consulting, Inc., 1166 Avenue of the Americas, 15th Floor, New York, NY 10036.

LTD.; INTREPID U.S.A., INC.; IMG HOLDINGS, INC.; JEWEL OF JANE, LLC; MOBILE ARMORED VEHICLES, LLC; SCAN-OPTICS, LLC; SILVERACK, LLC; STILA STYLES, LLC; SNELLING STAFFING, LLC; VULCAN ENGINEERING, INC; and XPIENT SOLUTIONS, LLC,

                Nominal Defendants.

## NOTICE OF FILING OF BLACKLINE OF SECOND AMENDED COMPLAINT

**PLEASE TAKE NOTICE** that on March 9, 2020, the above-captioned plaintiffs (collectively, the "Zohar Funds") filed under seal the *Complaint* [Docket No. 1/2] (the "Complaint").[2]

**PLEASE TAKE FURTHER NOTICE** that the on September 1, 2021, the Zohar Funds filed under seal the *First Amended Complaint* [Docket No. 125] (the "First Amended Complaint").[3]

**PLEASE TAKE FURTHER NOTICE** that the on March 10, 2022, the Zohar Funds filed under seal the *Second Amended Complaint* [Docket No. 168] (the "Second Amended Complaint")

[*Remainder of page intentionally left blank*]

---

[2] A redacted version of the Complaint was filed at Docket No. 110.

[3] A redacted version of the Amended Complaint was filed at Docket No. 129.

29169867.1                                    2

**PLEASE TAKE FURTHER NOTICE** that attached hereto as <u>Exhibit A</u> is a blackline comparing the First Amended Complaint to the Second Amended Complaint. The Zohar Funds will file a redacted version of the blackline consistent with the publicly available versions of the First Amended Complaint and Second Amended Complaint.

| | |
|---|---|
| Dated: March 10, 2022<br>Wilmington, Delaware | YOUNG CONAWAY STARGATT & TAYLOR, LLP<br><br>/s/ Ryan M. Bartley<br>James L. Patton, Jr. (No. 2202)<br>Robert S. Brady (No. 2847)<br>Michael R. Nestor (No. 3526)<br>Joseph M. Barry (No. 4221)<br>Ryan M. Bartley (No. 4985)<br>Shane M. Reil (No. 6195)<br>Rodney Square<br>1000 North King Street<br>Wilmington, Delaware 19801<br>Telephone: (302) 571-6600<br>Facsimile: (302) 571-1253<br>Email: jpatton@ycst.com<br>      rbrady@ycst.com<br>      mnestor@ycst.com<br>      jbarry@ycst.com<br>      rbartley@ycst.com<br>      sreil@ycst.com<br><br>*Counsel to the Zohar Funds* |

# EXHIBIT A

**Blackline**

STILA STYLES, LLC; SNELLING STAFFING, LLC; VULCAN ENGINEERING, INC; and XPIENT SOLUTIONS, LLC,

    Nominal Defendants.

## ~~FIRST~~ SECOND AMENDED COMPLAINT

The above-captioned plaintiffs, by their undersigned attorneys, for their First Amended Complaint[2] against the above-captioned defendants, hereby allege as follows:

### Introduction[3]

1.    In the mid-2000s, Lynn Tilton created Zohar CDO 2003-1, Limited, Zohar II 2005-1, Limited, and Zohar III, Limited (collectively, the "Zohar Funds"), a series of collateralized loan obligation ("CLO") funds.  The Zohar Funds were unique among CLO funds in several ways, but the most striking was that the Zohar Funds and the companies in which the Zohar Funds invested were all entirely controlled, managed and selected by Tilton and her affiliated entities.  Tilton raised billions of dollars through the Zohar Funds and, through the Patriarch Managers (the collateral managers for the Zohar Funds that she controlled), used those funds to make debt and equity investments in various Portfolio Companies, at her sole discretion.  And acting through the Patriarch Managers, Tilton caused the Zohar Funds, as equity holders of these Portfolio Companies, to install her as a director or manager of the Portfolio Companies (often times the sole

---

[2] This First Amended Complaint is filed pursuant to the Court's *Memorandum Opinion* (Dkt. 121) and *Order Granting in Part and Denying in Part Defendant's Motion to Dismiss the Complaint* (Dkt. 122).  In order to preserve, without waiver, claims made in the original Complaint, Plaintiffs have included certain Counts (and supporting allegations) that were dismissed with prejudice by Order of the Court.  The continued inclusion of these allegations in the Complaint does not represent an intention to reargue them now, but instead to preserve them for appeal without waiver.

[3] Capitalized terms used but not defined in this Introduction shall have the meaning ascribed to them in the balance of this Complaint.

28552089.2

2

by diverting and exercising dominion and control over the equity interests owned by the Zohar Funds, or acquired with capital extended by the Zohar Funds, including sale proceeds, dividends and other distributions on account of these equity interests, thereby depriving the Zohar Funds of the use of that property.  Based on allegations made by the Zohar Funds' prior collateral manager, AMZM, in prior litigation, this included, among other things, the proceeds of the sale of HVEASI Holding BV, which was at various times represented to have been owned 100% by Zohar II.  Additionally, ~~the Patriarch Managers and~~ Tilton intentionally interfered with the property rights of the Zohar Funds by taking the Voting/Control Actions designed to strip the Zohar Funds of their valuable rights in the Portfolio Companies property and transferring them to Tilton and her affiliated entities, including Ark II, the Class B Parties, the Proxy Grantees, and the Octaluna Entities, thereby unlawfully exercising dominion and control over the Zohar Funds' property and depriving the Zohar Funds of the use of that property.  The May 2011 Amendments, September 2015 Amendments, September 2015 Proxies, and November 2017 Written Consents each purported to convey, in whole or in part, the Zohar Funds' inherent right to vote their equity interests in the applicable Portfolio Companies to Tilton or her affiliated entities, including the Octaluna Entities, the Class B Parties, and the Proxy Grantees.  Through these actions, Tilton, the Octaluna Entities, The Class B Parties, and the Proxy Grantees intentionally exercised dominion and control over the Zohar Funds' equity interests in the Portfolio Companies.

346.  In addition, the Credit Agreement Amendments purported to restructure outstanding loans to waive or restructure unpaid interest or commitment fees; to waive the Zohar Funds' ability to declare an Event of Default in most cases; to waive other existing Events of Default; to grant sole discretion to waive certain Events of Default under the credit agreements to PPAS; and to require consent from PPAS for any amendment, modification, termination or waiver

when the Zohar Funds had incurred, and in the future would incur, debts beyond their ability to pay.

366. Under Sections 544(b) and 1107(a) of the Bankruptcy Code, as debtors in possession, the Zohar Funds may avoid any transfer for an interest of the debtor in property that is voidable under applicable non-bankruptcy law by any creditor holding an unsecured, allowable claim. Creditors of the Zohar Funds exist who could avoid the Voting/Control Transfers (other than the May 2011 Amendments) under applicable non-bankruptcy law.

367. The Voting/Control Transfers (other than the May 2011 Amendments) are avoidable as constructively fraudulent transfers under Section 544 of the Bankruptcy Code and applicable state law, including NY DCL §§ 273 through 275 and 6 Del. C. §§ 1304 and 1305.

368. Under Section 550 of the Bankruptcy Code, the Zohar Funds are entitled to recover the property fraudulently transferred in the Voting/Control Transfers (other than the May 2011 Amendments), or compensatory damages in an amount to be determined at trial for the value thereof, from the direct and indirect transferees.

**COUNT XI : ACTUAL FRAUDULENT TRANSFER UNDER 11 U.S.C. § 548(A)(1)(A)**
**(By the Zohar Funds Against the Octaluna Entities)**

369. The Zohar Funds incorporate the foregoing allegations as if fully set forth here.

370. The November 2017 Transfers were transfers of interests in the property of, and obligations incurred by, the Zohar Funds to and for the benefit of Tilton and her affiliates, the Octaluna Entities.

371. The November 2017 Transfers were made with an actual intent to hinder, delay, and/or defraud the Zohar Funds' creditors, to the detriment and harm of such creditors. Such intent can be inferred from, among other things, the November 2017 Transfer were made to and for the benefit of insiders of the Zohar Funds (Tilton and her affiliates), the transfers were made without

have an obligation to the Zohar Funds to make restitution for their ill-gotten gains. Tilton, the Ark Entities, the Octaluna Entities, PPMG, and PPAS have failed to make restitution to the Zohar Funds for their ill-gotten gains.

387. Restitution should therefore be made by Tilton, the Ark Entities, the Octaluna Entities, PPMG, and PPAS to the Zohar Funds in an amount to be proven at trial.

### COUNT XIV :   UNJUST ENRICHMENT (OC TEST MANIPULATION)
**(By the Zohar Funds Against the ~~Patriarch Managers,~~ Octaluna Entities, and Tilton)**

388. The Zohar Funds incorporate the foregoing allegations as if fully set forth here.

389. Tilton and the Patriarch Managers manipulated the OC Test by incorrectly categorizing the Zohar Funds' assets and inflating the principal balances used in the OC Test in violation of the Indentures.

390. By virtue of the OC Tests being reported as passed when they were actually failing and by virtue of the OC Tests being calculated based on an inflated valuation of the Zohar Funds' assets, the Patriarch Managers obtained collateral management fees, and the Octaluna Entities obtained preference-share payments, to which the Patriarch Managers and the Octaluna Entities were not entitled, and Patriarch retained control over the Zohar Funds for longer than they would have otherwise.

391. Tilton and her affiliated entities, the Patriarch Managers and the Octaluna Entities, have been substantially enriched by the manipulations of the OC Test at the expense of the Zohar Funds. Due to the Patriarch Managers' wrongful acts, the Zohar Funds have paid substantial Subordinated Collateral Management Fees to the Patriarch Managers and substantial Preference Share Distributions to the Octaluna Entities, which the Patriarch Managers and the Octaluna Entities, respectively, were not entitled to receive.

392. Tilton, and the Patriarch Managers and the Octaluna Entities, through Tilton, knew of and played an active role in the Patriarch Mangers' manipulations of the OC Test.

393. The circumstances are such that it would be against equity and good conscience to permit Tilton~~, the Patriarch Managers,~~ and the Octaluna Entities to retain their ill-gotten gains from the Zohar Funds. Tilton~~, the Patriarch Managers,~~ and the Octaluna Entities have an obligation to the Zohar Funds to make restitution for their ill-gotten gains. Tilton~~, the Patriarch Managers,~~ and the Octaluna Entities have failed to make restitution to the Zohar Funds for their ill-gotten gains.

394. Restitution should therefore be made by Tilton~~, the Patriarch Managers,~~ and the Octaluna Entities to the Zohar Funds in an amount to be proven at trial.

### COUNTS SEEKING REMEDIES FOR TAX ELECTION ISSUES

### COUNT XV : BREACH OF SUBSCRIPTION AGREEMENTS (CHECK-THE-BOX ELECTION)
### (By the Zohar Funds Against the Octaluna Entities)

395. The Zohar Funds incorporate the foregoing allegations as if fully set forth here.

396. Zohar I and Octaluna I are parties to a Subscription Agreement whereby Octaluna I acquired the preference shares in Zohar I.

397. Zohar II and Octaluna II are parties to a Subscription Agreement whereby Octaluna II acquired the preference shares in Zohar II.

398. Zohar III and Octaluna III are parties to a Subscription Agreement whereby Octaluna III acquired the preference shares in Zohar III.

399. The Subscription Agreements are valid and enforceable contracts under which the Zohar Funds have fully performed.

400. Each Subscription Agreement attached an Investor Questionnaire on behalf of the applicable Octaluna Entity. Paragraph 9 of each Subscription Agreement provides: "The attached

~~28552089.2~~ 28552089.3

98

429. As a result of the CTB Election, the Zohar Funds and their creditors have been harmed.

430. Under Sections 544(b) and 1107(a) of the Bankruptcy Code, as debtors in possession, the Zohar Funds may avoid an obligation that has been incurred that is voidable under applicable non-bankruptcy law by any creditor holding an unsecured, allowable claim. Creditors of the Zohar Funds exist who could avoid the CTB Election under applicable non-bankruptcy law.

431. The CTB Election is avoidable as an actual fraudulent transfer under Section 544 of the Bankruptcy Code and applicable state law, including NY DCL § 276 and 6 Del. C. § 1304.

432. Under Section 550 of the Bankruptcy Code, the Zohar Funds are entitled to recover ~~the property fraudulently transferred in the CTB Election, or~~ compensatory damages in an amount to be determined at trial ~~for the value thereof,~~ from the direct and indirect transferees.

### COUNT XX : CONSTRUCTIVE FRAUDULENT TRANSFER (CHECK-THE-BOX ELECTION)
**(By the Zohar Funds Against the Octaluna Entities)**

433. The Zohar Funds incorporate the foregoing allegations as if fully set forth here.

434. The CTB Election resulted in the Zohar Funds' incurrence of tax obligations that had previously been the tax obligation of Tilton and the Octaluna Entities.

435. The CTB Election resulted in an obligation being incurred by the Zohar Funds solely for the benefit of Tilton and her affiliated entities, including the Octaluna Entities.

436. The CTB Election was made for no consideration, without fair consideration, or for less than reasonably equivalent value.

437. The CTB Election was made (a) when the Zohar Funds were insolvent, (b) so as to render the Zohar Funds insolvent, (c) so as to leave the Zohar Funds with unreasonably small capital, or (d) when the Zohar Funds had incurred debts beyond their ability to pay.

438. Under Sections 544(b) and 1107(a) of the Bankruptcy Code, as debtors in possession, the Zohar Funds may avoid an obligation that has been incurred that is voidable under applicable non-bankruptcy law by any creditor holding an unsecured, allowable claim. Creditors of the Zohar Funds exist who could avoid the CTB Election under applicable non-bankruptcy law.

439. The CTB Election is avoidable as a constructively fraudulent transfer under Section 544 of the Bankruptcy Code and applicable state law, including NY DCL §§ 273 and 275 and 6 Del. C. §§ 1304 and 1305.

440. Under Section 550 of the Bankruptcy Code, the Zohar Funds are entitled to recover ~~the property fraudulently transferred in the CTB Election, or~~ compensatory damages in an amount to be determined at trial ~~for the value thereof,~~ from the direct and indirect transferees.

### COUNT XXI : ACTUAL FRAUDULENT TRANSFER UNDER 11 U.S.C. § 548(A)(1)(A) (CHECK-THE-BOX ELECTION)
### (By the Zohar Funds Against the Octaluna Entities)

441. The Zohar Funds incorporate the foregoing allegations as if fully set forth here.

442. The CTB Election resulted in the Zohar Funds' incurrence of tax obligations that had previously been the tax obligation of Tilton and the Octaluna Entities.

443. The CTB Election resulted in an obligation being incurred by the Zohar Funds solely for the benefit of Tilton and her affiliated entities, including the Octaluna Entities.

444. The CTB Election was made with an actual intent to hinder, delay, and/or defraud the Zohar Funds' creditors, to the detriment and harm of such creditors. Such intent can be inferred from, among other things, that the obligations were incurred for the benefit of insiders of the Zohar Funds (Tilton and her affiliates), the obligations were incurred without consideration to the Zohar Funds, the obligations were incurred in violation of affirmative obligations of the Zohar Funds not to engage in such transactions, and the Zohar Funds were insolvent at the time of the CTB Election.

Further, the CTB Election was made to gain an advantage in looming litigation between the Zohar Funds and Tilton and her affiliates over the ownership and control of the Portfolio Companies. Since making the CTB Election, Tilton has repeatedly relied on the fact that the Zohar Funds are subject to entity-level taxation to dissuade the Zohar Funds from asserting their ownership interest in the Portfolio Companies' equity. Moreover, the Zohar Funds' collapse was well underway when she made the CTB Election, with Zohar I having defaulted, and Zohar II and Zohar III having no apparent prospects for repaying their notes, and Ms. Tilton (the Zohar Funds' shareholder) shifted her own tax liability onto the Zohar Funds at the time when she knew the Zohar Funds could not pay their third-party noteholders. Finally, Tilton was uniquely positioned to control the CTB Election and was the sole person who could have caused the Zohar Funds to incur entity-level tax obligations—notwithstanding that her signature appears on multiple documents containing covenants that the Zohar Funds not be subject to entity-level taxation. Accordingly, her intent should be imputed to the Zohar Funds.

445. As a result of the CTB Election, the Zohar Funds and their creditors have been harmed.

446. Pursuant to § 548(a)(1)(A) of the Bankruptcy Code, the CTB Election should be avoided by Order of the Court.

447. Under Section 550 of the Bankruptcy Code, the Zohar Funds are entitled to recover ~~the property fraudulently transferred in the CTB Election, or~~ compensatory damages in an amount to be determined at trial ~~for the value thereof,~~ from the direct and indirect transferees.

### COUNT XXII : CONSTRUCTIVE FRAUDULENT TRANSFER UNDER 11 U.S.C. § 548(A)(1)(B) (CHECK-THE-BOX ELECTION)
(By the Zohar Funds Against the Octaluna Entities)

448. The Zohar Funds incorporate the foregoing allegations as if fully set forth here.

449. The CTB Election resulted in the Zohar Funds' incurrence of tax obligations that had previously been the tax obligation of Tilton and the Octaluna Entities.

450. The CTB Election resulted in an obligation being incurred by the Zohar Funds solely for the benefit of Tilton and her affiliated entities, including the Octaluna Entities.

451. The CTB Election was made for no consideration, without fair consideration, or for less than reasonably equivalent value.

452. The CTB Election was made (a) when the Zohar Funds were insolvent, (b) so as to render the Zohar Funds insolvent, (c) so as to leave the Zohar Funds with unreasonably small capital, or (d) when the Zohar Funds had incurred debts beyond their ability to pay.

453. Pursuant to Section 548(a)(1)(B) of the Bankruptcy Code, the CTB Election should be avoided by Order of the Court.

454. Under Section 550 of the Bankruptcy Code, the Zohar Funds are entitled to recover ~~the property fraudulently transferred in the CTB Election, or~~ compensatory damages in an amount to be determined at trial ~~for the value thereof,~~ from the direct and indirect transferees.

~~**Count XXIII :    PERMANENT INJUNCTION AGAINST CHECK THE BOX ELECTION**~~
~~**(By the Zohar Funds Against the Octaluna Entities and Lynn Tilton)**~~

~~455. The Zohar Funds incorporate the foregoing allegations as if fully set forth here.~~

~~456. In the event that the Court avoids the CTB Election, the Octaluna Entities and Tilton should be preliminarily and permanently enjoined from taking any action or series of actions that would result in any of the Zohar Funds becoming or being deemed a taxable entity.~~

**COUNT XXIII :    [RESERVED]**

455. [Reserved.]

456. [Reserved.]

457.    [Reserved.]

~~457.    In the event that the Court avoids the CTB Election, the issuance of an injunction is appropriate to prohibit the Octaluna Entities and Tilton from taking any action or series of actions that would result in any of the Zohar Funds becoming or being deemed a taxable entity because, absent such relief, the Octaluna Entities and Tilton will cause irreparable harm to the Zohar Funds.~~

### COUNT XXIV :    UNJUST ENRICHMENT (TAX DIVIDENDS)
### (By the Zohar Funds Against the Octaluna Entities and Lynn Tilton)

458.    The Zohar Funds incorporate the foregoing allegations as if fully set forth here.

459.    The Octaluna Entities and Tilton, as the ultimate tax payers for the Octaluna Entities, were unjustly enriched by receipt of Tax Dividends from the Portfolio Companies, at the expense of the Zohar Funds, that were paid in addition to Preference Share Distributions intended to cover the same purported tax attributes.

460.    For example, the audited 2018 financial statements for ▬ disclose tax dividends paid to the Octaluna Entities in excess of $7 million in 2017 and in excess of $5.9 million in 2018. Upon information and belief, other Tax Dividends were paid to other Octaluna Entities, which should have been paid to the Zohar Funds.

461.    Tilton and the Octaluna Entities have been substantially enriched by receipt of Tax Dividends from the Portfolio Companies, at the expense of the Zohar Funds.

462.    The circumstances are such that it would be against equity and good conscience to permit Tilton and the Octaluna Entities to retain their ill-gotten gains from the Zohar Funds. Tilton and the Octaluna Entities have an obligation to the Zohar Funds to make restitution for her ill-gotten gains. Tilton and the Octaluna Entities have failed to make restitution to the Zohar Funds for their ill-gotten gains.

Funds. The PPMG Agreements were nothing more than an opportunity for the Defendants to double-dip—charging the Zohar Funds a very handsome fee to actively manage the Portfolio Companies (the collateral for the notes) and also charging the Portfolio Companies for the privilege of the active management that the Patriarch Managers had already contracted with the Zohar Funds to provide. This was most egregious with respect to the 5% transaction fee under the PPMG Agreements—a fee that Tilton contends is payable from the Zohar Funds' collateral even when the sale of the Zohar Funds' collateral is insufficient to satisfy in full the amounts owed to the Zohar Funds.

608. The entry into the PPMG Agreements and the amendments to the PPMG Agreements, and the fees paid to PPMG under the PPMG Agreements (collectively, the "PPMG Transfers")[30] were transfers of interests in the property of, or obligations incurred by, the Portfolio Companies to and for the benefit of PPMG and, through PPMG, Tilton.

609. The PPMG Transfers are steps in a single, integrated effort to extract value from the Portfolio Companies.

---

[30] The PPMG Transfers consist of transfers made by at least the following Portfolio Companies to which the Zohar Funds are lenders: Acme International Enterprises, Inc.; Croscill Home, LLC; Dura Automotive; EMAG Solutions, LLC; GAS and its subsidiaries; Gorham Paper and Tissue, LLC; ▅▅▅▅ Heritage Aviation Ltd; ▅▅▅▅ Jewel of Jane LLC; Libertas Copper, LLC; LVD Acquisition, LLC; MD Helicopters; Mobile Armored Vehicles, LLC (f/k/a PVI Acquisition, LLC); ▅▅▅▅.; Rand Acquisition; Snelling Staffing, LLC; ▅▅▅▅ and Xpient Solutions, LLC. For purposes of Counts 31 and 32, PPMG Transfers do not include transfers made by or obligations incurred by ▅▅▅▅

The management fees actually paid to PPMG by the Portfolio Companies that are known to the Zohar Funds are identified in Annex B. Upon information and belief, however, additional payments have been made prior to and following the period identified in Annex B by the Portfolio Companies identified therein, as well as by additional Portfolio Companies that are not listed on Annex B, within and without the period identified on Annex B. The Zohar Funds reserve the right to add additional payments made to PPMG in the applicable periods once identified.

619. Finally, each of the Portfolio Companies has been in precarious financial condition at all relevant times. At the time that the PPMG Agreements were executed in 2010 and 2011 and at the time of the amendments in 2015, the Portfolio Companies had incurred debts beyond their ability to pay, as evidenced by the ultimate defaults to the Zohar Funds in 2019, were insolvent at the time of entry into the PPMG Agreements, and had unreasonably small capital for the businesses that they were engaged in.

620. The PPMG Transfers (other than original entry into the PPMG Agreements) are avoidable as constructively fraudulent transfers under applicable state law, including NY DCL §§ 273 through 275 and 6 Del. C. §§ 1304 and 1305.

621. Under applicable state law, including NY DCL §§ 278 and 279 and 6 Del. C. § 1308, the Zohar Funds are entitled to recover the property fraudulently transferred in the PPMG Transfers (other than original entry into the PPMG Agreement), or compensatory damages in an amount to be determined at trial for the value thereof, from the direct and indirect transferees.

### COUNT XXXIII : UNJUST ENRICHMENT
### (By the Zohar Funds Against the Octaluna Entities and PPMG)

622. The Zohar Funds incorporate the foregoing allegations as if fully set forth here.

623. In the event that the Zohar Funds are not made whole for the misconduct alleged in Counts XXV through XXXII, the Zohar Funds have claims for unjust enrichment against the beneficiaries of these breaches of the LLC Agreements, Stockholders Agreement, and fiduciary duties owed to both the LLC Portfolio Companies and the Corporation Portfolio Companies.

624. The Octaluna Entities and PPMG were enriched by Tilton's breaches of the LLC Agreements, breaches of the Stockholders Agreement, and breaches of fiduciary duties owed to the Zohar Funds and the Portfolio Companies, and the Patriarch Managers' breaches of the CMAs and Indentures.

to Tilton's affiliated Ark Entities and Octaluna Entities for prior years' "tax distribution amounts." These affiliate payments were made outside the ordinary course, without the consent of the CRO, and in violation of the Settlement Agreement.

### PRAYER FOR RELIEF

WHEREFORE, by reason of the foregoing, the Zohar Funds respectfully request that this Court enter judgment in favor of the Zohar Funds and against the Defendants and grant the following relief:

A. a judgment against the Octaluna Entities and Tilton finding and declaring that the Zohar Funds are and always have been the legal and beneficial owners of the equity interests issued or otherwise created in their names, with the relevant equity interests to be established at trial;

B. a judgment against the Patriarch Managers, the Class B Parties, the Proxy Grantees, the Octaluna Entities, and Tilton finding and declaring that the amendments, proxies, and other documents concerning the assets and interests of the Zohar Funds entered into by these Defendants outside the scope of their authority were void *ab initio* and are deemed unenforceable;

C. a determination against the Patriarch Managers, the Class B Parties, the Octaluna Entities, and Ark II finding and declaring that the Voting/Control Transfers constitute actual and constructive fraudulent transfers;

D. a determination against the Octaluna Entities finding and declaring that the November 2017 Transfers and the CTB Election constitute actual and constructive fraudulent transfers;

E. a determination against the Octaluna Entities finding and declaring that the Zohar Funds are entitled to indemnification for any loss, damage or liability due to or arising out of the CTB Election;

F. a determination against PPMG finding and declaring that the PPMG Transfers constitute actual and constructive fraudulent transfers;

G. avoidance of the fraudulent transfers;

H. recovery of the property fraudulently transferred, or compensatory damages in an amount to be determined at trial for the value thereof, from the direct and indirect transferees;

I. ~~a preliminary and permanent injunction prohibiting the Octaluna Entities and Tilton from taking any action that would result in any of the Zohar Funds becoming or being deemed a taxable entity for tax purposes, in the event that the CTB Election is avoided;~~

I. [Reserved];