**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| ZOHAR III, CORP., *et al.*,[1] | Case No. 18-10512 (KBO) |
| Debtors. | Jointly Administered |
| ZOHAR CDO 2003-1, LIMITED; ZOHAR II 2005-1, LIMITED; and ZOHAR III, LIMITED;  ZOHAR II 2005-1, CORP.; | Adv. Pro. No. 20-50534 (KBO) |
| Plaintiffs, | |
| v. | |
| PATRIARCH PARTNERS, LLC; PATRIARCH PARTNERS VIII, LLC; PATRIARCH PARTNERS XIV, LLC; PATRIARCH PARTNERS XV, LLC; PHOENIX VIII, LLC; OCTALUNA LLC; OCTALUNA II LLC; OCTALUNA III LLC; ARK II CLO 2001-1, LIMITED; ARK INVESTMENT PARTNERS II, LP; ARK ANGELS VIII, LLC; PATRIARCH PARTNERS MANAGEMENT GROUP, LLC; PATRIARCH PARTNERS AGENCY SERVICES, LLC; and LYNN TILTON, | |
| Defendants, and | |
| 180S, INC.; BLACK MOUNTAIN DOORS, LLC; CROSCILL HOME, LLC; DURO TEXTILES, LLC; GLOBAL AUTOMOTIVE SYSTEMS, LLC; HERITAGE AVIATION, LTD.; INTREPID U.S.A., INC.; IMG HOLDINGS, INC.; JEWEL OF JANE, LLC; MOBILE ARMORED VEHICLES, LLC; | |

---

[1] The Debtors, and, where applicable, the last four digits of their taxpayer identification number are as follows: Zohar III, Corp. (9612), Zohar II 2005-1, Corp. (4059), Zohar CDO 2003-1, Corp. (3724), Zohar III, Limited (9261), Zohar II 2005-1, Limited (8297), and Zohar CDO 2003-1, Limited (5119).  The Debtors' address is c/o Province, LLC 70 Canal Street, Suite 12E, Stamford, CT 06902.

SCAN-OPTICS, LLC; SILVERACK, LLC;
STILA STYLES, LLC; SNELLING
STAFFING, LLC; VULCAN
ENGINEERING, INC; and XPIENT
SOLUTIONS, LLC,

               Nominal Defendants.

PATRIARCH PARTNERS VIII, LLC;
PATRIARCH PARTNERS XIV, LLC;
PATRIARCH PARTNERS XV, LLC;
OCTALUNA LLC; OCTALUNA II LLC;
OCTALUNA III LLC; PATRIARCH
PARTNERS AGENCY SERVICES, LLC; and
PATRIARCH PARTNERS, LLC,

               Counterclaim and Third-Party
               Claimants,

               -against-

ZOHAR CDO 2003-1, LIMITED; ZOHAR
CDO 2003-1, CORP., ZOHAR II 2005-1,
LIMITED; ZOHAR II 2005-1, CORP.;
ZOHAR III, LIMITED; and ZOHAR III
CORP.

               Counterclaim and Third-Party
               Defendants.

**Re: Adv. D.I. 188**

## LITIGATION TRUSTEE'S BRIEF IN SUPPORT OF
## ZOHAR LITIGATION TRUST-A'S MOTION TO DISMISS
## <u>DEFENDANTS' COUNTERCLAIMS AND THIRD PARTY CLAIMS</u>

Dated: August 9, 2022         James L. Patton, Jr. (Bar No. 2202)
Wilmington, Delaware        Robert S. Brady (Bar No. 2847)
Michael R. Nestor (Bar No. 3526)
Joseph M. Barry (Bar No. 4221)
Ryan M. Bartley (Bar No. 4985)
YOUNG CONAWAY STARGATT & TAYLOR, LLP
Rodney Square
1000 North King Street
Wilmington, DE 19801
Telephone:  (302) 571-6600
Facsimile:  (302) 571-1256
Email: bankfilings@ycst.com

-and-

Jonathan E. Pickhardt, Esq. (admitted *pro hac vice*)
Ellison Ward Merkel, Esq. (admitted *pro hac vice*)
Blair A. Adams, Esq. (admitted *pro hac vice*)
Brian R. Campbell, Esq. (admitted *pro hac vice*)
Brenna D. Nelinson, Esq. (admitted *pro hac vice*)
QUINN EMANUEL URQUHART & SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010
Telephone: (212) 849-7000
Facsimile: (212) 849-7100
Email: jonpickhardt@quinnemanuel.com
       ellisonmerkel@quinnemanuel.com
       blairadams@quinnemanuel.com
       briancampbell@quinnemanuel.com
       brennanelinson@quinnemanuel.com

*Counsel to David Dunn, as Trustee for the Zohar Litigation Trust-A*

### TABLE OF CONTENTS

I.      PRELIMINARY STATEMENT ..................................................................................1

II.     BACKGROUND ....................................................................................................5

III.    DEFENDANTS' COUNTERCLAIMS SHOULD BE DISMISSED .............................9

    A.    Defendants' Claims For Damages Violate The Plan And Confirmation
        Order And Should Be Dismissed (Counts One Through Six) ................................9

    B.    Defendants' Claim Seeking Setoff Violates The Plan And Confirmation
        Order And Should Be Dismissed (Count Eight)....................................................10

    C.    Defendants' Claims Concerning The Class B Notes Should Be Dismissed
        (Count Five; Counts Seven and Eight in Part).......................................................12

        1.    The Class B Notes Are Non-Recourse Obligations That Have Been
            Extinguished ..............................................................................................13

        2.    Defendants' Class B Note Claims Are Barred By The Indentures'
            Subordination Provisions...........................................................................15

        3.    Defendants' Class B Note Claims Independently Fail The
            Requirements For Setoff And Recoupment..............................................18

    D.    Defendants' Claims Concerning Collateral Management Fees Should Be
        Dismissed for Additional Reasons (Counts One, Seven and Eight)....................27

    E.    Defendants' Claims for Indemnification Under The CMAs And Credit
        Agreements Should Be Dismissed for Additional Reasons (Counts Two,
        Three, and Four; Counts Seven and Eight in Part) ..............................................29

        1.    Defendants Fail To Plead Indemnifiable Losses .....................................29

        2.    Defendants' Claims For Indemnification Under The CMAs Were
            Extinguished (Count Two)........................................................................34

        3.    Defendants' Claims For Setoff of Indemnified Amounts Fail For
            Lack Of Mutuality.....................................................................................34

    F.    Defendants' Unjust Enrichment Claim Should Be Dismissed As
        Duplicative (Count Six) .......................................................................................35

IV.     CONCLUSION ......................................................................................................35

## <u>TABLE OF AUTHORITIES</u>

### <u>Cases</u>

*Adams v. Resol. Tr. Corp.*,
    927 F.2d 348 (8th Cir. 1991) ............................................................. 21

*AFN, Inc. v. Schlott, Inc.*,
    798 F. Supp. 219 (D.N.J. 1992) .......................................................... 25

*Alicia Ocean Transp., S.A. v. Rollins Burdick Hunter of N.Y., Inc.*,
    621 F. Supp. 479 (S.D.N.Y. 1985) ..................................................... 17

*In re Allen-Main Assocs., Ltd. P'ship*,
    233 B.R. 631 (Bankr. D. Conn. 1999) ................................................ 20

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ........................................................................... 31

*Bank of N.Y. Tr. Co., N.A. v. Franklin Advisers, Inc.*,
    726 F.3d 269 (2d Cir. 2013) ............................................................... 30

*Beijing Neu Cloud Oriental Sys. Tech. Co. v. Int'l Bus. Mechs. Corp.*,
    2022 WL 889145 (S.D.N.Y. Mar. 25, 2022) ..................................... 17

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007) ........................................................................... 31

*Berrada v. Cohen*,
    2017 WL 1496930 (D.N.J. Apr. 24, 2017) ........................................ 24

*Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of N.J.*,
    448 F.3d 573 (2d Cir. 2006) ............................................................... 35

*BNP Paribas Mortg. Corp. v. Bank of Am., N.A.*,
    778 F. Supp. 2d 375 (S.D.N.Y. 2011) ..................................... 29, 33, 34

*Bronxville Knolls, Inc. v. Webster Town Ctr. P'ship*,
    221 A.D.2d 248 (1st Dep't 1995) ...................................................... 13

*In re Cont'l Airlines*,
    134 F.3d 536 (3d Cir. 1998) ............................................................... 12

*Corsello v. Verizon N.Y., Inc.*,
    18 N.Y.3d 777 (2012) ........................................................................ 35

*In re De Laurentiis Ent. Grp. Inc.*,
    963 F.2d 1269 (9th Cir. 1992) ............................................................ 12

*DeFlora Lake Dev. Assocs., Inc. v. Hyde Park*,
  689 F. App'x 99 (2d Cir. 2017) ............................................... 20

*In re Ditech Holding Corp.*,
  606 B.R. 544 (Bankr. S.D.N.Y 2019) ...................................... 11

*Fed. Deposit Ins. Corp. v. De Jesus Velez*,
  678 F.2d 371 (1st Cir. 1982) ................................................. 20

*Fed. Deposit Ins. Corp. v. Texarkana Nat. Bank*,
  874 F.2d 264 (5th Cir. 1989) ............................... 18, 20, 21, 26

*Ferguson v. Lion Holdings, Inc.*,
  312 F. Supp. 2d 484 (S.D.N.Y. 2004).................................. 18, 22

*Florida Dep't of Revenue v. Picadilly Cafeterias, Inc.*,
  554 U.S. 33 (2008)................................................................ 12

*In re Franklin Indus. Complex Inc.*,
  541 B.R. 14 (N.D.N.Y. 2015) ................................................. 21

*FSP, Inc. v. Societe Generale*,
  2003 WL 124515 (S.D.N.Y. Jan. 14, 2003), *aff'd*, 350 F.3d 27 (2d Cir. 2003)................... 32

*Gen. Elec. Credit Corp. v. Contrucci*,
  332 F. Supp. 827 (W.D. Pa. 1971) ......................................... 17

*Gray v. Sch. Dist of Borough of Brownsville*,
  67 F.2d 141 (3d Cir. 1933)..................................................... 21

*Harrold v. Comm'r of Internal Revenue*,
  232 F.2d 527 (9th Cir. 1956) ................................................. 17

*In re HH Liquidation, LLC*,
  590 B.R. 211 (Bankr. D. Del. 2018) ....................................... 24

*Hooper Assocs., Ltd. v. AGS Computs., Inc.*,
  548 N.E. 903 (N.Y. 1989)................................... 29, 30, 32, 34

*Ilkowitz v. Durand*,
  2018 WL 1595987 (S.D.N.Y. Mar. 27, 2018) ......................... 31

*J.L. v. Barnes*,
  33 A.3d 902 (Del. Super. Ct. 2011) ....................................... 28

*In re Kings Terrace Nursing Home & Health Related Facility*,
  1995 WL 65531 (Bankr. S.D.N.Y. Jan. 27, 1995)..................... 18

*In re Lakeside Cmty. Hosp., Inc.*,
  151 B.R. 887 (N.D. Ill. 1993) ............................................................ 18, 25

*In re Malinowski*,
  156 F.3d 131 (2d Cir. 1998) ...................................................................... 21

*In re Marta Grp., Inc.*,
  47 B.R. 220 (Bankr. E.D. Pa. 1985) ........................................................ 21

*In re McMahon*,
  129 F.3d 93 (2d Cir. 1997) ....................................................................... 21

*Nachshen v. BPP ST Owner LLC*,
  2021 WL 5042855 (S.D.N.Y. Oct. 29, 2021) ...................................... 14-15

*Nayak v. Voith Turbo, Inc.*,
  2015 WL 1605576 (M.D. Pa. Apr. 9, 2015) ............................................ 15

*New Hampshire v. Maine*,
  532 U.S. 742 (2001) .................................................................................. 25

*Nw. Racquet Swim & Health Clubs, Inc. v. Resol. Tr. Corp.*,
  927 F.2d 355 (8th Cir. 1991) .................................................................... 21

*Oneida Indian Nation v. Hunt Constr. Grp., Inc.*,
  108 A.D.3d 1195 (4th Dep't 2013) ........................................................... 15

*In re Orexigen Therapeutics, Inc.*,
  596 B.R. 9 (Bankr. D. Del. 2018) ............................................................. 15

*In re Orexigen Therapeutics, Inc.*,
  990 F.3d 748 (3d Cir. 2021) ...................................................................... 18

*In re Premier Int'l Holdings, Inc.*,
  443 B.R. 320 (Bankr. D. Del. 2010) ......................................................... 31

*In re PWS Holding Corp.*,
  303 F.3d 308 (3d Cir. 2002) ......................................................... 10, 14, 16

*In re Ross-Viking Merch. Corp.*,
  151 B.R. 71 (Bankr. S.D.N.Y. 1993) ........................................................ 19

*In re SemCrude L.P.*,
  796 F.3d 310 (3d Cir. 2015) ...................................................................... 10

*In re SemCrude, L.P.*,
  2011 WL 4711891 (Bankr. D. Del. Oct. 7, 2011) ..................................... 9

*In re SemCrude, L.P.*,
    399 B.R. 388 (Bankr. D. Del. 2009) ................................................................. 19

*Southmark Prime Plus, L.P. v. Falzone*,
    776 F. Supp. 888 (D. Del. 1991) ..................................................................... 24

*In re Taberna Preferred Funding IV, Ltd.*,
    594 B.R. 576 (Bankr. S.D.N.Y. 2018) ........................................................ 13, 14

*Texas v. United States*,
    523 U.S. 296 (1998) ........................................................................................ 32

*In re Today's Destiny, Inc.*,
    388 B.R. 737 (Bankr. S.D. Tex. 2008) ........................................................... 16

*Tokyo Tanker Co. v. Etra Shipping Corp.*,
    142 A.D.2d 377 (1st Dep't 1989) ............................................................. 29, 34

*In re Tribune Co.*,
    972 F.3d 228 (3d Cir. 2020) ............................................................................ 11

*Trojan Hardware Co. v. Bonacquisti Constr. Corp.*,
    141 A.D.2d 278 (3d Dep't 1988) .................................................................... 23

*U.S. Bank Nat'l Ass'n v. Triaxx Asset Mgmt. LLC*,
    2021 WL 1227052 (S.D.N.Y. Mar. 31, 2021) ................................................ 13

*U.S. ex rel. Internal Revenue Serv. v. Norton*,
    717 F.2d 767 (3d Cir. 1983) ............................................................................ 12

*In re Vision Metals, Inc.*,
    327 B.R. 719 (Bankr. D. Del. 2005) ............................................................... 25

*Washington Diamonds Corp. v. Diamonds By Israel Standard, Inc.*,
    2018 WL 3972361 (N.Y. Sup. Ct. Aug. 20, 2018) ......................................... 15

*Weissman v. Sinorm Deli, Inc.*,
    88 N.Y.2d 437 (1996) ..................................................................................... 32

*Westinghouse Credit Corp. v. D'Urso*,
    278 F.3d 138 (2d Cir. 2002) ................................................... 15, 21-23, 25-27

*In re WL Homes LLC*,
    471 B.R. 349 (Bankr. D. Del. 2012) ........................................................... 25, 26

**Statutory Authorities**

11 U.S.C. § 553 ............................................................................................................... 11, 12, 23

11 U.S.C. § 1141 .................................................................................................................. 10-12

**Rules and Regulations**

Fed. R. Civ. P. 12 ..................................................................................................................... 1

Plaintiff David Dunn as Trustee ("Litigation Trustee") for the Zohar Litigation Trust-A (the "Litigation Trust") hereby submits this memorandum of law in support of the Litigation Trust's Motion to Dismiss the counterclaims and third-party claims (the "Counterclaims") filed by the above-captioned defendants (collectively, the "Defendants") on June 18, 2022 [Adv. D.I. 188] in the above-captioned adversary proceeding.  For the reasons set forth below, Defendants have failed to state any claims upon which relief may be granted and the Counterclaims should be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure in the manner set forth in the Proposed Form of Order submitted herewith.

## I.      PRELIMINARY STATEMENT[2]

As alleged in the Litigation Trust's Complaint, Lynn Tilton used her position of absolute control over the Zohar Funds to enrich herself at their expense for more than a decade while they descended into insolvency.  By flouting the Zohar Funds' protective financial covenants and orchestrating a series of increasingly egregious self-dealing transactions, Tilton maintained an outsized income stream for herself throughout the Zohar Funds' collapse—taking close to a billion dollars from the Zohar Funds and their Collateral while using the Funds' substantial losses to shelter her own income from tax liability.

When the failing Zohar Funds were finally wrested from Tilton's control in 2016 and a new manager began to unwind the damage Tilton had done to recoup value for investors, Tilton met the Funds at every turn with delay and recalcitrance—forcing the Zohar Funds to sue her and win at trial simply to obtain (a) the Zohar Funds' books and records, *Zohar CDO 2003-1, LLC, et.*

---

[2] Citations to "¶ __" refer to Patriarch's Amended Counterclaims and Third-Party Claims dated June 18, 2022.  All emphasis is added and quotations and citations omitted unless otherwise noted. References to "Ex. __" are to exhibits to the Declaration of Brian R. Campbell filed simultaneously herewith.

*al. v. Patriarch Partners, LLC, et. al.*, C.A. No. 12247-VCS (Del. Ch.), and (b) a declaration that the Zohar Funds own the companies whose stock they held registered in their own name, *Zohar II 2005-1, Ltd., et al. v. FSAR Holdings, Inc., et al.*, C.A. No. 12946-VCS (Del. Ch.).  Faced with the prospect of being held accountable for her actions, Tilton stayed further litigation against her by causing the Zohar Funds to file for bankruptcy protection in March 2018.  Tilton initiated the bankruptcy proceeding with the representation that the Zohar Funds' assets were worth more than enough to completely repay the money owed to senior investors.  Decl. of Lynn Tilton In Supp. of Chapter 11 Pets. ("Tilton First Day Decl."), *In re Zohar III Corp.*, No. 10-10512-CSS, Dkt. 5 ¶¶ 6-7, 91-92 (Bankr. D. Del. March 11, 2018).

Tilton's grand promises proved specious, as the asset monetization process that was to see senior investors paid in full instead yielded pennies on the dollar.  After more than four years in bankruptcy, the Zohar Funds' remaining assets were sold pursuant to a liquidating plan (the "Plan") under Chapter 11 of the Bankruptcy Code to entities formed by the Zohar Funds' senior investors, whose claims all remain impaired.  The Zohar Funds' claims against Tilton and her affiliates ultimately were transferred to the Litigation Trust so that impaired senior investors may finally recover against Tilton and her affiliates for their many years of misconduct.

Through the Counterclaims, Tilton seeks one final opportunity to advantage herself at the expense of her investors.  Although the Plan affords no recovery in respect of any of the Counterclaims from the Debtors' assets,[3] Tilton's Counterclaims nonetheless seek damages as well as setoff and recoupment against any judgment in respect of the Zohar Funds' claims that the Trust ultimately obtains against Tilton and her affiliates for the hundreds of millions of dollars (or more)

---

[3] A fraction of Tilton's claim for collateral management fees are collateralized by funds set aside in an escrow prepetition which she remains able to collect from if she prevails on that claim.

of harm Tilton did to the Zohar Funds.  These claims are baseless and should be dismissed as a matter of law.

As an initial matter, the Plan precludes Defendants from seeking damages for prepetition conduct and each of the Counterclaims should thus be dismissed to the extent they seek damages. The Plan also precludes any claims for setoff as it effected a transfer of the Debtors' claims that was free and clear of any such potential liabilities pursuant to the Bankruptcy Code.  Defendants' Counterclaim seeking setoff should thus be dismissed as well.

Each of Defendants' Counterclaims also fails for independent reasons.  For example, The Counterclaims are headlined by Count Five, a claim by Octaluna I, II, and III (the "Octaluna Entities") for $546 million allegedly owed under the Zohar I, II, and III Class B Notes.  Counts Seven and Eight seek recoupment and setoff in respect of Count Five (and all other counts) such that the Octaluna Entities could putatively deduct a combined $546 million (or more) from a money judgment against them on the Zohar Funds' claims.  This would be the economic equivalent of granting the subordinated Class B Notes a preference over the permanently impaired senior claims of the investors who are now the ultimate beneficiaries of the Litigation Trust.  Defendants are barred as a matter of law from achieving such an unjust outcome for multiple reasons.

*First*, the Class B Notes are non-recourse obligations of the Zohar Funds which, by their express terms and the express terms of the Indentures, were extinguished upon the liquidation of the Zohar Funds' Collateral on the Plan's effective date.  This extinguishment eliminated any right to repayment, setoff, or recoupment derived from the Class B Notes.  *Second*, the Class B Notes are also heavily restricted in respect of the exercise of any remedies under the Indentures, including the express prohibition on using the Class B Notes to "seek to obtain priority or preference over" any more senior noteholders—precisely what Defendants seek to achieve by asserting setoff and

3

recoupment.  Setoff is also unavailable on account of the non-recourse and subordinated nature of the Class B Notes causing them to fail the "mutuality" requirement, and recoupment is similarly unavailable on account of failing the "same transaction" requirement.  *Third*, as Tilton recently confirmed at the Plan Confirmation Hearing, the Class B Notes were issued as equity securities for no consideration, and Defendants are therefore judicially estopped from asserting that they constitute "debt" eligible for setoff.  *Finally*, setoff and recoupment are equitable doctrines that should not be permitted in these circumstances.

Defendants' claim in Count One seeking allegedly unpaid collateral management fees fails for similar reasons.  The Zohar Funds' obligations under the Collateral Management Agreements (the "CMAs"), on which this Count is based, were also non-recourse and extinguished upon realization of the Collateral.  There can thus be no setoff or recoupment under Counts Seven or Eight in respect of that claim either.

Nor can Defendants state a claim for indemnification in either Count Two, seeking payment for litigation costs, Count Three, seeking payment of unpaid credit agreement fees, or Count Four, seeking defense costs from a series of asbestos lawsuits.  The Zohar Funds have no indemnification obligations in respect of the Patriarch Managers' litigation costs, as the CMAs do not provide for indemnification of costs in first-party disputes and any such obligations would have been now-extinguished, non-recourse obligations in any event.  The Funds similarly have no obligation to indemnify credit agreement fees, as those fall outside the scope of the single credit agreement specified in Count Three, and any attempt to assert those claims under other credit agreements not pled in the Counterclaims fails for vagueness.  And the Zohar Funds never agreed to indemnify Patriarch Partners, LLC—a nonparty to the credit agreements—for asbestos liabilities arising out of acts Defendants took in a capacity other than as loan agent.

Finally, Defendants' claim for unjust enrichment in Count Six must be dismissed as duplicative as it merely repackages prior claims, each of which is governed by an express contract.

For the reasons set forth herein, the Counterclaims should be dismissed in their entirety.

## II.   **BACKGROUND**

The Zohar Funds are a series of funds formed in the mid-2000s by their sponsor and architect, Lynn Tilton, to raise money through the issuance of Collateralized Loan Obligations ("CLOs").   ¶ 24.  Each Zohar Fund is governed by a set of documents that include an indenture, Amended Compl. Exs. 1-3, *In re Zohar III*, Adv. Pro. No. 20-50534, Dkt. 171 (Bankr. D. Del. March 9, 2020) (the "Zohar Indentures" or "Indentures"), and a CMA, *id.* at Exs. 4-6.  ¶¶ 25, 30. The rules governing the Zohar Funds, including their rights and obligations vis-à-vis their noteholders, are set forth in the Indentures.  The CMAs, in conjunction with the Indentures, describe the rights and obligations of the Fund's collateral manager and empower it to select and manage the collateral held by the Zohar Funds.  CMAs, Article 2.

Pursuant to the Indentures, each Zohar Fund raised capital through the issuance of CLO notes to investors, who contributed funds in exchange for payments of interest and principal on the notes.  Specifically, the Zohar Funds issued a senior class of secured notes—the "Class A Notes"—to sophisticated investors for more than $2,500,000,000.  ¶ 25.  The Zohar Funds also issued a junior class of notes—the "Class B Notes"—to Tilton's investment shell entities, the Octaluna Entities, for zero consideration.  ¶¶ 60-64.  As Tilton recently testified, the Class B Notes were "part of the equity package" of the Zohar Funds, issued "as a way for [Tilton] to monetize that equity prior to the end of the deal" "if value was there."  Hr'g Tr. ("Conf. Hr'g Tr."), *In re Zohar III*, No. 18-10512-KBO, Dkt. 3433 at 28:17-29:5 (Bankr. D. Del. June 21, 2022).

The Class B Notes, as equity securities issued to an insider for nothing, are deeply subordinated to the interests of the Class A Notes issued to paying investors.  The Class B Notes

are not only subordinated in right of payment to the Class A Notes, ¶ 60, but are also subordinated in the exercise of virtually any rights under the Indentures such that they are effectively dormant unless and until the Class A Notes are fully satisfied.  For example, the Class B Notes are barred from receiving payments or distributions before the Class A Notes are paid in full (Indentures § 13.1(a)); demanding payment or distribution in violation of the subordination regime (*id*. § 13.1(d)); or taking any action to obtain priority or preference over other noteholders in violation of the subordination regime (*id*. § 5.8); and, if by some happenstance the Class B Notes did receive a payment or distribution in violation of the subordination regime, the Class B Notes are obligated to pay it over to the Class A Notes (§ 13.1(f)).

The Zohar Funds, as securitization vehicles and not ordinary business entities, had only non-recourse obligations under the Indentures, CMAs, and other transaction documents. Indentures § 2.6(i).  The Zohar Funds' obligations were limited in recourse to their Collateral— the pool of assets to be acquired with investor capital and ultimately liquidated at maturity to repay investors.  *Id*.  As such, to the extent the Zohar Funds' counterparties asserted claims against them under the Indentures or CMAs, such claims had recourse only to the Collateral.  Following the liquidation of the Collateral, any such claims are automatically extinguished.  *Id*.

Following the formation of the Zohar Funds, Tilton, through her investment firm Patriarch Partners and a web of affiliated entities ("Patriarch"), controlled virtually every aspect of the Zohar Funds' operation:  through the Patriarch Managers,[4] Tilton acted as the Zohar Funds' collateral manager, ¶ 29; through PPAS, Tilton acted as the administrative agent on many of the Zohar Funds' loans to Portfolio Companies, ¶ 48; where the Zohar Funds acquired equity interests in

---

[4] Capitalized terms not defined herein have the meaning ascribed to them in the Amended Complaint, Dkt. No 171, defined below.

Portfolio Companies, ¶ 26, Tilton, acting through the Patriarch Managers, generally caused the Zohar Funds to appoint her personally as the sole director, manager, or CEO, ¶ 28; and, through her self-appointed position as manager of most of the Portfolio Companies, Tilton caused the Portfolio Companies to hire and pay another entity in the Patriarch web of affiliates, PPMG, for so-called "management services," ¶ 4.

After a decade under Tilton's exclusive control, Zohar I catastrophically defaulted on its obligations to repay investors the principal they were owed and Tilton caused it to file for bankruptcy in 2015. *In re Zohar CDO 2003-1, Ltd.*, No. 15-bk-23680 (Bankr. S.D.N.Y.). In March 2016, with Zohar II and III maturing imminently and facing a similar inability to repay investors what they were owed, Tilton and the Patriarch Managers stepped down from their role as collateral managers of all three Zohar Funds. ¶ 33. Zohar II defaulted on its repayment obligations in 2017. *In re Zohar III, Corp.*, 639 B.R. 73, 83 (Bankr. D. Del. 2022). Upon the defaults of Zohar I and II in 2015 and 2017, the Credit Enhancer, which insured the repayment of principal to Zohar I and II Class A noteholders, paid insured noteholders the full amount they were owed and was immediately subrogated to the insureds' rights under their Class A Notes.[5] *Id.*

Following the Zohar I and II defaults, and anticipating Zohar III's imminent default, Tilton—through her self-appointed role as director of the Zohar Funds—put the Funds into bankruptcy in 2018 with promises that the Zohar Funds' assets "have tremendous value" and were "worth billions of dollars—far in excess of the amount owed to the Zohar Funds' noteholders," if only they could be monetized without the overhang of litigation regarding her prior

---

[5] Section 16.5 of the Zohar I and II Indentures provide for the Credit Enhancer's subrogation to the rights of the Class A Notes and that insurance payments by the Credit Enhancer "shall not be considered payment on such Notes by" the Zohar Funds. References herein to the Class A Notes shall include the Credit Enhancer's subrogation rights in respect of the Class A Notes.

mismanagement of the Zohar Funds. Tilton First Day Decl. ¶ 6. Four years later, the "substantial value" supposedly "locked up" in the Zohar Funds' assets (*id.*) has proved ephemeral, and the Zohar Funds' senior noteholders' interests remain deeply impaired.

Left holding the bag following Tilton's severe misconduct and slew of self-interested transactions, the Zohar Funds sued Tilton and her affiliate entities. Dkt. 171 (the "Amended Complaint"). Most of those claims were sustained and are proceeding to discovery. *See* Dkts. 122, 164. On April 1, 2022, Defendants filed their Answer to the Amended Complaint and Defendants' Counterclaims and Third-Party Claims. Dkt. 174, as amended on June 18, 2022, Dkt. 188.

On June 21, 2022, this Court approved the Third Amended Joint Plan of Liquidation Under Chapter 11 of the Bankruptcy Code (the "Code") for Zohar III, Corp. and its Affiliated Debtors and on August 1, 2022 certain amendments thereto (together, the "Plan"). Dkt. 3400 (Bankr. D. Del. June 21, 2022). On August 2, 2022, the Plan went effective (the "Effective Date"). *Id.* Dkt. 3274. Pursuant to the Plan, what assets the Zohar Funds still had were sold to entities formed by the Class A Noteholders (the "Asset Recovery Entities") or finally transferred to MBIA, with respect to Zohar I. Plan, Article VI. The value distributed to the Class A Notes under the Plan fell far short of the amounts they are owed, leaving them permanently impaired. *Id.* §§ 4.5-4.7 (Class 3-5), 4.14 (Class 10), 4.20 (Class 15). Unsurprisingly, more junior creditors who are subordinated per the provisions in the Indentures, such as the Class B Noteholders, received nothing under the Plan. *Id.* §§ 4.8, 4.15, 4.22. The Zohar Funds' claims against Defendants were sold to the Asset Recovery Entities and MBIA (in the case of Zohar I), who then contributed them to the Litigation Trust, which now stands as plaintiff in this action, through its Trustee.

By this motion, the Litigation Trustee seeks to dismiss Defendants' Counterclaims.

III.   **DEFENDANTS' COUNTERCLAIMS SHOULD BE DISMISSED**

   A.   **Defendants' Claims For Damages Violate The Plan And Confirmation Order And Should Be Dismissed (Counts One Through Six)**

The Plan and Confirmation Order entered by this Court restrict what actions Defendants may pursue against the Zohar Funds.  Defendants' claims seeking damages in Counts One through Six violate those restrictions and should be dismissed.

Specifically, in Counts One through Six, Defendants seek damages on the basis of a variety of alleged contractual breaches by the Zohar Funds under the Indentures, CMAs and certain credit agreements.[6]  In their Prayer for Relief, Defendants seek "damages in the amount of losses caused by those [alleged] breaches."  Prayer for Relief ¶ 1; *see also id.* ¶¶ 2-4, 6 (seeking damages in respect of individual claims).

Each of Defendants' claims seeking damages should be dismissed as barred by the Plan.  In the bankruptcy proceeding, the Defendants submitted claims seeking payment for each of the breaches alleged here.  Under the Plan, other than in respect of certain allegedly unpaid collateral management fees, which will be paid from the Disputed CMA Fee Escrow (as defined in the Plan),[7] Defendants are not entitled to payment or any other distribution for these claims.  As a result, Defendants are now expressly and permanently enjoined by the Plan from pursuing such amounts from the Zohar Funds.  Plan §§ 4.8, 4.15, and 4.22; 4.9, 4.16 and 4.23;[8] *In re SemCrude, L.P.,*

---

[6] Count One alleges breaches under the CMAs in respect of unpaid collateral management fees. Count Two alleges breaches of the Zohar Funds in failing to make certain indemnification payments under the CMAs.  Counts Three and Four allege breaches of the Zohar Funds in failing to make certain indemnification payments under credit agreements.  Count Five alleges breaches of the Zohar Funds in failing to make payments under the Class B Notes.  Count Six alleges the Zohar Funds were unjustly enriched through the breaches alleged in Counts One through Five.

[7] *See* Plan §§ 4.3(c), 4.12(c), and 4.19(c).

[8] *See also* Plan §§ 6.3 ("On the Effective Date . . . the obligations of the Debtors pursuant, relating, or pertaining to the Zohar Indentures, the Interests in the Debtors and all other Canceled Debt and

2011 WL 4711891, at *8 (Bankr. D. Del. Oct. 7, 2011); *see also In re SemCrude L.P.*, 796 F.3d 310 (3d Cir. 2015) ("[T]he provisions of a confirmed plan bind . . . any creditor." (quoting 11 U.S.C. § 1141(a)).  Defendants' claims seeking damages in violation of the Plan must therefore be dismissed.  *See, e.g.*, *In re PWS Holding Corp.*, 303 F.3d 308, 315 (3d Cir. 2002) (claims "extinguished" under Chapter 11 plan must be dismissed).

### B.    Defendants' Claim Seeking Setoff Violates The Plan And Confirmation Order And Should Be Dismissed (Count Eight)

Count Eight, seeking setoff related to Counts One through Six, is barred in its entirety because Plaintiffs' claims were transferred to the Litigation Trusts "free and clear" of any setoff rights.  Specifically, pursuant to the Plan and Confirmation Order, the Litigation Assets were transferred to MBIA, Zohar II Recovery LLC, and Zohar III Recovery LLC "free and clear" of all claims and interests under Section 1141(c) of the Code, which assets were then transferred to the Litigation Trusts.[9]  Defendants have no right to set off any amounts they purport to be owed by the Zohar Funds against amounts for which they are liable to the Litigation Trust.

Section 1141(c) provides that after plan confirmation, "the property **dealt with by the plan** is **free and clear** of all claims and interests of creditors, equity security holders, and of general partners in the debtor."  11 U.S.C. § 1141(c).[10]  Courts have interpreted this language to operate

---

Equity Documentation shall be fully released, settled, and compromised."); 10.6 ("Confirmation of the Plan shall act as a permanent injunction against any Entity commencing or continuing any … Cause of Action satisfied, released or exculpated under the Plan to the fullest extent authorized or provided by the Bankruptcy Code.").

[9] Though Defendants' claim for setoff is also prohibited by Section 363(f), the Litigation Trustee will advance that argument at the appropriate procedural juncture, if necessary.  But even if Section 363(f) were not applicable, Section 1141(c) prohibits Defendants from asserting setoff against the Litigation Trust, as set forth herein.

[10] *See also* Plan §§ 6.6(d) and 6.8(d) (providing for assets to transfer "free and clear of all Claims, Liens, and other interests," subject to certain exceptions not relevant here).

with the same force as the "free and clear" language in Section 363(f) (which provides for similar but distinct grounds for transfer free and clear). *See In re Ditech Holding Corp.*, 606 B.R. 544, 588 (Bankr. S.D.N.Y 2019) ("[I]t does not follow that section 1141(c) cannot be invoked to provide that the property dealt with by the plan upon confirmation will be free and clear of claims . . . complying with section 363(f) is not necessary to confirm a plan that provides for a sale free and clear of claims upon confirmation."). Here, the Litigation Assets indisputably constitute property "dealt with" by the Plan, as the Plan validly transferred those Assets to MBIA, Phoenix II Recovery LLC, and Phoenix III Recovery LLC, respectively (all of whom subsequently transferred the same Assets to the Litigation Trust). Thus, even assuming Patriarch has any surviving setoff rights *vis a vis* the Debtors (it does not), Section 1141(c) has cut off Patriarch's ability to assert those rights against the Litigation Trust as recipients of the "property dealt with by the plan."

In reaching the conclusion that Section 1141(c) can be utilized to effect a free and clear transfer of assets, the *Ditech* court persuasively reasoned that the relief afforded to a debtor under a confirmed plan pursuant to Section 1141(c) is broader than that available under other sections of the Code providing for similar "free and clear" relief:

> [T]he literal language of §§ 1123 and 1141 gives the bankruptcy court broader authority to approve sales free and clear of claims and interests than does § 363(f), which requires little in the way of notice, disclosure, and an opportunity for objectors and alternate bidders to actually be heard. Section 1141(c) authorizes the post-sale vesting of property free and clear of all "claims and interests," whereas § 363(f) only authorizes the sale free of "any interests."

*Id.* And while the prefatory language contained in Section 553 does not explicitly subject setoff rights to Section 1141 (as it does for Section 363), it is well established that similar language in different provisions of the Code should be interpreted to have the same meaning. *See In re Tribune Co.*, 972 F.3d 228, 238 (3d Cir. 2020) ("Although these cases interpret different sections of the

Code [§§ 510(a) and 1123(a)], their analysis applies equally to § 1129(b)(1) because, [p]resumptively, identical words used in different parts of the same act are intended to have the same meaning."); *see also Florida Dep't of Revenue v. Picadilly Cafeterias, Inc.*, 554 U.S. 33, 39 (2008) ("[I]dentical words used in different parts of the same act are intended to have the same meaning[.]"). Thus, the transfer of Litigation Assets effected by the Plan was made free and clear of any claims, including Patriarch's claims for setoff, under Section 1141(c).[11]

C.    **Defendants' Claims Concerning The Class B Notes Should Be Dismissed (Count Five; Counts Seven and Eight in Part)**

In Counts Five, Seven, and Eight, Defendants seek to leverage their dormant interests in the Class B Notes as a basis to offset the damages that they will otherwise owe to the Litigation Trust. Count Five seeks "repayment"—a misnomer, as the Class B Notes are equity securities for which the Octaluna Entities paid nothing—of "the full principal amounts of the Zohar I, II, and III [Class B] Secured Notes outstanding, which total at least $546,000,000." ¶ 92. Counts Seven and Eight seek recoupment and setoff in respect of the damages alleged in all prior counts, including Count Five. ¶¶ 98-111. Each of these claims are barred: *first*, any purported obligations that the Zohar Funds may have had on the Class B Notes were non-recourse and have been extinguished as no Collateral remains subject to the Indentures. *Second*, the parties' contracts prohibit Defendants from unilaterally flipping the deeply subordinated priority of the Class B Notes on its head to enable Defendants to recover ahead of more senior interests. These features of the Class B Notes ultimately foreclose setoff and recoupment. *Third*, Defendants are judicially estopped

---

[11] *In re De Laurentiis Ent. Grp. Inc.*, 963 F.2d 1269, 1275 (9th Cir. 1992*) does not command a different result. The Third Circuit has already considered the interaction between Sections 553 and 1141 and determined not to follow the holding expressed in *De Laurentiis*. *See In re Cont'l Airlines*, 134 F.3d 536, 541 (3d Cir. 1998) (holding it was "not persuaded . . . that § 1141 may be disregarded when a set off is asserted."); *see also U.S. ex rel. Internal Revenue Serv. v. Norton*, 717 F.2d 767 (3d Cir. 1983).

from seeking setoff with respect to the Class B Note interests in light of sworn testimony conceding that the B Notes are equity.

### 1.    The Class B Notes Are Non-Recourse Obligations That Have Been Extinguished

Defendants' claims arising from the Class B Notes are barred by Section 2.6(i) of the Indentures because the Zohar Funds' obligations are non-recourse, and any claims on the Funds' Collateral were "extinguished" upon liquidation of that Collateral in bankruptcy.

Section 2.6(i) of the Zohar Indentures provides:

> Notwithstanding anything contained herein to the contrary, ***the obligations of each Co-Issuer*** under the Notes and this Indenture and under each other Transaction Document to which it is a party ***are limited recourse obligations of the Co-Issuers payable solely from the Collateral and, following realization of the Collateral, any claims of the Noteholders, the Collateral Manager***, the Administrator, the Collateral Administrator, the Placement Agent and each other counterparty to any Zohar Obligor under the Transaction Documents (subject to the terms of the Issuer Charter) ***shall be extinguished, and shall not thereafter revive***.

*Id.*  Clauses such as Section 2.6(i) are commonly found in indentures governing special purpose structured finance vehicles like the Zohar Funds.  *See, e.g.*, *U.S. Bank Nat'l Ass'n v. Triaxx Asset Mgmt. LLC*, 2021 WL 1227052, at *27 (S.D.N.Y. Mar. 31, 2021) ("Section 2.6 exists, in part, because the Issuers are special purpose vehicles acting in a pass-through capacity"); *see also In re Taberna Preferred Funding IV, Ltd.*, 594 B.R. 576, 587 (Bankr. S.D.N.Y. 2018).

Section 2.6(i) provides that all obligations of the Zohar Funds under the Indentures, the Notes, and the CMAs "are nonrecourse and that [the Zohar Funds] shall have no personal liability" thereunder.  *Taberna*, 594 B.R. at 588; *see also Bank of Am. Nat'l Trust & Sav. Ass'n v. 203 N. Lasalle St. P'ship*, 526 U.S. 434, 438 n.3 (1999) ("A nonrecourse loan requires the [Creditor] to look only to the Debtor's collateral for payment.").  Accordingly, to the extent Defendants' claims are asserted against the Zohar Funds personally, they are not liable; Defendants may only look to the Collateral as payment.  *Bronxville Knolls, Inc. v. Webster Town Ctr. P'ship*, 221 A.D.2d 248,

248 (1st Dep't 1995) (claim for personal judgment against debtor must be dismissed where debt is subject to non-recourse clause).

Here, Defendants' claims in Count Five—and in Counts Seven and Eight to the extent premised on Count Five—fall expressly within the ambit of Section 2.6(i) as they are "claims of the Noteholders [or] the Collateral Manager."[12]   ¶¶ 90-92, 98-111.   As a result, these claims are extinguished by the express terms of Section 2.6(i) upon the "realization of the Collateral."   Such a realization of the Collateral occurred on the Effective Date.   "Collateral" under the Zohar Indentures is defined in relevant part as "property and rights subject or intended to be subject to the lien of this Indenture for the benefit of the Secured Parties[.]"  Zohar I Indenture at 19; Zohar II and III Indentures at 17.   On the Effective Date, the Zohar Funds executed a stepped sequence of transactions resulting in the divestiture of all of their assets in partial satisfaction of senior creditors' claims.   *See* Plan, Article VI.[13]   As of the Effective Date, the Zohar Funds have no assets, and there is no remaining Collateral under the Indentures.   The Collateral is thus "realized"—no assets to which Defendants have recourse remain—and Defendants' claims in respect of the Class B Notes are irrevocably extinguished.   *See Taberna*, 594 B.R. at 588 (interpreting near-identical clause, noting that following realization of the Collateral, "the claims are to be extinguished precisely because they are limited to the Collateral").   Defendants' claims premised on the Class B Notes should be dismissed as extinguished.   *See, e.g.*, *In re PWS Holding*, 303 F.3d at 315 (cause of action dismissed where claims "extinguished" under Chapter 11 plan); *Nachshen v. BPP ST*

---

[12]  Page 2 of each Class B Note contain substantively similar restrictions.

[13]   An essential step in this sequence was the release of "all liens in favor of the Indenture Trustee securing the Noteholder Claims." Plan § 6.3.  The Asset Recovery Entities assumed the obligation to pay the Indenture Trustee, solely in respect of its unpaid fees and expenses.  While the Indenture Trustee has temporarily retained liens on assets that have been transferred to the AREs to secure these limited claims, no property remains "subject to the lien of this Indenture for the benefit of the Secured Parties" such that it could constitute Collateral.

*Owner LLC*, 2021 WL 5042855, at *2 (S.D.N.Y. Oct. 29, 2021) (claims "extinguished" pursuant to Fed. R. Civ. P. 25 must be dismissed); *Nayak v. Voith Turbo, Inc.*, 2015 WL 1605576, at *5 (M.D. Pa. Apr. 9, 2015) (dismissing breach of contract claim where claim was extinguished by contractual release).

Defendants' claims for setoff and recoupment premised on the Class B Notes fall with the underlying claim. It is well-settled that the Code "does not create a federal right of setoff but merely recognizes such party's right under state law." *In re Orexigen Therapeutics, Inc.*, 596 B.R. 9, 14, 16 (Bankr. D. Del. 2018). As the Zohar Funds owe nothing in respect of Defendants' contractually extinguished Class B Notes claims, Defendants have no debt with which to effect a setoff. *See Copantitla v. Fiskardo Estiatorio, Inc.*, 788 F. Supp. 2d 253, 281 (S.D.N.Y. 2011). Recoupment, similarly, is determined as a matter of non-bankruptcy law. *Westinghouse Credit Corp. v. D'Urso*, 278 F.3d 138, 146 (2d Cir. 2002). Under New York law, a party may not assert recoupment unless it has a "legally subsisting cause of action [] upon which it could maintain an independent claim." *Oneida Indian Nation v. Hunt Constr. Grp., Inc.*, 108 A.D.3d 1195, 1196 (4th Dep't 2013) (dismissing recoupment where underlying claim was dismissed); *see also Washington Diamonds Corp. v. Diamonds By Israel Standard, Inc.*, 2018 WL 3972361, at *13 (N.Y. Sup. Ct. Aug. 20, 2018) (holding the failure of underlying breach of contract claim "removes the legal basis for defendant's counterclaims, offsets and recoupments").

### 2. Defendants' Class B Note Claims Are Barred By The Indentures' Subordination Provisions

Each Zohar Indenture provides for the express subordination of the Class B Notes. For example, Section 13.1(a) of the Zohar I Indenture[14] states:

---

[14] *See also* Zohar II Indenture § 13.1(a). As Zohar III issued three tranches of Class A Notes, substantively equivalent provisions are found at Sections 13.1(a)-(c) of the Zohar III Indenture.

Anything in this Indenture or the Notes to the contrary notwithstanding, the Issuer, the Holders of the Class B Notes and the Holders of the Class C Notes agree for the benefit of the Holders of the Class A Notes and the Credit Enhancer that *the Class B Notes*, the Class C Notes and the Issuer's rights in and to the Collateral (collectively, the "Subordinate Interests") *shall be subordinate and junior to the Class A Notes*, all Credit Enhancement Liabilities, all Supplemental Credit Enhancement Liabilities, all Credit Enhancement Premium and all Supplemental Credit Enhancement Premium (the "Senior Interests") to the extent and in the manner set forth in this Indenture . . . . If any Event of Default has not been cured or waived and acceleration occurs . . . *the Class A Notes shall be paid in full . . . before any further payment or distribution is made on account of the Subordinate Interests*.

As part of the subordination regime, the Zohar I Indenture further provides that "[e]ach Holder of Subordinate Interests . . . *shall not demand*, accept, or receive *any payment* or distribution in respect of such Subordinate Interests *in violation of the provisions of this Indenture* including, without limitation, this Section 13.1." Zohar I Indenture § 13.1(d).[15]

Count Five, asserting breach of the Zohar Funds' alleged "repayment obligations" in respect of the Class B Notes, ¶ 92, fails on its face as a "demand" for "payment" made in violation of Section 13.1 of the Zohar Funds' Indentures.[16] *See In re Today's Destiny, Inc.*, 388 B.R. 737, 757 (Bankr. S.D. Tex. 2008) ("a lawsuit seeking monetary damages[] is a demand for payment"). Furthermore, holders of Class B Notes are not entitled to any "payment or distribution" until "the Class A Notes are paid in full." Zohar I Indenture § 13.1(a).[17] Under all three Zohar Funds, the Class A Notes are not now, and never will be, paid in full. Plan, §§ 4.5, 4.7, 4.14, 4.20 (creditors senior to the Class B Notes remain impaired under all three Zohar Funds); *see also PWS Holding*, 228 F.3d at 244 (where estate assets were worth less than senior claims as of the plan's effective date, "[t]here [was] no question that the [senior creditors] were not paid in full"). Because

---

[15] *See also* Zohar II Indenture § 13.1(d); Zohar III Indenture § 13.1(g).

[16] *See* Zohar I Indenture § 13.1(d); Zohar II Indenture § 13.1(d); Zohar III Indenture § 13.1(g).

[17] *See also* Zohar II Indenture § 13.1(a); Zohar III Indenture §§ 13.1(a)-(c).

Defendants are prohibited from making a demand for payment or distribution until the Class A Notes are paid in full—a condition that can never be satisfied—Count Five must be dismissed. *See, e.g.*, *Beijing Neu Cloud Oriental Sys. Tech. Co. v. Int'l Bus. Mechs. Corp.*, 2022 WL 889145, at *3 (S.D.N.Y. Mar. 25, 2022) (dismissing claim barred by contract).

For the same reasons that pursuing payment on the Class B Notes under Count Five violates the express provisions of the Zohar Indentures, pursuing setoff and recoupment on the basis of the same obligations under Counts Seven and Eight also violates the Zohar Indentures.[18]  There is no practical distinction between seeking payment and seeking setoff or recoupment because, "[i]n law, payment may just as effectively be made by offset or credit." *Harrold v. Comm'r of Internal Revenue*, 232 F.2d 527, 529 (9th Cir. 1956); *see also Alicia Ocean Transp., S.A. v. Rollins Burdick Hunter of N.Y., Inc.*, 621 F. Supp. 479, 483 n.12 (S.D.N.Y. 1985); *Gen. Elec. Credit Corp. v. Contrucci*, 332 F. Supp. 827, 830 (W.D. Pa. 1971).

Counts Five, Seven and Eight similarly violate Section 5.8 of the Indentures, which provides that "no one or more Holders of Notes shall have any right in any manner whatever by virtue of, or by availing of, any provision of this Indenture ***to affect, disturb or prejudice the rights of any other Holders of Notes or to obtain or to seek to obtain priority or preference over***" them. The Zohar Funds' claims against Defendants seek to recover monies for senior creditors whose claims remain deeply impaired.  Defendants' setoff and recoupment claims, arising out of undisputedly junior obligations, ¶ 34, seek to hinder these senior creditors' recoveries—the economic equivalent of distributing the Zohar Funds' litigation recoveries to the Class B Notes ahead of impaired senior creditors.  Indeed, numerous courts have recognized that setoff and

---

[18] The Indentures recognize that "payment" may be made "other than in Cash."  *See, e.g.*, Zohar Indentures § 13.1(c).

recoupment, where allowed, do precisely what Section 5.8 expressly prohibits:  grant junior creditors a preference over senior creditors.  *See In re Lakeside Cmty. Hosp., Inc.*, 151 B.R. 887, 893 (N.D. Ill. 1993) (setoff "works as an artificial preference for the creditor allowed to setoff"); *see also Fed. Deposit Ins. Corp. v. Texarkana Nat. Bank*, 874 F.2d 264, 269 (5th Cir. 1989) ("To allow setoff would defeat the priority protections afforded … other creditors[.]"); *Ferguson v. Lion Holdings, Inc.*, 312 F. Supp. 2d 484, 502 (S.D.N.Y. 2004) (recoupment "permits the creditor potentially to skip ahead of other creditors if the recoupment doctrine applies"); *In re Kings Terrace Nursing Home & Health Related Facility*, 1995 WL 65531, at *10 (Bankr. S.D.N.Y. Jan. 27, 1995) (recoupment should be "narrowly construed" so as "[t]o prevent a bankrupt's creditors from using recoupment to gain unwarranted preferences").  Count Five, and Counts Seven and Eight to the extent predicated upon Count Five, should thus be dismissed as violating Section 5.8 of the Zohar Indentures.

### 3. Defendants' Class B Note Claims Independently Fail The Requirements For Setoff And Recoupment

Defendants' setoff and recoupment claims in respect of the Class B Notes fail as a matter of law for multiple independent reasons: (i) the Octaluna Entities that assert those claims cannot satisfy the mutuality requirement for setoff; (ii) the Octaluna Entities cannot satisfy the "same transaction" requirement for recoupment; (iii) the Class B Notes are equity which is ineligible for setoff and Defendants are judicially estopped from asserting otherwise; and (iv) equity does not permit the exercise of either setoff or recoupment in these circumstances.

#### (a) The Octaluna Entities Lack Mutuality Required for Setoff

To validly exercise a right of setoff, the corresponding debts must be mutual.  Debts are mutual only when they are "in the same right and between the same parties standing in the same capacity." *In re Orexigen Therapeutics, Inc.*, 990 F.3d 748, 753 n.9 (3d Cir. 2021).  It is "widely

accepted that mutuality is strictly construed against the party seeking setoff." *In re SemCrude, L.P.*, 399 B.R. 388, 396 (Bankr. D. Del. 2009). Here, Defendants' setoff claims in respect of the Class B Notes fail the mutuality requirement in three critical ways: (i) they are not limited to the same parties; (ii) they are predicated upon obligations (*i.e.*, the Class B Notes) that have particular attributes—including being both non-recourse and subordinate—that destroy mutuality; and (iii) they are contractually subordinated pursuant to the Indentures.

*First*, Defendants' setoff claim fails mutuality because it is asserted on behalf of all eight individual "Counterclaimants" without regard to their capacity, *see* ¶ 111, even though any amounts payable under the Class B Notes would be owed solely to the Octaluna Entities in their capacity as the holder of those notes, *see* ¶¶ 91-92. To satisfy mutuality, the obligations seeking to be set off must be obligations of the individual Octaluna Entities in their capacity as holder of Class B Notes. Not so here: the majority of claims in the Complaint are not asserted against any of the Octaluna Entities at all. *See In re SemCrude, L.P.*, 399 B.R. 388, 393 (Bankr. D. Del. 2009) (party may not offset its debt against amounts owed to an affiliate). Importantly, the contract claims against the Octaluna Entities are asserted against them not as holders of the Class B Notes, rather in their capacity as holder of the Zohar Funds' preference shares.[19] *See In re Ross-Viking Merch. Corp.*, 151 B.R. 71, 74 (Bankr. S.D.N.Y. 1993) (no mutuality where one party has a fiduciary duty or trust relationship with the other, and the other side's claim is a simple unsecured debt). As a result, even if the Zohar Funds prevail on their claims in their entirety, the judgment will create no obligation of the Octaluna Entities in the capacity in which they assert setoff. There

---

[19]   *See, e.g.*, Amended Complaint ¶¶ 26, 130, 174, 311 (allegations concerning Octaluna Entities' receipt of preference shares); ¶ 391 (allegations concerning benefit to Octaluna Entities from OC test); ¶ 405 (allegations concerning Octaluna Entities' breach of preference share subscription agreement); ¶ 459 (unjust enrichment claims against Octaluna Entities).

is thus no mutuality permitting the offset of amounts payable on the Class B Notes against amounts the Octaluna Entities may owe on account of the Zohar Funds' claims asserted against them.

*Second*, Defendants cannot satisfy the mutuality requirement because they are seeking to offset the *plenary* obligations that would arise upon the Zohar Funds obtaining a legal judgment against the Octaluna Entities against the *non-recourse* obligations of the Zohar Funds under the Class B Notes.  Mutuality fails in the face of this type of mismatch—with a plenary obligation that must be paid from general funds on one side, and a non-recourse obligation that need only be satisfied from identified assets on the other.  *See DeFlora Lake Dev. Assocs., Inc. v. Hyde Park*, 689 F. App'x 99, 101 (2d Cir. 2017) ("[M]utuality is absent" where a contract provides that "the debt owed . . . is nonrecourse debt payable solely from the proceeds" identified therein); *see also In re Allen-Main Assocs., Ltd. P'ship*, 233 B.R. 631, 635 (Bankr. D. Conn. 1999).  Permitting setoff of the Class B Notes would be to require "payment—crediting one debt against another— by a method other than the sole means by which the debt is payable" under the Indentures:  recourse to the Collateral.  *DeFlora*, 689 F. App'x at 101.

*Third*, Defendants cannot satisfy the mutuality requirement because the Class B Notes are contractually subordinated.  Where, like here, a party accepts a contractually subordinated debt "with full knowledge and notice of the terms thereof," such a debt "cannot be made 'mutually extinguishable'" with the party's obligations to the debtor, and setoff cannot apply.  *Texarkana*, 874 F.2d at 269; *see also Fed. Deposit Ins. Corp. v. De Jesus Velez*, 678 F.2d 371, 376 (1st Cir. 1982); *In re Marta Grp., Inc.*, 47 B.R. 220, 221 (Bankr. E.D. Pa. 1985).  This is so because a known and negotiated subordinate debt is not "in the same right" as a senior obligation, defeating a quintessential feature of mutuality.  *Nw. Racquet Swim & Health Clubs, Inc. v. Resol. Tr. Corp.*, 927 F.2d 355, 363 n.22 (8th Cir. 1991) (subordinated securities "lack the requisite mutuality of

20

obligation required to set them off"); *Adams v. Resol. Tr. Corp.*, 927 F.2d 348, 353 (8th Cir. 1991) (same); *cf. Gray v. Sch. Dist of Borough of Brownsville*, 67 F.2d 141, 143 (3d Cir. 1933) (to be subject to setoff, debts must be both "in the same right and in the same quality of the right").

Here, the Octaluna Entities accepted the Class B Notes, a "debt instrument [that] provides that the claim it represents is subordinate," *Marta Grp.*, 47 B.R. at 221, "with full knowledge and notice of the terms thereof" as set out in the Indentures and the Class B Notes themselves.  Exs. 1-3 (Class B Notes) at 3; Zohar Indentures at 13.1.  *Texarkana*, 874 F.2d at 269.  They cannot now "place [themselves] in a preferred position vis-a-vis other creditors."  *Id.*  Therefore "as a matter of law, the subordinated [Class B Notes] do not meet the test of mutuality of obligations to make setoff proper."  *Id.*

(b)    <u>The Octaluna Entities Cannot Satisfy the "Same Transaction" Requirement for Recoupment</u>

Similar to setoff, recoupment is an equitable doctrine that "seeks to avoid the unjust result that would occur if a debtor who has been overpaid pre-petition by a party in a contract is permitted post-petition to make a claim under the contract against that party without regard to the overpayment it has received."  *In re McMahon*, 129 F.3d 93, 96 (2d Cir. 1997).  In bankruptcy cases, recoupment is necessarily "a limited [doctrine] and should be narrowly construed" as a matter of policy.  *Westinghouse Credit Corp. v. D'Urso*, 278 F.3d 138,147 (2d Cir. 2002). Recoupment is "limited in bankruptcy cases to situations in which both debts arise out of a ***single integrated transaction*** so that it would be ***inequitable*** for the debtor to enjoy the benefits of that transaction without also meeting its obligations."  *In re Malinowski*, 156 F.3d 131, 133 (2d Cir. 1998); *see also In re Franklin Indus. Complex Inc.*, 541 B.R. 14, 39 (N.D.N.Y. 2015) (recognizing the "incredibly narrow scope of the recoupment doctrine and its 'same transaction' requirement").

"[E]ven where the parties' claims arise from a single contract, if 'the contract itself

21

contemplates the business to be transacted as discrete and independent units,' recoupment may not be applied." *Westinghouse*, 278 F.3d at 147. Thus, even when a "single contract" represents an "integrated transaction," where that contract "establish[es] separate and distinct remedies for discrete portions of that transaction," recoupment is impermissible because it interferes with the parties' bargained-for expectations and defeats the equitable principles underlying the doctrine. *Id.* at 147-48. To satisfy the "same transaction" requirement, "a Court must not isolate its scrutiny to the mere meaning of the word 'transaction,' but must consider the 'logical relationships' between the claim and counterclaim." *Ferguson*, 312 F. Supp. 2d at 503.

Here, as described above, none of the Zohar Funds' claims asserted against the Octaluna Entities have any "logical relationship" to the Octaluna Entities' obligations or status as Class B Noteholders. *See generally* Amended Complaint; *supra* n.19. Rather, the Zohar Funds assert that the Octaluna Entities were unjustly enriched when they received $118 million in preference share payments on account of the manipulation of the Zohar Funds' overcollateralization tests, and that they breached each Fund's Subscription Agreement—an agreement articulating the Octaluna Entities' obligations as preference shareholders (*i.e.*, not Class B Noteholders)—when it "checked the box" and caused the Zohar Funds to be taxable as corporations. *See* Amended Complaint Count 15. The Octaluna Entities' receipt of preference share payments and their tax obligations, both of which arise under the Subscription Agreements for the Preference Shares are in no way "reciprocal" or "contingent" upon the Zohar Funds' obligations in respect of the Class B Notes, which are not governed by the Subscription Agreements, and the alleged breaches do not "arise from the same set of facts." *Ferguson*, 312 F. Supp. 2d at 504. Moreover, the Indentures establish a complex structure of remedies for the Class B Notes which are expressly distinct from any remedies exercisable by the Preference Shares. Zohar Indentures § 5; § 5.2(a) ("The Holders of

the Preference Shares . . . shall not have the right to determine the remedies to be exercised under this Indenture."); *see also Westinghouse*, 278 F.3d at 147 (recoupment is inappropriate "if the underlying contract has established separate and distinct remedies for discrete portions of that transaction"). The Zohar Funds' remaining damages claims against the Octaluna Entities are even further removed, as they arise from tortious acts by the Octaluna Entities, not any agreement with the Zohar Funds. *See* Amended Complaint, Counts 8-14, 17-22, 24, 26, 33, 41, 42. Defendants' recoupment claim in respect of the Class B Notes must therefore be dismissed.

(c)      The Class B Notes Are Ineligible For Setoff Because They Are Equity, Not Debt

The Octaluna Entities, through Tilton, have consistently, repeatedly and emphatically—including before this Court—taken the position in sworn testimony that the Class B Notes are equity. Most recently, Tilton contended as much at the confirmation hearing, testifying that the Class B Notes were an "equity kicker," "carefully negotiated as part of the equity package" and "a way for our Patriarch stakeholders to monetize that equity prior to the end of the deal." Conf. Hr'g Tr. 28:17-29:5. Section 553 of the Code is clear, however, that equity is not eligible for setoff. 11 U.S.C. § 553 ("[T]his title does not affect any right of a creditor to offset a mutual ***debt*** owing by such creditor . . . ."); *see Trojan Hardware Co. v. Bonacquisti Constr. Corp.*, 141 A.D.2d 278, 281 (3d Dep't 1988) (finding that setoff is limited to "indebtedness" which "refers to the condition of being in debt and debt is generally defined as a fixed and certain obligation").

Tilton's most recent testimony is consistent with the Indentures, which state that "[t]he Issuer and the Holders of the Class B and Class C Notes agree to treat such Notes as equity for tax purposes," *see, e.g.*, Zohar II Indenture § 2.9, as well as Tilton's testimony throughout the trial in *MBIA Ins. Corp. v. Patriarch Partners*, Case No. 1:09-cv-03255 (S.D.N.Y.) (the "B Notes

Trial").[20]  B Notes Trial Dkt. 103 at 611:20-21 (Class B Notes "would have been equity in the deal"); *id.* Dkt. 111 at 1269:9-10 (testifying that "the B note was equity for tax purposes, and an unrated note carried the equity liability of Zohar I with it").[21]  Tilton's counsel also presented argument based on this testimony, calling the Class B Note an "unfunded equity note," *id.* Dkt. 97 at 33:21, that "only had potential future value, . . . paid no interest," *id.* at 66:4-6, and was "deeply subordinated," *id*. Dkt. 131 at 1939:18.  The court agreed, finding that "[s]ince 'payment on the Class B Notes is (and always has been) highly contingent on the Zohar I strategy succeeding in the future,' they are 'classically equity, not debt.'"  B Notes Trial, Tr. Op. at 125.  This testimony clearly establishes that the parties understood the Class B Notes to be equity at the outset of the transaction, which is all that is required for them to be characterized as such.  *See In re HH Liquidation, LLC*, 590 B.R. 211, 291 (Bankr. D. Del. 2018) (holding that "the Court need not evaluate the circumstances in detail" where "[t]he testimony of witnesses at trial is consistent with the intent of the PropCo Loan to be debt").

Moreover, given Tilton's position during the B Notes Trial that the Class B Notes are equity, Defendants should be judicially estopped from now asserting that the Class B Notes are

---

[20] The B Notes Trial adjudicated claims by MBIA against Patriarch asserting that Patriarch had breached its commitment to contribute a portion of the Zohar I Class B Notes to a series of other CDOs that MBIA insured.  Under the parties' agreements, Patriarch was required to undertake commercially reasonable efforts to secure a "Debt-for-Tax" legal opinion that the Class B Notes constituted debt for purposes of the federal tax laws, so that they could then be contributed to the other CLOs insured by MBIA.  Patriarch failed to obtain such an opinion and vehemently argued at trial that satisfying this obligation was impossible because the Class B Notes could not meet the criteria to constitute debt for tax purposes.

[21] This Court may take judicial notice of documents outside of the allegations in the Counterclaims, including the B Notes Trial opinion, in determining whether judicial estoppel is appropriate.  *See Southmark Prime Plus, L.P. v. Falzone*, 776 F. Supp. 888, 892, 899 (D. Del. 1991) (taking judicial notice of contents of court records from another jurisdiction not cited in the pleadings for purpose of determining whether certain of plaintiffs' arguments were barred by judicial estoppel); *Berrada v. Cohen*, 2017 WL 1496930, at *4 (D.N.J. Apr. 24, 2017) (taking judicial notice of transcript for purposes of determining whether arguments were barred by judicial estoppel).

debt.    Judicial estoppel prevents litigants from "playing fast and loose with the courts" by prohibiting litigants from taking "clearly inconsistent" positions to obtain an "unfair advantage." *New Hampshire v. Maine*, 532 U.S. 742, 750-51 (2001).    These circumstances are present here: Defendants deliberately changed course after "achieving success on one position, then argu[ed] the opposite to suit an exigency of the moment."    *In re Vision Metals, Inc.*, 327 B.R. 719, 723 (Bankr. D. Del. 2005).    Specifically, having already prevailed before the B Notes Trial court on the position that their Class B Note interests are equity, B Notes Trial, Tr. Op. at 125, Defendants now assert a remedy only available were the Class B Notes to be classified as debt.      Judicial estoppel is "particularly appropriate in situations like this, where the party benefitted from its original position."    *AFN, Inc. v. Schlott, Inc.*, 798 F. Supp. 219, 226 (D.N.J. 1992).

Because the Class B Notes are equity, and Tilton is estopped from asserting otherwise, Defendants' setoff claims based on the Class B Notes should be dismissed.

        (d)      Equity Bars the Octaluna Entities From Seeking Setoff or Recoupment in Respect of the Class B Notes

Equity presents an independent and equally compelling grounds for dismissal of the Octaluna Entities' setoff and recoupment claims.    Setoff and recoupment are doctrines rooted in principles of fairness and equity, and their application is within the sound discretion of the Court. *In re WL Homes LLC*, 471 B.R. 349, 351 (Bankr. D. Del. 2012); *see also Westinghouse*, 278 F.3d at 149.    These doctrines "cannot be invoked in a case where the[ir] general principles . . . would not justify it."    *WL Homes*, 471 B.R. at 351 (setoff); *see Westinghouse*, 278 F.3d at 148 (recoupment); *see also Lakeside Cmty. Hosp.*, 151 B.R. at 893 (N.D. Ill. 1993) (discretion to deny setoff as appropriate "to do equity, prevent injustice, and achieve the goals of procedural fairness. . . is most appropriately exercised in Chapter 11 cases").    The textbook equitable application of

25

setoff or recoupment simply nulls "the absurdity of making A pay B when B owes A." *WL Homes*, 471 B.R. at 351. That scenario is far from the facts here.

The Octaluna Entities knowingly acquired deeply subordinated, non-recourse Class B Notes, for which they paid nothing. Defendants understood (as repeatedly acknowledged under oath) that the Class B Notes were merely a vehicle to monetize the equity value of the Zohar Funds prior to their maturity date if their performance exceeded expectations; they would remain dormant and worthless otherwise. Conf. Hr'g Tr at 28:17-29:5. "Equity generally prevents a subordinated creditor from enhancing its claim at the expense of other creditors," *Texarkana*, 874 F.2d at 268-69, and certainly cannot tolerate shareholders recovering at the expense of unpaid, senior secured creditors. Defendants should not now be allowed to "enhance [their] claims . . . at the expense of other creditors with a higher priority"—essentially, escaping liability for their extensive wrongdoing by hiding behind an interest they received for free that was expected to have value only in the event that the Zohar Funds' investors were repaid in full—thereby "defeat[ing] the priority protections afforded" those creditors and "defeating their expectations as well." *Id.* at 269; *see also id.* ("[E]quity is better served by preventing [such] a setoff"); *Westinghouse*, 278 F.3d at 149 ("[T]o apply the doctrine of recoupment now, in effect restructuring the transaction after the fact, would be inequitable. . . .").

Nor is there any unfairness to Defendants in this result. The Zohar Funds' structure is Tilton's ***own design***. ¶ 24. The Zohar Indentures were drafted and negotiated by Tilton, the "highly sophisticated institutional investors" who would entrust billions into her care, and their able counsel and financial advisors. ¶ 25; *see Westinghouse*, 278 F.3d at 148-49. Accordingly, "it is only fair to defer to the allocation of risk and potential benefit that was the outcome of the parties' negotiations, as reflected" in the Indentures as written—including that the Class B Notes

would remain dormant and inert until senior investors had been paid in full. *Westinghouse*, 278 F.3d at 149. As the contractual conditions for the Class B Notes recoveries has not and cannot happen, the Court should dismiss as inequitable Defendants' claims for recoupment (Count Seven) and setoff (Count Eight) to the extent premised on the Class B Notes.

### D. Defendants' Claims Concerning Collateral Management Fees Should Be Dismissed for Additional Reasons (Counts One, Seven and Eight)

Count One seeks damages on behalf of the Patriarch Managers for allegedly unpaid collateral management fees in the amount of $26,461,341.81 under the CMAs. Counts Seven and Eight seek recoupment and setoff including in respect of these amounts. ¶¶ 100-103, 108-111. These claims should be dismissed because (i) claims for collateral management fees were extinguished upon realization of the Collateral, (ii) to the extent these claims were not extinguished, they are pending before another court, and (iii) the setoff claims lack mutuality.

*First*, any claims that the Patriarch Managers may have had for collateral management fees (excluding those expressly treated in the Plan as Patriarch Disputed CMA Fee Claims) have been extinguished. Like Section 2.6(i) of the Indenture, *supra* Section C.1, Section 7.13 of the CMAs provides that the Zohar Funds' obligations to the Patriarch Managers are non-recourse obligations that extinguish upon realization of the Collateral. As the Collateral was realized upon its liquidation, the claims in Count One have thus been extinguished, *see supra* Section C.1, and any claim for recoupment and setoff in Counts Seven and Eight predicated on Count One should thus also be dismissed.

*Second*, to the extent the Plan permits the Patriarch Disputed CMA Fee Claims (as defined in the Plan) to be pursued, they cannot be pursued through this action. While the Plan permits the Patriarch Managers to continue to seek certain allegedly unpaid collateral management fees, it can do so only insofar as the amounts that are being held in the Patriarch Disputed CMA Fee Escrow

(Plan §§ 4.3, 4.12, 4.19). But the Patriarch Managers already instituted litigation in respect of these amounts through counterclaims in the Books and Records Action (as defined in the Plan), which remain pending.[22] ¶ 44. Any effort to adjudicate those claims here would thus constitute improper claims splitting. *J.L. v. Barnes*, 33 A.3d 902, 920-21 (Del. Super. Ct. 2011) (dismissal with prejudice may be appropriate where plaintiff pursues the same claim in different courts). But regardless of where they are adjudicated, if the Patriarch Managers are successful, those claims will be paid from the Patriarch Disputed CMA Fee Escrow. Therefore, there can be no unpaid debt in respect of those claims that could be the subject of a recoupment or setoff, and those claims should under any circumstances be dismissed as to such amounts here.

*Third*, Defendants' claim for setoff in Count Eight premised on Count One fails for lack of mutuality for reasons similar to those described with respect to Defendants' Class B Note claims. *Supra* Section C.3(a). In particular, Defendants seek setoff on behalf of all eight Counterclaimants even though collateral management fees are only potentially owed to the Patriarch Managers. The Patriarch Managers, in turn, are only named in a subset of the Zohar Funds' claims, and certain of those claims, *see, e.g.*, Amended Complaint Counts 8-10, are wholly unrelated to their collateral management role. Further, the fact that the collateral management fees are non-recourse obligations destroys mutuality as any claims against the Patriarch Managers would create plenary rather than limited obligations. Finally, the Subordinated Collateral Management Fees (as defined in the Indentures) Defendants seek in Count One are subordinated to the Class A Notes,[23] which

---

[22] The Litigation Trustee has proposed transferring all remaining claims pending between the parties to this Court for adjudication in conjunction with this proceeding, including the counterclaims in the Books and Records Action. Defendants have not accepted that proposal to date and the counterclaims in the Books and Records Action thus remain pending in that action.

[23] *See* Zohar I Indenture § 11.2(a)(iv); Zohar II Indenture §§ 11.1(a)(ii)(F), 11.2(a)(iv); Zohar III Indenture § 11.1(a)(i)(K)(2)(II).

independently destroys mutuality. *See supra* Section C.3(a). Count Eight must be dismissed to the extent premised on Count One.

**E.    Defendants' Claims for Indemnification Under The CMAs And Credit Agreements Should Be Dismissed for Additional Reasons (Counts Two, Three, and Four; Counts Seven and Eight in Part)**

Defendants' claims predicated upon indemnification rights under the CMAs and Credit Agreements should likewise be dismissed. These claims fail because (i) Defendants fail to plead any indemnifiable loss under either the CMAs (Count Two) or the Credit Agreements (Counts Three and Four); (ii) Defendants' indemnification claims under the CMAs were extinguished; and (iii) setoff fails for lack of mutuality (Count Eight).

**1.    Defendants Fail To Plead Indemnifiable Losses**

Under New York law, indemnification clauses "must be strictly construed to avoid reading into [them] a duty which the parties did not intend to be assumed." *Hooper Assocs., Ltd. v. AGS Computs., Inc.*, 548 N.E. 903, 905 (N.Y. 1989). Courts construing such clauses must look to the "language and purpose of the entire agreement" to derive the parties' intent, *id.*, and grant indemnity only where the claimed losses are "of such character that it is reasonable to infer that they were intended to be covered under the contract." *Tokyo Tanker Co. v. Etra Shipping Corp.*, 142 A.D.2d 377, 380 (1st Dep't 1989). Where an "indemnity clause extends only to a plaintiff's actions in a specific capacity or to specific types of losses, that limitation will be given effect." *BNP Paribas Mortg. Corp. v. Bank of Am., N.A.*, 778 F. Supp. 2d 375, 415 (S.D.N.Y. 2011).

(a)    The Patriarch Managers Seek Indemnification Under the CMAs
        For Non-Indemnified First-Party Claims (Count Two)

In Count Two, the Patriarch Managers seek indemnification from the Zohar Funds for "fees and expenses in connection with the Books and Records Action and the Interpleader Action." ¶ 76. Both of these actions are first party claims—*i.e.*, claims between indemnitor and indemnitee

(¶¶ 42-44)—which are not indemnifiable under the CMAs' indemnification provisions.  There is a "strong presumption" against reading indemnity clauses to cover legal fees in first-party disputes even where the clause includes broad general language, *Best Brands Consumer Prod., Inc. v. Versace 19.69 Abbigliamento Sportivo S.R.L.*, 2020 WL 8678085, at *8 (S.D.N.Y. Oct. 1, 2020), a provision must "exclusively or unequivocally refer [] to claims between the parties themselves" in order to overcome it, *Bank of N.Y. Tr. Co., N.A. v. Franklin Advisers, Inc.*, 726 F.3d 269, 283 (2d Cir. 2013).

Section 4.5(a) of the CMAs, upon which Count Two rests, ¶ 73, includes no express reference to first-party claims.  *See id.*  This omission dooms the Patriarch Managers' indemnification claim.  *See Hooper*, 548 N.E.2d at 905.  This is especially true here where the balance of the indemnification clause imposes notice and cooperation obligations on the Patriarch Managers, and even contemplates the Patriarch Managers tendering the defense to the Zohar Funds—obligations that are nonsensical as applied to a first-party claim.  CMA § 4.5(d); *cf. Hooper*, 548 N.E.2d at 905 (such provisions support the construction of an indemnification clause to apply only to third-party claims).  Count Two fails to state a claim as a matter of law and, as such, Defendants' claims for recoupment and setoff predicated on Count Two must also fail.

(b)      PPAS Fails To Plead Any Losses Indemnifiable Under Credit
         Agreements (Count Three)

In Count Three, PPAS brings claims for indemnification related to its role as Administrative Agent under an unspecified number of Credit Agreements.  These claims fail for two primary reasons: (i) Defendants do not identify which contracts and Portfolio Companies form the basis of the claim and thus do not satisfy the applicable pleading standard; and (ii) the sole Credit Agreement that Defendants identify does not provide indemnity for the fees PPAS seeks.

As a threshold matter, Count Three does not satisfy the "facial plausibility" pleading

requirement under *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).  To survive a motion to dismiss, "[a] breach of contract claim must allege specific facts regarding the date of the formation of the contract, the parties to the contract, and the contract's major terms." *In re Premier Int'l Holdings, Inc.*, 443 B.R. 320, 333 (Bankr. D. Del. 2010).  Specificity is all the more critical in this context, as PPAS's "right to contractual indemnification depends upon the specific language of the contract." *Alfaro v. 65 W. 13th Acquisition, LLC*, 74 A.D.3d 1255, 1255-56 (N.Y. App. Div. 2010).  But far from identifying "specific facts" as to each contract allegedly breached, Defendants do not even identify the contracts or the companies the contracts pertain to, leaving Plaintiffs unable to assess the merit of the claims.  ¶¶ 48-53, 78-83; *Cf. Premier Int'l Holdings*, 443 B.R. at 333.  Count Three fails to state a claim for this reason alone.  *See Ilkowitz v. Durand*, 2018 WL 1595987, at *14 (S.D.N.Y. Mar. 27, 2018).

Further, even the single indemnification provision that Defendants specifically cite does not create any indemnification obligation by the Zohar Funds to indemnify the fees that PPAS seeks.  Defendants' pleading obfuscates the nature of the amounts sought under Count Three by labeling them "unreimbursed losses," ¶ 82, when, in reality, they are nothing more than the agency fees allegedly owed by Portfolio Companies to PPAS under the Credit Agreements.  *See* ¶ 50.  Nothing in the single Credit Agreement cited in the Counterclaims contemplates that the Zohar Funds would indemnify, guarantee, or otherwise be jointly liable for the payment of PPAS's agency fees.  To the contrary, the obligation to pay an Agent Fee (and other fees) is the ***Borrower's***.  Ex. 4 § 2.9 (eMag Credit Agreement).

The Zohar Funds' indemnification obligations, by contrast, are limited to amounts (such as losses, judgments or expenses) that are "***imposed on, incurred by, or asserted against*** [PPAS]."

*Id.* § 9.6.  The fees **earned by** PPAS as agent do not remotely fall within this category.  Rather, through this claim, PPAS attempts to retroactively transform a standard indemnity provision covering losses and liabilities into a guarantee of the Borrowers' obligations—something that is unsurprisingly not covered by the indemnification provision cited by Defendants.  *See Weissman v. Sinorm Deli, Inc.*, 88 N.Y.2d 437, 447 (1996) (an indemnity is not a guarantee of another's primary obligation).  There is no reason to believe—and Defendants have provided none—that the result would be different under the indemnification provisions of any other Credit Agreement.  Because a promise by the Zohar Funds to guarantee the Borrowers' obligations to PPAS cannot be found or "clearly implied" in the indemnity provision of the Credit Agreements, which must be strictly construed, PPAS's allegedly earned-but-unpaid fees are not indemnified.  *Hooper Assocs.*, 548 N.E.2d at 905.

Finally, to the extent Count Three seeks damages for "all future out-of-pocket expenses [PPAS] might incur," ¶¶ 53, 83, Defendants make no effort to allege facts that would plausibly support the conjecture that there will be unspecified and hypothetical indemnifiable future expenses.  As a general matter, "[a] claim is not ripe for adjudication if it rests upon 'contingent future events that may not occur as anticipated, or indeed may not occur at all.'"  *Texas v. United States*, 523 U.S. 296, 300 (1998).  Claims for indemnification are not ripe "until liability has been imposed upon the party to be indemnified."  *FSP, Inc. v. Societe Generale*, 2003 WL 124515, at *4 (S.D.N.Y. Jan. 14, 2003), *aff'd*, 350 F.3d 27 (2d Cir. 2003).  This aspect of Count Three fails to state a claim, and  Defendants' claims for recoupment and setoff predicated on Count Three thus must also fail.

(c)    Patriarch Partners Fails To Plead Indemnifiable Losses Under the
IMG Credit Agreement (Count Four)

In Count Four, Patriarch Partners asserts a claim for indemnification of the expenses related

to six asbestos suits brought against it "due to its prior or continuing relationship with IMG."

¶ 57.  However, Defendants do not allege that Patriarch Partners—a nonparty to the IMG Credit

Agreement—was named in the Asbestos Actions because of acts having any nexus with the IMG

Credit Agreement.  This failure is fatal to Count Four.

Patriarch Partners seeks indemnity under the IMG Credit Agreement as an "Affiliate" of

PPAS.   ¶ 55; Ex. 5 (IMG Credit Agreement) at Schedule 1.1 ("Agent-Related Persons").   But

Tilton and the Patriarch web of entities have worn numerous hats in respect of the Zohar Funds

(*e.g.*, collateral manager, noteholder, shareholder, portfolio company manager, director, officer,

outside lender to portfolio companies, and loan agent), and nothing in the Counterclaims or the

complaints in the Asbestos Actions upon which Count Four is based suggests that Patriarch

Partners was sued due to any actions contemplated by the IMG Credit Agreement.  *See* Exs. 6-11

(Asbestos Action complaints).  To the contrary, the omission of PPAS in the Asbestos Actions and

the absence of any allegations whatsoever related to IMG's loans compels the conclusion that

Patriarch Partners was ***not*** sued in its capacity as Affiliate to PPAS.  *Id.*

The IMG Credit Agreement does not create an obligation to indemnify PPAS's affiliates

for losses arising out of actions taken in their distinct capacities.  *BNP Paribas Mortg.*, 778 F.

Supp. 2d at 416 ("There is no support in the [contract] or the law for the proposition that a party

to an indemnity provision could recover losses sustained in an entirely different capacity from the

one for which indemnity was extended. . . . New York law forbids such a result.").  The IMG

Credit Agreement defines the Zohar Funds' indemnification obligations in terms of the parties'

capacities, indicating their intention to limit the scope of obligations to those that have some logical

nexus to the capacity they specified.  Ex. 5 (IMG Credit Agreement) § 16.7 ("the **Lenders** shall

indemnify . . . the **Agent**-Related Persons . . ."); *see BNP Paribas*, 778 F. Supp. 2d at 416-17.

Nor are alleged losses arising out of PPAS's affiliates' conduct in different capacities of

"such character that it is reasonable to infer that they were intended to be covered" by the IMG

Credit Agreement.  *Tokyo Tanker Co.*, 142 A.D.2d at 380.  To the contrary, it would defy logic for

a loan agreement to indemnify PPAS's affiliates for conduct entirely unrelated to the subject matter

of the agreement.  *Id.*  The requirement under New York law that indemnification clauses "must

be strictly construed so as not to read into [them] any obligations the parties never intended to

assume" prohibits such a construction.  *BNP Paribas*, 778 F. Supp. 2d at 417; *see also Hooper*

*Assocs.*, 548 N.E.2d at 905.  Count Four must be dismissed.

### 2. Defendants' Claims For Indemnification Under The CMAs Were Extinguished (Count Two)

Section 2.6(i) of the Indentures and Section 7.13 of the CMAs provide that any obligations

of the Zohar Funds to the Patriarch Managers are non-recourse obligations that are extinguished

upon realization of the Collateral.  *Supra* Section D.  This provision is plainly broad enough to

encompass the indemnification claims by the Patriarch Managers in Count Two.  The claims in

Count Two have thus been extinguished, and Defendants' claims for recoupment and setoff in

Counts Seven and Eight predicated on Count Two should also be dismissed.

### 3. Defendants' Claims For Setoff of Indemnified Amounts Fail For Lack Of Mutuality

Defendants' claim for setoff in Count Eight premised on Counts Two, Three and Four fails

for lack of mutuality for reasons similar to those described with respect to Defendants' Class B

Note claims.  *Supra* Section C.3(a).  Defendants seek setoff on behalf of all eight Counterclaimants

even though the indemnification obligations are only allegedly owed to the Patriarch Managers in

respect of Count Two, PPAS in respect of Count Three, and Patriarch Partners in respect of Count

34

Four, while the Patriarch Managers and PPAS are each only named in a subset of the Zohar Funds' claims, and Patriarch Partners is named in none.  Furthermore, the fact that any indemnification obligations under the CMAs are non-recourse obligations destroys mutuality as any claims against the Patriarch Managers would create plenary rather than limited obligations.  *Supra* Section C.3(a).

### F.    Defendants' Unjust Enrichment Claim Should Be Dismissed As Duplicative (Count Six)

Count Six, Defendants' unjust enrichment claim premised on the same alleged conduct as Counts One through Five, fails for the same substantive reasons described above in respect of each purported obligation and should be dismissed.  Count Six further fails because unjust enrichment claims cannot survive in the face of express contracts governing the relationship at issue.  *Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of N.J.*, 448 F.3d 573, 587 (2d Cir. 2006) (unjust enrichment claims are "preclude[d] . . . whenever there is a valid and enforceable contract."); *see also Corsello v. Verizon N.Y., Inc.*, 18 N.Y.3d 777, 790 (2012) ("An unjust enrichment claim is not available where it simply duplicates, or replaces, a conventional contract or tort claim.").  Because Defendants' unjust enrichment claim is nothing more than an explicit rehashing of their prior breach of contract claims, it is duplicative and should be dismissed. *Compare* ¶¶ 94-95, *with*, ¶¶ 65-89.

## IV.   <u>CONCLUSION</u>

For the reasons set forth herein, the Zohar Funds respectfully request that the Court dismiss Defendants' Counterclaims in their entirety.

Dated: August 9, 2022  
       Wilmington, Delaware

YOUNG CONAWAY STARGATT & TAYLOR, LLP

*/s/ Ryan M. Bartley*  
James L. Patton, Jr. (No. 2202)  
Robert S. Brady (No. 2847)  
Michael R. Nestor (No. 3526)  
Joseph M. Barry (No. 4221)  
Ryan M. Bartley (No. 4985)  
Michael S. Neiburg (No. 5275)  
Rodney Square  
1000 North King Street  
Wilmington, Delaware 19801  
Telephone: (302) 571-6600  
Facsimile: (302) 571-1253  
Email: jpatton@ycst.com  
      rbrady@ycst.com  
      mnestor@ycst.com  
      jbarry@ycst.com  
      rbartley@ycst.com  
      mneiburg@ycst.com

-and-

Jonathan E. Pickhardt, Esq. (admitted *pro hac vice*)  
Ellison Ward Merkel, Esq. (admitted *pro hac vice*)  
Blair A. Adams, Esq. (admitted *pro hac vice*)  
Brian R. Campbell, Esq. (admitted *pro hac vice*)  
Brenna D. Nelinson, Esq. (admitted *pro hac vice*)  
QUINN EMANUEL URQUHART & SULLIVAN, LLP  
51 Madison Avenue, 22nd Floor  
New York, NY 10010  
Telephone: (212) 849-7000  
Facsimile: (212) 849-7100  
Email: jonpickhardt@quinnemanuel.com  
      ellisonmerkel@quinnemanuel.com  
      blairadams@quinnemanuel.com  
      briancampbell@quinnemanuel.com  
      brennanelinson@quinnemanuel.com

*Counsel to David Dunn, as Trustee for the Zohar Litigation Trust-A*