**REDACTED VERSION OF ADV. DOCKET NO. 527**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>ZOHAR III, CORP.,[1]<br><br>　　　　　　Debtor. | Chapter 11<br><br>Case No. 18-10512 (KBO) |
| DAVID DUNN, as Litigation Trustee for<br>Zohar Litigation Trust-A,<br><br>　　　　　　Plaintiff,<br><br>　　　　　-against-<br><br>PATRIARCH PARTNERS, LLC;<br>PATRIARCH PARTNERS VIII, LLC;<br>PATRIARCH PARTNERS XIV, LLC;<br>PATRIARCH PARTNERS XV, LLC;<br>PHOENIX VIII, LLC; OCTALUNA LLC;<br>OCTALUNA II LLC; OCTALUNA III LLC;<br>ARK II CLO 2001-1, LIMITED; ARK<br>INVESTMENT PARTNERS II, LP; ARK<br>ANGELS VIII, LLC; PATRIARCH<br>PARTNERS MANAGEMENT GROUP, LLC;<br>PATRIARCH PARTNERS AGENCY<br>SERVICES, LLC; and LYNN TILTON,<br><br>　　　　　　Defendants, and<br><br>180S, INC.; GLOBAL AUTOMOTIVE<br>SYSTEMS, LLC; INTREPID U.S.A., INC.;<br>IMG HOLDINGS, INC.; SCAN-OPTICS,<br>LLC; STILA STYLES, LLC; SNELLING<br>STAFFING, LLC; and VULCAN<br>ENGINEERING, CO.,<br><br>　　　　　　Nominal Defendants. | Adv. Pro. No. 20-50534 (KBO) |

---

[1] The Debtor in this chapter 11 case, along with the last four digits of its federal tax identification number, is Zohar III, Corp., (9612). The Debtor's address is c/o Province, LLC 70 Canal Street, Suite 12E, Stamford, CT 06902. In addition to Zohar III, Corp., the Debtor's affiliates include the following debtors whose bankruptcy cases have been closed prior to the date hereof, along with the last four digits of their respective federal tax identification numbers and chapter 11 case numbers: Zohar II 2005-1, Corp. (4059) (Case No. 18-10513); Zohar CDO 2003-1, Corp. (3724) (Case No. 18-10514); Zohar III, Limited (9261) (Case No. 18-10515); Zohar II 2005-1, Limited (8297) (Case No. 18-10516); Zohar CDO 2003-1, Limited (5119) and (Case No. 18-10517). All motions, contested matters, and adversary proceedings that remained open as of the closing of such cases, or that are opened after the date thereof, with respect to such Closed-Case debtors, are administered in this remaining chapter 11 case.

PATRIARCH PARTNERS VIII, LLC;
PATRIARCH PARTNERS XIV, LLC;
PATRIARCH PARTNERS XV, LLC;
OCTALUNA LLC; OCTALUNA II LLC;
OCTALUNA III LLC; PATRIARCH
AGENCY SERVICES, LLC; and
PATRIARCH PARTNERS, LLC,

                Counterclaim and
                Third-Party
                Claimants,

        -against-

ZOHAR CDO 2003-1, LIMITED; ZOHAR
CDO 2003-1, CORP.; ZOHAR II 2005-1,
LIMITED; ZOHAR II 2005-1, CORP.;
ZOHAR III, LIMITED; and ZOHAR III,
CORP.,

                Counterclaim and
                Third-Party
                Defendants.

DAVID DUNN, as Litigation Trustee for
Zohar Litigation Trust-A,

                Plaintiff,

        -against-

LYNN TILTON, PATRIARCH
PARTNERS, LLC, PATRIARCH
PARTNERS VIII, LLC, PATRIARCH
PARTNERS XIV, LLC, PATRIARCH
PARTNERS XV, LLC PATRIARCH
PARTNERS AGENCY SERVICES, LLC,

PATRIARCH PARTNERS
MANAGEMENT GROUP, LLC,
OCTALUNA LLC, OCTALUNA II LLC,
ARK II CLO 2001-1, LIMITED, ARK
INVESTMENT PARTNERS II, L.P., LD
INVESTMENTS, LLC, ZOHAR HOLDING,
LLC, AND ZOHAR HOLDINGS, LLC,

                Defendants.

Adv. Pro. No. 20-50776 (KBO)

**PATRIARCH STAKEHOLDERS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR A PROTECTIVE ORDER REGARDING TAX-RELATED DISCOVERY**

Dated: January 26, 2024
Wilmington, Delaware

**COLE SCHOTZ P.C.**
Norman L. Pernick (No. 2290)
G. David Dean (No. 6403)
Andrew J. Roth-Moore (No. 5988)
500 Delaware Avenue, Suite 1410
Wilmington, DE 19801
Telephone: (302) 652-3131
Facsimile: (302) 652-3117
npernick@coleschotz.com
ddean@coleschotz.com
aroth-moore@coleschotz.com

- and –

**GIBSON, DUNN & CRUTCHER LLP**
Monica K. Loseman (admitted *pro hac vice*)
1801 California St., Suite 4200
Denver, CO 80202
Telephone: (303) 298-5700
Facsimile: (303) 298-5907
mloseman@gibsondunn.com

Mary Beth Maloney (admitted *pro hac vice*)
Akiva Shapiro (admitted *pro hac vice*)
200 Park Avenue
New York, NY 10166
Telephone: (212) 351-4000
Facsimile: (212) 351-4035
mmaloney@gibsondunn.com
ashapiro@gibsondunn.com

*Counsel to Lynn Tilton, Patriarch Partners, LLC, Patriarch Partners VIII, LLC, Patriarch Partners XIV, LLC, Patriarch Partners XV, LLC, Phoenix VIII, LLC, Patriarch Partners Agency Services, LLC, Patriarch Partners Management Group, LLC, Zohar Holdings, LLC, Octaluna LLC, Octaluna II LLC, Octaluna III LLC, Ark II CLO 2001-1, Limited, Ark Investment Partners II, L.P., LD Investments, LLC and Ark Angels VIII, LLC*

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................................ 1

BACKGROUND ..................................................................................................................... 4

    I. The Octalunas Play the Central Role in the Patriarch Tax Structure. ............................ 4

II.    Patriarch Uses a Loss Recovery Methodology to Report Portfolio Company
        Loan Performance for Tax Purposes—and the IRS Approves. ............................. 7

III.    Plaintiff Demands Irrelevant and Personal Tax Information About Patriarch
        and Ms. Tilton from Patriarch and Anchin. .......................................................... 9

        A.    The Parties Work Through Complex Privilege and Consent Issues
            in the Face of Plaintiff's Overbroad Subpoena to Anchin. ........................ 9

        B.    Five Months After Serving Its Subpoena, Plaintiff Demands the
            Patriarch and Ark Workpapers. ................................................................. 11

        C.    Plaintiff Piles on Additional Workpaper Demands Relating to the
            2016 CTB Election and 2012 IRS Audit. .................................................. 13

        D.    Despite Patriarch's Good-Faith Efforts, the Trust Continues to Seek
            Irrelevant and Invasive Information on Ms. Tilton's Personal Tax
            Returns. ...................................................................................................... 14

LEGAL STANDARD ........................................................................................................... 15

ARGUMENT ........................................................................................................................ 16

    I. This Court Should Prohibit the Trust from Seeking Information on Ms. Tilton's
       Personal Tax Returns Outside of the Zohar-Octaluna Chain. ............................... 16

        A.    The Trust's Tax Dividend Claims Cannot Support the Disclosure of
            Information Outside of the Zohar-Octaluna Chain on Ms. Tilton's
            Tax Returns. ............................................................................................... 17

        B.    The Trust Fails to Show How Its Overcollateralization Test Claims
            Require the Disclosure of Irrelevant, Aggregated Tax Return
            Information. ................................................................................................ 18

II.    A Protective Order Is Warranted to Shield Irrelevant and Sensitive
        Workpapers from Disclosure. ............................................................................... 20

        A.    Already Equipped with Ample Tax-Related Discovery, Plaintiff
            Can Show Neither the Need for nor Relevance of the Patriarch and
            Ark Workpapers. ....................................................................................... 20

        B.    Production of the CTB Workpapers Is Disproportionate to the Needs
            of the Case, Particularly When Plaintiff Can Offer No Related
            Theory of Damages. .................................................................................. 24

i

     C.     Plaintiff Cannot Justify Its Fishing Expedition into the IRS Audit Workpapers. ............................................................................................ 25

CONCLUSION ...................................................................................................................... 27

## <u>TABLE OF AUTHORITIES</u>

<u>Page</u>

**Cases**

*Am. Standard Inc. v. Pfizer Inc.*,
    828 F.2d 734 (Fed. Cir. 1987) .................................................................................................20

*In re Avandia Mktg., Sales Pracs. & Prods. Liab. Litig.*,
    924 F.3d 662 (3d Cir. 2019) ....................................................................................................16

*Mannington Mills, Inc. v. Armstrong World Indus.*,
    206 F.R.D. 525 (D. Del. 2002) ...........................................................................3, 20, 23, 26

*Nautilus Ins. Co. v. Day To Day Fashion, Inc.*,
    2019 WL 10255238 (C.D. Cal. Oct. 28, 2019) ......................................................................16

*Norddeusche Landesbank Girozentrale v. Tilton*,
    Index No. 651695/2015 (N.Y. Sup. Ct.) ...................................................................................7

*Pansy v. Borough of Stroudsburg*,
    23 F.3d 772 (3d Cir. 1994) ....................................................................................................16

*Pinkert v. John J. Olivieri, P.A.*,
    2001 WL 641737 (D. Del. May 24, 2001) ..............................................................................19

*Sierrapine v. Refiner Prods. Mfg., Inc.*,
    275 F.R.D. 604 (E.D. Cal. 2011) ...........................................................................................19

*Software Rights Archive, LLC v. Google Inc.*,
    2009 WL 1438249 (D. Del. May 21, 2009) ............................................................................20

*In re Zohar III, Corp.*,
    631 B.R. 133 (D. Del. 2021) ..................................................................................................22

**Rules**

Fed. R. Civ. P. 26(b)(1) .............................................................................................................15

Fed. R. Civ. P. 26(b)(2)(C) ........................................................................................................16

Fed. R. Civ. P. 26(c)(1) .............................................................................................................16

iii

Defendants Lynn Tilton, Patriarch Partners, LLC, Patriarch Partners VIII, LLC, Patriarch Partners XIV, LLC, Patriarch Partners XV, LLC, Phoenix VIII, LLC, Patriarch Partners Agency Services, LLC, Patriarch Partners Management Group, LLC, Zohar Holdings, LLC, Octaluna, LLC, Octaluna II, LLC, Octaluna III, LLC, Ark II CLO 2001-1, Ltd., Ark Investment Partners II, L.P., LD Investments, LLC and Ark Angels VIII, LLC (collectively, the "Patriarch Stakeholders" or "Patriarch") hereby submit this memorandum of law in support of the *Patriarch Stakeholders' Motion for a Protective Order Regarding Tax-Related Discovery* (the "Motion"), file contemporaneously herewith.

## PRELIMINARY STATEMENT

Already equipped with decades of tax information that Patriarch produced in prior litigation, earlier in this bankruptcy, and recently in the above-captioned adversary proceeding (the "Adversary Proceeding"), Plaintiff Zohar Litigation Trust-A ("Plaintiff" or the "Trust") remains unsated.  Determined to boil the ocean without regard to the irrelevance of its requests or the resulting financial burden placed upon Patriarch or its professionals, the Trust has set its sights on Ms. Tilton's personal tax returns and documents from Patriarch tax preparer and non-party Anchin, Block & Anchin LLP ("Anchin").  The Trust's subpoena to Anchin (the "Subpoena") is boundless, practically seeking every piece of paper and file created over the course of Anchin and Patriarch's decades-long relationship.

Patriarch has already consented to—and expended significant resources to review—Anchin's production of tax workpapers for the Zohar Funds (the "Zohar Workpapers"), as well as those for Octaluna, LLC, Octaluna II, LLC, and Octaluna III, LLC (the "Octalunas" and the "Octaluna Workpapers").  But Plaintiff demands *all* other Patriarch workpapers and communications as well, including those for and related to Ms. Tilton personally (the "Tilton

Workpapers"); those for every tax reporting entity between her and the Octalunas (together with the Tilton Workpapers, the "Patriarch Workpapers"); those for her side-by-side investment entities (the "Ark Workpapers"); those for Ms. Tilton's decision to "check the box" for the Zohar Funds and other entities in the Patriarch tax enterprise (the "CTB Elections" and the "CTB Workpapers"); and those for the 2012 IRS audit of Ms. Tilton's enterprise (the "IRS Audit Workpapers"), and related communications (together with the Patriarch, Ark, CTB, and IRS Audit Workpapers, the "Disputed Documents").  And of course, the Trust persists in its request for unredacted copies of Ms. Tilton's personal tax returns.  In light of Patriarch's extensive productions on relevant tax issues and the Trust's *inability to articulate any theory of damages in connection with the CTB Elections*, the Trust's continued demands for production of this irrelevant and sensitive information is the very definition of harassment.  This Court should issue a protective order prohibiting discovery into the Disputed Documents and the information on Ms. Tilton's personal tax returns outside of those in the Zohar-Octaluna Chain, which have all been produced.

Plaintiff's insistence on the workpapers *above* the Octaluna level and information *outside* the chain of information flowing from operating portfolio companies through the Zohar Funds and Octalunas up to Ms. Tilton (the "Zohar-Octaluna Chain") attempts to obfuscate the fundamental importance of the Octalunas to the tax story.  The Octalunas, as the Zohar Funds' preference shareholders and the beneficial owners of the portfolio company equity, 1) received the tax distributions from the portfolio companies; 2) received the preference share payments that Plaintiff (wrongly) claims were intended to cover tax liability; and 3) received in the first instance and for tax purposes, all items of income, loss, deduction, and credit of the Zohar Funds until the Zohar Funds became regarded tax entities in June 2016.  The Complaint acknowledges all of this.  *See* D.I. 472 ("Compl.") ¶¶ 118, 182 & 403.

Having already received the Zohar and Octaluna Workpapers, Plaintiff cannot furnish "proof of either relevance *or* need" for the Disputed Documents it seeks, and as result "discovery is properly denied." *Mannington Mills, Inc. v. Armstrong World Indus.*, 206 F.R.D. 525, 532 (D. Del. 2002). *First*, the Patriarch and Ark Workpapers will not move the ball forward on any of the Trust's tax-related claims—but review and production of the more than 8,500 documents contained within will certainly increase Patriarch and Anchin's burden and add to the already sky-high costs of discovery in this case, which costs are being disproportionately borne by Patriarch. They will provide no further insight into the Trust's overcollateralization test claims when the Octaluna Workpapers contain all the relevant information Anchin received regarding loan credit quality. They could not possibly be relevant to the Trust's claims relating to the allegedly improper tax dividends the *Octalunas* received. Nor could they be relevant or necessary for establishing supposed harm the Funds suffered as a result of the CTB Elections (of which there appears to be none whatsoever). The answer to those questions resides in the workpapers for the Zohar Funds themselves, which, for the period before Ms. Tilton's resignation as Tax Director of the Zohar Funds in 2020, Anchin has already produced and, for the period after Ms. Tilton's resignation, KPMG, the Zohar Funds' current tax advisor, has and refuses to produce to Patriarch.

*Second*, the Trust has failed to articulate how the CTB Workpapers, which largely model the tax implications of the CTB Elections *on Patriarch*, are relevant to determining whether the CTB Elections constituted a breach of the Zohar Funds' governing documents or how the CTB Elections damaged the Zohar Funds. This is all the more galling when the Trust refuses to articulate any related theory of damages. Patriarch submits that the Zohar Funds suffered no damages whatsoever.

*Finally*, the tax discovery currently in the Trust's possession makes clear that ███████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

What remains *unclear* is how these two issues relate back to any of the Trust's claims with any specificity.  Any nominal relevance the IRS Audit Workpapers appear to present certainly is outweighed by the burden Patriarch and Anchin will incur in reviewing and producing them.  As a result, discovery into these workpapers, like the other Disputed Documents, should be prohibited.

## **BACKGROUND**

### **I.    The Octalunas Play the Central Role in the Patriarch Tax Structure.**

In order to demonstrate why the tax documents Plaintiff demands are irrelevant and unnecessary to its claims, it is necessary to explain the historical structure and tax treatment of the Zohar Funds and Patriarch, both before and after the CTB Elections.[2]

The creation of the Zohar Funds was entirely premised on the idea that entities other than the Zohar Funds—namely, the Octalunas as the preference shareholders and U.S. taxpayer owners—would own the equity in the Funds and the portfolio companies, and therefore bear the burdens and liabilities of that ownership, including any tax liabilities.  No. 18-10512, D.I. 2258 ¶ 7.  Ms. Tilton was the only party willing to assume the tax consequences of ownership, and the tax consequences were assumed by the Octalunas which, prior to the 2016 CTB Elections, flowed through to Ms. Tilton personally.  *Id.*

---

[2] Additional detail on the factual background surrounding the tax issues in this case can be found in the *Declaration of Lynn Tilton in Support of Patriarch Stakeholders' Objection to Debtors' Motion Pursuant to Paragraphs 18 and 20 of the Settlement Agreement to Compel Refund of Amounts Paid to Patriarch Stakeholders and for Related Relief. See* No. 18-10512, D.I. 2258.

From the time of their formation until mid-2016, each of the Zohar Funds was disregarded as a separate entity for U.S. federal tax purposes from its Octaluna owner. *Id.* ¶ 8. As a result, all of the tax items attributable to the Zohar Funds were reported on U.S. tax returns filed by the Octalunas. *Id.* In the wake of Patriarch's resignation as collateral manager of the Zohar Funds and the appointment of a replacement manager, Patriarch's relationship with MBIA and the Zohar III Controlling Class deteriorated—largely due to the fact that MBIA and certain Zohar III noteholders were actively assisting the SEC in prosecuting trumped-up claims against Ms. Tilton (all of which were later dismissed in their entirety). *Id.* ¶ 9. Understandably, Ms. Tilton became concerned that MBIA, the Controlling Class, or the new collateral manager would take actions without her knowledge or consent that could trigger massive personal tax liabilities. *Id.* ¶ 10. The refusal, without basis, of the collateral manager and others to provide her with the information necessary for tax return preparation only fueled this fear. *Id.* Thereafter, in June 2016, the Zohar Funds elected to be taxed as corporations for U.S. federal tax purposes and therefore were no longer treated as pass-through entities. *Id.* ¶ 11.

At the outset of the Zohar Funds' formation until the 2016 CTB Elections, the Octalunas reported items of income, gain, loss, deduction, and credit with respect to the portfolio companies on their tax returns based on Schedule K-1 and other tax reporting from those companies. *Id.* ¶ 12. Accordingly, all tax items associated with the equity of the portfolio companies were reported on the tax returns filed by the Octalunas. *Id.* ¶ 14. The Octalunas also reported items of income, gain, deduction, and loss with respect to the Zohar Funds on their tax returns. *Id.* ¶ 12. All tax items associated with the loans issued by the Zohar Funds to the portfolio companies were reported on the tax returns for the Octalunas. *Id.* ¶ 13. These tax items ultimately flowed through to Ms. Tilton

because the Octalunas were classified as partnerships for U.S. federal income tax purposes and Ms. Tilton was the ultimate owner of the Octalunas.  *Id.* ¶ 14.

At the same time that the 2016 CTB Elections were made for the Zohar Funds, similar elections were made for the Octalunas or entities that owned the Octalunas, such that for U.S. federal tax purposes, the benefit and burden of all tax items of the Octalunas (and in turn, the Zohar Funds) would now be borne by the Octalunas directly, instead of by Ms. Tilton as a pass-through owner.  *Id.* ¶ 17.  These elections had significant tax consequences to Ms. Tilton because she was deemed, for U.S. tax purposes, to have contributed assets and liabilities associated with the Zohar Funds and the portfolio companies to domestic corporations, and was required to recognize gain for U.S. tax purposes to the extent that the liabilities exceeded the tax basis in the assets so contributed.  *Id.*  As a consequence of the gain recognition, Ms. Tilton incurred and personally paid over ███████████████████████████████████████████████████████ ██████████████████████████████  This federal payment is reflected in her personal tax return for 2016, which Patriarch produced to the Trust on April 7, 2023.  *See* Jordan Decl. ¶ 21.

As a result of the CTB Elections for both the Zohar Funds and the Octalunas, for U.S. tax purposes, the Octalunas were deemed to contribute the portfolio company loans and the Zohar Funds' note obligations to the Zohar Funds.  No. 18-10512, D.I. 2258 ¶ 19.  Because the tax basis in the portfolio company loans had just been increased to equal their face values, no gain was recognized on that deemed contribution.  *Id.*  However, the Zohar Funds received the portfolio company loans with stepped-up tax basis and, therefore, benefited from the substantial taxes that Ms. Tilton incurred and paid as a consequence of the 2016 CTB Elections.  *Id.*  Upon information and belief, the Zohar Funds incurred no tax liability in connection with these elections.

Consistent with the premise of the Zohar Funds that the Octalunas, not the Zohar Funds, would own the equity of the portfolio companies and bear the burdens associated with that ownership, including tax liabilities, the Octalunas continued to report on their tax returns all items of income, gain, loss, deduction, and credit with respect to the portfolio companies. *Id.* ¶ 20. The Octalunas therefore continued to bear any tax liability associated with beneficial ownership of the portfolio company equity (until the effective date of the Court's March 30, 2020 Order). *Id.*

**II.** **Patriarch Uses a Loss Recovery Methodology to Report Portfolio Company Loan Performance for Tax Purposes—and the IRS Approves.**

As the ultimate taxpayer for the Zohar Funds prior to the CTB Elections, Ms. Tilton reported tax items associated with the Zohar Funds' loans to portfolio companies. To this end, for tax reporting purposes, Patriarch categorized the portfolio company loans according to applicable tax standards to determine how much, if any, of the interest earned on the loan was taxable as interest income. *See* Jordan Decl. Ex. A ¶ 36 (Expert Report of Charles R. Lundelius in *Norddeusche Landesbank Girozentrale v. Tilton*, Index No. 651695/2015 (N.Y. Sup. Ct.) (the "Nord Action")). The categorization for each portfolio company loan was based simply on a snapshot of the portfolio company's condition as of the end of each tax year. *Id.* ¶ 40. Patriarch placed portfolio company loans into one of four categories: Category 1, the best category, which treated loan interest as interest for tax purposes; Category 4, the worst category, which treated loan interest as a reduction in principal for tax purposes; and Categories 2 and 3, which allocated loan interest between principal and interest based on a formula. *Id.* ¶ 36.

Loan categorization for determining taxable interest and loan categorization under the Indentures were guided by different rules and subject to different criteria. *See* Jordan Decl. Ex. B ¶ 10 (Rebuttal Expert Report of Charles R. Lundelius in Nord Action). Under the Indentures, it was the collateral manager's responsibility to categorize each loan the Zohar Funds made or

acquired so that loan performance could be disclosed by category in the Trustee Reports.  *Id.* ¶ 14.

Inverse to the tax categorizations, for Indenture reporting, Category 4 was the best loan category,

while Category 1 was the worst loan category.  *Id.* ¶¶ 11, 13.  While the Indenture categories took

into consideration the expected long-term performance of loans, the categories for tax purposes

required a snapshot evaluation at year-end, without taking into consideration the expected long-

term performance of loans or any anticipated future funding.  *Id.* ¶ 17.

Patriarch maintained its tax categorizations for portfolio company loans in separate

Microsoft Access databases for each Zohar Fund (the "Tax Databases").  *See* Jordan Decl. Ex. C

at 30:13-23, 48:9-13 (Dep. Test. of Jeffrey J. Bowden in Nord Action).  Every year, Patriarch

provided Anchin with reports created from the Tax Databases containing information relating to

the portfolio company loans necessary for tax preparation (the "Tax by Facility Reports").  *Id.* at

39:7-40:8.  The Tax by Facility Reports included, *inter alia*, the basis, interest income, principal,

and capital gains for each loan facility for that year.  *Id.* at 46:9-16.

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████

## III.    Plaintiff Demands Irrelevant and Personal Tax Information About Patriarch and Ms. Tilton from Patriarch and Anchin.

### A.    The Parties Work Through Complex Privilege and Consent Issues in the Face of Plaintiff's Overbroad Subpoena to Anchin.

Plaintiff served the Subpoena on Anchin on February 7, 2023.  *See* Jordan Decl. Ex. F.  For over two decades, Anchin has provided tax and accounting services to Ms. Tilton and her controlled entities.  While this list of entities certainly includes the Zohar Funds themselves (prior to Ms. Tilton's resignation as tax director of the Funds in 2020) and the Octalunas, it also includes every other Patriarch-controlled entity in the Zohar ecosystem: Patriarch Partners, LLC; Patriarch Partners VIII, LLC; Patriarch Partners XIV, LLC; Patriarch Partners XV, LLC; Patriarch Partners Management Group, LLC; Patriarch Partners Agency Services, LLC; Zohar Holdings, LLC; and LD Investments.  Ms. Tilton's non-Zohar investment vehicles and entities are rolled up into her personal tax return as well, including Ark II CLO 2001-1, Limited; Ark Investment Partners II, LP; Ark Angels VIII, LLC; and Phoenix VIII, LLC.

Despite Plaintiff asserting claims potentially relevant to only a few of these entities, the Subpoena issued eleven overbroad requests (the "Requests") aimed at all of them, including, most notably, the following:

- ***Request No. 3***: "All Documents or Communications concerning the ownership or tax structure of the Tilton Controlled Entities or the Zohar Funds, including the Zohar Funds' status as pass-through entities for tax purposes and Lynn Tilton's role as a taxpayer for the Zohar Funds." *Id.* at 18;

- ***Request No. 4***: "All Documents or Communications concerning tax distributions or any individual tax distribution in respect of any Portfolio Company." *Id.*;

- ***Request No. 5***: "All Documents or Communications concerning income, losses, deductions, tax deferral or other tax attributes claimed by any Tilton Controlled Entity on account of its status as owner, for tax purposes, of the Zohar Funds." *Id.*; and

- ***Request No. 6***: "All Documents or Communications concerning income, losses, deductions, tax deferral or other tax attributes claimed by any Tilton Controlled Entity on account of its status as owner, for tax purposes, of the Zohar Funds." *Id*.

Far from narrowly tailored, the other Requests seek every other Patriarch-related Anchin document imaginable. *See, e.g.*, *id*. (Request No. 9) ("All Documents or Communications concerning services You provided to any of the Tilton Controlled Entities…"). Upon information and belief, in the ensuing weeks, counsel for Plaintiff and Anchin met and conferred to discuss the proper scope of the Subpoena.

On April 18, 2023, Plaintiff contacted Patriarch to understand whether it would consent to "Anchin's disclosure of tax-return related documents in response to the subpoena" under section 7216 of the Internal Revenue Code (Title 26), which limits a tax return preparer's ability to disclose tax returns and tax return information. *See* Jordan Decl. Ex. G. In the three months thereafter that the parties negotiated the scope of the Subpoena, the parties had solely discussed the production of workpapers and issues relating to them—despite numerous opportunities to do so, both in correspondence and during conferences, Plaintiff's counsel had not pursued any other category of document implicated by the Requests. *See* Jordan Decl. Ex. H at 3-32.

In May and June of 2023, the parties and Anchin began discussing the general contours of the workpaper review and production. On May 9, the parties met and conferred regarding several issues relating to the Subpoena, including attorney-client privilege under *Kovel* and section 7216 consent. Patriarch informed the Trust that Patriarch would not categorically refuse consent under section 7216 for all workpapers. *See id*. at 7. Patriarch confirmed that it would not make a blanket

refusal of consent. *Id*. At no point during this meeting did Plaintiff bring up specific categories of Anchin workpapers. *Id*. Later that month, Patriarch informed Anchin that it would consent to the production of workpapers relating to the Zohar and Octaluna Workpapers as the only two categories of workpapers that could have any bearing on Plaintiff's claims, and would need to begin reviewing those workpapers for privilege. *See* Jordan Decl. ¶ 8. On June 22, Plaintiff confirmed it understood Patriarch had begun review of the Zohar and Octaluna Workpapers. Jordan Decl. Ex. H at 14-15. At this point, Plaintiff did not ask about any other categories of workpapers beyond the Zohar and Octaluna Workpapers.

**B.      Five Months After Serving Its Subpoena, Plaintiff Demands the Patriarch and Ark Workpapers.**

On July 10, 2023, Plaintiff asked *for the first time* whether Patriarch would specifically consent to the production of workpapers related to the "Ark or Patriarch entities" (the "Ark Workpapers" and "Patriarch Workpapers," respectively). Jordan Decl. Ex. H at 11. Patriarch promptly informed Plaintiff two days later that Patriarch would not consent to the production of the Ark and Patriarch Workpapers because these workpapers had no foreseeable bearing on the tax claims in this case. *Id*. at 9-10. Despite never having broached the issue of these workpapers before that week, Plaintiff responded two days later, misleadingly accusing Patriarch of causing delay and vaguely proclaiming "the obvious relevance of the Ark and Patriarch workpapers." *Id*. at 9. Apparently uninterested in understanding why these workpapers are irrelevant, in that same message, Plaintiff indicated that it would take the issue up with the Court. *Id*. In the spirit of good-faith negotiation, Patriarch suggested the parties discuss the relevance of the Ark and Patriarch Workpapers before either party sought court intervention. *Id*. at 7. Plaintiff agreed. *Id*. at 6.

On July 24, 2023, the parties met and conferred for the first time to discuss the Ark and Patriarch Workpapers.  Plaintiff provided the following reasons for why the Ark and Patriarch Workpapers are relevant:

- *Portfolio Company Ownership*.  Plaintiff asserts that the treatment of portfolio companies in the Ark and Patriarch workpapers may bear on the issue of portfolio company ownership.

- *CTB Elections*.  Plaintiff asserts that Ms. Tilton testified in prior actions about the large tax payment made to the IRS in 2016, and resultantly, the CTB Election has tax implications that go beyond the Zohar and Octaluna level.

- *Tax Distributions*.  Plaintiff asserts that tax distributions would be reflected in entities above the Octaluna level.

- *Loan Categorization*.  Plaintiff expects that there is information on how to classify income from portfolio company loans germane to its claims related to the Funds' overcollateralization ratios (the "OC ratios") above the Octaluna level.

- *General "Interconnectedness"*.  Plaintiff asserts that because the entities within Ms. Tilton's tax structure are so "interconnected," Plaintiff must receive the tax information for all entities to understand the tax information for even some of the entities.

*See* Jordan Decl. Ex. H at 2-3.  Patriarch disagreed with the grounds for relevance Plaintiff provided and responded to each in turn.  *Id.*  Patriarch noted that the information Plaintiff claimed it needed either was not needed at all or would soon be in Plaintiff's possession (if it was not already) after the production of the Zohar and Octaluna Workpapers.  *Id.*  Accordingly, Patriarch emphasized again that it would be withholding consent for tax information contained in workpapers for any Patriarch Stakeholder other than the Zohar Funds and Octalunas.  *Id.*  Patriarch also confirmed that although Patriarch had provided consent under section 7216 for the Zohar and Octaluna Workpapers, Anchin was the party gating which folders of documents Patriarch would review per that consent.  *Id.*

On October 4, 2023, the Trust asked both Anchin and Patriarch to confirm that Patriarch had provided Anchin with the required consent under section 7216 over the Zohar and Octaluna Workpapers. *See* Jordan Decl. Ex. I at 7. Patriarch informed the Trust that Patriarch is prepared to provide the consent subject to final privilege review by Patriarch's tax counsel as coordinated by Anchin. *Id*. at 6. Anchin confirmed that it was working with Patriarch's tax counsel to have that privilege review commenced as quickly as possible. *Id*. at 5. On October 27, 2023, Anchin confirmed with the Trust that it had received the formal written consent from Patriarch, *id*. at 2-3, and on October 31, Anchin produced the remaining Zohar Workpapers, totaling 20,063 pages across 381 documents, Jordan Decl. Ex. J at 1.

### C.  Plaintiff Piles on Additional Workpaper Demands Relating to the 2016 CTB Election and 2012 IRS Audit.

On November 10, 2023, in addition to renewed requests for the Patriarch and Ark Workpapers, the Trust demanded all of Anchin's workpapers in connection with the 2016 CTB Elections and the 2012 IRS audit. *See* Jordan Decl. Ex. K at 2. Seeking to further burden Anchin, the Trust also requested that Anchin conduct custodial collections and produce all workpapers related to any portfolio company financial statement audits. *Id*. at 3. After producing the majority of the Octaluna Workpapers on November 15, Jordan Decl. Ex. L at 1, Anchin informed the Trust that Patriarch had not provided consent to produce the Patriarch, Ark, CTB, or IRS Audit Workpapers, and therefore could not agree to produce those documents. Jordan Decl. Ex. M at 2.

On December 19, 2023, Patriarch, Anchin, and the Trust met and conferred on the remaining Octaluna Workpapers not yet produced and consent for the Patriarch, Ark, CTB, and Audit Workpapers. Patriarch explained that the remaining Octaluna Workpapers to be produced are voluminous and irrelevant state return materials and, to save all parties from the burden of review, proposed that materials be withheld from production. Jordan Decl. Ex. N at 10. The Trust

later agreed to that proposal.  *Id.* at 21.  Patriarch reiterated its position that it would withhold

consent under section 7216 for the Patriarch, Ark, CTB, and IRS Audit Workpapers due to 1) their

irrelevance; 2) the burden of review outweighing any purported benefit; or 3) a combination of the

two.  *Id.* at 10.

**D.    Despite Patriarch's Good-Faith Efforts, the Trust Continues to Seek Irrelevant and Invasive Information on Ms. Tilton's Personal Tax Returns.**

As Patriarch, Anchin, and the Trust were discussing the proper scope of the Subpoena,

Patriarch and the Trust were negotiating an approach to redacting Ms. Tilton's Forms 1040, her

personal income tax returns.  Per the Court's letter ruling on the Trust's motion to compel, *see* D.I.

443 at 3, Patriarch offered the Trust an opportunity to review one of its returns in person with the

Trust's tax expert to determine the proper extent of disclosure.  *See* Jordan Decl. Ex. O at 6.

Patriarch proposed showing a slightly redacted return—redacting only personal identification

information and personal trust-related information.  *Id.* at 11-12.  The Trust agreed.  Jordan Decl.

Ex. P at 6.

Patriarch and the Trust met on October 19, 2023 with their respective tax experts to review

the return (the "October 19 Meeting").  Jordan Decl. Ex. O at 2.  After reviewing the sample return,

the Trust proposed redacting only the information that was redacted in the October 19 Meeting

sample and any other purely personal information.  *Id.* at 1.  Immediately after the October 19

Meeting, Patriarch proposed instead that only the following information be redacted: (a) personal

identification information, trust-related information, and other purely personal information as the

Trust suggested; (b) any information completely outside the Zohar-Octaluna Chain, including

information purely related to the Ark Entities; and (c) portfolio company information that clearly

indicates it flows through the Ark Entities and is otherwise unrelated to the Octaluna Entities.  *Id.*

at 1.  Patriarch also agreed to leave unredacted any information relating to Zohar I or Octaluna

LLC that had previously been unredacted when Patriarch produced Ms. Tilton's Forms 1040 in the Nord Action.  *Id*.

The Trust refused Patriarch's redaction proposal and failed to provide compelling justification for why it needed information outside of the Zohar-Octaluna Chain.  On November 16, 2023, the Trust noted that the information related to the Ark Entities on the Forms 1040 was relevant to the Trust's tax dividend, CTB, and overcollateralization test claims.  Jordan Decl. Ex. Q at 8.  Seeking more than just nominal invocation of the tax-related claims at issue in the Adversary Proceeding, Patriarch requested an explanation of "how discovery into these other entities will move the needle in either direction for any of these claims."  Jordan Decl. Ex. R at 14.

On December 20, 2023, the Trust provided Patriarch with its final attempt at explaining the relevance of the information outside of the Zohar-Octaluna Chain.  The Trust explained that tax dividends issued to the Ark Entities—and information related to them—are relevant when the portfolio company has also issued a dividend to an Octaluna.  Jordan Decl. Ex. S at 6-7.  The Trust also argued that any indication of portfolio company distress, for instance, through a bad debt deduction or the categorization of interest as principle, is relevant to the overcollateralization claims even if that information falls outside the Zohar-Octaluna Chain.  *Id*. at 7.  The Trust provided no explanation for how this information relates to its CTB claims.  *Id*.

Unable to reach resolution with the Trust on either the Subpoena or Ms. Tilton's personal Forms 1040, Patriarch now seeks relief from the Court through this Motion.

## **LEGAL STANDARD**

Parties may only seek discovery on a "nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case…."  Fed. R. Civ. P. 26(b)(1).  The Court "must limit" discovery if, *inter alia*, the "proposed discovery is outside the scope permitted by

Rule 26(b)(1)." Fed. R. Civ. P. 26(b)(2)(C).  For good cause shown, a Court may issue a protective

order "forbidding the disclosure or discovery" or "forbidding inquiry into certain matters, or

limiting the scope of disclosure or discovery to certain matters" in order to "protect a party or

person from annoyance, embarrassment, oppression, or undue burden or expense."  Fed. R. Civ.

P. 26(c)(1).

Good cause may be established where "disclosure will work a clearly defined and serious

injury to the party seeking closure."  *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 786 (3d Cir.

1994).  Non-exclusive factors in considering good cause include whether: (1) "disclosure will

violate any privacy interests"; (2) "information is being sought for a legitimate purpose"; (3)

disclosure "will cause a party embarrassment"; (4) "confidentiality is being sought over

information important to public health and safety"; (5) disclosure "among litigants will promote

fairness and efficiency"; (6) "a party benefitting from the order of confidentiality is a public entity

or official"; and (7) "the case involves issues important to the public."  *In re Avandia Mktg., Sales

Pracs. & Prods. Liab. Litig.*, 924 F.3d 662, 671 (3d Cir. 2019) (*citing Pansy*, 23 F.3d at 787-91).

## **ARGUMENT**

**I.**      **This Court Should Prohibit the Trust from Seeking Information on Ms. Tilton's
Personal Tax Returns Outside of the Zohar-Octaluna Chain.**

It is clear that "much of [Ms. Tilton's] personal tax returns would have nothing [to do] with

[this] case and would include private information of [Ms. Tilton]." *Nautilus Ins. Co. v. Day To

Day Fashion, Inc.*, 2019 WL 10255238, at *2 (C.D. Cal. Oct. 28, 2019) (granting discovery into a

corporation's tax returns but denying it into its owner's personal returns).  Nevertheless, Patriarch

has negotiated with the Trust in good faith regarding the proper scope of redactions in Ms. Tilton's

Forms 1040; Patriarch agreed to leave unredacted all information relating to the Zohar Funds, the

Octalunas, and any corresponding portfolio company loan or equity interests.  *See* Jordan Decl.

Ex. O at 1. But this is not enough for the Trust. It now strains to justify discovery into information on Ms. Tilton's Forms 1040 outside the Zohar-Octaluna Chain, fails to articulate the necessary relevance, and displays its own inability to grasp what information is actually apparent on those returns.

### A. The Trust's Tax Dividend Claims Cannot Support the Disclosure of Information Outside of the Zohar-Octaluna Chain on Ms. Tilton's Tax Returns.

The Trust argues that "information relevant to the Trustee's tax dividend claims is not limited to the 'Zohar and Octaluna chain.'" Jordan Decl. Ex. S at 6. It speculates that "if portfolio companies paid concurrent tax dividends to Ms. Tilton via different paths—such as in part via payments to an Ark Fund and in part via payments to an Octaluna entity—information about the payments along both paths is relevant to whether Ms. Tilton extracted tax distributions that were duplicative, excessive and unauthorized." *Id.* at 6-7. This argument fails for three reasons.

*First*, it is clear from the Complaint that information relevant to the Trust's tax dividend claims *is* limited to the Zohar-Octaluna Chain. Tax dividend claims alleging that "the *Octalunas Entities*…were unjustly enriched…at the expense of the *Zohar Funds*, that were paid in addition to Preference Share Distributions intended to cover the same purported tax attributes" do not implicate the Ark Entities at all. Compl. ¶ 441 (emphasis added).[3]

*Second*, the Trust erroneously believes it is entitled to information about tax dividends certain portfolio companies paid to the Ark Entities based on completely independent ownership

---

[3] Only one of the Trust's claims acknowledges that the Ark Entities received tax distributions at all. *See* Compl. ¶ 695. Count XLII alleges that Ms. Tilton breached Paragraph 20 of the Settlement Agreement by "declaring dividends—to be made directly to her affiliated Octaluna Entities and Ark Entities—during the 15 Month Window." *Id.* Putting aside the issues inherent in the Trust's interpretation of this provision, resolving Count XLII is a question of contract interpretation. It certainly does not hinge upon whether Ark "tax dividends from portfolio companies were duplicative of preference share distributions intended to cover the same burden as the tax dividends, were greater than Ms. Tilton's tax liability, and were in contravention of the applicable formulas in the portfolio companies' LLC agreements." Jordan Decl. Ex. S at 6.

interests not at issue in this Adversary Proceeding.  *See* Compl. ¶ 119 ("…the Ark Entities purported to co-invest with the Zohar Funds and received valuable loan and equity interests in the Portfolio Companies in their own names").  That these distinct and uncontested ownership interests furnished the basis for tax dividends paid to the Ark Entities has no bearing on whether Patriarch properly accepted tax dividends resulting from the contested equity ownership interests.

> *Finally*, ███████████████████████████████████████████

> ████████████████████████████████████████████████████████

> ███████████████████████████████████████████████

### B.     The Trust Fails to Show How Its Overcollateralization Test Claims Require the Disclosure of Irrelevant, Aggregated Tax Return Information.

The Trust argues that it needs all information related to the Ark Entities outside of the Zohar-Octaluna Chain because "information regarding portfolio company credit quality that Ms. Tilton incorporated into her decision making as manager of the Ark Funds bears on the credit quality of loans from those same companies held by Zohar funds."  Jordan Decl. Ex. S at 7.

*First*, Patriarch has already agreed to provide the Trust with the key portfolio company information needed for the overcollateralization test claims.  After the October 19 Meeting, Patriarch explained to the Trust that Patriarch would "leave unredacted items related to portfolio companies directly flowing up to Ms. Tilton's returns."  Jordan Decl. Ex. O at 1.

*Second*, the request that Patriarch leave unredacted, all information related to the Ark Entities on Ms. Tilton's Forms 1040 is not narrowly tailored to the justification the Trust has provided. ███████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████



*Finally*, the Trust makes no attempt to explain how the performance of completely different loans from different lenders bears on the claims that Patriarch purportedly manipulated its reporting pursuant to applicable indentures for the Zohar overcollateralization ratios. If the Trust cannot show that tax categorization of Zohar loans bears on the propriety of Patriarch's loan categorization under the Indentures, *see supra* pp. 7-8, it certainly cannot show that tax treatment of *non-Zohar* loans informs those Zohar overcollateralization-test claims.

*    *    *

The Trust's justifications for information outside of the Zohar-Octaluna Chain are unavailing. At best, its request is irrelevant and invasive; at worst, it is an impermissible end-run at the finances of Ms. Tilton's ability to satisfy any potential judgment ordered against her. *See Pinkert v. John J. Olivieri, P.A.*, 2001 WL 641737, at *7 (D. Del. May 24, 2001) ("The Federal Rules of Civil Procedure do not permit pre-trial discovery of a defendant's finances.") (internal citation omitted); *accord Sierrapine v. Refiner Prods. Mfg., Inc.*, 275 F.R.D. 604, 609 (E.D. Cal. 2011) (citing cases from "district courts across the country" refusing pre-judgment discovery regarding a defendant's "financial condition or ability to satisfy a judgment"). This Court should permit Patriarch to redact this information before producing Ms. Tilton's Forms 1040.

II.    **A Protective Order Is Warranted to Shield Irrelevant and Sensitive Workpapers from Disclosure.**

A.    **Already Equipped with Ample Tax-Related Discovery, Plaintiff Can Show Neither the Need for nor Relevance of the Patriarch and Ark Workpapers.**

The Subpoena seeks confidential tax information above the Octaluna level and outside the Zohar-Octaluna Chain that is completely immaterial to the tax-related claims Plaintiff has asserted and duplicative of the tax discovery already in Plaintiff's possession.  A non-party subpoena is subject to the "same scope of discovery" as party discovery.  *Software Rights Archive, LLC v. Google Inc.*, 2009 WL 1438249, at *2 (D. Del. May 21, 2009).  When a party fails to furnish "proof of either relevance *or* need" for the non-party discovery it seeks, "discovery is properly denied."  *See Mannington Mills, Inc. v. Armstrong World Indus.*, 206 F.R.D. 525, 532 (D. Del. 2002) (quoting *Am. Standard Inc. v. Pfizer Inc.*, 828 F.2d 734, 743 (Fed. Cir. 1987)) (emphasis in original).  Because Plaintiff cannot show the relevance and need required for discovery into any of the four workpaper categories and any related custodially collected documents, a protective order over these documents in proper.

As confirmed by its motion to compel Ms. Tilton's unredacted tax returns in 2023, Plaintiff's focus for its tax-related claims is threefold: 1) the "tax attributes of the Zohar Funds" that passed to Ms. Tilton before the CTB Election and remained with the Funds after, D.I. 371 at 20; 2) the "preference share distributions that could be used to cover tax liabilities," *id*. at 21; and 3) the "tax distributions from the portfolio companies taxed as partnerships," *id*.  The Octalunas, as the preference shareholders of the Funds and the beneficial owners of the portfolio company equity, are the touchpoint by which these topics come into contact with the Patriarch tax structure at all.  Plaintiff has made this clear even from the Complaint.  *See* Compl. ¶¶ 118, 182, and 403; *see also* D.I. 390 at 18-19.  What remains unclear is how the Patriarch and Ark Workpapers could

have any nonduplicative relevance on these topics. Closer inspection of the tax-related claims in the Complaint results in the same conclusion.

***Counts IV-VII, XIV: Claims Relating to Overcollateralization Test Manipulation (Contract, Tort, Fiduciary Duty, and Unjust Enrichment)***. The Trust seeks to link its requested tax discovery back to its overcollateralization test manipulation claims by asserting that Patriarch was making inconsistent claims regarding loan credit quality between its financial reporting and tax reporting. This argument is a shot-for-shot remake of the losing tax argument the plaintiffs in the Nord Action put forward against Patriarch. Patriarch has already reproduced to the Trust the tax-related discovery Patriarch previously produced in the Nord Action. *See* Jordan Decl. ¶ 21. In light of the supplementing productions Patriarch has made in the Adversary Proceeding, the Trust has in its possession all it needs to make its argument.

Nevertheless, to the extent any relevant information shows up anywhere in Anchin's workpapers, it is in the Octaluna Workpapers. As Patriarch explained to the Trust during its December 19, 2023 meet and confer, the information Patriarch provided to Anchin regarding the portfolio company payments and loan credit quality came in the form of loan facility reports (labeled "Loan by Borrower" or "Loan by Facility"). *See* Jordan Decl. Ex. N at 10. The information from these loan facility reports was ported into the Octaluna tax filings, which then ultimately worked its way up to Ms. Tilton's Form 1040. There is no reason why the Trust would need the Patriarch or Ark workpapers to move its tax argument forward.

***Counts XV-XVII: Contract and Tort Claims Relating to the CTB Elections***. The Patriarch and Ark Workpapers could have no possible relevance to Plaintiff's tax-related claims focusing on the CTB Elections and the governing documents of the Zohar Funds. Plaintiff claims that the CTB Elections caused the Octalunas to breach the Zohar Funds' Subscription Agreements,

Compl., Count XV; Ms. Tilton to interfere with the Zohar Funds' Subscription Agreements, *id*., Count XVI; and both Ms. Tilton and the Octalunas to interfere with the Zohar Funds' Indentures, *id*., Count XVII.  The information contained in the Patriarch and Ark Workpapers fail to make any fact of whether there was breach of or interference with these governing documents more or less likely.  Nor would the Patriarch and Ark Workpapers provide any insight into the resulting harm to the Funds.  As this Court noted when discussing the CTB Election in its motion to dismiss decision, "[t]he question here is not ***if*** the Funds will incur tax liabilities but rather, ***when*** and ***how much***."  *In re Zohar III, Corp.*, 631 B.R. 133, 181 (D. Del. 2021) (emphasis in original).  The only tax workpapers that could possibly have any bearing on those questions belong to the Zohar Funds alone, *not* to Ms. Tilton personally or any entities between her and the Octalunas (for example, Zohar Holdings, LLC).[4]

***Counts XIX-XXII: Fraudulent Transfer Claims Relating to the CTB Elections***.  Plaintiff asserts fraudulent transfer claims under both federal bankruptcy law and state law against Ms. Tilton and the Octalunas.  *See* Compl., Counts XIX-XXII.  These claims focus on the alleged harm inflicted upon the Zohar Funds as a result of the "incurrence of tax obligations that had previously been the tax obligations of Tilton and the Octaluna Entities."  *Id*. ¶ 408.  But as discussed in connection with the other claims relating to the CTB Elections, the Patriarch and Ark Workpapers would not demonstrate any purported harm to the Zohar Funds as a result of their transformation into regarded entities; indeed, the only category of tax workpapers that could show such harm would be the Zohar Workpapers.

---

[4] To this end, Patriarch has already consented to Anchin's production of the Zohar Workpapers in Anchin's possession.  *See supra* p. 13.  In stunning contrast, KPMG has claimed that its workpapers for the Zohar Funds are irrelevant.  *See* D.I. 495.

To the extent Plaintiff seeks this discovery to demonstrate that "[t]he CTB Election was made with an actual intent to hinder, delay, and/or defraud the Zohar Funds' creditors, to the detriment and harm of such creditors," Compl. ¶ 410, Plaintiff still cannot show the "relevance *or need*" required to warrant discovery. *Mannington Mills, Inc.*, 206 F.R.D. at 532. Plaintiff states that this intent can be inferred from following allegations:

- **"…the obligations were incurred for the benefit of insiders of the Zohar Funds (Tilton and her affiliates)…"** Compl. ¶ 410. Any benefit would be reflected in the Octaluna Workpapers, which Anchin has already produced;

- **"…the obligations were incurred without consideration to the Zohar Funds…"** *Id*. To the extent reflected in any tax workpapers, this fact would be in the Zohar Workpapers Anchin has already produced or those workpapers that KPMG currently refuses to produce to Patriarch. *See* D.I. 495;

- **"…the obligations were incurred in violation of affirmative obligations of the Zohar Funds not to engage in such transactions…"** Compl. ¶ 410. The Patriarch and Ark Workpapers are irrelevant to any claim that Patriarch breached or interfered with the governing documents of the Zohar Funds. *See supra* pp. 21-22; and

- **"…the Zohar Funds were insolvent at the time of the CTB Election."** Compl. ¶ 410. This too would be reflected in the Zohar Workpapers or KPMG Workpapers, not the Patriarch or Ark Workpapers.

Plaintiff then cannot demonstrate that it is entitled to discovery on these documents to show intent.

**Counts VI, VII, XVIII, XXIV, XXV & XLII: Claims Relating to Tax Dividends (Contract, Tort, Fiduciary Duty, and Unjust Enrichment)**. Plaintiff argues that "the *Octaluna Entities* and Tilton, received Tax Dividends from the Portfolio Companies, which are property of the Zohar Funds." Compl. ¶ 403 (emphasis added). To the extent that Plaintiff seeks this discovery to show where these allegedly improper tax distributions went, that question has already been answered.

Although Plaintiff claims that Ms. Tilton benefited from these payments "as the ultimate tax payers for the Octaluna Entities," *id*. ¶ 441, there is no suggestion that these payments went directly to her or any other Patriarch entity other than the Octalunas, *see, e.g.*, *id*. ¶ 442 ("Upon

information and belief, other Tax Dividends were paid to other Octaluna Entities, which should have been paid to the Zohar Funds.")  Plaintiff's past representations to this Court relating to the tax payment issue demonstrate this point clearly.  *See* No. 18-10512, D.I. 2168 at 12 ███

███████████████████████████████████████████████████████████████████████

███████████████████████████████████  (emphasis added).  As a result, Plaintiff cannot show the relevance or need required for the disclosure of either the Patriarch or Ark Workpapers when the Octaluna Workpapers are more than sufficient.

Nevertheless, the Trust has taken the position that "[t]ax dividends paid to Ms. Tilton from the relevant portfolio companies are relevant, regardless of whether the dividends passed through an Octaluna entity." Jordan Decl. Ex. S at 6.  As discussed in relation to Ms. Tilton's Forms 1040, *see supra* pp. 17-18, the Trust is not entitled to information about tax dividends certain portfolio companies paid to the Ark Entities based on completely independent ownership interests not at issue in the Adversary Proceeding.  Accordingly, discovery into workpapers reflecting this information or related custodially collected documents is wholly irrelevant.

**B.   Production of the CTB Workpapers Is Disproportionate to the Needs of the Case, Particularly When Plaintiff Can Offer No Related Theory of Damages.**

The Trust has failed to articulate how the CTB Workpapers, which largely model the tax implications of the CTB Election *on Patriarch*, are relevant to determining whether the CTB Election constituted a breach of the Zohar governing documents or how the Zohar Funds were damaged by CTB Election.  Upon information from Anchin, the volume of the CTB Workpapers and IRS Audit Workpapers together is *more than 127,000 pages* over more than 800 documents.

Although Patriarch has pressed the Trust to articulate its theory of damages resulting from the CTB Elections, it has consistently evaded providing any meaningful answer.  The Trust has only vaguely declared that it will seek the "[e]xpenses and tax burdens placed on the Zohar Funds

in connection with CTB Election in an amount to be proven at trial, which at this time is estimated to be no less than $4 million." Jordan Decl. Ex. T at 19. However, █████████████████████ ██████████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████[5]  In fact, ████████████████████████ ███████████████████████████████████████ it is unfathomable that the Funds would have ever experienced positive taxable income since the CTB Elections—or would ever experience such in the future.

One would expect the same to be the case for any state returns filed by the Estates, but the Zohar Funds have never filed state returns either with Ms. Tilton as tax director prior to 2020 or after. *See* Jordan Decl. Ex. U at 1. The Trust has recently informed Patriarch that the Funds "are in the process of preparing state returns for 2016 through 2022 but none have been filed as of yet." *Id*. Having become responsible for filing its own tax returns back in 2020, it is inexplicable why the Zohar Funds have waited nearly four years to file state returns or why they would need to do so in any event.

Because the Trust has failed to articulate with specificity why the CTB Workpapers are relevant to its claims, including those for which it has no damages theory, Patriarch should not have to undergo the burden of reviewing more than 127,000 pages associated with production of the CTB Workpapers and the IRS Audit Workpapers discussed next.

### C.    Plaintiff Cannot Justify Its Fishing Expedition into the IRS Audit Workpapers.

Continuing on its path of scorched-earth discovery, the Trust seeks all workpapers in connection with the IRS audit of Ms. Tilton's tax structure in 2012. The materials already

---

[5] ████████████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████████████████████

produced to the Trust in this Adversary Proceeding and earlier in the bankruptcy make clear that the IRS audit is completely unrelated to the claims the Trust has alleged here.  As the Trust can see from materials already in its possession, ████████████████████████████████ ████████████████████████████████████████████████████████████

IRS Audit Workpapers ██████████████████████████ do not substantively move the Trust's tax-related claims forward.  *First*, neither issue touches on the propriety of tax dividends paid to the Octalunas as a result of the tax burden she shouldered in connection with portfolio company ownership.  *See* Compl., Counts VI, VII, XVIII, XXIV, XXV & XLII.  *Second*, neither issue contemplated whether it would be a breach of the Zohar Fund governing documents for Funds to be treated as regarded tax entities.  *See id*., Counts XV-XVII & XIX-XXII.  *Finally*, the Trust has not explained how either issue would inform the propriety of Patriarch's calculation of the overcollateralization test.  *See id*., Counts IV-VII, XIV.

Despite the fact that the IRS Audit Workpapers do not bear on the tax-related claims brought forward by the Trust in the Adversary Proceeding—except perhaps for the fact that a government agency heavily scrutinized Ms. Tilton's tax approach and then gave that approach its blessing—the Trust demands that Anchin and Patriarch undertake the burden to review and produce these heavily-lawyered documents.  Having failed to articulate the "proof of either relevance *or* need" to justify review and production of the IRS Audit Workpapers or related custodially collected documents, "discovery [in this workpaper set] is properly denied."  *See Mannington Mills, Inc.*, 206 F.R.D. at 532 (internal citation omitted).

## <u>CONCLUSION</u>

For the foregoing reasons, Patriarch respectfully requests that the Court grant the Motion and enter an order substantially similar to that attached as **Exhibit A** to the Motion.

[*The remainder of the page is intentionally left blank.*]

Dated: January 26, 2024
Wilmington, Delaware

**COLE SCHOTZ P.C.**

By: */s/ G. David Dean*
Norman L. Pernick (No. 2290)
G. David Dean (No. 6403)
Andrew J. Roth-Moore (No. 5988)
500 Delaware Avenue, Suite 1410
Wilmington, DE 19801
Telephone: (302) 652-3131
Facsimile: (302) 652-3117
npernick@coleschotz.com
ddean@coleschotz.com
aroth-moore@coleschotz.com

– and –

**GIBSON, DUNN & CRUTCHER LLP**
Monica K. Loseman (admitted *pro hac vice*)
1801 California Street, Suite 4200
Denver, CO 80202-2642
Telephone: (303) 298-5784
Facsimile: (303) 313-2828
mloseman@gibsondunn.com

Akiva Shapiro (admitted *pro hac vice*)
Mary Beth Maloney (admitted *pro hac vice*)
200 Park Avenue
New York, NY 10166-0193
Telephone: (212) 351-4000
Facsimile: (212) 351-4035
ashapiro@gibsondunn.com
mmaloney@gibsondunn.com

*Counsel to Lynn Tilton, Patriarch Partners, LLC, Patriarch Partners VIII, LLC, Patriarch Partners XIV, LLC, Patriarch Partners XV, LLC, Phoenix VIII, LLC, Patriarch Partners Agency Services, LLC, Patriarch Partners Management Group, LLC, Zohar Holdings, LLC, Octaluna LLC, Octaluna II LLC, Octaluna III LLC, Ark II CLO 2001-1, Limited, Ark Investment Partners II, L.P., LD Investments, LLC and Ark Angels VIII, LLC*