**PUBLIC VERSION OF ADV. DOCKET NO. 792**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>*ZOHAR III, CORP., et al.,*[1]<br><br>     Debtor. | Chapter 11<br><br>Case No. 18-10512 (KBO) |
| DAVID DUNN, as Litigation Trustee for Zohar Litigation Trust-A,<br><br>     Plaintiff,<br><br>     -against-<br><br>PATRIARCH PARTNERS, LLC; PATRIARCH PARTNERS VIII, LLC; PATRIARCH PARTNERS XIV, LLC; PATRIARCH PARTNERS XV, LLC; PHOENIX VIII, LLC; OCTALUNA LLC; OCTALUNA II LLC; OCTALUNA III LLC; ARK II CLO 2001-1, LIMITED; ARK INVESTMENT PARTNERS II, LP; ARK ANGELS VIII, LLC; PATRIARCH PARTNERS MANAGEMENT GROUP, LLC; PATRIARCH PARTNERS AGENCY SERVICES, LLC; and LYNN TILTON,<br><br>     Defendants, and<br><br>180S, INC.; GLOBAL AUTOMOTIVE SYSTEMS, LLC; INTREPID U.S.A., INC.; IMG HOLDINGS, INC.; SCAN-OPTICS, LLC; STILA STYLES, LLC; SNELLING STAFFING, LLC; and VULCAN ENGINEERING, CO.,<br><br>     Nominal Defendants. | Adv. Pro. No. 20-50534 (KBO) |
| PATRIARCH PARTNERS VIII, LLC; PATRIARCH PARTNERS XIV, LLC; | |

---

[1] The Debtor in this chapter 11 case, along with the last four digits of its federal tax identification number, is Zohar III, Corp., (9612). The Debtor's address is c/o Province, LLC 70 Canal Street, Suite 12E, Stamford, CT 06902. In addition to Zohar III, Corp., the Debtor's affiliates include the following debtors whose bankruptcy cases have been closed prior to the date hereof, along with the last four digits of their respective federal tax identification numbers and chapter 11 case numbers: Zohar II 2005-1, Corp. (4059) (Case No. 18-10513); Zohar CDO 2003-1, Corp. (3724) (Case No. 18-10514); Zohar III, Limited (9261) (Case No. 18-10515); Zohar II 2005-1, Limited (8297) (Case No. 18-10516); Zohar CDO 2003-1, Limited (5119) and (Case No. 18-10517). All Motions, contested matters, and adversary proceedings that remained open as of the closing of such cases, or that are opened after the date thereof, with respect to such Closed-Case debtors, are administered in this remaining chapter 11 case.

PATRIARCH PARTNERS XV, LLC;
OCTALUNA LLC; OCTALUNA II LLC;
OCTALUNA III LLC; PATRIARCH
AGENCY SERVICES, LLC; and
PATRIARCH PARTNERS, LLC,

                Counterclaim and
                Third-Party
                Claimants,

-against-

ZOHAR CDO 2003-1, LIMITED; ZOHAR
CDO 2003-1, CORP.; ZOHAR II 2005-1,
LIMITED; ZOHAR II 2005-1, CORP.;
ZOHAR III, LIMITED; and ZOHAR III,
CORP.,

                Counterclaim and
                Third-Party
                Defendants.

---

DAVID DUNN, as Litigation Trustee for
Zohar Litigation Trust-A,

                Plaintiff,

-against-

LYNN TILTON, PATRIARCH
PARTNERS, LLC, PATRIARCH
PARTNERS VIII, LLC, PATRIARCH
PARTNERS XIV, LLC, PATRIARCH
PARTNERS XV, LLC PATRIARCH
PARTNERS AGENCY SERVICES, LLC,
PATRIARCH PARTNERS
MANAGEMENT GROUP, LLC,
OCTALUNA LLC, OCTALUNA II LLC,
ARK II CLO 2001-1, LLC, ARK
INVESTMENT PARTNERS II, L.P., LD
INVESTMENTS, LLC, ZOHAR HOLDING,
LLC, AND ZOHAR HOLDINGS, LLC,

                Defendants.

Adv. Pro. No. 20-50776 (KBO)

Re: Adv. D.I. 530

**PATRIARCH STAKEHOLDERS' MEMORANDUM OF LAW
IN OPPOSITION TO ZOHAR LITIGATION TRUST-A'S MOTION TO COMPEL
INTERROGATORY NO. 5**

Dated: January 31, 2025
Wilmington, Delaware

**COLE SCHOTZ P.C.**
Norman L. Pernick (No. 2290)
G. David Dean (No. 6403)
500 Delaware Ave., Suite 1410
Wilmington, DE 19801
Telephone: (302) 652-3131
Facsimile: (302) 652-3117
npernick@coleschotz.com
ddean@coleschotz.com

– and –

**GIBSON, DUNN & CRUTCHER LLP**
Monica Loseman (admitted *pro hac vice*)
1801 California St., Suite 4200
Denver, CO 80202
Telephone: (303) 298-5700
Facsimile: (303) 298-5907
mloseman@gibsondunn.com

Mary Beth Maloney (admitted *pro hac vice*)
Akiva Shapiro (admitted *pro hac vice*)
200 Park Ave.
New York, NY 10166
Telephone: (212) 351-4000
Facsimile: (212) 351-4035
mmaloney@gibsondunn.com
ashapiro@gibsondunn.com

*Counsel to Lynn Tilton, Patriarch Partners, LLC,
Patriarch Partners VIII, LLC, Patriarch Partners
XIV, LLC, Patriarch Partners XV, LLC, Phoenix
VIII, LLC, Patriarch Partners Agency Services,
LLC, Patriarch Partners Management Group,
LLC, Zohar Holdings, LLC, Octaluna LLC,
Octaluna II LLC, Octaluna III LLC, Ark II CLO
2001-1, Limited, Ark Investment Partners II, L.P.,
LD Investments, LLC and Ark Angels VIII, LLC*

i

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT .................................................................................................1

BACKGROUND ....................................................................................................................2

ARGUMENT ........................................................................................................................8

    I.      Legal Standard ......................................................................................8

    II.     Patriarch's Amended Response Fully Complies With The Court's May 6 Order ...................................................................................................9

          A.     Patriarch Provided a Robust, Compliant Response to Interrogatory No. 5 ...........................................................................................10

          B.     The Trust's Improper Demands Are Far Outside the Scope of the Interrogatory .....................................................................................15

CONCLUSION......................................................................................................................21

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Ampex Corp. v. Mitsubishi Elec. Corp.*,
   937 F.Supp. 352 (D. Del. 1996) ...................................................................................14

*Astriab v. City of Jersey City*,
   2010 WL 11569580 (D.N.J. July 28, 2010) .................................................................8

*In re Domestic Drywall Antitrust Litig.*,
   300 F.R.D. 228 (E.D. Pa. 2014) .................................................................................14

*Gaia House Mezz LLC v. State St. Bank & Tr. Co.*,
   720 F.3d 84 (2d Cir. 2013) .........................................................................................20

*Harold J. Rosen Tr. V. Rosen*, 386 N.Y.S.2d 491 (N.Y. App. Div. 1976),
   *aff'd*, 371 N.E.2d 828 (N.Y. 1977) ............................................................................20

*Hayes v. Bergus*,
   2015 WL 5666128 (D.N. J. Sept. 24, 2015) ...............................................................9

*Inventio AG v. ThyssenKrupp Elevator Americas Corp.*,
   662 F. Supp. 2d 375 (D. Del. 2009) ............................................................................8

*Nestle Foods Corp. v. Aetna Cas. and Sur. Co.*,
   135 F.R.D. 101 (D.N.J. 1990) ...................................................................................14

*Schneck v. International Business Machines Corp.*,
   1993 WL 765638 (D.N.J. July 27, 1993) ...................................................................15

*Struthers Sci. & Int'l Corp. v. Gen. Foods Corp.*,
   51 F.R.D. 149 (D. Del. 1970) ...............................................................................14, 15

*Tobacco and Allied Stocks vs. Transamerica Corp.*,
   16 F.R.D. 537 (D. Del. 1954) ..........................................................................8, 18, 21

*U.S. v. Columbia Steel Co.*,
   7 F.R.D. 183 (D. Del. 1947) ..................................................................................8, 18

*Willemijn Houdstermaatschappij BV v. Apollo Computer Inc.*,
   707 F. Supp. 1429 (D. Del. 1989) .............................................................................12

*Younes v. 7-Eleven, Inc.*,
   312 F.R.D. 692 (D.N.J. 2015) ...............................................................................14, 15

## Rules

Fed. R. Civ. P. 26(b)(1) ......................................................................................................8

Fed. R. Civ. P. 26(b)(2)(C)(i) ............................................................................................8

Fed. R. Civ. P. 33........................................................................................................8, 18

Fed. R. Civ. P. 33(c)........................................................................................................12

Fed. R. Civ. P. 33(d) ................................................................4, 8, 10, 11, 12, 13, 15

Defendants Lynn Tilton, Patriarch Partners, LLC, Patriarch Partners VIII, LLC, Patriarch Partners XIV, LLC, Patriarch Partners XV, LLC, Phoenix VIII, LLC, Patriarch Partners Agency Services, LLC, Patriarch Partners Management Group, LLC, Zohar Holdings, LLC, Octaluna, LLC, Octaluna II, LLC, Octaluna III, LLC, Ark II CLO 2001-1, Ltd., Ark Investment Partners II, L.P., LD Investments, LLC and Ark Angels VIII, LLC (collectively "Patriarch") hereby submit this memorandum of law in opposition to Plaintiff Zohar Litigation Trust-A's (the "Trust") *Motion to Compel* (the "Motion").

## PRELIMINARY STATEMENT

Patriarch has responded to the Trust's Interrogatory No. 5, in compliance with the Court's order of May 6, 2024. *See* Motion at 7. The Trust simply does not like Patriarch's answer and asks the Court now to compel a different one.[2] That is improper.

On December 13, 2024, Patriarch amended its response and objections to Interrogatory No. 5 to fully address each of the components of the Trust's compound interrogatory (the "Amended Response"). This Amended Response includes six pages of detailed information, along with clear guidance on how the Trust could use the documents in its possession, including the Trustee Reports and associated data files, to identify and review each deferral of interest payment—as Patriarch has repeatedly explained to the Trust for many months. *See* Ex. 1.[3] The response provided descriptive explanations; it offered examples; it identified both specific documents and categories of documents that the Trust could easily consult for the information

---

[2] This latest race to the Court by the Trust is also an obvious deflection of its own failure to produce portfolio company documents. *See* Ex. 2 at 1-3. The Trust's discovery deficiencies are legion, including its continued violation of the Court-ordered Seventh Amended Scheduling Order, *see* D.I. 765 ¶ 4, its admission to Patriarch that there has been potential spoliation of custodial documents from two portfolio companies it is asserting claims on behalf of, *see* D.I. 704; D.I. 705, and its failure to preserve electronically stored information for at least 15 custodians from other portfolio companies. *See* Ex. 3 at 3 ("…the Trust only identified fifteen custodians…from whom collections are no longer possible…"). Defendants intend to seek Court intervention in due course.

[3] All exhibits ("Ex.") are attached to the accompanying declaration of Ana Lopez, submitted herewith.

sought; and it even compiled data for the Trust that the Trust could equally have compiled for itself. A cursory glance at the Amended Response demonstrates its obvious sufficiency.

The Trust does not meaningfully dispute that Patriarch responded to the Interrogatory. But since the response does not support the Trust's unfounded legal assumptions and theory of its case, it now seeks to compel a different result. But interrogatories are not for "legal conclusions of an attorney"—they are for facts. *See infra* at 9. Patriarch has provided a factual response consistent with applicable rules, caselaw, and prior orders of this Court. Because Patriarch fully complied with this Court's May 6 order and responded to the Trust's Interrogatory No. 5, and the Trust requests a response beyond the proper scope of this discovery vehicle, the Court should deny the Trust's Motion.

## BACKGROUND

On September 22, 2023, the Trust served its First Set of Interrogatories. *See* Ex. 4. Interrogatory No. 5 requests that Patriarch "[i]dentify each instance between 2003 and 2016 when [Patriarch] adjusted or waived an interest payment from a portfolio company." *Id.* at 8. The Interrogatory includes five subsets of information requests: "a. The date of each adjustment or waiver"; "b. The amount adjusted or waived"; "c. The manner (including whether reduced to writing) in which the adjustment or waiver was made"; "d. The revised terms of the obligation"; and "e. Bates numbers for documents reflecting the above information." *Id.* Patriarch first responded to the Interrogatory on October 23, 2023, and objected to the Interrogatory as overly burdensome, seeking information already in the Trust's possession, and vague and ambiguous, including with respect to the terms "manner," "adjusted," "waived," and "revised terms of the obligation." *See* Ex. 5. Patriarch agreed to meet and confer with the Trust on November 14, 2023, to better understand what it was seeking with this Interrogatory. Specifically, during the meet and confer Patriarch requested clarification from the Trust on its use of terms such as "waiver,"

2

"adjustment," and "reduction."  *See* Ex. 6 at 1-2.  Because the terms of the Trust's Interrogatory

are not tied to any specific provisions in the agreements at issue in this proceeding, Patriarch

informed the Trust that the terms it uses in Interrogatory No. 5 were vague and unworkable.  *See*

*id.* ("In particular, the language used in this interrogatory should be tied to specific provisions in

the contracts at issue.  Otherwise, the terms are vague and unworkable…").  Patriarch continued

to seek clarification from the Trust about its requests, but the Trust refused to clarify or define

these terms and instead, on January 26, 2024, moved to compel a response.  *See generally* D.I.

530; *see also* Ex. 6 at 1-2; Ex. 7 at  2-3.  In its motion to the Court, the Trust continued to fail and

refuse to define these terms.  *See* D.I. 530 at 10-11, 26-27.  On May 6, 2024, the Court ordered

Patriarch to "respond to Interrogatory No. 5."  D.I. 652 ¶ 6.

In order to better respond to the Interrogatory, over the ensuing months, Patriarch met and

conferred several times with the Trust to gain clarity as to what, exactly, the Trust was seeking.

Throughout this process, the Trust displayed a fundamental misunderstanding of how Patriarch

and the Zohar Funds operated, which made it difficult to understand what the Trust sought in its

Interrogatory.  For example, during one of the parties' meet and confers just a few months ago,

and over one year into discovery, the Trust acknowledged that it was unaware of the information

included in the Trustee Reports, that the reports were not, in fact, prepared by Patriarch, or that

those reports had accompanying data files—which the Trust had never reviewed.  *See* Ex. 8 at 2-

3.  Despite this, the Trust argued, including to the Court, that those unreviewed documents would

be insufficient to address Interrogatory No. 5.  *See* D.I. 573 at 12 n.7.[4]  In correspondence and on

calls, Patriarch explained that it would have to compile "information that covers over 17 years'

---

[4] In its reply brief to its prior Motion to Compel Patriarch's response to Interrogatory No. 5, the Trust claimed that Zohar I's Trustee Reports "do not contain payment information by facility."  *Id.*  This makes clear that the Trust did not review the associated data files that accompany the Trustee Reports because they *do* reflect loan payment information by facility. *See, e.g.*, Ex. 9.

worth of data" in order to respond to the Trust's Interrogatory based on materials that are already in the Trust's possession. *See* Ex. 10 at 3. Indeed, the information sought was equally ascertainable by Patriarch and the Trust in the documents and data produced in this case (or otherwise already in the Trust's possession, custody, or control) and the exercise that the Trust was insisting Patriarch undertake to respond to the interrogatory was one equally burdensome to Patriarch, and thus one it was not required to assume. *See* Fed. R. Civ. P. 33(d). Specifically, Patriarch continued to explain to the Trust that Interrogatory No. 5 demands information already reflected in the Trustee Reports and accompanying data files, which the Trust has had for years. *See* Ex. 10 at 3; D.I. 550 at 25-26; Ex. 11 at 3. These documents reflect "every instance between 2003 and 2016" when an interest payment from a portfolio company was waived or deferred, as Patriarch had informed the Trust repeatedly. Ex. 4 at 8. Specifically, the Trust's Interrogatory required Patriarch to compile every monthly or quarterly instance in which interest was deferred across over 100 loan facilities over fourteen years. As Patriarch explained to the Trust, *see* Motion at 4, due to the distressed nature of the assets in the Zohar Funds and pursuant to the Funds' Indenture Agreements, Patriarch deferred ***thousands of interest payments*** across the fourteen years at issue in the Trust's Interrogatory. *See* Ex. 12 § 7.7(a). Patriarch does not have this data already compiled in some pre-existing form for the Trust's consumption. Accordingly, to respond to the Interrogatory in the manner that the Trust appears to demand would require Patriarch to create new work product compiling, extracting, and describing the information the Trust has in its possession and which it is equally capable of doing itself from the produced documents. *See* D.I. 550 at 25-26; Ex. 1. The law does not require that Patriarch undertake such an exercise. *See* Fed. R. Civ. P. 33(d); *infra* at 9. Nevertheless, Patriarch undertook the burden of preparing a robust

and lengthy response that answered all Interrogatory subparts and painstakingly illustrated to the Trust how it had the information requested at its disposal.  *See* Ex. 1.

On December 13, 2024, pursuant to the Court's May 6 Order, Patriarch provided its Amended Response to the Trust's Interrogatory No. 5.  In its Amended Response, Patriarch (i) identified and explained the documents in the Trust's possession that reflect the date and amount of every waived and deferred interest payment from 2003 through 2016, (ii) the manner in which the waivers and deferrals were made, (iii) revised terms of obligation (if any), and (iv) the Bates numbers for the documents reflecting the above information.  *See id.*  At the outset of its Amended Response, Patriarch explained that the manner by which interest payments were waived or deferred was "in writing and/or by course of performance" pursuant to "§ 7.7(a) of the Zohar I, Zohar II, and Zohar III Indentures."  *Id.*  Patriarch also identified (i) letters reflecting Patriarch's forgiveness of interest, (ii) Trustee Reports and associated data files, (iii) a document reflecting interest payment activity in Patriarch's proprietary loan database ("MAMA"), (iv) the portfolio company financial statements, and (v) the spreadsheets that Patriarch used to track payment activity prior to MAMA.  The forgiveness of interest letters reflected the date and amount of any interest accrued that was ultimately forgiven.  *See, e.g.*, Ex. 13; Ex. 14.

With respect to the Trustee Reports and associated data files, specifically, Patriarch also provided two guided sample explanations of how to review the Trustee's records and also specified where in those records every instance of a deferral—including the date and amount of any payment made in accordance with the deferral, and the specific line entries, columns, and contractual provisions where the Trust can identify and review the information sought—is reflected.  *See* Ex. 1. ("…as reflected in the Zohar III Trustee Report, *the December 2010 quarterly interest payment was $58,069.44* and *payment was made on December 3, 2010*…[t]herefore, *the remaining*

***$21,930.56 in interest was deferred*** and 180s, LLC accrued $21,930.56 in interest that it continued

to owe to Zohar III.") (emphasis added).  Patriarch also cited the relevant Portfolio Companies'

Credit agreements, detailing the relevant provisions needed to compute the original interest amount

owed, so that the Trust understands exactly how to confirm the revised interest amount that was

paid in accordance with a deferral.  *See id.* ("This information is also reflected in Section 2.6 of

the Credit Agreement for 180s, LLC, and Schedule 2.1 reflected in Amendment No. 19 to the same

Credit Agreement.").  Moreover, Patriarch provided a compilation of every instance of interest

deferral and payment activity for Zohar III from 2007 through 2015, all of which was pulled

entirely from the Trustee Reports and associated data files, as a sample of the work the Trust could

also do.  *See* D.I. 782, Ex. D, Appendix A.

On December 20, the parties met and conferred regarding Patriarch's Amended Response.

Patriarch explained the detailed instructions and information reflected in that response, and

answered the Trust's questions concerning Patriarch's interest deferral practice.  Patriarch

repeatedly explained to the Trust that the manner by which Patriarch would waive or defer interest

was "in writing and/or by course of performance," as provided in its Amended Response.  Decl. ¶

2.  Patriarch identified the produced documents that reflect deferrals reduced to a writing, including

that such information was recorded in the MAMA loan database system, the portfolio company

financial statements, and reflected in Trustee Reports and associated data files.  *See* Ex. 1.

Moreover, Patriarch explained that Section 7.7(a) of the Zohar Funds' Indenture Agreements

permitted the Collateral Managers to defer interest payments in their business judgment, and that

because interest was deferred before any interest payment was due, an interest payment default

was not triggered.  The Trust had detailed, probing questions on Patriarch's deferral of interest

practices, more appropriate to fact depositions than an interrogatory response or a meet and confer

about that response.  Indeed, Patriarch noted that the Trust intends to take over a dozen depositions of Patriarch witnesses and invited the Trust to seek further details about these practices then.  Decl. ¶ 3.  To further assist the Trust with its questions, Patriarch also pointed the Trust to Ms. Tilton's SEC investigative and trial testimony for more information about Patriarch's practices, but the Trust dismissed this suggestion.  Decl. ¶ 4.

Over the course of that meet and confer, it became increasingly evident that the Trust was pushing for a specific admission that a particular kind of formal written agreement reflecting the "revised terms" of the deferrals Patriarch identified in its Amended Response did not exist.  The Trust asked several times where an interest deferral was reduced to or memorialized in writing, and Patriarch repeatedly directed the Trust to documents identified in its Amended Response.  Decl. ¶ 5.  The Trust asked if these documents constituted the "entire universe" of documents reflecting the interest deferrals.  *See id.*  Patriarch explained that it would be impossible to identify every document that related to an interest deferral—Patriarch produced over one million documents in this case, and many relate to interest deferrals, which occurred on a monthly basis—but that the cited documents are sufficient to ascertain all instances of deferred interest.  *See id.* ¶¶ 6-7.  Regardless, the Trust insisted that Patriarch admit that there was no "memorialization" of an agreement to defer interest on a monthly or quarterly basis.  *See id* ¶ 5.  Patriarch declined to engage in this legal dispute so far outside the scope of an interrogatory, and, moreover, so at odds with the facts.

Despite Patriarch's robust and thorough Amended Response, the Trust, without warning, rushed to the Court the day after Christmas, filing a letter claiming that Patriarch's response is insufficient and thus does not comply with the Court's May 6 order.  *See* D.I. 770.  On January 7,

2025, this Court ordered the Trust to file a formal Motion to compel.  *See* D.I. 776.  The Trust filed

its Motion on January 17, 2025.

## ARGUMENT

### I.   Legal Standard

The party seeking the discovery in a motion to compel "bears the burden of demonstrating

the relevance of the sought information to the claims, defenses, or the subject matter of the

litigation."  *Inventio AG v. ThyssenKrupp Elevator Americas Corp.*, 662 F. Supp. 2d 375, 381 (D.

Del. 2009) (citing Fed. R. Civ. P. 26(b)(1)).  And regardless of relevance, the Trust is not entitled

to discovery that is disproportionate or "cumulative or duplicative" of past discovery.  Fed. R. Civ.

P. 26(b)(2)(C)(i); *see also Astriab v. City of Jersey City*, 2010 WL 11569580, at *2 (D.N.J. July

28, 2010) (courts should deny requested discovery that is "unreasonably cumulative or

duplicative").

A party responding to an interrogatory may answer by "specifying the records that must be

reviewed, in sufficient detail…and giving the interrogating party a reasonable opportunity to

examine and audit the records" if the answer may be determined by "examining, auditing,

compiling, abstracting, or summarizing a party's business records," and if the burden of deriving

an answer will be "substantially the same for either party."  Fed. R. Civ. P. 33(d).

But a party is not required to provide "legal conclusions" in an interrogatory response.  *See*

*U.S. v. Columbia Steel Co.*, 7 F.R.D. 183, 185 (D. Del. 1947) ("Contentions, opinions and legal

conclusions may not be required by interrogatories…"); *see also* Fed. R. Civ. P. 33, Advisory

Committee's Notes to 1970 Amendment, Subdivision (b) ("Efforts to draw sharp lines between

facts and opinions have invariably been unsuccessful, and the clear trend of the cases is to permit

'factual' opinions…under the new language interrogatories may not extend to issues of 'pure

law…'"); *Tobacco and Allied Stocks vs. Transamerica Corp.*, 16 F.R.D. 537, 541 (D. Del. 1954)

("Pre-trial discovery does not call for the elicitation of contentions, opinions or legal conclusions of an attorney."). Interrogatories are a discovery device "designed to obtain simple facts…" and "can be a simple mode of obtaining the names and addresses of persons having knowledge of pertinent facts, or of securing information about the existence of documentary evidence." *Hayes v. Bergus*, 2015 WL 5666128 at *3 (D.N. J. September 24, 2015) (citation omitted).

## II.    Patriarch's Amended Response Fully Complies With The Court's May 6 Order

In its May 6 Order, the Court directed Patriarch to "respond to Interrogatory No. 5," D.I. 652 ¶ 6, and, as the Trust concedes, Patriarch responded. *See* Ex. 1; Motion at 7. There is no real dispute that Patriarch's Amended Response complies with the Court's May 6 Order and all governing rules and case law.

The Trust's real complaint is that Patriarch did not provide the answer it wanted: an unfounded "admission" that Patriarch did not execute "***specific*** documentation memorializing deferral agreements," of the Trust's design, which it claims the Credit Agreements require. Motion at 8. Of course, as a factual matter, Patriarch did identify several documents reflecting interest deferrals. But what the Trust puts forward here is a legal theory of what was required under the relevant agreements—and the unfounded assertion that those requirements were not met and that the "purported deferrals" did not actually occur—and demands that Patriarch adopt its interpretation of those agreements. Motion at 8. As the parties will argue in a more appropriate venue—such as summary judgment—the Trust's legal theory is at odds with governing law and the terms of the Zohar Funds' indenture agreements, collateral management agreements, and relevant Credit Agreements. *See infra* at 20-21 21. But, more importantly here, it is entirely improper for the Trust to use an interrogatory as a cudgel to force its legal theory and then move to compel on a facially compliant interrogatory response.

### A.  Patriarch Provided a Robust, Compliant Response to Interrogatory No. 5

In its opening brief, the Trust concedes that Patriarch responded to Interrogatory No. 5, but contends that subparts (c) and (d) of that request were not adequately addressed with respect to the deferral of interest payments.  *See* Motion at 7 ("In response to subsections (c) and (d) of Interrogatory No. 5…***Patriarch provided an*** overly broad single sentence ***response***...") (emphasis added).  But even a cursory glance at Patriarch's Amended Response reflects a facially compliant response.  Interrogatory No. 5 requests that Patriarch "[i]dentify every instance between 2003 and 2016 when [Patriarch] adjusted or waived an interest payment from a portfolio company, specifying: (a) the date of each adjustment or waiver (b) the amount adjusted or waived; (c) the manner (including whether reduced to writing) in which the adjustment or waiver was made; (d) the revised terms of the obligation; and (e) Bates numbers for documents reflecting the above information." Ex. 4 at 8.   Patriarch provided a response to each of the subparts and identified records which reflect the information sought, pursuant to the federal rules.  *See id.*; *infra* at 12-16.

Under Rule 33(d), a party may answer an interrogatory by identifying records that the interrogating party can examine to derive the information sought, where the burden of deriving an answer is "substantially the same for either party."  Fed. R. Civ. P. 33(d).  Accordingly, in its Amended Response, along with a written answer, Patriarch identified and provided Bates numbers for, among other documents, every forgiveness of interest letter and all Trustee Reports and accompanying data files which memorialized any waivers and deferrals of interest.  *See supra* at 6-7.  Patriarch also identified Credit Agreement provisions that provide duplicative information, such as the interest rate and interest payment deadline for every loan.  *See id.*  To the extent Interrogatory No. 5 asks for every instance in which interest was deferred across hundreds of loan facilities in any given month over 14 years, that information is reflected in the Trustee Reports and accompanying data files that the Trust has had for years.  *See* Ex. 1; *see also* D.I. 550 at 25-26;

10

Ex. 22 at 92:13-93:01.  As such, the burden and work required to identify every instance in which an interest payment was "waived" or "adjusted" across 14 years is substantially the same for both parties, as Patriarch would have to rely on the same reports and data files as the Trust to respond to the Interrogatory.  *See infra* at 14; Ex. 1 (citing to Fed. R. Civ. P. 33(d)).

Patriarch not only identified these documents for the Trust, but went through the considerable effort of creating tutorials to demonstrate *how* the Trust could obtain this information from the documents in its possession.  *Id.*  The Trust recognizes this work, agreeing that Patriarch responded to subsets (a), (b), and (e)[5] of Interrogatory No. 5 by identifying and explaining the necessary records and information, pursuant to Rule 33(d).  *See* D.I. 770 at 2 ("[Patriarch] responded to parts (a) and (b)…by providing a sample list (Appendix A) of 'computed interest and actual interest paid to Zohar III between September 2007 and March 2015.'…[and] 'steps to determine if any interest was deferred'…").  However, the Trust also claims that Patriarch "provide[d] ***no specific information***" as to parts (c) and (d) of Interrogatory No. 5 as it relates to deferrals, and that Patriarch cannot identify business records "in lieu of" responding to these subparts because they do not provide a "complete response."  Motion at 5, 9 (emphasis added). That is wrong for many reasons and the Trust's claims are belied by the record.

*First*, Patriarch's Amended Response facially responds to subsection (c) by providing the manner in which interest was waived or deferred.  *See* Ex. 1.  Patriarch explained that, pursuant to Section 7.7(a) of the Zohar Funds' Indenture Agreements, the Collateral Managers of the Zohar Funds would waive or defer interest payments owed "in writing and/or by course of performance." *Id.*  Patriarch also cited the Indenture Agreements, which the Trust has in its possession.  *See id.* The Trust can consult the language of Section 7.7(a) to confirm that the cited provision permitted

---

[5] The Trust concedes this fully, with respect to waivers of interest, and partially, with respect to deferrals.

the Collateral Managers to defer interest payments in their business judgment. The Trust concedes

that this explanation of "manner" is adequate for waivers of interest. *See* Motion at 4. But that

same explanation, it insists, is somehow inadequate for deferrals. *See id.* at 4-5. Even putting

aside that glaring contradiction, the Trust ignores Patriarch's *further* explanation of the manner of

deferral, as reflected in the Indenture Agreements:

> [T]he Collateral Managers agreed to accept less than the amount that was owed,
> based on the contractual interest rate set forth in the relevant Credit Agreement (and
> Credit Agreement Amendments), and defer all or part of such interest payment. If
> any part of or an entire interest payment was deferred, it was always deferred prior
> to the time such interest payment was due. Any interest that was deferred was
> accrued and still owed by the borrower. Therefore, if any interest was deferred,
> and the payment that was made was in accordance with the agreed upon deferral,
> there was no default under either the Indentures or the applicable Credit
> Agreement…All payments of interest and deferred interest are reflected in the
> Trustee Reports and
> associated data files.

Ex. 1; *see* Ex. 12 § 7.7(a). Patriarch's Amended Response also provides "revised terms of

obligation" for interest deferrals, in response to subsection (d), if there were any, such as the

interest amount that was deferred, accrued, and continued to be owed by the Portfolio Company.

*See* Ex. 1. Patriarch provided a complete response to this subpart, including by reference to

specific documents and with descriptive information. *See id.*; Fed. R. Civ. P. 33(d) ("A

specification shall be ***in sufficient detail to permit the interrogating party to locate and to identify,***

***as readily as can the party served***, the records from which the answer may be ascertained.").

*Second*, contrary to the Trust's claim, Patriarch does not exclusively cite business records

as its "complete response" to Interrogatory No. 5.[6] Patriarch's Amended Response walks the Trust

---

[6] The Trust argues that Patriarch can only rely on Fed. R. Civ. P. 33(d) if the cited documents provide a "complete response" to the Interrogatory. That is wrong, and the case the Trust cites, *Willemijn Houdstermaatschappij BV v. Apollo Computer Inc.*, does not support the proposition. The court in *Willemijn* merely quotes the Rule that the business records identified must be "sufficiently detailed" to permit the interrogating party to readily identify and review "the records from which the answers *may* be obtained." *See Willemijn*, 707 F. Supp. 1429, 1440 (D. Del. 1989) (quoting Fed. R. Civ. P. 33(c)). Pursuant to Rule 33(d), Patriarch not only identified the Trustee Reports and associated data files with sufficient detail and further explained how the answers could be obtained from those documents, but

through the specified documents, providing a guided explanation for the Trust to identify the date and amount of any interest deferral, including the specific line entries, columns, and contractual provisions where the Trust can identify and review the information in the Trustee Reports, associated data files, and Credit Agreements. *See supra* at 6. Indeed, although the Trust asserts that the records identified by Patriarch "only identify instances of interest amounts owed and interest amounts paid," Motion at 10, the records, in fact, reflect: the interest rate of each loan, interest payment activity, the categorization of the loan, as well as the interest coverage ratio, all of which made plain that companies were not paying full interest, but remained in the same loan category. *See generally* Ex. 15. Further, Patriarch's Amended Response includes a detailed explanation of how to compute the original interest owed, using the documents identified, in order to confirm the amount of interest that was deferred for a company on a monthly or quarterly basis. *See* Ex. 1.

*Third*, as Patriarch repeatedly explained to the Trust, to create new work product that compiles anew thousands of instances of deferrals is an extraordinary burden that is substantially the same for both parties, and thus not required under the federal rules. *See supra* at 11. Tellingly, the Trust cites no authority that requires Patriarch to undertake this burden. *See* Motion at 9-11. Nevertheless, Patriarch also included an appendix to its Amended Response that compiled the requested data for Zohar III, as a sample, even though it is the Trust's burden to bear. *See* D.I. 782, Ex. D, Appendix A; *see also* Fed. R. Civ. P. 33(d).

*Fourth*, Patriarch is not required to cite to duplicative documents in its Amended Response. The Trust argues that, because Patriarch did not identify interest deferral letters in its Amended Response, it could not have "satisfied" Interrogatory No. 5 and that its omission is "tactical" and

---

then went a step further, as well, outlining a step-by-step guide of where the specific information requested was located within the records. *See* Ex. 1.

"defeats the fundamental purpose of interrogatories." Motion at 8.[7] In its Amended Response, Patriarch identified the documents in the Trust's possession where waivers and deferrals of interest payments are reflected in writing, including the Trustee Reports and accompanying data files, as well as documents summarizing interest payment activity from Patriarch's Loan Database systems. *See supra* at 7. Patriarch cited these specific documents in its Amended Response because they capture all of the information that the Trust is seeking in its Interrogatory across the entirety of the 14-year time period. That does not mean that there are no other documents which relate to the subject matter of waiver or deferral of interest payments, but Patriarch cannot and need not cite every potentially relevant document in an interrogatory response. *See Ampex Corp. v. Mitsubishi Elec. Corp.*, 937 F.Supp. 352, 355 (D. Del. 1996) ("So long as a party electing the Rule 33(d) option provides documents from which the answer may be derived or ascertained, ***there should be no reason why that party need produce all documents that may refer or relate to the information sought by the interrogatory...***") (emphasis added); *Nestle Foods Corp. v. Aetna Cas. and Sur. Co.*, 135 F.R.D. 101, 108 (D.N.J. 1990) (A responding party "may answer an interrogatory by specific reference to a document where the answer may be found.").

Patriarch identified documents sufficient to reflect every instance of a deferral of interest payment, but did not include every duplicative document recording the same, and explained that deferrals occurred both in writing and by course of performance. Specifically, during the parties' December 20 meet and confer, Patriarch explained that this same information could be reflected in other writings, such as letters and emails, but they would reflect the same deferrals recorded in

---

[7] But the Trust's assertions and its reliance on the cited case law are misplaced. *Id.* The Trust relies on these cases for its position that Patriarch must respond more specifically to its Interrogatory No. 5. But the cases cited do not consider or address the scale of the Trust's demands—which are outside the scope of its Interrogatory and would require detailing thousands of instances of interest deferrals—nor do they consider interrogatory responses subject to Rule 33(d). *See generally In re Domestic Drywall Antitrust Litig.*, 300 F.R.D. 228 (E.D. Pa. 2014); *Younes v. 7-Eleven, Inc.*, 312 F.R.D. 692 (D.N.J. 2015); *Struthers Sci. & Int'l Corp. v. Gen. Foods Corp.*, 51 F.R.D. 149 (D. Del. 1970).

the documents cited in the Amended Response.  *See* Ex. 1, 13-14.  The sample deferral letters the

Trust cites, *see* Motion at 8, are examples of those other writings which reflect the date and amount

of an interest deferral and are duplicative of the cited documents.  Patriarch was not required to

cite every document related to a deferral to answer the interrogatory—nor did the Trust cite to any

authority that requires a party to cite to duplicative documentation in an interrogatory response[8]—

and the absence of any particular document from the Amended Response is not an "omission."

Motion at 8.  Patriarch plainly responded to Interrogatory No. 5, as the Court ordered, and the

Amended Response fully comports with the Court's May 6 Order and Federal Rules.  *See supra*

at 6; D.I. 652 ¶ 6; Fed. R. Civ. P. 33(d); *see also Schneck v. International Business Machines

Corp.*, 1993 WL 765638, at * 2 (D.N.J. July 27, 1993) ("When answering interrogatories, the party

may respond by specific reference to documents where the answer may be found").

### B.  The Trust's Improper Demands Are Far Outside the Scope of the Interrogatory

The Trust's focus on the duplicative deferral letters reveals its true objective:  to force Patriarch

to adopt the Trust's unfounded legal argument that, if, under the relevant Credit Agreements,

"specific documentation" memorializing deferral agreements was not prepared and executed, then

the loans were "in fact, in default" for a missed interest payment.  Motion at 2, 8.  In moving to

compel, the Trust is not seeking a factual response to its Interrogatory.  Instead, the Trust is using

Interrogatory No. 5 to erect this legal theory that undergirds its breach of contract claims.  *See

Motion at 2, 8 (citing to Counts IV, V, VI, VII, and XIV in its Fourth Amended Complaint).  But

---

[8] Both *Younes v. 7-Eleven. Inc.* or *Struthers Sci. & Int'l Corp. v. Gen. Foods Corp.* are inapposite to the issues here. The Court in *Younes* concerns an assertion of boilerplate objections in lieu of identifying a factual agreement to a request about "any plans or communications to terminate 7-Eleven franchise agreements…." *Younes*, 312 F.R.D. 692, 705 (D.N.J. 2015).  The Court there held that 7-Eleven was required to answer the interrogatory "directly"—not about the identification of duplicative documents.  Similarly, *Struthers* involves the specificity of an interrogatory response, not a requirement to identify duplicative documents in support of its response.  *See Struthers*, 51 F.R.D. 149, 153 (D. Del. 1970) (finding that Struthers had to "specifically describe what particular combination of components" it had disclosed to General Foods, in its interrogatory response).  Neither support the Trust's claim that Patriarch was required to identify duplicative documents in its Amended Response.

that legal theory is unsupportable—at odds with both the facts and the law—and, more importantly, for purposes of this motion, it is wholly improper. Seeking a legal admission is well beyond the proper scope of the Interrogatory. This Court should deny the Trust's claim and find that Patriarch has complied with the Court's May 6 Order.

### i. Patriarch Specifically Identified the Manner By Which Interest Payments Were Deferred

Notwithstanding the fact that Patriarch adequately provided the "manner" by which interest payments were waived or deferred, the Trust latches onto this amorphous term to demand that Patriarch admit or deny whether a specific document was executed for every instance of deferral and also specify, for thousands of deferrals over 14 years: "which waivers or deferrals were in writing," which were "consummated through 'course of performance'," "what conduct established the course of performance between the parties," and also provide an explanation as to "what specific conduct established such agreements between the Collateral Manager and portfolio companies." Motion at 7-8. The Trust cites no authority commanding such a herculean undertaking to respond to a single word. Not to mention the numerous opportunities the Trust had to explain to Patriarch (and this Court) that "manner" encompassed all of that information, but failed to do so. *See supra* at 3.

As Patriarch explained to the Trust during the parties' December 20 meet and confer, it is impossible—and unnecessary—to provide in a single interrogatory response a narrative description of the particularities of every single instance in which the Collateral Managers deferred interest for every loan facility across 14 years. *See id.* It is unclear what such a project would even entail because the Collateral Managers were regularly deferring interest. For example, Patriarch asked the Trust whether that would include listing every phone call or meeting between the Collateral Manager and a credit analyst and every email related to the Collateral Manager's

decision to defer—all of which occurred in the ordinary course on a monthly or quarterly basis. Decl. ¶ 6. The Trust had no answer. If the Trust has further questions about the precise manner by which the Collateral Manager deferred an interest payment in any instance or, more generally, in the ordinary course of operating funds designed with that purpose, then it can ask Patriarch witnesses in depositions. It can also review the testimony transcripts of Patriarch witnesses that were already examined on this issue in the SEC Action, which were produced to the Trust more than six months ago. *See e.g.*, Ex. 16; Ex. 17.

But more importantly, the information the Trust is seeking to compel here as to the "manner" of deferral, improperly requires Patriarch to adopt the Trust's unfounded legal assumption that written agreements *were* required for the deferral of interest payments. Indeed, the Trust's demand to detail the manner by which interest was deferred and the revised terms of obligation for every instance of an interest deferral does not allow for Patriarch to deny the assumptions baked into its requests (i.e. subsection (d) assumes that there were revised terms of obligation and that those revised terms were required to be executed in writing). This is especially notable, given that such an assumption and legal theory contradicts New York law, as well as the SEC's own determination. *See infra* at 20.

### *ii.* The Trust Is Improperly Demanding that Patriarch Adopt Its Legal Theories in Order to Respond to Interrogatory No. 5

What the Trust is really asking for here is to have Patriarch adopt the Trust's unfounded legal conclusions and provide specific answers using its rubric. *See* D.I. 770 at 4 ("Patriarch's position suggests that *Patriarch will argue* that deferrals occurred not through any contemporaneous action or agreement of the Collateral Manager, but automatically in each case where a loan was actually in default by its own terms, a hindsight, *made-for-litigation position*."). The Trust claims that every time the Collateral Managers deferred an interest payment, it was

required to amend the terms of the relevant Credit Agreement by entering into another written agreement, and any deferral without this particular kind of "specific documentation" constitutes a breach of the Credit Agreement.  Motion at 8; D.I. 472.  Patriarch, of course, disputes this legal theory and has already argued its same position in front of an SEC Administrative Law Judge.  *See* Ex. 18 at 19-21, 51-53.  But the Trust wants to bind Patriarch to its made-for-litigation legal argument that every deferral required a very specific kind of document with specific terms (and presumably none of the contemporaneous records documenting deferrals suffice), and prevent Patriarch from arguing that "deferrals were, in fact, agreed to" as a matter of law.  Putting aside the legal arguments that Patriarch has previewed in this brief, which illustrate the fact that these issues are clearly in dispute, the Trust's demands for its Interrogatory No. 5 inherently require multilayered legal interpretation, assumptions, and admissions that are wholly inappropriate for an interrogatory.  *See* Fed. R. Civ. P. 33, Advisory Committee's Notes to 1970 Amendment, Subdivision (b) (permitting "factual opinions," but not "issues of pure law"); *U.S. v. Columbia Steel Co.*, 7 F.R.D. 183, 185 (D. Del. 1947) ("Contentions, opinions and legal conclusions may not be required by interrogatories…"); *Tobacco and Allied Stocks vs. Transamerica Corp.*, 16 F.R.D. 537, 541 (D. Del. 1954) ("Pre-trial discovery does not call for the elicitation of contentions, opinions or legal conclusions of an attorney.").

In its Amended Response, Patriarch explained that the Zohar Funds' Collateral Managers would waive and defer interest payments, pursuant to Section 7.7(a) of the Zohar Funds' Indentures.  Ex. 1.  Section 7.7(a) of the Indentures allows the Collateral Manager to amend or supplement any Credit Agreement without the consent of noteholders.  *See* Ex. 12 §7.7(a).  All parties, including the noteholders, understood that these were distressed loans that would be the subject of extensive amendment, workout, or restructuring, and so it was necessary for the

Collateral Manager to have the flexibility and discretion afforded by Section 7.7(a). Section 7.7(a) allowed the Collateral Manager to defer interest payments, which were made in writing and/or by course of performance. This was a critical means of implementing Patriarch's disclosed strategy of investing in distressed companies that had been "left for dead," Ex. 17 at 2727:04-2728:09, and turning them around by providing them with liquidity through new loans and loan repayment flexibility. Using Interrogatory No. 5 as its vehicle, the Trust seeks to introduce an assumed legal requirement for specific documentation every time the Collateral Managers would defer interest. Specifically, the Trust asks the Court to presuppose that (i) the Credit Agreements mandate that any amendments made (including the waiver or deferral of interest) be in writing; (ii) that such a requirement means that the Collateral Managers had to execute "specific documentation memorializing deferral agreements", *see* Motion at 8; and (iii) that the "specific documentation" means something other than the host of documents memorializing interest deferral that Patriarch cited to in its Amended Response. With such requirements assumed, the Trust would then have Patriarch compelled to admit that such "specific documentation" either does or does not exist, and therefore, the Credit Agreements were breached and interest was not properly deferred. *See id.* (the Trust admits it seeks Patriarch's admission that "the Collateral Managers and portfolio companies ***executed specific documentation memorializing deferral agreements as was required by the terms of the credit agreements*** which mandate that all amendments be in writing.") (emphasis added). This would ultimately lead to a forthcoming argument by the Trust that since interest was not properly deferred, the loan facilities were actually in default and the Collateral Managers misreported the credit quality of loans issued by the Zohar Funds. Patriarch cannot be compelled to adopt the Trust's unfounded litigation strategy under the guise of answering an interrogatory.

19

Moreover, it is well-settled that, under New York law, "any written agreement, even one which provides that it cannot be modified except by a writing signed by the parties, can be effectively modified by a course of actual performance." *Gaia House Mezz LLC v. State St. Bank & Tr. Co.*, 720 F.3d 84, 90-91 (2d Cir. 2013) (quoting *Harold J. Rosen Tr. V. Rosen*, 386 N.Y.S.2d 491, 499 (N.Y. App. Div. 1976), *aff'd*, 371 N.E.2d 828 (N.Y. 1977)). Each of the Indentures, Credit Agreements, and Collateral Management Agreements is governed by New York. *See, e.g.*, Ex. 19 § 17.9; Ex. 20 § 7.4; Ex. 21 § 10.10. In other words, even if a deferred interest payment was required to be agreed to in writing by the companies' relevant Credit Agreements, the Collateral Managers could effectively modify any credit agreement by course of actual performance. Accordingly, the Collateral Managers would defer interest on a monthly and quarterly basis by a course of performance—and sometimes by writing, too (and always reflected in documentation)—and pursuant to that deferred interest payment, there would be no interest payment default necessitating re-categorization of the loans. *See supra* at 14. Deferred interest would be reduced to writing, as it was recorded in the MAMA loan database, the portfolio company financial statements, and it would also be reflected in the Trustee Reports and accompanying data files. And contrary to the Trust's assertions, this is not a "*post hoc* fiction scripted for litigation"— it is a determination that was already made by an SEC Administrative Law Judge. *See* Ex. 18 at 21-22, 52 (finding that Ms. Tilton did "***amend loan agreements… by course of performance***" by deferring interest and that she had the discretion to determine if an obligation was in default, as she "could categorize a 1 as a 4, if appropriate, using reasonable, good faith business judgment and discretion") (emphasis added).

By demanding that Patriarch explain "what *established* the course of performance between the parties" in every instance of deferral, provide any "revised terms of obligation," explain "what

specific conduct established such *agreements* between the Collateral Manager and portfolio companies," and explain what "specific documentation" memorialized every interest deferral, Motion at 7, the Trust is presupposing an unestablished legal requirement that the decision to defer interest could only be done by a formal written agreement.  The Trust cannot force Patriarch to adopt its legal theories through a discovery request.  It is clear that the Trust does not seek a factual response to an Interrogatory, but to enjoin Patriarch from making legal arguments in this action. *See supra* at 7-8, 18-20.  Its demand would have Patriarch argue about the legality of amending by course of performance and essentially provide a glimpse into its summary judgement arguments about the Trust's claims related to the OC Ratio Test, Patriarch's alleged breaches of the collateral management agreements, and Patriarch's alleged breaches of the Credit Agreements, all under the garb of a discovery dispute.  This is entirely improper for pre-trial discovery, *see Tobacco and Allied Stocks*, 16 F.R.D. at 541, and prejudicial to Patriarch's defenses.  The Trust should not be allowed to transform a simple discovery request into a premature motion for summary judgment.

## CONCLUSION

As reflected in the foregoing, Patriarch has fully complied with the Court's May 6 Order and responded to the Trust's Interrogatory No. 5.  *See* D.I. 652 ¶ 6.  As such, the Court should deny the Trust's Motion to Compel.

Dated: January 31, 2025
Wilmington, Delaware

**COLE SCHOTZ P.C.**

 /s/ G. David Dean
Norman L. Pernick (No. 2290)
G. David Dean (No. 6403)
500 Delaware Ave., Suite 1410
Wilmington, DE 19801
Telephone: (302) 652-3131
Facsimile: (302) 652-3117
npernick@coleschotz.com
ddean@coleschotz.com


– and –

**GIBSON, DUNN & CRUTCHER LLP**
Monica K. Loseman (admitted pro hac vice)
1801 California St., Suite 4200
Denver, CO 80202-2642
Telephone: (303) 298-5784
Facsimile: (303) 313-2828
mloseman@gibsondunn.com

Akiva Shapiro (admitted pro hac vice)
Mary Beth Maloney (admitted pro hac vice)
200 Park Ave.
New York, NY 10166-0193
Telephone: (212) 351-4000
Facsimile: (212) 351-4035
ashapiro@gibsondunn.com
mmaloney@gibsondunn.com

*Counsel to Lynn Tilton, Patriarch Partners,
LLC, Patriarch Partners VIII, LLC,
Patriarch Partners XIV, LLC, Patriarch
Partners XV, LLC, Phoenix VIII, LLC,
Patriarch Partners Agency Services, LLC,
Patriarch Partners Management Group,
LLC, Zohar Holdings, LLC, Octaluna LLC,
Octaluna II LLC, Octaluna III LLC, Ark II
CLO 2001-1, Limited, Ark Investment
Partners II, L.P., LD Investments, LLC and
Ark Angels VIII, LLC*